UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| IN RE DURAMAX DIESEL LITIGATION | Case No. 17-11661 |
| NANCY ANDERTON, et. al. | **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | Honorable Thomas L. Ludington |
| GENERAL MOTORS LLC, et al. | Magistrate Judge Patricia T. Morris |
| Defendants. | |

**ANDERTON PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT
AND JURY TRIAL DEMAND**

Pursuant to the Court's February 19, 2019, Order (Dkt 156), Plaintiffs listed and set forth herein below file this Consolidated Amended Complaint and Jury Trial Demand complaining of Defendants General Motors LLC, Robert Bosch GmbH, and Robert Bosch LLC, and for cause of action would show:

**BASIS FOR CLAIMS**

1.      Plaintiffs allege the facts in this Consolidated Amended Complaint based upon their own personal knowledge as to their own acts.

2.      Plaintiffs allege the other facts in this Consolidated Amended Complaint upon facts obtained by their attorneys' investigation, discussions with class counsel, and consultation with experts.

3.      Plaintiffs' factual allegations in this complaint are based, in part, on their attorneys' discussions with class counsel.  Plaintiffs' counsel met with class counsel to discuss the allegations in *In re: Duramax Diesel Litigatio*n, 17-CV-11661 (E.D. Mich.).  Class counsel confirmed the accuracy of the allegations in the class action complaint, including the results of the portable emissions testing conducted by class counsel's experts.  The results of the portable emissions testing is discussed in detail in the class complaint and in this complaint.  (*Id.* (Dkt. 18); see also infra ¶¶ 219 -265)

4.      Plaintiffs' factual allegations in this complaint are based, in part, on their attorneys' consultation with experts.  Plaintiffs' counsel consulted with experts about the portable emissions testing discussed in the class action complaint and in this complaint.  This consultation with experts provided additional support for Plaintiffs' counsel's good-faith belief that the allegations in this complaint have evidentiary support.

5.      Plaintiffs' allegations in this complaint are based, in part, on their attorneys' review of the complaints, briefing, orders, and answers filed in *In re: Duramax Diesel Litigatio*n, 17-CV-11661 (E.D. Mich.).

6.      Plaintiffs' allegations in this complaint are based, in part, on their attorneys' review of articles about the GM Duramax NOx cheating scandal, including, without limitation:

    a.   https://www.trucks.com/2017/06/09/gm-diesel-emissions-scandal-graphs/

    b.   https://www.nytimes.com/2017/05/25/business/energy-environment/general-motors-diesel-emissions-lawsuit.html

    c.   https://www.businessinsider.com/gm-diesel-emissions-lawsuit-compliant-2017-5

    d.   https://www.npr.org/sections/thetwo-way/2017/05/26/530221853/lawsuit-claims-gm-used-defeat-devices-on-duramax-diesel-trucks-and-suvs

    e.   https://www.ft.com/content/75e42334-4165-11e7-9d56-25f963e998b2

    f.   https://www.theguardian.com/environment/2018/jun/06/impossible-to-cheat-emissions-tests-show-almost-all-new-diesels-still-dirty

    g.   https://www.caranddriver.com/news/a15341046/hard-nox-general-motors-accused-of-rigging-diesel-pickup-emissions/

7.    Plaintiffs' factual allegations in this complaint are based, in part, on their attorneys' review of multiple published studies showing that real-world NOx for multiple diesel vehicles using the Bosch EDC 17 component—the same component at issue in this case—exceeded certified levels based on dynamometer testing:

    a.   2014 ICCT West Virginia University Study showing that NOx emissions for the VW diesels were as much as 40 times higher than the applicable limits https://theicct.org/publications/use-emissions-testing-light-duty-diesel-vehicles-us

    b.   A West Virginia University study showingthat 2014 and 2015 FCA Ram 1500 and Jeep Grand Cherokee diesels emitted significantly higher NOx levels in real-world driving as compared to on a dynamometer.

      https://www.cafee.wvu.edu/files/d/c586c1dd-b361-410d-a88d-d34e8834eda6/testing-of-light-duty-diesel-passenger-cars.pdf

    c.   A TNO study showing that NOx emissions from a GM Opel vehicle substantially exceeded certified dynamometer emissions, suggesting the presence of a defeat device.

    d.   A 2017 ICCT study showing that GM Opel vehicles had higher NOx levels in real-world driving conditions. https://theicct.org/sites/default/files/publications/ICCT_RoadTested_201709.

    The article states:

    Before selling Opel to PSA, General Motors also modified the emissions-control system software on the 2014 Opel Zafira Tourer, which has an engine

that is also used in several other Opel vehicles, including the Astra, another car included in this analysis (Gordon Bloomfield, 2016). Opel acknowledged that this model had engine software that switched off exhaust treatment systems under certain circumstances but maintained that this was legal (Carrel, 2016). In March 2017, the French Competition, Consumer Affairs and Prevention of Fraud department (DCCCRF) said that its investigation into Opel "did not bring to light any evidence of fraud" (Balibouse, 2017). However, as German (2016b) pointed out, there are well-known, widely available fixes for the situations that Opel explained as justifications for shutting off the aftertreatment system.

In February 2017, the PSA group, after the DCCCRF decided to send the findings of its investigation to a public prosecutor, said in a statement that the company "[sets] engine parameters according to real-life driver behavior" (PSA Group, 2017). As German (2017) explained, it is difficult for PSA to legally justify changing emissions-control calibrations based on real-life driver behavior.

Citing "collapsing consumer confidence in car testing," PSA has collaborated with Transport and Environment and France Nature Environment, two environmental NGOs, to measure and publish real-world fuel consumption data for 58 models. The data were collected from trials on public roads under real-life driving conditions (e.g. with air conditioning on) using PEMS. The collaborators said they also planned to release NOX emissions values in late 2017 (Transport & Environment, 2017).

8.     The factual allegations in this complaint are based, in part, on Plaintiffs' attorneys' review of PEMS testing data in other lawsuits involving NOx emissions cheating using the Bosch EDC 17. The PEMS testing data in those lawsuits show that the relevant defeat device works the same way as the defeat device in the GM Duramax case (i.e., the emissions controls are deactivated at temperatures above a certain temperature and below a certain temperature and/or after a certain period of time):

   a.   PEMS testing data in the Chevy Cruze litigation, which involves the Bosch EDC 17, shows that the relevant defeat device works the same way as the defeat device in the GM Duramax case (i.e., the emissions controls are deactivated at temperatures below 50 degrees and over 85 degrees). (Chevy Cruze First Amended Class Action Complaint ¶¶ 122-25, 165-69.)

   b.   PEMS testing data in the In re Mecedes-Benz Emissions Litigation, which involves the Bosch EDC 17,shows that the relevant defeat device works the same way as the defeat device in the GM Duramax case (i.e., the emission

controls are deactivated when the temperature is below 50 degrees and after the vehicle is driven for a short period of time)  (Mercedes Fourth Amended Class Action Complaint ¶¶ 5-22.)

9.     The factual and legal allegations in this complaint are based, in part, on Plaintiffs' attorneys' experience representing numerous plaintiffs in the VW "Clean Diesel" cases in the federal MDL (in which  Michael Heygood is a member of the Plaintiffs' Steering Committee), the Texas MDL, the California coordinated proceeding (in which Charles Miller is Co-Liaison Counsel), and the Virginia coordinated proceeding.   The Volkswagen cases involve NOx emissions cheating using the Bosch EDC 17, the same component that Bosch and GM used for the emissions cheating in this case.

10.     The factual and legal allegations in this complaint are based, in part, on Plaintiffs' attorneys' experience representing numerous plaintiffs in the FCA EcoDiesel MDL, which involves NOx emissions cheating using the Bosch EDC 17, the same component that Bosch and GM used for the emissions cheating in this case.

11.     The legal allegations in this complaint are warranted by existing law because, among other reasons, this Court has already determined that the allegations in the Duramax class action complaint are sufficient to state a claim.  The allegations in this complaint are substantially similar to the allegations in the class complaint.  In addition, the legal allegations in this complaint are warranted by existing law because, among other reasons, numerous courts around the United States have determined that similar allegations in consumer diesel emissions cases are sufficient to state a claim.

## **INTRODUCTION**

12.     This is what General Motors ("GM") promised when selling its popular Silverado and Sierra HD Vehicles—that its Duramax engines turned "heavy diesel fuel into a fine mist,"

delivering "low emissions" that were a "whopping reduction" compared to the prior model and at the same time produced a vehicle with "great power." GM claimed its engineers had accomplished a "remarkable reduction of diesel emissions."

13.     As explained in detail below, this is not what GM delivered in the estimated 705,000 or more 2011-2016 Silverado and Sierra 2500 and 3500 diesels on the road. In contrast to GM's promises, scientifically valid emissions testing conducted by engineering experts who were retained by Class Counsel in *In re Duramax Diesel Litigation*, Case No. 2:17-cv-11661 (E.D. Mich.) (the "Duramax Class Action") has revealed that the Silverado and Sierra 2500 and 3500 models emit levels of NOx many times higher than (i) their gasoline counterparts, (ii) what a reasonable consumer would expect, (iii) what GM had advertised, (iv) the Environmental Protection Agency's maximum standards, and (v) the levels set for the vehicles to obtain a certificate of compliance that allows them to be sold in the United States. Further, the vehicles' promised power, fuel economy, and efficiency is obtained only by turning off or turning down emissions controls when the software in these vehicles senses they are not in an emissions testing environment.

14.     In the last two years, there have been major scandals involving diesel vehicles made by Volkswagen, Audi, Porsche, Mercedes, and FCA. Volkswagen pled guilty to criminal violations of the Clean Air Act, Mercedes is under investigation by the Department of Justice, and FCA has been sued by the EPA for violating the Clean Air Act for improper emissions in thousands of 2014-2016 Dodge Ram 1500 EcoDiesels and 2014-2016 Jeep Grand Cherokee EcoDiesels. The diesel vehicles made by these manufacturers evade emissions standards with the help of certain software that turns off or down emissions controls when the vehicles sense they are not in a test environment.

15.     Testing conducted by experts retained by Class Counsel in the Duramax Class Action indicates that GM is no different. Its top selling Silverado and Sierra 2500HD and 3500HD vehicles emit far more pollution on the road than in the emission certification testing environment. These vehicles exceed federal and state emission standards and employ at least three different "defeat devices" to turn down the emissions controls when the vehicle senses that it is not in the certification test cycle. A defeat device means an auxiliary emissions control device that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use.

16.     GM Defeat Device No. 1 reduces or derates the emissions system when temperatures are above the emissions certification test range (86°F). GM Defeat Device No. 2 operates to reduce emissions control when temperatures are below the emissions certification low temperature range (68°F). Testing reveals that at temperatures below 68°F (the lower limit of the certification test temperature), stop and go emissions are 2.1 times the emissions standard at 428 mg/mile (the standard is 200 mg/mile). At temperatures above 86°F, stop and go emissions are an average of 2.4 times the standard with some emissions as high as 5.8 times the standard. Based on temperatures in the top 30 metropolitan areas, these vehicles are operating with the emissions systems derated a material amount of their vehicle miles travelled. But the emission scheme is a step more nefarious: enter GM Defeat Device No. 3, which reduces the level of emissions controls after 200-500 seconds of steady speed operation in all temperature windows, causing emissions to increase on average of a factor of 4.5. Based on a study of temperatures in 30 major metropolitan areas as well as the demographics of Silverado and Sierra sales, experts retained by Class Counsel in the Duramax Class Action estimate that due to just the temperature-triggered defeat devices, the

vehicles operate at 65-70% of their miles driven with emissions that are 2.1 to 5.8 times the standard.

17.     Increased sales and thus increased profits drove GM to use at least these three defeat devices in its Duramax diesel engines. By reversing the traditional order of the exhaust treatment components and putting the Selective Catalytic Reduction (SCR) in front of the Diesel Particulate Filter (DPF), GM could obtain and market higher power and fuel efficiency from its engines while still passing the cold-start emissions certification tests. This made GM's trucks more appealing and competitive in the marketplace, driving up sales and profits. But the reordering would have also drastically increased the need to employ Active Regeneration (burning off collected soot at a high temperature) and other power- and efficiency-sapping exhaust treatment measures, reversing the very advantage gained. GM's solution, with the participation of defendants Robert Bosch GmbH and Robert Bosch LLC, was to install defeat devices to purposefully reduce SCR dosing, increase NOx emissions, and thus decrease Active Regeneration. The defeat devices allowed GM to have its cake and it eat too. It could gain the advantage of hot exhaust going into the SCR system needed to pass cold-start tests, while avoiding the fuel- and power-robbing Active Regeneration procedure that the    DPF filter requires when the SCR treatment comes first. GM turned a blind eye to the twofold to fivefold increase in deadly NOx emissions its scheme caused—all to drive up its sales and profits.

18.     Diesel engines pose a difficult challenge to the environment because they have an inherent trade-off between power, fuel efficiency, and emissions. Compared to gasoline engines, diesel engines generally produce greater torque, low-end power, better drivability, and much higher fuel efficiency. But these benefits come at the cost of much dirtier and more harmful emissions.

19.     One by-product of diesel combustion is NOx, which generally describes several compounds comprised of nitrogen and oxygen atoms. These compounds are formed in the cylinder of the engine during the high temperature combustion process. NOx pollution contributes to nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the atmosphere to form ozone. Exposure to these pollutants has been linked with serious health dangers, including serious respiratory illnesses and premature death due to respiratory-related or cardiovascular-related effects. The United States Government, through the Environmental Protection Agency (EPA), has passed and enforced laws designed to protect United States citizens from these pollutants and certain chemicals and agents known to cause disease in humans. Automobile manufacturers must abide by these U.S. laws and must adhere to EPA rules and regulations. This case is not based on these laws but on deception aimed at consumers.

20.     Seeing a major opportunity for growth, almost all of the major automobile manufacturers rushed to develop "clean diesel" and promoted new diesel vehicles as environmentally friendly and clean. Volkswagen, Mercedes, GM, FCA, and other manufacturers began selling diesel cars and trucks as more powerful, yet also as an environmentally friendly alternative to gasoline vehicles. And the marketing worked, as over a million diesel vehicles were purchased between 2007 and 2016 in the United States and over ten million in Europe.

21.     The green bubble with respect to diesel vehicles popped on September 18, 2015, when the EPA issued a Notice of Violation of the Clean Air Act (the "First NOV") to Volkswagen Group of America, Audi AG, and Volkswagen America for installing illegal "defeat devices" in 2009-2015 Volkswagen and Audi diesel cars equipped with 2.0-liter diesel engines. A defeat device, as defined by the EPA, is any apparatus that unduly reduces the effectiveness of emissions control systems under conditions a vehicle may reasonably be expected to experience. The EPA

found that the Volkswagen/Audi defeat device allowed the vehicles to pass emissions testing while in the real world these vehicles polluted far in excess of emissions standards. The California Air Resources Board also announced that it had initiated an enforcement investigation of Volkswagen pertaining to the vehicles at issue in the First NOV.

22.     On September 22, 2015, Volkswagen announced that 11 million diesel cars worldwide were installed with the same defeat device software that had evaded emissions testing by U.S. regulators. Volkswagen pled guilty to criminal charges and settled civil class actions for over ten billion dollars.[1]

23.     Volkswagen wasn't alone—soon, government agencies began to reveal that many manufacturers both in the U.S. and in Europe had produced dozens of models that were exceeding emissions standards. On December 2, 2016, a class action was filed alleging that FCA's Dodge Ram and Jeep Grand Cherokee were exceeding emissions standards that a reasonable consumer would expect to be produced by "Eco" vehicles. On January 12, 2017, the EPA issued a Notice of Violation to FCA because it had cheated on its emissions certificates with respect to its Dodge Ram and Jeep Grand Cherokee vehicles, and on May 23, 2017, the United States filed a civil suit in the Eastern District of Michigan alleging violations of the Clean Air Act (E.D. Mich. No. 17-cv-11633).

24.     GM is no different. To appeal to environmentally conscious consumers, and to compete with its rival and top selling Ford trucks, and to comply with new emissions regulations effective in 2011, GM markets its Silverado 2500 and 3500 and Sierra 2500 and 3500 Duramax vehicles as having low emissions, high fuel economy, and powerful torque and towing capacity.

---

[1] See Exhibit 1 to the First Amended Complaint in *In re Duramax*, Case No. 1:17-cv-110661 (E.D. Mich.) (the "Duramax Class Complaint"), Dkt 18-2, Nathan Bomey, *Volkswagen Emission Scandal Widens: 11 Million Cars Polluting*, USA Today (Sept. 22, 2015), http://www.usatoday.com/story/money/cars/2015/09/22/volkswagen-emissions-scandal/72605874/.

GM charges a premium of approximately $9,000 for diesel-equipped vehicles over comparable gas Silverados or Sierras.

25.    GM's representations are deceptive and false, and GM sold these vehicles while omitting information that would be material to a reasonable consumer, namely that GM has programmed its Silverado 2500 and 3500 and Sierra 2500 and 3500 Duramax vehicles to significantly reduce the effectiveness of the NOx reduction systems during real-world driving conditions.

26.    On-road testing by experts retained by Class Counsel in the Duramax Class Action has confirmed that GM's Silverado 2500 and 3500 and Sierra 2500 and 3500 vehicles with a Duramax engine produce NOx emissions that are not "reduced" or "low" but in fact exceed emission standards, and that GM has programmed the vehicles so that in a wide range of conditions, the emissions systems are powered down, producing NOx in excess of emissions standards. This testing indicates that GM and Bosch have programmed the software to detect a possible emission testing environment and to comply with emissions requirements in that circumstance, but to turn off the emissions controls when a testing environment is not detected. A reasonable consumer would not expect their Silverado or Sierra vehicle to spew unmitigated NOx in this fashion while driving in the city or on the highway, nor would a reasonable consumer expect that fuel economy was achieved in part by turning off or derating the emission systems, nor would a reasonable consumer expect that if the emissions were as promised the advertised fuel economy and performance could not be achieved.

27.    Plaintiffs allege that the following GM models powered by Duramax engines are affected by the unlawful, unfair, deceptive, and otherwise defective emission controls utilized by

GM: model year 2011-2016 GM Sierra 2500HD and 3500HD trucks and GM Silverado 2500HD and 3500HD trucks (the "Fraudulent Vehicles").

28.     In addition, GM markets the Fraudulent Vehicles as fuel efficient. Without manipulating its software to turn off the emissions controls, GM could not achieve the fuel economy and range it promises.

29.     GM did not previously disclose to Plaintiffs that in real-world driving conditions, the Fraudulent Vehicles can only achieve high fuel economy, power, and durability by reducing emissions controls in order to spew NOx into the air.

30.     GM never disclosed to consumers that the Fraudulent Vehicles may be "clean" diesels in very limited circumstances but are "dirty" diesels under most driving conditions. GM never disclosed to consumers that it programs its emissions systems to work only under certain conditions. GM never disclosed that it prioritizes engine power and profits over the environment. GM never disclosed that the Fraudulent Vehicles' emissions materially exceed the emissions from gasoline-powered vehicles, that the emissions exceed what a reasonable consumer would expect from a "low emissions" vehicle, and that the emissions materially exceed applicable emissions limits in real-world driving conditions.

31.     GM did not act alone. At the heart of the diesel scandal in the United States and Europe are Robert Bosch GmbH ("Bosch GmbH") and Robert Bosch LLC ("Bosch LLC") (sometimes referred together as "Bosch"). Bosch GmbH and Bosch LLC were active and knowing participants in the scheme to evade U.S. emissions requirements. Bosch GmbH and Bosch LLC developed, manufactured, and tested the electronic diesel control (EDC) that allowed GM to implement the defeat device. The Bosch EDC17 is a good enabler for manufacturers to employ "defeat devices" as it enables the software to detect conditions when emissions controls can be

derated—*i.e.*, conditions outside of the emissions test cycle. Almost all of the vehicles found or alleged to have been manipulating emissions in the United States (Mercedes, FCA, Volkswagen, Audi, Porsche, Chevy Cruze, Ford Super Duty) use a Bosch EDC17 device.

## **JURISDICTION**

32.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the RICO Act, 18 U.S.C. § 1962. The Court also has diversity jurisdiction because Plaintiffs and Defendants reside in different states. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

33.     This Court also has original jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1), as modified by the Class Action Fairness Act of 2005, because Plaintiffs and Defendants are citizens of different states; there are more than 100 Plaintiffs; the aggregate amount in controversy exceeds $5 million, exclusive of attorneys' fees, interest, and costs; and Plaintiffs reside across the United States. The citizenship of each party is described further below in the "Parties" section.

34.     This Court has personal jurisdiction over each Defendant pursuant to 18 U.S.C. § 1965(b) & (d). This Court has personal jurisdiction over Defendants because they have minimum contacts with the United States, this judicial district, and this State, and they intentionally availed themselves of the laws of the United States and this state by conducting a substantial amount of business throughout the state, including the design, manufacture, distribution, testing, sale, lease, and/or warranty of GM vehicles in this State and District. At least in part because of Defendants' misconduct as alleged in this lawsuit, the Fraudulent Vehicles ended up on this state's roads and in dozens of franchise dealerships.

## VENUE

35.     Venue is proper in this Court under 28 U.S.C. § 1391 because: (i) Defendants conduct substantial business in this District and have intentionally availed themselves of the laws and markets of the United States and this District; and/or (ii) many of the acts and transactions giving rise to this action occurred in this District, including, *inter alia*, GM's promotion, marketing, distribution, and sale of the Fraudulent Vehicles to Plaintiffs in this District. Defendant GM sells a substantial number of automobiles in this District, has dealerships located throughout this District, and the misconduct occurred in part in this District. Venue is also proper under 18 U.S.C. § 1965(a) because Defendants are subject to personal jurisdiction in this District, as alleged in the preceding paragraph, and Defendants have agents located in this District.

## JURY TRIAL DEMAND

36.     Plaintiffs request a jury trial of this matter.

## PARTIES

**A.     Plaintiffs**

## ALABAMA PLAINTIFFS

37.     The following Plaintiffs are hereinafter referred to as the "Alabama Plaintiffs."

38.     Plaintiff Donald Cook (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2012 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

39.     Plaintiffs Alva Dubberly & Paula Dubberly (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Alabama who acquired a 2011 GMC 2500 in the State of Alabama. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

16

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

40.     Plaintiff Edmond Flaig (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2012 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

41.     Plaintiffs Scott Fuller & Angela Fuller (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Alabama who acquired a 2011 Chevrolet 2500, 2014 Chevrolet 2500 and a 2016 Chevrolet 3500 in the State of Alabama. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the

inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

42.     Plaintiff Robert Grissett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2011 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

43.     Plaintiff Charlie Hovell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2012 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

44.     Plaintiff Jered Mathis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2012 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

22

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

45.     Plaintiff Bruce Merritt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2011 Chevrolet 2500 in the State of Alabama. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

46.     Plaintiff Charles Nabers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2012 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

47.     Plaintiff Rickey Thomas (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2011 GMC 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

48.     Plaintiff Mitchell Walters (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2013 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

49.     Plaintiff Nancy Anderton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2013 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

50.     Plaintiff Michael Arrington (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 GMC 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

51.     Plaintiff Josh Bailey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2013 GMC 3500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

31

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

52.    Plaintiff Alan Banks (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2016 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

53.     Plaintiff Brandon Beasley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2016 GMC 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

54.    Plaintiff Noel Bergevin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2013 GMC 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

55.     Plaintiff Kaleb Bowden (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2016 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

56.     Plaintiff Charles Brasington (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2016 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

57.     Plaintiff Willie Brooks (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2012 GMC 3500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

58.    Plaintiff Joseph Burroughs (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2013 Chevrolet 3500 in the State of Alabama.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

59.     Plaintiff Robert Carnes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

60.     Plaintiff Michael Chadwell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2016 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

43

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

61.     Plaintiff Trent Childs (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

62.     Plaintiff Heath Clark (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2011 Chevrolet 3500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

63.     Plaintiff Sam Clark (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2014 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

64.    Plaintiff Joseph Cornelius (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 GMC 3500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

65.     Plaintiff Craig Culpepper (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

66. Plaintiff Jack Davis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 GMC 3500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

67.     Plaintiff Eddie DeSouza (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 GMC 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

68.     Plaintiff Delbert Doerflein (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2016 Chevrolet 3500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

69.     Plaintiff Jimmy Dozier (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2011 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

70.     Plaintiff Steve Dye (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2013 GMC 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

71. Plaintiff Roger Edgeworth (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 Chevrolet 2500 in the State of Alabama.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

72. Plaintiff Inman Ellis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 GMC 3500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

73. Plaintiff Marty Forman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2016 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

74.     Plaintiff Robert Forshee (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2011 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

75.     Plaintiff Walter Gay (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 GMC 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

76.    Plaintiff Shane Gingrass (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2013 Chevrolet 3500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

77.     Plaintiffs Don Gonzalez and Sandra Gonzalez (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Alabama who acquired a 2011 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

78.     Plaintiffs Ronald Hall and Courtney Hall (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Alabama who acquired a 2015 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

79. Plaintiffs George Hammond and Michele Hammond (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Alabama who acquired a 2016 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system,

as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

80.    Plaintiff Robert Harris (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2014 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

81.     Plaintiff James Hasberry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

82.    Plaintiff Horace Howard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2013 GMC 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

83. Plaintiff Jason Hurt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 GMC 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

74

84.     Plaintiff Zac Ingram (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2012 Chevrolet 3500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

85.     Plaintiff Clint Jones (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2016 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

86. Plaintiff Michael Kervin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2011 Chevrolet 3500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

87.    Plaintiff Amanda King (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2016 Chevrolet 3500 in the State of Alabama.  Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

88. Plaintiff Robert Kirby (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 GMC 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

89. Plaintiff Leroy Kirkland (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 GMC 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

90.     Plaintiffs Jory Latiolais and Kayla Latiolais (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that,

during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the

vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

91.     Plaintiff Ken Lister (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2011 Chevrolet 3500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

92.     Plaintiff Paul Lott (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2016 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

93.    Plaintiff Terry Matthews (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2013 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

94. Plaintiff Mike McCormick (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

95.     Plaintiff Andrew Miller is a citizen of the State of Nebraska and Plaintiff Harney & Miller Services, Inc. is a business in the State of Nebraska (for the purpose of this paragraph, "Plaintiffs") who acquired a 2015 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

96.     Plaintiff Ronald Morris (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 GMC 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

97.     Plaintiff Ray Morton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2014 GMC 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

98.     Plaintiff Jason Mosley is a citizen of the State of Alabama and Plaintiff Mosley Building Systems is a business in the State of Alabama (for the purpose of this paragraph, "Plaintiffs") who acquired a 2016 GMC 2500 in the State of Alabama.  Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

99.     Plaintiff John Parker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2012 Chevrolet 3500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

100.    Plaintiffs James Peacock and Teresa Peacock (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Mississippi who acquired a 2011 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

101.    Plaintiff Richard Ragland (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 GMC 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

102. Plaintiff David Ray (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

103. Plaintiff Kenneth Ray (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**100**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

104.    Plaintiff Jerry Roach (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2016 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

105. Plaintiff Gene Roark (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2012 Chevrolet 3500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

106.    Plaintiff William Roberts (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2015 Chevrolet 2500 in the State of Alabama.  Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

107.   Plaintiff Roosevelt Ross (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2013 Chevrolet 3500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

108. Plaintiff Robert Roulaine (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 Chevrolet 3500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

109.    Plaintiffs Brian Sanner and Tanya Sanner (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Alabama who acquired a 2015 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that,

during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the

vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

110. Plaintiff Steve Scott (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2012 Chevrolet 3500 and a 2015 GMC 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

111.   Plaintiff Donald Skinner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

112. Plaintiff Chris Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2011 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

113.    Plaintiff Gary Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2016 GMC 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

114.    Plaintiff George Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2013 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

115. Plaintiff Ralph Taubert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 GMC 3500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

116.     Plaintiff Ricky Thompson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2016 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

117

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

117.    Plaintiff Brian Tidwell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2014 GMC 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

118.    Plaintiffs Mike Underwood and Kimberly Underwood (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Alabama who acquired a 2015 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during

normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

119.     Plaintiff Carissa Wallace (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 Chevrolet 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

120. Plaintiff William Washburn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 GMC 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

121. Plaintiff Johnny Webster (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2016 Chevrolet 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

122.     Plaintiff Logan Whitmire (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2011 Chevrolet 2500 in the State of Alabama. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

123.    Plaintiff Joab Williams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2015 GMC 2500 in the State of Alabama. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

124.     Plaintiff Susan Wright (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2011 GMC 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

125.    Plaintiff John Zellar (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 GMC 2500 in the State of Alabama.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## ALASKA PLAINTIFFS

126. The following Plaintiffs are hereinafter referred to as the "Alaska Plaintiffs."

127. Plaintiff Ken Bouchet (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alaska who acquired a 2016 Chevrolet 2500 in the State of Alaska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

128.    Plaintiff George Bowden (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2013 GMC 2500 in the State of Alaska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

129.    Plaintiff Ambrose Coughlin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alaska who acquired a 2015 Chevrolet 2500 in the State of Alaska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

130.   Plaintiff George Moore (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alaska who acquired two (2) 2015 Chevrolet 3500s in the State of Alaska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

131.    Plaintiff April Mosher-Chapman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alaska who acquired a 2013 GMC 2500 in the State of Alaska.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

132. Plaintiff Eric Palm (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alaska who acquired a 2011 GMC 3500 in the State of Alaska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

133.    Plaintiffs Carl Ralston and Louise Ralston (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Alaska who acquired a 2015 Chevrolet 2500 in the State of Alaska.  Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

134.   Plaintiff Ronnie Wieber (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alaska who acquired a 2015 Chevrolet 2500 in the State of Alaska.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

135.    Plaintiff Richard Williams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alaska who acquired a 2015 Chevrolet 3500 in the State of Alaska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## ARIZONA PLAINTIFFS

136.    The following Plaintiffs are hereinafter referred to as the "Arizona Plaintiffs."

137.    Plaintiff Robert Andersen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

138. Plaintiff Joe Avitia (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2015 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

139.  Plaintiffs Jeffrey Bacon and Vicky Bacon (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arizona who acquired a 2016 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the

form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

140.    Plaintiff Keith Berry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2015 GMC 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**146**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

141. Plaintiffs Jake Burris and Christina Burris (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arizona who acquired a 2015 GMC 2500 in the State of Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

142. Plaintiffs Larry Burt and Mitsuko Burt (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of California who acquired a 2012 Chevrolet 3500 in the State of Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

143.    Plaintiff Anthony Carioscia (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 GMC 2500 in the State of Arizona. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

144.    Plaintiff Louis Carlucci (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2011 GMC 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

145.    Plaintiff Michael Craig (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2015 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

146.    Plaintiff Jonathan Daniel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

147.    Plaintiff Keith Danielson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 Chevrolet 3500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

148.    Plaintiff Christina Deethardt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2011 GMC 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

149. Plaintiffs Nadine Dubach and Steven Stonecipher (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arizona who acquired a 2011 GMC 3500 in the State of Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

150.    Plaintiff Jeff Farris (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 Chevrolet 3500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

151. Plaintiff Scott Gabbert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2015 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

152. Plaintiff Daniel Gonzales (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2012 Chevrolet 3500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

153.    Plaintiff Ruben Gonzalez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2011 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

154.    Plaintiffs Michael Greenway and Peggy Greenway (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arizona who acquired a 2015 Chevrolet 3500 in the State of Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

155. Plaintiffs Marvin Harper and Amy Harper (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arizona who acquired a 2014 Chevrolet 3500 in the State of Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

156. Plaintiffs Reyanne Heckens and Thomas Heckens (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arizona who acquired a 2015 GMC 2500 in the

State of Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

157.    Plaintiffs Ryan Henderson and Catherine Henderson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arizona who acquired a 2016 Chevrolet 3500 in the State of Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales

brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

158. Plaintiff Randall Herbert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2011 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

159.    Plaintiff Richard Hughes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 GMC 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

160.   Plaintiff Rafael Ibarra (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2014 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

161.    Plaintiffs Michael Jakubczyk and Tammy Jakubczyk (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arizona who acquired a 2015 GMC 2500 in the State of Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs

selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

162.    Plaintiffs Patrick Johns and Carie Johns (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arizona who acquired a 2015 GMC 2500 in the State of Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

163.    Plaintiff Guy Kellogg (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2013 GMC 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

164. Plaintiff James Kirkpatrick (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

165. Plaintiff Chad Lacey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2013 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

166.     Plaintiff Jeff Livingood (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2011 GMC 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**180**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

167.    Plaintiffs Thomas Macari and Pattie Macari (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2011 Chevrolet 3500 in the State of Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

168.    Plaintiff John Mayer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 GMC 3500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

169.    Plaintiff Toby McPherson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 2500 in the State of Arizona. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

170. Plaintiff Jim Metcalf (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2011 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

171. Plaintiff Eric Mietchen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2012 GMC 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

172.    Plaintiff Mike Miller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2014 Chevrolet 2500 and a 2015 Chevrolet 3500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during

normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

173. Plaintiff Rusty Moyer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

174. Plaintiff Ronald Olmstead (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2011 GMC 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

175.    Plaintiffs Doug Painter and Tami Painter (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arizona who acquired a 2016 GMC 3500 in the State of Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

176.    Plaintiffs Randy Patton and Laurie Patton (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arizona who acquired a 2016 GMC 2500 in the State of Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs

would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

177.    Plaintiff Robert Robb (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2012 Chevrolet 3500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

178.    Plaintiff Farrell Rodgers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2011 GMC 3500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

179. Plaintiff Joshua Roper (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**197**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

180. Plaintiffs Chad Rowe and Karla Rowe (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arizona who acquired a 2015 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

181. Plaintiff Tanner Rupe (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2013 GMC 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

182.   Plaintiffs Kristen Schofield and Ryan Snyder (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of California who acquired a 2015 GMC 2500 in the State of

Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

183.    Plaintiff Chris Shipley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

184. Plaintiff Corey Slater (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of California who acquired a 2015 GMC 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

185.    Plaintiff Rex Sorenson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 GMC 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

<div align="center">204</div>

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

186.    Plaintiff Jose Soto (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

187.    Plaintiffs John Southwick and Laura Southwick (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arizona who acquired a 2015 GMC 2500 in the State of Arizona. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

188.    Plaintiff William Stoltz (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

189. Plaintiff Ashley Sturman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2013 Chevrolet 3500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

190.    Plaintiff Richard Sullivan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2015 GMC 3500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

191. Plaintiff Brian Tobin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

192.     Plaintiff James Turner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2015 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

193.    Plaintiff John Tyszkiewicz (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

194.    Plaintiff Troy Wait (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2012 GMC 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

195.    Plaintiff Trevor Ward (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2012 Chevrolet 3500 in the State of Arizona. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

196.    Plaintiff David Weaver (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2011 GMC 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

197.     Plaintiff Carla Williams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 Chevrolet 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

198.    Plaintiff Wyatt Wood (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2015 GMC 2500 and a 2016 GMC 2500 in the State of Arizona. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during

normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## ARKANSAS PLAINTIFFS

199. The following Plaintiffs are hereinafter referred to as the "Arkansas Plaintiffs."

200. Plaintiff Rodger Hayes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired (2) 2015 Chevrolet 2500s and a 2016 GMC 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

201. Plaintiff Charles Arnold (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2011 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

224

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

202.    Plaintiff Franklin Ballard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2016 GMC 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

203. Plaintiffs Justin Barksdale and Tracie Barksdale (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arkansas who acquired a 2016 GMC 2500 in the State of Arkansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

204. Plaintiff Andy Beck (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2014 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

205. Plaintiff Jeff Biggs (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2012 GMC 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

206.    Plaintiff Tony Bodine (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2015 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

207.    Plaintiff Judy Brown (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2011 Chevrolet 3500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

208.    Plaintiff Jason Carpenter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2015 GMC 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

209.    Plaintiff Dewey Chastain (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2012 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**235**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

210.   Plaintiff Gerald Chastain (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2013 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

211. Plaintiff Justin Christopher (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2012 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

212.    Plaintiff Bryan Clark (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2015 GMC 2500 in the State of Arkansas. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

213.    Plaintiff Richard Clark (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2012 GMC 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

214.   Plaintiff James Cody (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2016 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

215.    Plaintiff Brent Cook (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2016 GMC 3500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

216.     Plaintiff Dylan Gravette (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 Chevrolet 3500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

217.    Plaintiff Kristi Guin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2011 GMC 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

218.    Plaintiffs Ken Hannah and Debra Hannah (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arkansas who acquired a 2016 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

219. Plaintiff Kenny Harp (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2013 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

220. Plaintiff Michael Hayes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2016 GMC 3500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

221. Plaintiffs Rex Herring and Rachel Herring (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arkansas who acquired a 2015 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the

form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

222.   Plaintiff Robert Herzberg (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2013 GMC 3500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

223.   Plaintiff Benny Holloway (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2015 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

224.    Plaintiff Samuel Hull (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2011 GMC 3500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

225. Plaintiff Charles Humphrey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2013 Chevrolet 2500 in the State of Arkansas.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

226. Plaintiff Neil Johnston (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2015 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

227. Plaintiff Rex Johnston (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2014 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

228.    Plaintiff Casey Jones (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2013 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

229. Plaintiffs John Latham and Phyllis Latham (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arkansas who acquired a 2015 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM

disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

230.    Plaintiffs Justin Layton and Kasha Layton (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2013 GMC 2500 in the State of Arkansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

231.    Plaintiff Tyler Malott (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2015 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

232.    Plaintiff Marvin Moore (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2011 GMC 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

233.    Plaintiff Keith Mosbey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2016 GMC 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

234. Plaintiff Radell Nelms (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2012 GMC 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

235.     Plaintiff John Obermesser (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2015 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**269**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

236.   Plaintiff Bill Orlicek (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2014 GMC 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

237.    Plaintiff Chris Raper (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2013 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

238. Plaintiff Michael Richmond (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2016 GMC 2500 in the State of Arkansas.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

239.    Plaintiff Roger Scoggins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2015 Chevrolet 3500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

240.    Plaintiff Daniel Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

241.    Plaintiff Lynn Sowell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2016 Chevrolet 2500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

242.    Plaintiff James Stacy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 3500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

243. Plaintiffs Douglas Stafford and Mary Stafford (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arkansas who acquired a 2013 GMC 2500 in the State of Arkansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

244.   Plaintiffs Jack Stoffer and Patricia Stoffer (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kansas who acquired a 2015 Chevrolet 3500 in the State of Arkansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

245.     Plaintiff Wendell Taylor (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2015 GMC 3500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

246. Plaintiff John Teas (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2015 GMC 3500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

247.    Plaintiffs Jerry Vaughn and Glenda Vaughn (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arkansas who acquired a 2016 GMC 2500 in the State of Arkansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of

284

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

248. Plaintiffs Kenny Vaught and Patricia Vaught (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2015 Chevrolet 3500 in the State of Arkansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

249. Plaintiff Kirk Williams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2015 GMC 3500 in the State of Arkansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## COLORADO PLAINTIFFS

250.    The following Plaintiffs are hereinafter referred to as the "Colorado Plaintiffs."

251.    Plaintiff Curt Heimsoth (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2015 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

252.    Plaintiff Angelo Archuleta (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2013 Chevrolet 3500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an

ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

253. Plaintiffs Phil Armenta and Catlin Armenta (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2013 GMC 2500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs

reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

254.    Plaintiff Lewis Baker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2012 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly

292

disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

255.     Plaintiff Carlos Barrios (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2011 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

256. Plaintiff Jeff Brown (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2012 Chevrolet 3500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

257. Plaintiffs Kevin Burgess and Ruby Burgess (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2016 GMC 2500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

258.    Plaintiff Dennis Cook (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2015 GMC 2500 in the State of Colorado. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

259. Plaintiff Juan Cubides (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired (2) 2016 Chevrolet 2500s in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

260. Plaintiff Eric Curry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2016 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

261.    Plaintiff Ben Czaplewski (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2016 Chevrolet 3500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

262.    Plaintiff Michael Dill (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 GMC 3500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

263.     Plaintiff Roderick Duhon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

264.    Plaintiff Tarieg Elmagbari (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2015 GMC 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

265.    Plaintiffs Ralph Espinoza and Linda Espinoza (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2016 Chevrolet 3500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

266. Plaintiffs Thomas Freed and Cori Freed (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2012 GMC 3500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

267. Plaintiff Dan French (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2015 GMC 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

268. Plaintiff Victor Fuentes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2016 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**311**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

269.    Plaintiff Mark Gaul (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2015 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

270.    Plaintiffs Juan Gonzalez and Norma Gonzalez (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2012 GMC 2500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

271. Plaintiffs Jacob Gould and Holly Gould (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2016 Chevrolet 3500 in the State

of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

272.    Plaintiff John Graff (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2014 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

273. Plaintiff Nick Guadagnoli (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2013 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

317

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

274.    Plaintiffs Allan Haines and Margaret Haines (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2013 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that,

during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the

vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

275. Plaintiffs Jerry Ham and Wendy Ham (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2015 GMC 3500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

276. Plaintiff Charles Hathaway (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 GMC 3500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

321

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

277. Plaintiffs Robert Holland and Stacey Holland (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2013 GMC 2500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

278.    Plaintiff Nicky House (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2014 GMC 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

279.    Plaintiff Dave Jarmon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2013 GMC 3500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

280.    Plaintiffs Richard Johnson and Jane Johnson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of South Dakota who acquired a 2015 Chevrolet 3500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the

form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

281.    Plaintiffs Gary Kiniston and Sonya Kiniston (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2015 GMC 2500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

282.    Plaintiffs Daniel Kinsella and Patricia Kinsella (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2016 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

283. Plaintiffs Jayme Kretzer and Pam Nichols-Kretzer (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2015 GMC 2500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

284.    Plaintiffs Darrell Linders and Brenda Linders (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2015 GMC 3500 in the State of

Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

285.    Plaintiff Dustin Linders (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2015 Chevrolet 3500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

286.    Plaintiff Mark McAninch (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2015 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

287.    Plaintiffs Stephen McKitrick and Heather McKitrick (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2014 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions

system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.   Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs,

decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

288.    Plaintiff Edward Mick (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2014 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g)

representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

289. Plaintiff Elijah Murphy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2015 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised

338

fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

290.    Plaintiffs Michael Nail and Elizabeth Nail (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2011 Chevrolet 3500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's

unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

291.    Plaintiff Steve Ortiz (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2011 GMC 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

292.    Plaintiffs Kenneth Otterman and Rebecca Otterman (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2015 Chevrolet 2500 and a 2016 Chevrolet 3500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because

of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

293. Plaintiffs Michael Phelps and Cassendra Phelps (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2013 Chevrolet 3500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

294.    Plaintiff Mark Price (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2015 GMC 3500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

295.    Plaintiff Anton Rainold (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2015 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

296.    Plaintiff Daniel Ramiller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2013 GMC 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

<div align="center">348</div>

297.    Plaintiff Jon Rumsey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2012 GMC 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

298.   Plaintiffs Steven Schwall and Valerie Schwall (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2013 GMC 2500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

299.    Plaintiffs Bill Spencer and Amy Spencer (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Nebraska who acquired a 2015 Chevrolet 3500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

300.    Plaintiffs Mark Tieman and Rainy Tieman (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2014 Chevrolet 2500 in the State

of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

301.    Plaintiff Anthony Tucker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2012 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

354

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

302. Plaintiffs David Valance and McKenzie Valance (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2015 GMC 2500 in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

303.    Plaintiff Raymond Viger (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2016 GMC 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

304.    Plaintiff Rudy Villarreal (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado and Plaintiff Workwear on Wheels, Inc. is a business in the State of Colorado, who acquired two (2) 2016 Chevrolet 2500s, and two (2) 2015 Chevrolet 2500s in the State of Colorado. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer

reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

305. Plaintiff Rudy Villarreal (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2015 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised

fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

306.    Plaintiff Travis Weber (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2011 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

307.    Plaintiff Darrell Weddell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2016 Chevrolet 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

308.    Plaintiff Robert Wolfe (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2015 GMC 2500 in the State of Colorado. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **CONNECTICUT PLAINTIFFS**

309. The following Plaintiffs are hereinafter referred to as the "Connecticut Plaintiffs."

310. Plaintiff Richard Ahearn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 GMC 2500 in the State of Connecticut. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

311.    Plaintiff James Bee (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Connecticut who acquired a 2013 Chevrolet 2500 in the State of Connecticut. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

312. Plaintiff Michael Brown (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Connecticut who acquired a 2011 Chevrolet 3500 in the State of Connecticut. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

313. Plaintiff Chris Candido (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Connecticut who acquired a 2013 GMC 3500 in the State of Connecticut. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

314.    Plaintiff Darlene Fisher (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Rhode Island who acquired a 2011 GMC 3500 in the State of Connecticut. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**370**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

315. Plaintiff Charles Koscinski (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Connecticut who acquired a 2016 Chevrolet 2500 in the State of Connecticut. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

316. Plaintiff Walter Kruzel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Connecticut who acquired a 2015 Chevrolet 2500 in the State of Connecticut. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

317.    Plaintiff Keith Marty (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Rhode Island who acquired a 2015 GMC 2500 in the State of Connecticut. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

318.    Plaintiffs Larry Proulx and Catherine Proulx (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Connecticut who acquired a 2015 Chevrolet 2500 in the State of Connecticut. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales

brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

319.   Plaintiff Mark Troiano (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Connecticut who acquired a 2014 GMC 2500 in the State of Connecticut. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

320.    Plaintiff Eric Webster (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Connecticut who acquired a 2013 Chevrolet 2500 in the State of Connecticut. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

321.    Plaintiff Leszek Wysocki (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Connecticut who acquired a 2016 Chevrolet 3500 in the State of Connecticut. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **DELAWARE PLAINTIFFS**

322.    The following Plaintiffs are hereinafter referred to as the "Delaware Plaintiffs."

323.    Plaintiff John Gravatt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Delaware who acquired a 2015 GMC 2500 in the State of Delaware. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

324. Plaintiff Bayard Keeler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Delaware who acquired a 2016 GMC 3500 in the State of Delaware. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

325.     Plaintiffs Allen Martin and Rebecca Martin (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Delaware who acquired a 2016 Chevrolet 2500 in the State of Delaware. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM

disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

326.    Plaintiff Dennis Mignogno (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Delaware who acquired a 2016 Chevrolet 3500 in the State of Delaware. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

327. Plaintiffs Mike Passero and Tonya Passero (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Delaware who acquired a 2016 Chevrolet 2500 in the State of Delaware. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

328.    Plaintiff Kevin Pinelli (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Delaware who acquired a 2013 Chevrolet 2500 in the State of Delaware. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

329.    Plaintiff Donald Twigg (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2016 Chevrolet 2500 in the State of Delaware. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **FLORIDA PLAINTIFFS**

330.    The following Plaintiffs are hereinafter referred to as the "Florida Plaintiffs."

331.    Plaintiff David Seibert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 GMC 2500 in the State of Florida.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive

conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

332.    Plaintiff Stephen Hall (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2011 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

333. Plaintiffs James Harris and Ruth Harris (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Alabama who acquired a 2011 Chevrolet 2500 in the State of Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

334. Plaintiffs Ismail Agosto and Suzanna Sanchez (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Florida who acquired a 2013 Chevrolet 2500 in the State of Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

335. Plaintiff Xiomara Alcalde (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

336.    Plaintiff John Arnold (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

337. Plaintiff Richard Avon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

338.    Plaintiff James Baker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 3500 in the State of Florida. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

339. Plaintiff Richard Barcenas (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

340. Plaintiff Walter Barfield (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

341. Plaintiff Jesse Beye (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

342.    Plaintiffs Perry Blessing and Terri Blessing (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Florida who acquired a 2013 Chevrolet 2500 in the State of Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

343.    Plaintiffs Mark Bosecker and Lori Bosecker (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Florida who acquired a 2013 Chevrolet 2500 in the State of Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

344. Plaintiff John Branhof (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

345.    Plaintiff Paul Brooks (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2012 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

346.    Plaintiff Noel Brower (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

347. Plaintiff Terry Brown (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

348.    Plaintiff Walker Brown (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2012 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

412

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

349.    Plaintiff Tony Castano (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

350. Plaintiff Christopher Catania (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

351.    Plaintiff Andrew Cihlar (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 2500 in the State of Florida. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

352.    Plaintiff Marc Counter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

353.    Plaintiff Michelle Crespo (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2012 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

354.    Plaintiff Mario Crittenden (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

355.     Plaintiff Nelson Davis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

356. Plaintiff David Dekorver (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

357.    Plaintiff Kaitlyn Destaven (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

358. Plaintiff Anita Dixon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2011 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

359.    Plaintiff Kyle Domion (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 GMC 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

360.    Plaintiff Robert Eaton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2012 GMC 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

361.    Plaintiff David Egers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2012 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**429**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

362. Plaintiff Mary Eller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

363. Plaintiffs Terry Ellis and Roxie Ellis (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

364.    Plaintiffs Ray Evans and Debbie Evans (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Alabama who acquired a 2013 Chevrolet 2500 in the State

of Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

365.    Plaintiff Scott Fisher (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

366. Plaintiff Jason Flynn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

367.    Plaintiffs Luis Fonte and Elena Fonte (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Florida who acquired a 2011 Chevrolet 2500 in the State of Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during

normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

368.     Plaintiff Randy Forkum (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

369. Plaintiffs Robert Freeman and Lisa Freeman (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Florida who acquired a 2016 Chevrolet 2500 in the State of Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

370.    Plaintiff Jason Freytag (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

371. Plaintiff Dennis Frodge (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

372.    Plaintiff Jim Fuller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

373. Plaintiff Carlos Gil (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

445

374.    Plaintiff Howard Ginsberg (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

375. Plaintiff Alberto Gomez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 Chevrolet 3500 and a 2013 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

447

performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

376. Plaintiff Val Grimes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2013 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

377. Plaintiff Thomas Grundel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2016 Chevrolet 3500 in the State of Florida. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

378.    Plaintiff Donnie Harp (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

379. Plaintiff David Heald (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

380.    Plaintiff David Helms (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

381.    Plaintiff Dale Henderson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2016 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

382.    Plaintiffs Dan Herrera and Chandra Lillemoen (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and

456

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

383. Plaintiffs Eli Hines and Kimberly Hines (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

384.    Plaintiffs William Hohenstein and Jacquelyn Hohenstein (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Florida who acquired a 2013 Chevrolet 2500 in the State of Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

385.   Plaintiff Stephen Holman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

386.    Plaintiff Artie Hubner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

387.     Plaintiff Alice Hughes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 GMC 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

388.    Plaintiff James Hull (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2012 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

389.    Plaintiffs Richard Hutchinson and Christie Hutchinson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Florida who acquired a 2013 Chevrolet 2500 in the State of Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

390. Plaintiff Albert Iosue (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 GMC 3500 in the State of Florida. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

391.    Plaintiff Gordon Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

392. Plaintiff James Kauth (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

393.    Plaintiff Michael Kelley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

394.    Plaintiff Darin Kilfoyl (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

395. Plaintiff Larry Kimbley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2014 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

396. Plaintiff Kevin Kolasa (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

397.     Plaintiff Dean Kumanchik (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

398.   Plaintiff Roger Lanctot (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

399. Plaintiff Nick Lentini (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

478

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

400.    Plaintiff Joseph Lopez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

401.    Plaintiff Scott Luthardt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2014 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

402. Plaintiff Paul Martinelli (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

403. Plaintiffs William Maze and Frances Maze (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Florida who acquired a 2014 GMC 2500 in the State of

Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

404. Plaintiff Shawn Moss (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2014 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

405.    Plaintiff Evie Mostacci (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

406.    Plaintiff Paul Mottice (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

407. Plaintiff Stephen Mullen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

408.     Plaintiff Scott Nicoletti (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2014 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

409.    Plaintiff Edward Noland (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

410.    Plaintiffs John Norris and Jennifer Norris (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Florida who acquired a 2015 Chevrolet 3500 in the State of Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs

would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

411.    Plaintiff Joe Nuzzo (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

412.    Plaintiff Kenneth Oakleaf (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2012 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

**495**

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

413. Plaintiff Michael O'Donell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 GMC 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**497**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

414.    Plaintiff Lowman Oliver (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

415. Plaintiff Craig Osman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

416. Plaintiff Joe Ottinger (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 GMC 2500 and a 2012 GMC 2500 in the State of Florida.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

417. Plaintiff Brandon Pendergrass (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

418.    Plaintiff John Penny (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

419.    Plaintiff Chris Perry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

420.    Plaintiff James Pugh (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

421. Plaintiff Maura Quinn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

422. Plaintiff Wesley Radford (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 GMC 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

423. Plaintiff Craig Reuter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

424.    Plaintiff Shawn Reynolds (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

425. Plaintiff Timothy Riley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

426.    Plaintiff Nate Royal (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2012 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

427.    Plaintiff David Sauls (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 GMC 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

428. Plaintiff Geoffrey Schrader (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

429.    Plaintiff Michael Schuffert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2014 GMC 2500 in the State of Florida. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

430.    Plaintiff Brian Schultz (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2014 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

431. Plaintiff Drew Scott (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

432.    Plaintiff Wesley Sherouse (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

433.   Plaintiffs Mike Slade and Ivett Slade (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Florida who acquired a 2015 GMC 2500 in the State of Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

434. Plaintiff Joseph Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

435.    Plaintiff Nekoda Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

436.    Plaintiff Norman Stapleton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

437. Plaintiffs Thomas Steinruck and Sandra Steinruck (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Florida who acquired a 2013 Chevrolet 2500 in the State of Florida. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

<div align="center">528</div>

through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

438.    Plaintiff Peggy Stevens (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

439.     Plaintiff Austin Sullivan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**531**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

440. Plaintiff Coy Sullivan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

441.    Plaintiff Jeremy Sunseri (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

442.   Plaintiff Dean Tannenbaum (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

535

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

443.     Plaintiff Joel Tatro (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

444.    Plaintiff Chris Torrence (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2014 Chevrolet 3500 and a 2015 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

445.   Plaintiff Loreto Torres (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

**539**

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

446.    Plaintiff Robert Trevor (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 GMC 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

447.    Plaintiff Ken Tuerff (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 3500 and a 2016 Chevrolet 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

448.    Plaintiff John Turbiak (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

449.    Plaintiff Michael Turner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

450. Plaintiff Dewayne Tyson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

451.    Plaintiff Joseph Varhall (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

452.    Plaintiff Thompson Watson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

453. Plaintiff Tom Watson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

454. Plaintiff Tony Whisenant (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2014 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

455. Plaintiff Henry Whittley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 Chevrolet 2500 in the State of Florida. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

456.    Plaintiff Kenneth Williams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2014 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

457.    Plaintiff Mike Wilson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

554

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

458. Plaintiff Jason Woods (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

555

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

459.    Plaintiff Mike Yother (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2014 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

460. Plaintiff Tracy Young (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2012 GMC 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

461. Plaintiff Stephen Zane (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 Chevrolet 2500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

462.    Plaintiff Louis Zettler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 GMC 3500 in the State of Florida. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **GEORGIA PLAINTIFFS**

463. The following Plaintiffs are hereinafter referred to as the "Georgia Plaintiffs."

464. Plaintiff James Allen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2011 GMC 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and

performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

465.    Plaintiff Ricky Allen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

466.    Plaintiff Scott Anderson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 GMC 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

467. Plaintiff Keith Appling (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 Chevrolet 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

468. Plaintiff Chris Bantly (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2016 GMC 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

469.     Plaintiff Charles Barnes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2013 Chevrolet 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**569**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

470.    Plaintiff Tony Brantley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 GMC 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

471.    Plaintiff Jared Brown (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 GMC 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

472.    Plaintiff Justin Calhoun (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2012 GMC 2500 in the State of Georgia.  Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

473.    Plaintiffs David Cartrette and Angelia Cartrette (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of South Carolina who acquired a 2016 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales

brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

474. Plaintiff Scott Chester (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2016 Chevrolet 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

475.    Plaintiff Adriana Crespo (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

476.     Plaintiff Chris DeLee (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2012 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

477.    Plaintiff Dustin DeLozier is a citizen of the State of North Carolina and Plaintiff Deadhead Truck & Trailer, LLC. is a business in the State of North Carolina (for the purpose of this paragraph, "Plaintiffs") who acquired a 2016 Chevrolet 3500 in the State of Georgia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its

promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

478.   Plaintiff Robbie Engleman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 Chevrolet 3500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful,

and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

479.    Plaintiff Matt Estes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2016 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

480.    Plaintiff Phillip Evans (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2014 Chevrolet 3500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

481.    Plaintiff Lewis Ferguson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 Chevrolet 3500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

482. Plaintiff Earl Fowler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 GMC 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

586

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

483.    Plaintiff John Fullard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 GMC 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

484. Plaintiff Peter Gaccione (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2016 Chevrolet 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

485. Plaintiff Jay Garver (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 GMC 3500 in the State of Georgia. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

486.    Plaintiff Tommy Gill (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 GMC 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

487.    Plaintiffs Tommy Gill and Melba Gill (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Georgia who acquired a 2013 GMC 2500 in the State of Georgia.  Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

488. Plaintiff Joshua Gray (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 GMC 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

489.    Plaintiff Stephanie Harvell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2014 Chevrolet 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

490.    Plaintiff Jerry Hellums (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2014 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

491. Plaintiff Jeff Henderson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2016 GMC 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

492.   Plaintiff Loren Hoyt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 GMC 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

493.    Plaintiff Allen Ingram (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

494. Plaintiff Wes Ivester (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2016 GMC 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

495.    Plaintiff Alexander Jackson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2016 GMC 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**603**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

496. Plaintiff James Jacobs (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 Chevrolet 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

497.    Plaintiff Daniel Jones (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2016 GMC 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

**605**

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

498.    Plaintiffs Jay Kaiser and Jewel Kaiser (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of North Carolina who acquired a 2016 Chevrolet 2500 in the

State of Georgia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

499.    Plaintiff Tim Kennedy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2011 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

500. Plaintiff Jaime Laverde (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 Chevrolet 3500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

501.    Plaintiff Tim Lawson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

502.    Plaintiff Brett Ledford (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

503. Plaintiff Greg Levron (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2015 Chevrolet 3500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

504. Plaintiff Richard Lewis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 Chevrolet 3500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

505.    Plaintiff Anthony Mann (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

506.    Plaintiffs Jeffrey Martin and Bonnie Martin (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Georgia who acquired a 2011 Chevrolet 2500 in the State of Georgia.   Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

507. Plaintiff Carol Martin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2012 Chevrolet 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

508.    Plaintiff Jonathan Mensigna (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2012 GMC 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

509. Plaintiff John Mercure (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2013 GMC 3500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

510.    Plaintiff Jeffrey Mitchell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2016 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

511.    Plaintiff Matthew Moreau (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2014 Chevrolet 2500 in the State of Georgia. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

512. Plaintiff David Murphy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2013 GMC 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

513.    Plaintiff Eric Nelson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2013 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

514.    Plaintiff Billy New (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2013 GMC 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

515.    Plaintiff William Ogden (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2011 Chevrolet 3500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

516.    Plaintiff Jason Padgett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2013 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

517.    Plaintiff Debra Patterson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2014 GMC 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

518.    Plaintiff Chris Perry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 Chevrolet 3500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

519. Plaintiff Darlene Phillips (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2012 Chevrolet 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

520.    Plaintiff Gerome Prince (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2016 Chevrolet 3500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

521. Plaintiff Tyrone Prince (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 Chevrolet 3500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**637**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

522.    Plaintiff Nic Reynolds (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2016 GMC 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

523. Plaintiff Steven Riddle (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2012 Chevrolet 2500 and a 2014 Chevrolet 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

524.    Plaintiff Kyle Salyer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2011 Chevrolet 2500 in the State of Georgia.  Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

525. Plaintiff Victor Seay (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2016 GMC 3500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

526.    Plaintiffs Frank Serafini and Renee Serafini (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Georgia who acquired a 2016 GMC 2500 in the State of Georgia.  Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

527.    Plaintiff Matthew Terry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 GMC 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

528. Plaintiff Dave Thoman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 GMC 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

529.    Plaintiff Cole Walsh (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2014 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

530.    Plaintiff Raymond Walsh (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

531.    Plaintiff Jeffrey Ward (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2013 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

532.    Plaintiff Pam Warren (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 Chevrolet 3500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer.  Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it.  Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

533.    Plaintiffs Kimberly Williams and Stacy Williams (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Georgia who acquired a 2011 Chevrolet 2500 in the State of Georgia.  Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the

form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

534.    Plaintiff Brandon Yarbrough (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 GMC 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**654**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

535.  Plaintiff Ryan Yeggy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2013 GMC 2500 in the State of Georgia.  Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

536. Plaintiff Ryan Youmans (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2014 GMC 2500 in the State of Georgia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## IOWA PLAINTIFFS

537.    The following Plaintiffs are hereinafter referred to as the "Iowa Plaintiffs."

538.    Plaintiff Jason Banks (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Dakota who acquired a 2011 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

539.     Plaintiff Mike Baughman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2013 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

540. Plaintiff Daron Blanke (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2015 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

541.    Plaintiffs Sheryl Bowen and Doug Bowen (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2012 Chevrolet 3500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

542.    Plaintiffs Robert Brekke and Barbara Brekke (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2011 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

543. Plaintiffs Kevin Briggs and Karri Jo Briggs (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2013 Chevrolet 3500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

544. Plaintiff Kevin Carl (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2015 Chevrolet 3500 in the State of Iowa. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

545.    Plaintiffs Brian Coleman, Kim Coleman and Travis Coleman (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2013 GMC 2500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales

brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

546. Plaintiffs Brian Coleman and Kim Coleman (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2014 Chevrolet 3500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

547. Plaintiffs Brian Coleman and Kim Coleman (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa and Plaintiff Coleman Construction, Inc. is a business in the State of Iowa, who acquired a 2013 GMC 2500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance

because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

548.    Plaintiff Darrin Crawley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2013 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g)

representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

549. Plaintiff Justin Donaldson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2013 GMC 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and

performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

550.    Plaintiff Brad Duhn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2016 GMC 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive

conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM ; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

551.    Plaintiff Robert Dyer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2013 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

552.    Plaintiff Keith Feller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2012 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

553. Plaintiffs Mark Fishbaugher and Pam Morrow (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Minnesota who acquired a 2015 Chevrolet 3500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the

form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

554.     Plaintiff Richard Frimml (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2016 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

555.    Plaintiff Brian Fudge (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2013 GMC 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:    (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

556. Plaintiff Dennis Gamble (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2013 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

557.    Plaintiffs Larry Golden and Helen Golden (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2015 Chevrolet 2500 in the State of

Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

558.   Plaintiff Gerald Green (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2016 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

559. Plaintiff Darin Grimes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2015 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

560. Plaintiff Gary Haworth (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2014 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

561. Plaintiffs Jeffery Hoagland and Roberta Hoagland (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2013 GMC 2500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM

disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

562. Plaintiff John Hoepker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2015 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

563. Plaintiff Edgar Jenkins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2013 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

**690**

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

564.     Plaintiff Dennis Kahler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2015 GMC 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

565.    Plaintiff Dan Kirkpatrick (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2016 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

566.    Plaintiff Lewis Klingbeil (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2011 Chevrolet 3500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

567. Plaintiff Alan Kreber (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2011 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**696**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

568.    Plaintiffs Rory McCulloch and Leslie McCulloch (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2014 GMC 3500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

569. Plaintiffs William McDuffie and Rosemarie McDuffie (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2014 GMC 2500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

570.   Plaintiff Matthew McNamara (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2015 Chevrolet 3500 in the State of Iowa. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

571. Plaintiff Leon Meiners (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2013 Chevrolet 3500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

572. Plaintiff Ross Mulcahy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2015 GMC 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

573. Plaintiffs Brian Murphy and Jerri Murphy (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2015 Chevrolet 3500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during

normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

574.    Plaintiff Justin Neuharth (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 GMC 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

575. Plaintiff Justin Neuzil (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2014 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

576. Plaintiffs Scott Olson and Kelli Olson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2016 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

577.    Plaintiff Dustin Pietro (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2011 GMC 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

578.    Plaintiff Dave Place (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2011 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

579. Plaintiffs Jamison Raymond and Heidi Raymond (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2015 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

580.    Plaintiff David Reed (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2013 GMC 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

713

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

581.     Plaintiffs Jason Reynolds and Bethany Reynolds (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2016 GMC 3500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

582.    Plaintiff Todd Reynolds (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2012 GMC 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

583.    Plaintiff Sam Scarpello (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2015 Chevrolet 3500 in the State of Iowa. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

584. Plaintiffs Taylor Smothers and Paige Smothers (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2015 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

585. Plaintiff Kimberly Steele (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 Chevrolet 3500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

586.    Plaintiff Greg Utterback (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2015 Chevrolet 3500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

587. Plaintiff Brandyn Van Zante (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2011 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

588.   Plaintiffs Richard Van Zante and Clarinda Van Zante (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2011 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs

selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

589. Plaintiff Casey VandeKop (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2015 GMC 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

590.   Plaintiff Bryan Wenzel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2015 Chevrolet 3500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

591. Plaintiff Craig Werner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2015 Chevrolet 2500 in the State of Iowa. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## IDAHO PLAINTIFFS

592. The following Plaintiffs are hereinafter referred to as the "Idaho Plaintiffs."

593. Plaintiff David Adams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2015 Chevrolet 3500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive

conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

594.    Plaintiff Clate Ash (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Dakota who acquired a 2015 Chevrolet 3500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

595. Plaintiff Tim Auer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2016 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

596. Plaintiffs Robert Austin and Julie Austin (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Idaho who acquired a 2016 GMC 2500 in the State of Idaho. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

597.    Plaintiff Ted Baran (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alaska who acquired a 2016 GMC 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**734**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

598.    Plaintiff William Bartholomew (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

599.    Plaintiffs Dan Besel and Robbie Besel (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2015 GMC 3500 in the State of Idaho. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

600.    Plaintiffs Jonathan Bess and Melanie Bess (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2011 GMC 2500 in the State

of Idaho. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised

fuel economy and performance because it was equipped with an emissions system that, during

normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair,

unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or

recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the

reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its

promised fuel economy and performance throughout its useful life. Plaintiffs selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs

reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine: (a) advertisements and information on GM's website; (b) online

advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs

would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an

ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not

limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

601.    Plaintiff Mark Blackburn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2015 Chevrolet 2500 and a 2016 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

602.    Plaintiff Kelly Chapin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2013 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

603.    Plaintiff Donald Cocherl (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2015 GMC 3500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

604.    Plaintiff David Crunden (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2016 GMC 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

605. Plaintiffs Chris Dabbs and Miranda Dabbs (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of California who acquired a 2015 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

606. Plaintiff Kyle Dulaney (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of California who acquired a 2015 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

607.    Plaintiffs Jon Enderby and Lana Enderby (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Montana who acquired a 2016 GMC 2500 in the State of Idaho. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs

would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

608.    Plaintiff Kathryn Franklin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2015 GMC 3500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

748

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

609. Plaintiff Justin Glenn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2016 GMC 3500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

610.     Plaintiff Mike Gunn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2016 GMC 3500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**751**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

611.    Plaintiff Chad Guymon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2016 Chevrolet 3500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

612. Plaintiff Timothy Hansen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2014 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

613. Plaintiff Wayne Hensley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2015 Chevrolet 2500 in the State of Idaho. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

614.    Plaintiff Ray Hofmeister (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona and Plaintiff Tanya Hofmeister (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alaska, who acquired a 2015 GMC 3500 in the State of Idaho. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online

advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

615.     Plaintiff Trevor Hoven (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2015 Chevrolet 3500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable

but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

616.   Plaintiff Dan Howell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2015 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance

because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

617. Plaintiff Steven Hurd (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2013 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g)

representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

618.    Plaintiff Jim Key (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2016 GMC 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and

761

performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

619. Plaintiff Don King (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2015 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

620.     Plaintiff Janean LaMont (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho and Plaintiff Bear River Assets LP is a business in the State of Idaho, who acquired a 2012 GMC 3500 in the State of Idaho. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted

unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

621.    Plaintiff Robert Mcgill (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alaska who acquired a 2011 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

622. Plaintiff Brandon Miller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2014 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

623. Plaintiff Jason Miller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2016 GMC 3500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

768

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

624.    Plaintiffs Garrett Parsons and Juli Parsons (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2012 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

625. Plaintiffs James Pond and Kelly Pond (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Idaho who acquired a 2014 Chevrolet 3500 in the State of Idaho. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

626.     Plaintiff DeLoy Roberts (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2011 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

627.    Plaintiff Rick Roberts (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2015 Chevrolet 3500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

628. Plaintiff Lance Shinkle (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2016 GMC 3500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

629.    Plaintiffs Corey St. Pierre and Melinda St. Pierre (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Montana who acquired a 2015 GMC 2500 in the State of

Idaho. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

630. Plaintiff Connor Stubblefield (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2011 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

631.    Plaintiff Tim Tamura (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2013 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

632.    Plaintiff Norris Thompson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2014 GMC 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

633.    Plaintiff James Thurber (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2015 GMC 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

634. Plaintiff Curtis Tucker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2011 GMC 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

635.    Plaintiff Robin Way (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2016 GMC 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

636. Plaintiff William Whitlow (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2015 GMC 3500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

637.    Plaintiff Cody Winmill (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2015 GMC 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

638. Plaintiff Brayden Wood (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2013 GMC 3500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

639.    Plaintiff Erik Young (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2015 GMC 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**789**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

640.    Plaintiff Robert Young (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2015 Chevrolet 2500 in the State of Idaho. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

641. Plaintiffs Aaron Henry and Thela Billy (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Montana who acquired a 2012 GMC 3500 in the State of Idaho. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## ILLINOIS PLAINTIFFS

642. The following Plaintiffs are hereinafter referred to as the "Illinois Plaintiffs."

643. Plaintiff Daniel Arkels (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

644.   Plaintiff Cindy Ashbaugh (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 GMC 3500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

645.   Plaintiffs Bernard Ashley and Virginia Ashley (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Illinois who acquired a 2016 Chevrolet 3500 in the State of Illinois. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

646.    Plaintiff Mike Bizelli (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**797**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

647.    Plaintiff Kevin Cheuvront (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

648.    Plaintiffs James Childress and Judie Childress (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Illinois who acquired a 2015 Chevrolet 3500 in the State of Illinois. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

649.    Plaintiff David Clark (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2012 Chevrolet 2500 in the State of Illinois. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

650.    Plaintiff Patrick Connelly (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

651. Plaintiff Jose Corral (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2016 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

652.    Plaintiff Charles Couch (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2015 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

653.    Plaintiffs Jimmy Davis and Elisha Davis (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Illinois who acquired a 2015 Chevrolet 3500 in the State of Illinois. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

654.    Plaintiff Bruce Daws (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

655.    Plaintiff Jeff Domeyer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2011 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

656.     Plaintiff John Dougherty (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 GMC 3500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

657.    Plaintiff Josh Edgar (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2012 GMC 3500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

658.    Plaintiff Maurice Ellis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

659.     Plaintiff Randy Ellis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2016 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**814**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

660.    Plaintiff Brad Evans (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

661.    Plaintiff Douglas Fuchs (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2016 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

662. Plaintiff David Gale (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 GMC 3500 in the State of Illinois. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

663. Plaintiff Jeremy Gargas (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2016 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

664.   Plaintiff Steve Gergovich (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois and Plaintiff Prairieland Vending is a business in the State of Illinois, who acquired a 2013 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle

was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

665.    Plaintiffs Mark Greene and Dawn Greene (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Illinois who acquired a 2013 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised

fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase,

and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

666.    Plaintiffs James Harrolle and Dalton Harrolle (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Illinois who acquired a 2015 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

667. Plaintiff Adam Hayward (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised

fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

668.    Plaintiff Otis Holley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2014 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

669.     Plaintiff Russell Howland (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

670.    Plaintiff Cory Huber (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

671.    Plaintiff Thomas Johnston (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2016 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

672.    Plaintiff Scott Kammeyer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**831**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

673. Plaintiff Rob Kizer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2011 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

674. Plaintiff Mark Klein (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

675. Plaintiff Clint Knuffman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2016 GMC 3500 in the State of Illinois. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

676. Plaintiff Jim Lechner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2015 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

677. Plaintiff Mark Lehnhoff (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2011 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

678. Plaintiff Bob Lenhart (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2016 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

679.    Plaintiff Colleen Lentz- Kaczmarek (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

680.    Plaintiffs Jeff Leuty and Emily Leuty (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Illinois who acquired a 2016 Chevrolet 3500 in the State of Illinois. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

681.    Plaintiffs Bennie Little and Stacy Little (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Illinois who acquired a 2015 GMC 2500 in the State of Illinois. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

682. Plaintiff Bradley Luckhart (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2013 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

683.    Plaintiff Scott Massoglia (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2014 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

684.    Plaintiff David McCarville (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2015 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

685.   Plaintiffs Douglas McDonald and Pamela McDonald (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Illinois who acquired a 2013 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

686.    Plaintiffs Michael Mobley and Nita Mobley (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Illinois who acquired a 2013 GMC 2500 in the State of Illinois. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

687. Plaintiff Bradley Morgan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2014 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

688. Plaintiff Mason Morris (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2011 Chevrolet 2500 in the State of Illinois. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

689. Plaintiff Daniel Mowen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

690. Plaintiff Jeff Neikirk (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2013 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

691.    Plaintiff Michael Olshefke (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2011 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

692.    Plaintiff Jonathan Petty (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2016 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

693.    Plaintiff Jeff Pfeiffer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2011 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

694. Plaintiff Robert Power (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2014 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

695.    Plaintiffs Scott Pritchard and Crystal Turner (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wisconsin who acquired a 2011 GMC 2500 in the State of Illinois. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs

would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

696. Plaintiffs Sean Pruden and Thomas Pruden (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Illinois who acquired a 2015 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

697. Plaintiff Mark Ragazincky (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2016 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

698.     Plaintiff Justin Rains (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

699.   Plaintiff Peter Rapinchuk (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 Chevrolet 3500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

700.    Plaintiff James Reed (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2016 GMC 3500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

701. Plaintiff Shawn Reynolds (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2016 Chevrolet 2500 in the State of Illinois. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

702.    Plaintiffs Jake Ross and Shannon Ross (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kansas who acquired a 2016 GMC 2500 in the State of Illinois. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

703. Plaintiff Paul Schneider (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

704.    Plaintiff Janet Schroeder (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

705.    Plaintiff Nicholas Shafer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

706. Plaintiff Dale Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2016 Chevrolet 3500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

707.    Plaintiff Robert Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2011 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

708. Plaintiff Tim Snyder (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

709.    Plaintiff Anthony Stazak (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 Chevrolet 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

710.    Plaintiff Anthony Stolfa (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2016 GMC 3500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

711.    Plaintiff Steve Swearingin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

712.    Plaintiff Erle Tomlinson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2016 GMC 3500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

713.    Plaintiff Douglas Wagner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2011 Chevrolet 3500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

714. Plaintiffs Jeff Walter and Michelle Walter (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Illinois who acquired a 2013 Chevrolet 2500 in the State

of Illinois. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

715.   Plaintiff Terry Weber (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2015 Chevrolet 3500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

716. Plaintiff Brent Wessel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2013 Chevrolet 3500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

717. Plaintiff Eric Wilson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2014 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

718.    Plaintiff Bernard Wojitas (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2013 GMC 2500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

719. Plaintiff Craig Woker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 GMC 3500 in the State of Illinois. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **INDIANA PLAINTIFFS**

720. The following Plaintiffs are hereinafter referred to as the "Indiana Plaintiffs."

721. Plaintiff Michael Ohl (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2016 Chevrolet 3500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

722.    Plaintiff Joe Anderson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

723. Plaintiff Brian Ball (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

724. Plaintiff Michael Bellaire (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2012 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

725.     Plaintiff Bobby Bolden (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2016 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

726.    Plaintiff David Bowling (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2014 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

727.    Plaintiff Zach Bowser (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2016 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

728.    Plaintiffs Jerry Bridge and Mary Bridge (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2015 GMC 2500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

**903**

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

729. Plaintiff William Browand (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

730.    Plaintiffs Vernon Charles and Donna Charles (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2016 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

731. Plaintiff Gary Christie (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 Chevrolet 2500 in the State of Indiana. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

732.    Plaintiff Kevin Cooper (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

733.    Plaintiffs Rodger Coverdale and Suzanne Coverdale (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2012 Chevrolet 3500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low

emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

734.    Plaintiff Jeff Diaz (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

735.    Plaintiff Joe Drwal (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2016 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

736.    Plaintiff Tyler Everett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

737.    Plaintiff Lyle Faulkner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2013 Chevrolet 3500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

914

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

738.    Plaintiff Trent (T-jay) Gascho (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan and Plaintiff GSC, LLC is a business in the State of Michigan, who acquired a 2011 Chevrolet 3500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted

unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

739. Plaintiffs Stephen Girton and Regina Girton (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2014 Chevrolet 3500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs

selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

740.    Plaintiff Randy Graves (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 Chevrolet 3500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

741.    Plaintiff Troy Guerra (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2013 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

742.    Plaintiff Christian Gustin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

743. Plaintiff Lowranzo Hackett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2013 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

744.    Plaintiffs Mike Hale and Ryan Hale (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2013 GMC 2500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

745.    Plaintiffs Larry Higgins and Mary Higgins (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2011 Chevrolet 3500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

746. Plaintiff Kyle Hines (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

747. Plaintiff Paul Holden (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 Chevrolet 3500 in the State of Indiana. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

748.     Plaintiff Tony Holden (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana and Plaintiff TWH Concrete, Inc. is a business in the State of Indiana, who acquired a 2015 Chevrolet 3500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions

advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

749.    Plaintiff Tony Holden (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2013 Chevrolet 3500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable

but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

750. Plaintiff Paul Homburg (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2016 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and

performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

751.    Plaintiffs Steven Hoover and Sheri Hoover (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2016 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer

reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

752. Plaintiff Samuel Hull (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2014 GMC 3500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and

performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

753. Plaintiffs Thomas Jackson and Glenda Jackson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2015 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's

unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

754.    Plaintiff Richard Kaehler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2011 GMC 3500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

755. Plaintiff Phillip Kitts (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

756. Plaintiff Wilbert Lavely (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

757.     Plaintiffs Kristopher Lowe and Yvonne Lowe (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2015 GMC 3500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

758.    Plaintiff Jeff Luken (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2016 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

759.    Plaintiff Stephen Mays (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2013 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

760.    Plaintiff Christian McElwee (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2011 Chevrolet 3500 and a 2016 GMC 2500 in the

State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

761.    Plaintiff Hunter Mindek (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 GMC 3500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

762.    Plaintiff Jason Mohlke (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2014 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

763. Plaintiffs Terry Mohlke and Lorene Mohlke (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2013 Chevrolet 3500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that,

during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the

vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

764.    Plaintiff Jeffrey Moore (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2016 GMC 3500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

765. Plaintiff Paul Morris (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2013 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

766.    Plaintiff Glen Neely (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2014 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

767.     Plaintiffs Michael Palmer and Gloria Palmer (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2016 GMC 2500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs

would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

768.   Plaintiff Michael Redd (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 Chevrolet 3500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

769.    Plaintiff Matthew Robbins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

770.    Plaintiffs Terry Robinson and Marilyn Robinson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2015 Chevrolet 3500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

771.    Plaintiff William Rundle (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

772.    Plaintiff Robert Sandberg (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2013 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

773. Plaintiff Steve Schemerhorn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2012 GMC 3500 in the State of Indiana. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

774.    Plaintiff Brent Schuck (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

775. Plaintiff Kyle Schuck (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

776. Plaintiff Kelly Shanley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

777. Plaintiff Heidi Shaw (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2013 Chevrolet 3500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

778.    Plaintiff Matthew Spencer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2011 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

779. Plaintiff Michael Summers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2013 GMC 3500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

780.     Plaintiff Brad Wagner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

781. Plaintiff Chris Wehmer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

782. Plaintiffs Gary Whittemore and Kelly Whittemore (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2016 GMC 3500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the

form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

783.    Plaintiff Martha Wilkens (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2011 Chevrolet 3500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

784.   Plaintiff Rich Wine (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2015 GMC 2500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

785. Plaintiff Darren Wireman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2013 GMC 3500 in the State of Indiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

786. Plaintiffs Steve Wray and June Wray (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2016 Chevrolet 3500 in the State

of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

787.    Plaintiffs John Yoder and Joyce Yoder (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2012 Chevrolet 2500 in the State of Indiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales

brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## KANSAS PLAINTIFFS

788.    The following Plaintiffs are hereinafter referred to as the "Kansas Plaintiffs."

789.    Plaintiff Michael Beavers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2012 Chevrolet 3500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

790.    Plaintiffs Benjamin Bowman and Tracetta Bowman (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kansas who acquired a 2015 Chevrolet 2500 in

the State of Kansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

791. Plaintiffs Kirk Brock and Tracy Brock (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kansas who acquired a 2016 GMC 2500 in the State of Kansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

792. Plaintiff Jason Casto (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2016 Chevrolet 2500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

793. Plaintiff Steven Cornett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2015 Chevrolet 3500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

794. Plaintiff Mendy Detherage (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2016 GMC 2500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

795. Plaintiff Jerod Dowell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2016 Chevrolet 2500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

796.    Plaintiff Kyle Draisey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 2500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

797.    Plaintiff Evan Herken (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2016 Chevrolet 2500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

798.    Plaintiffs Scott Hughes and Arlanda Hughes (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kansas who acquired a 2015 GMC 2500 in the State of Kansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

799.    Plaintiff Shane Isham (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2016 Chevrolet 2500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

**995**

800.     Plaintiff Nancy Keith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2011 Chevrolet 2500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**996**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

801. Plaintiffs Galen Liggett and Carole Liggett (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kansas who acquired a 2011 Chevrolet 2500 in the State of Kansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

802.   Plaintiffs James Marcy and Sarah Marcy (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kansas who acquired a 2015 GMC 2500 in the State of Kansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

803.    Plaintiffs Kevin McGarey and Tracy McGarey (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kansas who acquired a 2015 GMC 2500 in the State of

Kansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

804.   Plaintiffs Randy McMillan and Anna McMillan (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kansas who acquired a 2011 GMC 2500 in the State of Kansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

805. Plaintiff Jeff Meador (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 GMC 2500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

806.    Plaintiff Gary Miller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2015 GMC 3500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

807.    Plaintiffs Jeremy Nichols and Sara Nichols (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oklahoma who acquired a 2015 Chevrolet 2500 in the State of Kansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

808.   Plaintiff Melissa O'Reagan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2016 Chevrolet 2500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

809.    Plaintiffs Gary Pister and Jennifer Pister (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kansas who acquired a 2013 Chevrolet 2500 in the State of Kansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

810. Plaintiffs Jeffery Raley and Bonnie Raley (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kansas who acquired a 2015 Chevrolet 2500 in the State of Kansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

811. Plaintiff Jeffery Raley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2016 Chevrolet 2500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

812.    Plaintiff Darren Rholen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2013 Chevrolet 2500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

813.    Plaintiff Dan Samford (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 3500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**1013**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

814. Plaintiffs Erik Sisk and Katherine Sisk (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kansas who acquired a 2015 Chevrolet 2500 in the State of Kansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

815. Plaintiffs Galen Stallbaumer and Patricia Stallbaumer (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kansas who acquired a 2015 GMC 2500 in the State of Kansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

816.    Plaintiffs Jack Stoffer and Patricia Stoffer (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kansas who acquired a 2011 Chevrolet 3500 in the State

of Kansas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised

fuel economy and performance because it was equipped with an emissions system that, during

normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair,

unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or

recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the

reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its

promised fuel economy and performance throughout its useful life. Plaintiffs selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs

reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online

advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs

would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an

ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not

limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

817.    Plaintiff Chris Urie (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2015 GMC 2500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

818.   Plaintiff Ken Walker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2015 GMC 3500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

819.    Plaintiff Steven Zimmerman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2015 Chevrolet 3500 in the State of Kansas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **KENTUCKY PLAINTIFFS**

820.    The following Plaintiffs are hereinafter referred to as the "Kentucky Plaintiffs."

821.    Plaintiff Casey Adkins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2015 GMC 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

822.    Plaintiff Joe Anderson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2012 Chevrolet 3500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

823. Plaintiff Kyle Bennett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2013 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

824.     Plaintiff Jay Bickel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 Chevrolet 3500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

825.    Plaintiff Dewey Brown (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2016 GMC 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

826.    Plaintiff Rebecca Caudill (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2015 Chevrolet 3500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

827.    Plaintiffs Hollie Copeland and Patricia Copeland (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kentucky who acquired a 2011 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

828.    Plaintiff Thomas Corcoran (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2015 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

829.    Plaintiff Kevin Cox (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2012 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

830.     Plaintiff Michael Cox (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2011 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

831.    Plaintiffs Dennis Dooms and Angela Dooms (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kentucky who acquired a 2013 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

832. Plaintiff James Evans (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2015 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

833.    Plaintiff Ted Franzen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2016 Chevrolet 2500 in the State of Kentucky. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

834.    Plaintiff James Gates (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2015 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

835. Plaintiffs Andrew Heath and Jacqueline Heath (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2013 GMC 2500 in the State of Kentucky. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

836. Plaintiff Terry Hoke (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2016 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

837.    Plaintiff Marty Hollowell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2015 GMC 3500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

838.    Plaintiffs Brian Huntsbarger and Victoria Huntsbarger (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Ohio who acquired a 2015 GMC 3500 in the State of Kentucky. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs

selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

839.    Plaintiff Greg Jeffries (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2011 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

840.    Plaintiff John Keeton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2015 Chevrolet 3500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

841.   Plaintiffs Steven Kraemer and Lori Jo Kraemer (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2016 Chevrolet 3500 in the State of Kentucky. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

842.    Plaintiffs Amanda Lovelace and Dave Sumpter (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kentucky who acquired a 2016 Chevrolet 3500 in the State of Kentucky. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the

form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

843.   Plaintiff William Marguerat (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 GMC 3500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

844. Plaintiff Tim May (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2013 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

845.    Plaintiff Jacob McKnight (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2012 Chevrolet 3500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

846.    Plaintiff John Milby (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2013 GMC 2500 in the State of Kentucky. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

847. Plaintiffs Jeffrey Mobley and Sharon Mobley (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of West Virginia who acquired a 2015 Chevrolet 3500 in the State of Kentucky. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales

brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

848. Plaintiff Jeffrey Morrison (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2011 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

849.    Plaintiff Curtis Orme (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2015 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

850.    Plaintiff James Parden (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2015 Chevrolet 3500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

851. Plaintiff Todd Partin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2016 GMC 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

852.    Plaintiff Kevin Pharis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2012 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

**1062**

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

853.     Plaintiff Gayl Reader (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky and Plaintiff C-ing Polkadots is a business in the State of Kentucky, who acquired a 2014 GMC 2500 in the State of Kentucky. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted

unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

854.    Plaintiff Bryan Reed (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2011 GMC 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

855. Plaintiff Donald Schuchart (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2015 GMC 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

856.    Plaintiff Dale Sexton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2015 GMC 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

857. Plaintiff Jason Stanford (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2012 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

858.    Plaintiff Chris Thwaites (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2015 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

859. Plaintiffs Brad Tucker and Kathy Tucker (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kentucky who acquired a 2012 GMC 2500 in the State of Kentucky. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

**1072**

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

860.    Plaintiff Tracy Wilkinson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2016 Chevrolet 2500 in the State of Kentucky. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

861.   Plaintiffs Todd Williams and Tonya Williams (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kentucky who acquired a 2016 Chevrolet 3500 in the State of Kentucky. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

862.     Plaintiff Rudolph Yeagle (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2013 Chevrolet 2500 in the State of Kentucky. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **LOUISIANA PLAINTIFFS**

863.     The following Plaintiffs are hereinafter referred to as the "Louisiana Plaintiffs."

864.     Plaintiff Kenny Adams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

865.    Plaintiff Kenneth Arceneaux (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

866.    Plaintiff Michael Arledge (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

867.    Plaintiff David Arnold (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

868. Plaintiff William Barton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

869.    Plaintiff Kirby Billiot (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

870. Plaintiff Wayne Blanchard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

871. Plaintiffs Clayton Blood and Kathleen Blood (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana who acquired a 2013 GMC 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs

selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

872.    Plaintiff Mark Bloodworth (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2014 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

873.    Plaintiff Anthony Bonfiglio (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana and Plaintiff Bonfiglio Lawn & Landscape, LLC is a business in the State of Louisiana, who acquired a 2016 GMC 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

874.   Plaintiff Earl Botsay (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2013 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

875.    Plaintiff Dobie Bourg (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

876.    Plaintiffs Jerry Bradford and Sheila Bradford (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana who acquired a 2014 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

877.    Plaintiffs Casey Bolton and Kimberly Bolton (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana who acquired a 2013 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

878.    Plaintiff Brett Breaux (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

879.    Plaintiff Kathy Brooks (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**1097**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

880.   Plaintiff Matthew Burney (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

881. Plaintiff George Burns (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 GMC 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

882.    Plaintiff Brandon Bynog (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 2500 in the State of Louisiana. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

883.    Plaintiff Dexter Callahan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2012 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

884. Plaintiff Greg Carbo (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2014 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

885.   Plaintiff Bruce Chaisson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

886.    Plaintiff Steven Chunn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

887.    Plaintiff Ricky Church (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

888.    Plaintiff Chad Constance (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

889.    Plaintiff Tommy Crain (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2014 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

890.    Plaintiff Travis Cutts (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

891. Plaintiff Don DeVille (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

892.     Plaintiffs Joseph Deville and Kristy Deville (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

893. Plaintiff Joe Dixon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

894.    Plaintiff Earnest Dodd (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2012 GMC 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

895.    Plaintiff Anthony Douglas (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

896.    Plaintiff Jeannsonne Farrell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

1119

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

897.     Plaintiff Darrell Ferguson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

898.    Plaintiff Mark Files (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

899.    Plaintiff Michael Foreman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2012 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

900.    Plaintiff Evan Fowler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

901.    Plaintiff Erik Frazier (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

902.    Plaintiff David Fremin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

903.     Plaintiff Leon Frith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

904.    Plaintiff Ronald Gaines (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

**1129**

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

905. Plaintiffs Robert Gibbs and Molly Gibbs (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana who acquired a 2016 GMC 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

906.    Plaintiff Eddie Goins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2014 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

907. Plaintiff Derek Gooden (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

908.    Plaintiff Casey Graham (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2015 GMC 2500 in the State of Louisiana. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

909.   Plaintiff Craig Graham (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

910.    Plaintiff Kenneth Graham (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 and a 2016 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low

1137

emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

911. Plaintiff Marty Granger (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 GMC 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

**1138**

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

912.    Plaintiff James Grant (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

913. Plaintiff Allen Gros (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

914.    Plaintiff Toby Guidry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

915.    Plaintiff Sammie Hagan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2014 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

916. Plaintiffs Mark Hammons and Mary Hammons (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana and Plaintiff Landscape Services, LLC is a business in the State of Louisiana, who acquired a 2012 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

917. Plaintiff Donald Hargrave (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 GMC 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

918.    Plaintiff Anita Hathorne (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

919.    Plaintiff Quincy Hebert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

920.    Plaintiff Wayne Hebert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

921.    Plaintiff Glenn Henagan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2012 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**1152**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

922.     Plaintiff Harrison Herbert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

923. Plaintiff Malcolm Higginbotham (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

924.    Plaintiff Robert Hitt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 2500 in the State of Louisiana. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

925.    Plaintiff James Hollier (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

926.    Plaintiff Jason Hornsby (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2012 GMC 2500, 2013 GMC 2500, and (2) 2015 GMC 2500s in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low

emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

927.   Plaintiff Tommy Hutto (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

928.   Plaintiff Hunter Impson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

929. Plaintiff Melisa Inman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2012 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

930.    Plaintiff Daniel Jeoffroy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

931. Plaintiff Aaron Joffary (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

932.    Plaintiff Glenn Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

933.    Plaintiff Joshua Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

934.    Plaintiff Jerry Jowers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2012 GMC 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

935.   Plaintiff William Kellogg (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

936.    Plaintiff Kevin Kramer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2014 GMC 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

937.    Plaintiff Philip LaCaze (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

938.    Plaintiff Eric Lambert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

939. Plaintiff Matthew Lamp (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

940.    Plaintiff Christian Landry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 GMC 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

941.    Plaintiff William Lang (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

942. Plaintiff Jonathan Lavergne (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

943. Plaintiffs Cy Laviolette and Maci Miller (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana who acquired a 2013 GMC 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

944.    Plaintiff Lee Leger (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

945. Plaintiff Carl Leger (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 3500 and a 2012 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

946.   Plaintiffs Kevin Legleu and Lisa Legleu (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana who acquired a 2016 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the

1184

form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

**1185**

947. Plaintiff Gary Lejeune (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2012 GMC 2500 and a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

**1186**

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

948.    Plaintiffs Mathew Lejeune and Trixy Lejeune (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana who acquired a 2014 GMC 2500 and a 2015 GMC 3500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the

efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

949. Plaintiff Joseph Lemoine (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly

disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

950.    Plaintiffs Steve Lewis and Maria Lewis (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2014 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

**1190**

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

951. Plaintiff Joe Manuel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

952. Plaintiff Glenn Mccoy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 2500 and a 2015 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

953.    Plaintiff Nicholas McCoy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

954. Plaintiff Shanahan McFerran (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2012 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

955.    Plaintiff Amanda McMahan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2016 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

956.    Plaintiff Charles McMeans (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2012 GMC 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

957. Plaintiffs Mark Medice and Jamie Medice (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana who acquired a 2016 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM

disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

958.    Plaintiff Robert Mik (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2014 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

959.    Plaintiff John Moore (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana and Plaintiff Mule Team Express, Inc. is a business in the State of Louisiana, who acquired a 2013 GMC 3500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing,

manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully

high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

960.    Plaintiff John Moore (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

961.    Plaintiff Randy Morales (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2016 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

962.    Plaintiff Randy Morales (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

963.    Plaintiff Henry Myers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**1207**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

964. Plaintiff Richard Oliver (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

965.    Plaintiff Thomas Pinion (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

966.    Plaintiff Austin Plaisance (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 2500 in the State of Louisiana. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

967. Plaintiff Robbie Poche (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

968.    Plaintiff Tyler Prejean (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

969. Plaintiffs Roland Pruitt and Carmon Pruitt (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Alabama who acquired a 2015 GMC 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that,

during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the

vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

970. Plaintiff Dylan Quaid (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2012 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

971.    Plaintiff Adam Rabalais (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2012 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

972.    Plaintiff George Recktenwald (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

973.    Plaintiff Jeffery Riddle (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

974.    Plaintiff Carl Riley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

975.    Plaintiff David Roark (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

976. Plaintiff Chris Robicheaux (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

977. Plaintiff Bonin Rodrigue (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

978.    Plaintiff Travis Rodrigue (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2014 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

979.    Plaintiff Anthony Rogers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 2500 in the State of Louisiana. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

980.    Plaintiff Jeffery Ross (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

**1229**

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

981.    Plaintiff Roger Sharber (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

982.    Plaintiff John Shryock (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2012 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

983.   Plaintiff Renaldo Simmons (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana and Plaintiff T Lutcher Trucking, LLC is a business in the State of Louisiana, who acquired a 2016 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g)

representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

984.    Plaintiff Paul Simon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised

fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

985.    Plaintiff Sean Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

986.    Plaintiff James Stacy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

987.    Plaintiff Byron Stallings (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2014 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

988. Plaintiff Heath Stevison (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

989.    Plaintiff Joseph Stutes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

990.   Plaintiff Greg Tate (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

991.    Plaintiff Bruce Taylor (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 3500 and a 2016 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

992. Plaintiff James Thibodeaux (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 Chevrolet 2500 in the State of Louisiana.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

993.    Plaintiffs Harry Thomley and Sharon Thomley (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana who acquired a 2012 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales

brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

994.    Plaintiff Richard Thompson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

995. Plaintiff Jason Tiel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

996.    Plaintiffs Chris Varnado and Donna Varnado (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana who acquired a 2011 GMC 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM

disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

997. Plaintiffs Warren Vidrine and Rose Vidrine (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana who acquired a 2015 GMC 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs

selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

998. Plaintiff Gregory Watson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

999.    Plaintiff Kynan Webre (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1000. Plaintiffs Jeffery Westbrook and Mona Westbrook (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana who acquired a 2015 GMC 2500 in the State of Louisiana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1001.  Plaintiff Larry Wink (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1002.   Plaintiff Ryan Yerby (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2014 Chevrolet 3500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**1258**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1003.   Plaintiff Charles Young (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1004.   Plaintiff Eric Zoll (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 GMC 2500 in the State of Louisiana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **MAINE PLAINTIFFS**

1005. The following Plaintiffs are hereinafter referred to as the "Maine Plaintiffs."

1006.   Plaintiff John Bjork (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maine who acquired a 2015 GMC 3500 in the State of Maine. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**1262**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1007.  Plaintiff Todd Boulet (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maine who acquired a 2015 GMC 2500 in the State of Maine. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1008. Plaintiff Jimmi Brown (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maine who acquired a 2016 Chevrolet 2500 in the State of Maine. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

**1264**

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1009.   Plaintiff Dan Cyr (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maine who acquired a 2011 GMC 2500 in the State of Maine. Unknown to Plaintiff at the

time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1010.   Plaintiff Mike Hachey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maine who acquired a 2011 Chevrolet 2500 in the State of Maine. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1011.  Plaintiff Dusty Haskell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maine who acquired a 2012 GMC 3500 and a 2013 GMC 3500 in the State of Maine. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1012.  Plaintiff Tim Lyford (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maine who acquired a 2016 GMC 2500 in the State of Maine. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1013. Plaintiff Jeffrey McLaughlin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maine who acquired a 2014 Chevrolet 2500 in the State of Maine. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1014.   Plaintiff Jay Mitchell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maine and Plaintiff Express Electrical Constructors is a business in the State of Maine, who acquired a 2013 GMC 2500 and a 2015 GMC 2500 in the State of Maine. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised

fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1015.  Plaintiff Gregory Richards (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maine who acquired a 2015 GMC 2500 in the State of Maine. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1016. Plaintiff David Schaller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maine who acquired a 2016 Chevrolet 3500 in the State of Maine. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1017.   Plaintiff Carl Spencer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maine who acquired a 2015 Chevrolet 3500 in the State of Maine. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **MARYLAND PLAINTIFFS**

1018.   The following Plaintiffs are hereinafter referred to as the "Maryland Plaintiffs."

1019.   Plaintiff Jason Beard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 Chevrolet 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1020.   Plaintiff Charles Beaty (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2011 Chevrolet 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1021. Plaintiff Michael Biggs (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2016 Chevrolet 3500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1022. Plaintiff Rosario Caltabiano (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2015 Chevrolet 3500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1023.   Plaintiff Paul Collins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2011 Chevrolet 2500 and a 2013 Chevrolet 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1024.   Plaintiff John Conner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2016 Chevrolet 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1025. Plaintiff Leonard Dameron (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia and Plaintiff Dameron Home Builders, LLC (for the purpose of this paragraph, "Plaintiff") is a business in the State of Virginia, who acquired a 2016 Chevrolet 2500 in the State of Maryland. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the

vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1026.   Plaintiff Jose Delgado (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2016 GMC 3500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1027.   Plaintiff David Dohler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2011 Chevrolet 3500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1028.  Plaintiffs Sandra Estes and Brian Lally (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Maryland who acquired a 2011 GMC 2500 in the State of Maryland. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1029.  Plaintiff Michael Fandel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2015 Chevrolet 2500 in the State of Maryland.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1030.   Plaintiff Benjamin Fetting (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2015 Chevrolet 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1031. Plaintiff Mike Herbert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2012 Chevrolet 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1032.  Plaintiff Rob Hofmann (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2015 Chevrolet 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1033.   Plaintiff Brendan Huff (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2016 Chevrolet 3500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1034.   Plaintiff Christopher Humphrey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2015 GMC 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1035.   Plaintiff Darin Jenkins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2015 Chevrolet 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1036.   Plaintiff Justin Lunn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2016 Chevrolet 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1037. Plaintiff Roy Michael (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2016 Chevrolet 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1038.   Plaintiff Michael Palmer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2012 Chevrolet 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1039.   Plaintiff Matt Peluzzo (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2015 GMC 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**1304**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1040.   Plaintiff Daniel Rainwater (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2014 Chevrolet 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1041.  Plaintiff Jordan Readd (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2016 GMC 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1042.   Plaintiff Ron Reid (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2016 GMC 2500 in the State of Maryland. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1043.   Plaintiff Joshua Schantz (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2015 GMC 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1044.  Plaintiff Rodney Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2016 GMC 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1045.   Plaintiff Christopher Thompson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2014 GMC 2500 in the State of Maryland. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## MASSACHUSETTS PLAINTIFFS

1046.   The following Plaintiffs are hereinafter referred to as the "Massachusetts Plaintiffs."

1047.   Plaintiff Robert Boudreau (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Rhode Island who acquired a 2011 GMC 2500 in the State of Massachusetts. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online

advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1048.   Plaintiff Robert Bullock (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts who acquired a 2011 GMC 2500 in the State of Massachusetts. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the

reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1049. Plaintiff Robert Cloutier (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts who acquired a 2016 Chevrolet 2500 in the State of Massachusetts. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel

economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase,

and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1050.   Plaintiff Terrence Conner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Hampshire who acquired a 2016 Chevrolet 2500 in the State of Massachusetts. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1051.  Plaintiff Theodore Cook (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts who acquired a 2015 Chevrolet 2500 in the State of Massachusetts. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its

**1318**

promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1052.  Plaintiff Patrick Flynn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Rhode Island who acquired a 2015 GMC 3500 in the State of Massachusetts. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1053.   Plaintiff William Frattalone (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts who acquired a 2016 Chevrolet 2500 in the State of Massachusetts. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1054.   Plaintiffs Mathew Friend and Megan Friend (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Massachusetts who acquired a 2015 GMC 2500 in the State of Massachusetts. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1055.  Plaintiff Daniel Hennessey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Connecticut who acquired a 2016 Chevrolet 2500 in the State of Massachusetts. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the

form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1056. Plaintiff Eli Laverdiere (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts who acquired a 2016 Chevrolet 2500 in the State of Massachusetts. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1057.   Plaintiff David Loud (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts who acquired a 2013 GMC 2500 in the State of Massachusetts. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1058.  Plaintiff Jarred Lussier (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Rhode Island who acquired a 2011 GMC 2500 in the State of Massachusetts. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1059.   Plaintiff Jeff McLeod (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts and Plaintiff General Residential Services, Inc. is a business in the State

of Massachusetts, who acquired a 2015 GMC 2500 in the State of Massachusetts. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the

Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1060.   Plaintiff Matthew Miller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts who acquired a 2015 GMC 2500 in the State of Massachusetts. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online

advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1061. Plaintiff Frank Prusik (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts who acquired a 2012 GMC 2500 in the State of Massachusetts. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the

reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1062. Plaintiff Stephen St John (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts who acquired a 2013 Chevrolet 3500 in the State of Massachusetts. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel

economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase,

and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1063. Plaintiffs Steven Testa and Marie Testa (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Massachusetts who acquired a 2016 Chevrolet 2500 in the State of Massachusetts. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f)

news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1064. Plaintiff William Thurston (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts who acquired a 2013 Chevrolet 2500 in the State of Massachusetts. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low

emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **MICHIGAN PLAINTIFFS**

1065.   The following Plaintiffs are hereinafter referred to as the "Michigan Plaintiffs."

1066.   Plaintiff Wesley Alfonsi (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1067.   Plaintiff Joe Audia (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2011 Chevrolet 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1068.   Plaintiff Daniel Barbacovi (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired (4) 2016 Chevrolet 3500s in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1069.   Plaintiff Charles Bass (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2016 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1070.   Plaintiff Robert Baydl (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1071.   Plaintiff Don Bazzett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1072.  Plaintiffs Bryce Beckett and Susan Beckett (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Michigan who acquired a 2014 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1073.  Plaintiff Tracy Bellor (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2016 GMC 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1074.   Plaintiff John Bergez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2011 GMC 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1075.  Plaintiff Steven Blythe (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1076.   Plaintiff Jerrold Brown (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1077.   Plaintiff Robert Bruce (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2011 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1078.  Plaintiff David Clements (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 GMC 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1079.   Plaintiff Bruce Cooley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2016 GMC 2500 in the State of Michigan. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1080.   Plaintiff Robert Dack (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2016 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1081. Plaintiff Robert DeCheney (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2016 GMC 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1082.  Plaintiff Thomas Deglopper (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2016 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1083. Plaintiff Harry Ellison (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 GMC 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1084.   Plaintiff Christopher Emery (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2012 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1085.   Plaintiff Daniel Garbarino (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1086.   Plaintiffs Trent (T-jay) Gascho (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan and Plaintiff GSC, LLC is a business in the State of Michigan, who acquired two (2) 2015 Chevrolet 2500s in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1087.   Plaintiff Dan Gilbert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2012 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1088.  Plaintiffs Jamie Girard and Kelly Girard (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Michigan who acquired a 2012 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1089.   Plaintiff Kelly Goheen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1090. Plaintiffs Timothy Goodman and Jennifer Goodman (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Michigan who acquired a 2016 Chevrolet 3500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system,

as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1091.   Plaintiff Steve Grenon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2013 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1092. Plaintiffs Darwin Groff and Ruth Groff (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Michigan who acquired a 2014 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1093.   Plaintiff Bob Hafler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1094.  Plaintiff James Hall (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1095. Plaintiff Biff Harris (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**1375**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1096.   Plaintiff Robert Hey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1097. Plaintiff Charlie Hurren (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2013 Chevrolet 3500 and a 2015 Chevrolet 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1098. Plaintiff Richard Hyde (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2016 GMC 2500 in the State of Michigan. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1099.  Plaintiff Drema Isaac (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1100.  Plaintiffs Chris Jensen and Richard Jensen (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Michigan who acquired a 2012 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low

emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1101.  Plaintiff Jerry Justa (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2011 Chevrolet 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1102.   Plaintiff Jeremy Kiley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2014 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1103. Plaintiff Timothy Kipers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2011 Chevrolet 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1104. Plaintiff Steven Knox (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1105.   Plaintiffs Aaron Koin and Michelle Koin (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Michigan who acquired a 2015 Chevrolet 3500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1106. Plaintiff Jon Kukuk (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2012 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1107. Plaintiff John LaCourt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1108.   Plaintiff George Leonard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1109.   Plaintiff Cody Lindt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1110. Plaintiff Neil Ludwig (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2014 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1111.  Plaintiff Kay Malloy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2016 GMC 2500 in the State of Michigan. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1112.   Plaintiff Chuck Mann (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1113.   Plaintiff James Meadows (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 GMC 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1114.  Plaintiff John Mihelich (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1115. Plaintiff Fred Mikolon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2012 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1116.  Plaintiff Dan Moak (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2011 GMC 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1117.   Plaintiffs Mark Montgomery and Michele Montgomery (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing,

selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.   Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully

high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1118.   Plaintiff Tom Moore (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2016 Chevrolet 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1119.   Plaintiff Nick Mrkich (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2011 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1120.   Plaintiff Rick Mullins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1121.   Plaintiffs Gary Niver and Deanna Vanlerberghe (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Michigan who acquired a 2016 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1122.   Plaintiff Jeffrey Nunham (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2011 GMC 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1123.   Plaintiff Timothy Nutter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1124. Plaintiff John Parkinson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 GMC 2500 in the State of Michigan. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1125.   Plaintiff Chris Patchak (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2013 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

1414

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1126.   Plaintiff Ronald Pavlich (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2012 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1127.  Plaintiff Bill Penrod (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2016 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1128.  Plaintiff Raul Perez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2015 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1129.   Plaintiff Joel Radu (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2016 GMC 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1130.   Plaintiff Brett Rainey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1131.  Plaintiff Ken Raterink (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2011 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1132.  Plaintiff Brad Reed (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2013 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1133.   Plaintiff Randy Ridner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2016 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1134. Plaintiffs Bradley Roe and Cerita Roe (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Michigan who acquired a 2015 GMC 2500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1135.   Plaintiff John Rollert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1136. Plaintiffs Michael Samples and Erin Samples (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Michigan who acquired a 2015 GMC 3500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1137.  Plaintiff Harold Schroeder (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2013 GMC 2500 in the State of Michigan. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1138.   Plaintiff Jeff Sibbald (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1139.   Plaintiffs Joseph Skorupski and Gayle Skorupski (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Michigan who acquired a 2012 Chevrolet 3500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low

emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1140.   Plaintiff Doug Snow (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1141.   Plaintiff Marsha Spear (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500, 2016 Chevrolet 2500 and a 2016 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1142.   Plaintiff Bryan Spencer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1143. Plaintiff Mark Spencer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2016 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1144.   Plaintiff Michael Spring (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2016 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1145.   Plaintiff Matthew Stopczynski (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1146.  Plaintiff Brian Szakewicz (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1147.   Plaintiff Stanley Teague (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2014 Chevrolet 3500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1148.   Plaintiffs Chad Tedford and Patricia Tedford (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Michigan who acquired a 2016 GMC 2500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1149.  Plaintiffs Robert Tuttle and Karen Tuttle (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1150. Plaintiff Todd Tyler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2011 Chevrolet 2500 in the State of Michigan. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1151.   Plaintiff Kathie Watts (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2012 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1152. Plaintiffs Mark Weiler and Leslie Weiler (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2013 Chevrolet 2500 and a 2013 Chevrolet 3500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle

was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1153.   Plaintiff Wyn Wienberg (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2016 GMC 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and

performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1154.   Plaintiff Jeffery Wilkinson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Michigan. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1155.   Plaintiffs Danny Williams and Kathryn Williams (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Michigan who acquired a 2015 GMC 3500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its

promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1156. Plaintiffs John Yoder and Joyce Yoder (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Indiana who acquired a 2012 GMC 2500 in the State of Michigan. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair,

unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## MINNESOTA PLAINTIFFS

1157.   The following Plaintiffs are hereinafter referred to as the "Minnesota Plaintiffs."

1158.   Plaintiff Troy Anderson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2015 GMC 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g)

representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1159.   Plaintiff Matthew Axelsen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2012 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its

promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1160.  Plaintiffs Jerome Bauman and Mahlon Bauman (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Minnesota who acquired a 2012 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.

GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1161.   Plaintiff Brent Beck (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2016 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1162.   Plaintiff Christopher Becthold (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2011 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1163.   Plaintiff Tony Berger (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2011 GMC 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1164.   Plaintiff Greg Berry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**1464**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1165.   Plaintiff David Bertek (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2012 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1166.  Plaintiffs Steve Bottineau and Kristin Bottineau (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Minnesota who acquired a 2012 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1167. Plaintiff Tyler Burnside (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 GMC 2500 in the State of Minnesota. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1168.   Plaintiff Shane Christensen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1169. Plaintiff Theodore Davis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2011 GMC 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1170. Plaintiff Michael Fiordalisi (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 GMC 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1171.   Plaintiffs Gregory Forseth and Linda Forseth (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Minnesota who acquired a 2015 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM

disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1172.   Plaintiff Jason Gannon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2012 GMC 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1173.   Plaintiff Benjamin Gjere (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1174.   Plaintiff David Goldman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1175.   Plaintiff Cynthia Gottwalt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1176.  Plaintiff Roger Hall (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2012 GMC 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1177.   Plaintiff Larry Harris (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2011 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**1481**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1178.   Plaintiff Bee Her (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 GMC 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1179. Plaintiff James Hinton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2016 GMC 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1180.  Plaintiff Randy Hjort (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2012 Chevrolet 3500, 2015 Chevrolet 2500 and two (2)

2015 Chevrolet 3500s in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to

what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1181.   Plaintiff Brian Hren (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 GMC 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM;

(c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1182.  Plaintiffs Raymond Hummel and Joyce Hummel (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wisconsin who acquired a 2015 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the

vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1183. Plaintiffs Edward Kava and Mary Kava (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Minnesota who acquired a 2016 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved

its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of

purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1184.   Plaintiff Kent Keeler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2013 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g)

representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1185. Plaintiffs Greg Kessler and Amy Kessler (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Minnesota who acquired a 2014 GMC 2500 in the State of Minnesota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would

retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1186.  Plaintiff Ryan Kleinschmidt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2011 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful,

and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1187.   Plaintiff Justin Koenig (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2011 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1188.   Plaintiff Nicholas Lawrence (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts who acquired a 2013 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1189.  Plaintiff Keven Lowe (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2016 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1190.   Plaintiffs Jesse Mace and Brittany Popelka Mace (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2015 GMC 2500 in the State of Minnesota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1191. Plaintiffs Larry Mammenga and Annette Mammenga (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Minnesota who acquired a 2012 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the

efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1192. Plaintiff Rick Miller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly

disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1193.  Plaintiffs Larry Oberg and Courtney Oberg (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Minnesota who acquired a 2011 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1194.   Plaintiff David Olson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1195. Plaintiff Jayson Oswald (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2016 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

**1504**

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1196.   Plaintiff Clay Passuello (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 3500 in the State of Minnesota. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1197.   Plaintiff Neal Perkins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2011 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1198.   Plaintiff Dale Peterson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1199.  Plaintiff Dorothy Pokornowski (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2016 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1200.   Plaintiff Brent Possin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2013 GMC 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1201.  Plaintiff Craig Reichel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1202.   Plaintiff Michael Rhoden (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2013 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1203.   Plaintiffs Craig Riis and Lara Riis (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Minnesota who acquired a 2015 GMC 2500 in the State of Minnesota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs

would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1204. Plaintiff Brandon Ristau (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1205.   Plaintiff Dan Sager (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2016 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1206.   Plaintiff Jennifer Schuck (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2011 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1207.   Plaintiff Andrew Shong (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2011 Chevrolet 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1208.  Plaintiff Mark Stansberry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2011 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1209.  Plaintiff Luke Steffl (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2013 GMC 3500 in the State of Minnesota. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

**1523**

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1210.   Plaintiff Jim Stepp (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2016 GMC 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1211.   Plaintiff Peter Stevens (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2013 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1212.   Plaintiff Todd Stevensen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2013 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1213.  Plaintiff Jerrod Wamre (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 GMC 3500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1214. Plaintiff Dondi Wenninger (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2012 GMC 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1215.  Plaintiff Paul Wuebben (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2016 Chevrolet 2500 in the State of Minnesota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## MISSISSIPPI PLAINTIFFS

1216.   The following Plaintiffs are hereinafter referred to as the "Mississippi Plaintiffs."

1217.   Plaintiff Rodger Hayes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2014 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g)

representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1218.  Plaintiff Shane Barnett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2015 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its

promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1219.  Plaintiff Sidney Black (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2014 GMC 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1220.   Plaintiff Donald Bradley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2013 Chevrolet 3500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1221.  Plaintiff Dane Callihan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2011 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1222.  Plaintiff Michael Chandler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2016 GMC 3500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1223.   Plaintiff Geoffrey Clarke (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2011 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1224. Plaintiff George Cumbest (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2015 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1225. Plaintiff Rhonda Davis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2011 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1226.  Plaintiff Russell Dickinson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi and Plaintiff R & L Poultry Services, Inc. is a business in the

State of Mississippi, who acquired a 2013 GMC 2500, a 2015 GMC 2500 and a 2015 GMC 3500 in the State of Mississippi. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax

engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1227.   Plaintiff William Fitzgerald (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2012 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1228.  Plaintiff Joshua Goldman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2016 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1229. Plaintiffs James Griffith and Katherine Griffith (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Mississippi who acquired a 2015 Chevrolet 3500 in the

State of Mississippi. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1230.   Plaintiff Brit Hancock (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi and Plaintiff Hancock Pest Control, Inc. is a business in the State of Mississippi, who acquired a 2016 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by

GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1231. Plaintiff Donald Holifield (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2011 Chevrolet 2500 and a 2011 Chevrolet 3500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the

vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1232.  Plaintiff Jason Kimbrell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2013 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and

performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1233.   Plaintiff Kenny Lafferty (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 3500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g)

representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1234.  Plaintiff Wayne Ledet (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2015 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised

fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1235. Plaintiff Jason Miley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2016 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1236. Plaintiff Brandon Necaise (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2016 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1237. Plaintiff Nicholas O'Quinn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2013 GMC 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1238.  Plaintiff Mike Page (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2012 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1239.   Plaintiff Roger Peloquin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2016 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1240. Plaintiff Gene Roberts (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2015 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1241.  Plaintiffs Stephen Russell and Beth Russell (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Mississippi who acquired a 2012 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1242.   Plaintiff William Samuel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2011 Chevrolet 3500 in the State of Mississippi.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1243.   Plaintiff Steven Showalter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2012 GMC 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1244. Plaintiff Allan Sienko (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1245.  Plaintiff Kyle Taylor (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2015 Chevrolet 3500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1246.   Plaintiff Margaret Thrash (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2015 GMC 3500 and a 2016 GMC 3500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1247.   Plaintiff John Threadgill (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi and Plaintiff T & T Specialty Applicators, LLC is a business in the State of Mississippi, who acquired a 2013 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised

fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1248.   Plaintiff Jason Traxler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2015 Chevrolet 3500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1249.   Plaintiff Orville Van Fossen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2014 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1250. Plaintiff Jack Walker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2015 GMC 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1251. Plaintiff Jeff Ward (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2013 Chevrolet 3500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1252.   Plaintiff John White (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2016 Chevrolet 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1253.  Plaintiff Michael Whitehead (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2014 GMC 2500 in the State of Mississippi. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **MISSOURI PLAINTIFFS**

1254.   The following Plaintiffs are hereinafter referred to as the "Missouri Plaintiffs."

1255.   Plaintiff Jerry Barger (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 GMC 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

**1581**

1256.   Plaintiff Jerald Benne (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**1582**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1257.   Plaintiff Justin Best (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2011 GMC 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1258. Plaintiff Travis Board (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2014 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1259.  Plaintiffs Bobby Brooks and Michelle Brooks (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2015 GMC 3500 in the State of

Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1260.   Plaintiff Tom Brooks (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1261.   Plaintiffs David Brunscher and Carrie Brunscher (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2014 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low

emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1262.  Plaintiff Joey Buster (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2016 GMC 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1263.   Plaintiff Hershal Campbell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2013 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1264.   Plaintiff Neal Carriger (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 Chevrolet 3500s in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1265.   Plaintiff Fred Carroll (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 GMC 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1266.   Plaintiff Bryan Clark (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2014 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1267.  Plaintiff Craig Clark (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri and Clark Family Trust is a trust established in the State of Missouri who acquired a 2015 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because

of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1268.  Plaintiff David Cox (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2013 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1269.   Plaintiff Chris Crawford (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 GMC 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1270. Plaintiffs Scott Cremering and Rhonda Cremering (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2013 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system,

as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1271.   Plaintiffs Scott Cremering and Ronald Kanatzar (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2016 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1272.   Plaintiff Gary Cunningham (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 GMC 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1273.   Plaintiff Mitchell Dudley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2011 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1274.  Plaintiff Dan Enright (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2011 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1275.   Plaintiffs Paul Farnan and Brenda Farnan (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2011 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1276.   Plaintiff Jamie Felgar (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 GMC 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1277.  Plaintiff Rodney Garrett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1278.  Plaintiffs Albert Geisendorff and Kathy Geisendorff (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2015 GMC 2500 in the

State of Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1279.   Plaintiff William Griffin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

1612

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1280. Plaintiffs Donald Honeycutt and Jamie Honeycutt (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2016 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel"

and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.   Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1281.   Plaintiff Cecil Howard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and

performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1282.   Plaintiffs Curtis Howell and Suzette Howell (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2011 Chevrolet 2500 and 2016 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f)

news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1283.  Plaintiffs John Italiano and Elaine Italiano (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2015 GMC 3500 in the State of Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1284. Plaintiff Tim Jenkins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1285. Plaintiffs Barry Kagay and Joe Kagay (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2013 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM

disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1286. Plaintiff James Keener (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2016 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1287.   Plaintiff Monty Keesee (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 GMC 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1288.   Plaintiff George Kildow (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 GMC 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1289.   Plaintiff Paul Knight (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2011 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1290.   Plaintiff Michael Kovach (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2013 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1291.   Plaintiff Fred Kuhn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2015 GMC 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**1628**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1292.  Plaintiff Michael Lange (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2011 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1293.  Plaintiff Boyd Langford (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2011 GMC 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1294.   Plaintiff Richard LaPoint (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 GMC 3500 in the State of Missouri. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1295. Plaintiff Chris Lawley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2011 GMC 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1296.  Plaintiffs Wendee Linzee and Talion Miller (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Illinois who acquired a 2014 GMC 2500 in the State of Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1297.   Plaintiff Tanner Lusk (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 GMC 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1298.   Plaintiffs Thomas Masterson and Lucinda Masterson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2011 GMC 2500 in the State of Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM

disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1299. Plaintiff Braden May (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 GMC 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1300.  Plaintiff Cristen McDonnell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2014 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1301.   Plaintiff Pam Morrow (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2016 GMC 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1302.   Plaintiff Joshua Motely (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1303.  Plaintiff Paul Mueller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2011 GMC 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1304.   Plaintiff Christine Mustain (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 GMC 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1305.   Plaintiff David Nelson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2011 GMC 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1306.  Plaintiff Scott Nicolas (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1307.  Plaintiffs Dustin Owen and Angela Owen (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2015 GMC 3500 in the State of

Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1308.   Plaintiff Ed Owens (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1309.   Plaintiff Ariel Palomarez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1310.  Plaintiff Fred Parks (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1311.   Plaintiff Jesse Petary (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1312.   Plaintiff Dwane Rice (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1313. Plaintiffs James Robertson and Kathy Robertson Tod (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2015 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing,

selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.   Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully

high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1314. Plaintiff Scott Sadler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 2500 and a 2016 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

**1658**

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1315.   Plaintiff Max Schmoll (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1316. Plaintiffs Steven Stone and Ruth Stone (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Utah who acquired a 2016 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1317.   Plaintiff Christopher Strasser (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1318. Plaintiff Mark Stueck (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1319.  Plaintiff Richard Summers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1320.  Plaintiff Troy Taylor (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Hawaii who acquired a 2015 Chevrolet 2500 in the State of Missouri. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1321.   Plaintiff John Thompson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2011 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1322. Plaintiff Justin Walkinshaw (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2013 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1323.  Plaintiff Sam Ward (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2016 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1324.   Plaintiff Joseph Williams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2012 Chevrolet 2500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1325. Plaintiff Ray Williams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 2500 and a 2015 Chevrolet 3500 in the State of Missouri. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected

and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

### MONTANA PLAINTIFFS

1326.   The following Plaintiffs are hereinafter referred to as the "Montana Plaintiffs."

1327.   Plaintiffs Julie Balch and Wade Hargis (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Montana who acquired a 2015 Chevrolet 2500 in the State of Montana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that,

during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the

vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1328.   Plaintiff Lloyd Brewer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts who acquired a 2015 Chevrolet 2500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1329.   Plaintiff Brandon Cowen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2015 GMC 3500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1330. Plaintiff Edwin Garrity (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2012 Chevrolet 2500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1331.   Plaintiffs Jarrme Horn and Shanna Sunderlin (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Montana who acquired a 2016 Chevrolet 2500 in the State of Montana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1332.  Plaintiff Dean Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2011 Chevrolet 2500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1333.   Plaintiffs Scott Leimkuehler and Heather Schwindt (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Montana who acquired a 2011 GMC 2500 in the State of Montana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss

in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1334.   Plaintiff Travis Leslie (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2013 Chevrolet 2500 and a 2015 Chevrolet 3500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1335.   Plaintiff Mark Markovich (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2015 Chevrolet 3500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1336. Plaintiff Jim Meyer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2015 Chevrolet 2500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1337.   Plaintiff Louie Moore (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2015 GMC 3500 in the State of Montana. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

1687

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1338.   Plaintiffs Edic Moreno and Ashley Moreno (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of California who acquired a 2011 Chevrolet 2500 in the State of Montana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales

brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1339. Plaintiff Evan Parkins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2013 Chevrolet 3500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1340.   Plaintiff Sandra Perkins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2015 GMC 2500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1341.   Plaintiffs Carol Richter and Dennis Vogues (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oregon who acquired a 2012 GMC 2500 in the State of Montana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1342.  Plaintiff Kerry Ross (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Dakota who acquired a 2015 GMC 2500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1343. Plaintiff Joe Sandoval (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2015 Chevrolet 2500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1344.   Plaintiff Joe Stalinski (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2013 Chevrolet 2500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1345. Plaintiff Mike Stenson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2014 GMC 2500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1346.  Plaintiffs Bryan Stewart and Rebecca Stewart (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Montana who acquired a 2011 Chevrolet 2500 in the State of Montana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the

form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1347. Plaintiff Lyle StGoddard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2016 Chevrolet 3500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**1700**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1348.   Plaintiff Melinda Tribby-Windecker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2013 Chevrolet 3500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1349.  Plaintiff Ron Tussing (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2015 Chevrolet 3500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1350.   Plaintiff Andrew Umhey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2015 Chevrolet 3500 in the State of Montana. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1351.  Plaintiff Benjamin Wachter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2013 Chevrolet 3500 in the State of Montana. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1352.  Plaintiffs Charles Weimer and Debbie Weimer (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Idaho who acquired a 2015 Chevrolet 3500 in the State of Montana. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

**<u>NEBRASKA PLAINTIFFS</u>**

1353. The following Plaintiffs are hereinafter referred to as the "Nebraska Plaintiffs."

1354. Plaintiff Raymond Bloom (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2011 Chevrolet 2500 in the State of Nebraska. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1355.   Plaintiff Keith Caples (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2015 GMC 2500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1356. Plaintiff Jim Crossley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa and Plaintiff CRC, Inc. is a business in the State of Iowa, who acquired a 2013 Chevrolet 2500 in the State of Nebraska. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle

was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1357.   Plaintiff Scott Daake (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2012 Chevrolet 3500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and

performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1358. Plaintiffs Gary Duncan and Sharon Duncan (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2016 Chevrolet 2500 in the State of Nebraska. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer

reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1359.   Plaintiff Edward Fisher (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Dakota who acquired a 2014 GMC 2500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised

fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1360.   Plaintiff Jason Gall (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2013 Chevrolet 3500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1361.   Plaintiff Michelle Gray (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2015 Chevrolet 3500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1362.   Plaintiff Brian Hadrick (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2014 GMC 3500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1363.  Plaintiff Larry Hafer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2016 Chevrolet 2500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1364.   Plaintiff Natalie Helmick (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2016 Chevrolet 2500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1365.   Plaintiff Michael Hunt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired (2) 2012 Chevrolet 2500s in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1366.  Plaintiff Troy Hurd (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2015 GMC 2500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1367.   Plaintiff Mike Jasperson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2013 Chevrolet 2500 and a 2015 Chevrolet 2500 in the

State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1368. Plaintiffs Chris Jussel and Jamie Jussel (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Nebraska who acquired a 2016 Chevrolet 2500 in the State of Nebraska. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales

brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1369. Plaintiffs Brian Kaluza and Brandy Kaluza (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Nebraska who acquired a 2011 Chevrolet 2500 in the State of Nebraska. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low

emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1370. Plaintiff Tom Kruse (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska and Plaintiff D&S Auto Sales, Inc. is a business in the State of Nebraska, who acquired a 2015 Chevrolet 2500 in the State of Nebraska. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it

was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1371.   Plaintiff Colby Lind (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2013 Chevrolet 2500 and a 2015 Chevrolet 2500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1372. Plaintiff Joel Marley and Melissa Marley (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Nebraska who acquired a 2013 Chevrolet 3500 in the State of Nebraska. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would

retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1373. Plaintiff Tom Matzke (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2015 GMC 2500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

**1732**

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1374.   Plaintiff David McNealy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2015 GMC 2500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1375.   Plaintiff Andrew Miller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska and Plaintiff Harney & Miller Services, Inc. is a business in the State of Nebraska, who acquired two (2) 2012 Chevrolet 3500s and a 2015 Chevrolet 3500 in the State of Nebraska. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1376. Plaintiff Jason Nagy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2016 Chevrolet 2500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1377. Plaintiff Marty Overgard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Iowa who acquired a 2015 Chevrolet 3500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1378. Plaintiff Kenneth Richter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2013 GMC 2500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1379. Plaintiff Matt Simet (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2016 Chevrolet 2500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1380. Plaintiffs Tony Sisk and Kristen Sisk (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kansas who acquired a 2011 Chevrolet 2500 in the State of Nebraska. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1381.   Plaintiff Roman Thompson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2016 Chevrolet 2500 in the State of Nebraska. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1382. Plaintiffs James Vak and Sharron Vak (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Nebraska who acquired a 2015 GMC 2500 in the State of Nebraska. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1383.   Plaintiff Chad Werner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2014 Chevrolet 2500 in the State of Nebraska. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1384.   Plaintiff William Wilson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska and Plaintiff Environmental Protection Solutions, Inc. is a business in the State of Nebraska, who acquired a 2015 GMC 2500 in the State of Nebraska. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio

and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## NEVADA PLAINTIFFS

1385. The following Plaintiffs are hereinafter referred to as the "Nevada Plaintiffs."

1386. Plaintiff Otto Bartel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2016 GMC 3500 in the State of Nevada. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the

inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1387.   Plaintiff Scott Fetters (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2016 GMC 2500 in the State of Nevada. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1388.  Plaintiff Kenneth Gray (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2016 GMC 2500 in the State of Nevada. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1389.  Plaintiff Wynn Jarvis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2015 Chevrolet 2500 in the State of Nevada. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1390. Plaintiff Ronald Jenkins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2011 GMC 2500 in the State of Nevada. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1391. Plaintiffs Larry Johns and Gay Johns (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Nevada who acquired a 2016 GMC 3500 in the State of Nevada. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1392.  Plaintiff Bill Mahoney (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2015 Chevrolet 2500 in the State of Nevada. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1393.  Plaintiff Robert Martin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2011 Chevrolet 2500 in the State of Nevada. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1394.   Plaintiff Shane Mullen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2011 Chevrolet 2500 in the State of Nevada. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1395.  Plaintiffs Michael Neal and Elizabeth Neal (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Nevada who acquired a 2015 Chevrolet 2500 in the State of Nevada. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs

selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1396. Plaintiff Corbin Steensen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2011 GMC 2500 in the State of Nevada. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1397.  Plaintiffs John Valley and Laura Valley (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Nevada who acquired a 2013 Chevrolet 2500 in the State of Nevada. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1398.  Plaintiff Brady Wagner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2013 Chevrolet 2500 in the State of Nevada. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1399.   Plaintiff Susan Williams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2012 Chevrolet 2500 in the State of Nevada. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

**NEW HAMPSHIRE PLAINTIFFS**

1400.   The following Plaintiffs are hereinafter referred to as the "New Hampshire Plaintiffs."

1401.   Plaintiff Dwayne Haught (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 Chevrolet 2500 in the State of New Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1402.   Plaintiff Joe Caprigno (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Hampshire who acquired a 2015 GMC 3500 in the State of New Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1403. Plaintiff Daniel Christof (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Hampshire who acquired a 2013 GMC 2500 in the State of New Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1404.   Plaintiffs Gregory Clark and Elizabeth Clark (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of New Hampshire who acquired a 2012 GMC 2500 in the State of New Hampshire. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.   Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted

unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1405.   Plaintiff Jake Dasilva (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Hampshire who acquired a 2015 Chevrolet 2500 in the State of New Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1406.  Plaintiff Paul Eisan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Hampshire who acquired a 2016 Chevrolet 2500 in the State of New Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1407.   Plaintiff Roy Fortier (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2012 GMC 2500 in the State of New Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1408.  Plaintiff Raymond Giuffre (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Hampshire who acquired a 2015 GMC 3500 in the State of New Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1409.   Plaintiff Edward Kashian (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Hampshire who acquired a 2016 Chevrolet 2500 in the State of New Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the

form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1410.   Plaintiff Hunter Lees (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts who acquired a 2011 GMC 2500 in the State of New Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1411.   Plaintiff Michael Martein (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Hampshire who acquired a 2016 GMC 3500 in the State of New Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1412.   Plaintiff Joseph Medeiros (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Hampshire who acquired a 2011 GMC 2500 in the State of New Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1413.  Plaintiff Michael Negm (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Hampshire who acquired a 2013 Chevrolet 3500 in the State of New

Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

**1783**

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1414. Plaintiff Jared Nightingale (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maine who acquired a 2011 Chevrolet 2500 in the State of New Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1415. Plaintiff Joe Querci (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Hampshire who acquired a 2016 GMC 2500 in the State of New Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1416.  Plaintiff Jeffery Russell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2012 Chevrolet 2500 in the State of New Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1417. Plaintiff Joshua Youssef (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Hampshire who acquired a 2015 GMC 3500 in the State of New Hampshire. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## NEW JERSEY PLAINTIFFS

1418. The following Plaintiffs are hereinafter referred to as the "New Jersey Plaintiffs."

1419. Plaintiff Robert Baldissero (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2011 GMC 2500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1420.   Plaintiff Martin Berg (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2016 GMC 2500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1421. Plaintiff Guy Corter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2015 GMC 3500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1422.   Plaintiff John Giambrone (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2015 GMC 2500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1423.   Plaintiff Glenn Griffin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2011 Chevrolet 2500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1424.   Plaintiff John Layne (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 GMC 2500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1425.  Plaintiff Joseph Lorlano (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2015 Chevrolet 2500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1426.  Plaintiff John Mazzilli (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2016 Chevrolet 2500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

**1799**

1427. Plaintiff Richard Nece (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2012 GMC 2500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1428.   Plaintiff Greg Pierson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2014 Chevrolet 2500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1429.  Plaintiff Michael Ridgway (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2013 GMC 2500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1430.  Plaintiff Jose Rodriguez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2016 Chevrolet 2500 in the State of New Jersey.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1431.  Plaintiff Nelson Santos (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2015 GMC 2500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1432. Plaintiff Joe Scaltrito (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2011 Chevrolet 2500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1433.   Plaintiff Louis Schiavello (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2015 GMC 2500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1434.   Plaintiff David Smerina (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2016 GMC 2500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1435. Plaintiff Jose Solis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2011 GMC 2500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1436.   Plaintiff Ronald Speck (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2011 Chevrolet 3500 in the State of New Jersey. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## NEW MEXICO PLAINTIFFS

1437.   The following Plaintiffs are hereinafter referred to as the "New Mexico Plaintiffs."

1438.   Plaintiff Johnny Ables (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2013 Chevrolet 2500, 2013 Chevrolet 3500 and a 2015 Chevrolet 3500 in the State of New Mexico. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f)

news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1439.   Plaintiff Johnny Ables (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico and Plaintiff Pace Oilfield Services, Inc. is a business in the State of New Mexico, who acquired a 2011 Chevrolet 2500, 2011 GMC 3500, 2012 Chevrolet 2500, 2013 Chevrolet 2500, 2013 GMC 3500, 2014 Chevrolet 2500, 2015 GMC 2500 and 2015 GMC 3500 in the State of New Mexico. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during

normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.   Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1440.   Plaintiff Walter Ables (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2015 GMC 3500 in the State of New Mexico. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1441. Plaintiffs James Bratten and Rebecca Bratten (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wyoming who acquired a 2011 GMC 2500 in the State of New Mexico. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1442.  Plaintiffs Joe Chavez and Cordelia Chavez (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of New Mexico who acquired a 2011 GMC 2500 in the State of New Mexico. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1443.  Plaintiff Narcisse Francisco (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of New Mexico.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1444.   Plaintiff Mandy Hawkins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2011 Chevrolet 2500 in the State of New Mexico. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1445. Plaintiff Pam Henington (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona and Plaintiff Golden Rule Muffler & Alignment is a business in the State of Arizona, who acquired a 2015 GMC 3500 in the State of New Mexico. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief

that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1446.  Plaintiff Lawrence Jaramillo (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2016 GMC 2500 in the State of New Mexico. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel

economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase,

and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1447.   Plaintiff Cameron Kloster (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2011 GMC 3500 in the State of New Mexico. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1448. Plaintiff Shannon Kuhlman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2015 GMC 3500 in the State of New Mexico. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its

promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1449.  Plaintiffs Dorothy Landtrip and Gary Snow (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2013 GMC 3500 in the State of New Mexico. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair,

unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1450.   Plaintiff Ron Magnon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2014 GMC 2500 in the State of New Mexico. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1451.  Plaintiff John Medford (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2013 Chevrolet 3500 in the State of New Mexico. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1452.  Plaintiff James Pettit (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 GMC 2500 in the State of New Mexico. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1453. Plaintiff Laurence Romero (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2015 GMC 2500 in the State of New Mexico. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1454.  Plaintiff Alan Vanderwagen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2015 GMC 2500 in the State of New Mexico. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1455.  Plaintiff Joe Vega (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2013 Chevrolet 2500 in the State of New Mexico. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## NEW YORK PLAINTIFFS

1456.   The following Plaintiffs are hereinafter referred to as the "New York Plaintiffs."

1457.   Plaintiff John Annarella (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1458.   Plaintiff Wayne Ashcraft (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2015 GMC 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1459. Plaintiff Lucas Barhydt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2012 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1460. Plaintiff Alison Beirne (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2012 GMC 3500 in the State of New York. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1461.   Plaintiff Nathan Berner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2013 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1462. Plaintiffs Tim Bredberg and Stacey Bredberg (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of New York who acquired a 2012 Chevrolet 2500 in the State of New York. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low

emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1463.   Plaintiff Jennifer Calhoun (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2011 Chevrolet 2500 and a 2015 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that,

during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1464.   Plaintiff William Cink (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1465.   Plaintiff Paul Connolly (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1466.  Plaintiff Sam Cornwell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1467.   Plaintiff Anthony Cuocco (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2011 Chevrolet 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1468.   Plaintiff Steven D'Angelo (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2011 Chevrolet 2500 and a 2013 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1469.  Plaintiffs Joshua Delahoy and Lynelle Delahoy (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of New York who acquired a 2011 Chevrolet 2500 in the State of New York. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss

in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1470.   Plaintiff Denise Dorey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2011 Chevrolet 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**1854**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1471.   Plaintiff Kevin Duchemin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2013 GMC 2500 and a 2013 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1472. Plaintiff Margaret Fayo (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2013 GMC 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1473.  Plaintiff Bob Fisher (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2011 GMC 2500 in the State of New York. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1474.   Plaintiff Nathan Fix (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2013 GMC 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1475.  Plaintiff Kevin Florian (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1476.   Plaintiff Lee Gardner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2011 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1477. Plaintiff Brian Garvey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2012 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1478.   Plaintiff Ryan Hampel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1479.  Plaintiff Frank Hayduk (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2011 GMC 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1480. Plaintiff Andrew Howard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 Chevrolet 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1481.   Plaintiff Dorene Howard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 Chevrolet 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1482.  Plaintiffs Joseph Johnston and Joanne Johnston (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of New York who acquired a 2011 Chevrolet 2500 in the State of New York. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss

in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1483.   Plaintiff Ronald Kalvaitis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1484.   Plaintiff Ross Kaplan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2011 GMC 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1485. Plaintiff Brennan Keeler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2011 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1486.   Plaintiff John Kemmeren (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 Chevrolet 2500 in the State of New York. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1487. Plaintiff Craig Kennedy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1488.  Plaintiff Luis Klein (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1489.  Plaintiff Gary Knapp (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 Chevrolet 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1490.   Plaintiff Nicholas Lapp (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1491. Plaintiff Harvey Lindow (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2013 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1492.  Plaintiffs James Lyszaz and Kimberly Lyszaz (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Pennsylvania who acquired a 2015 Chevrolet 2500 in the State of New York. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling,

and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1493.   Plaintiff Mike Mckee (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1494.  Plaintiffs Leland Miller and Elizabeth Miller (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of New York who acquired a 2015 Chevrolet 3500 in the State of New York. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1495.  Plaintiffs Debbie Miller, Scott Miller and Edwin Miller (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of New York who acquired a 2012 GMC 3500 in the State of New York. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss

in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1496.  Plaintiffs Debbie Miller and Scott Miller (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of New York who acquired a 2011 GMC 3500 in the State of New York. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition

1497.   Plaintiff Bryce Molisani (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1498.  Plaintiff John Morrill (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2014 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1499.  Plaintiff Emerson Morse (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2012 Chevrolet 3500 in the State of New York. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1500.   Plaintiff Tyler Novak (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2011 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1501. Plaintiff Kelsey O'Hara (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2013 Chevrolet 3500 and a 2016 Chevrolet 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low

emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1502.   Plaintiff Salvatore Olivo (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1503.  Plaintiff Anthony Porter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2012 Chevrolet 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1504.   Plaintiff Brian Rogerson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 Chevrolet 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1505.  Plaintiff John Russin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 Chevrolet 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1506.   Plaintiff Chris Scafuri (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

**1901**

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1507.   Plaintiff Edward Schick (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1508.   Plaintiff Mary Schleicher (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1509.  Plaintiff Philip Seybert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**1905**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1510.   Plaintiff Bryan Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1511.  Plaintiff Dan Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1512.   Plaintiff Patricia Spath (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2011 Chevrolet 2500 in the State of New York. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1513.   Plaintiff Michael Sweet (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 Chevrolet 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

**1910**

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1514.  Plaintiff Anthony Vitale (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 GMC 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1515.   William Walcutt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 Chevrolet 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1516.   Plaintiff Stephen Walpole (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1517. Plaintiff Donald Watson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1518.   Plaintiff William Weller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 Chevrolet 3500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1519.   Plaintiff Jay White (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 Chevrolet 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1520. Plaintiffs Terry White and Bernadette White (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of New York who acquired a 2016 Chevrolet 3500 in the State of New York. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1521.  Plaintiff Lester Yarman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2012 GMC 2500 and 2015 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1522.  Plaintiff Robert Zelazowski (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 GMC 2500 in the State of New York. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1523. Plaintiffs Joseph Zielinski and Dorene Zielinski (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of New York who acquired a 2016 GMC 3500 in the State of New York. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **NORTH CAROLINA PLAINTIFFS**

1524.  The following Plaintiffs are hereinafter referred to as the "North Carolina Plaintiffs."

1525.  Plaintiff David Akins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2012 Chevrolet 2500 and a 2015 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling,

and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1526. Plaintiff Marshall Baca (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2016 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1527.   Plaintiff Gene Bridges (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2012 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1528.  Plaintiff Chris Cline (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2013 Chevrolet 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1529.   Plaintiff William Collins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2015 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1530.   Plaintiff Scott Davis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1531.  Plaintiff Brent Deacon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina and Plaintiff QC Veneer & Logs, LLC is a business in the State of North Carolina, who acquired a 2016 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly

disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1532.   Plaintiff Sergiu Diminenco (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 GMC 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1533.   Plaintiffs James Dixon and Lois Ann Dixon (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of North Carolina who acquired a 2016 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel

economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1534.  Plaintiff Richard Dobkin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 GMC 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1535.  Plaintiff Curtis Freeman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2015 Chevrolet 2500 in the State of North Carolina.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1536.   Plaintiff Nelson Fulcher (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2012 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1537.   Plaintiff Jeffrey Gillis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2013 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission

diesel,"complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1538.   Plaintiff Sterling Gore (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1539.  Plaintiff Cody Gormley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of California who acquired a 2015 GMC 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1540.  Plaintiffs Daniel Harvey and Tara Shorter (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of North Carolina who acquired a 2016 GMC 3500 in the State of North Carolina. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful

life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1541. Plaintiff Michael Hatfield (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2014 Chevrolet 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1542.   Plaintiff Matthew Hicks (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2016 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1543.   Plaintiff Peter Honerkamp (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 Chevrolet 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1544.   Plaintiff Jeffrey Houston (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2011 Chevrolet 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1545.   Plaintiff Robert Hunt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2012 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1546.   Plaintiff Tom Hunt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2015 GMC 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1547. Plaintiff Timmy Jarvis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2013 GMC 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1548.   Plaintiff Robert Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2011 Chevrolet 2500 in the State of North Carolina.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

**1955**

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1549. Plaintiff Tommy Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2012 GMC 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1550. Plaintiffs Kenny Jones and Andrea Jones (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of North Carolina who acquired a 2016 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel"

and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1551.   Plaintiff Jodi LaBombard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2011 Chevrolet 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1552.   Plaintiff Kevin Lansink (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1553.  Plaintiff Mark Ledford (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2016 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1554.  Plaintiff Jeff Lemmons (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2011 Chevrolet 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1555.   Plaintiff David Lester (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2016 Chevrolet 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1556.  Plaintiff Michael Lewis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2015 GMC 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1557.  Plaintiff Mark Litten (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2015 GMC 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1558.   Plaintiff Frank Lombard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2015 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1559.  Plaintiff William Lowry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2015 Chevrolet 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1560.  Plaintiff James Marciano (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts who acquired a 2013 GMC 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1561. Plaintiff Gary Mathews (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2011 Chevrolet 2500 in the State of North Carolina.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1562. Plaintiff Clayton Meadows (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2015 GMC 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1563.  Plaintiff William Morrison (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2012 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1564.   Plaintiff William Munday (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1565.   Plaintiff Nathan Naturile (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1566.   Plaintiff Clifton Noe (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2015 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1567.  Plaintiffs Joseph Owens and Martha Owens (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Maryland who acquired a 2015 Chevrolet 3500 in the State of North Carolina. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1568. Plaintiff Preston Pair (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1569. Plaintiff Jimmy Pitcock (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2012 GMC 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1570. Plaintiff Jimmy Powell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2015 GMC 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1571.   Plaintiff Gary Prince (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2012 Chevrolet 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1572.   Plaintiff Ken Rattner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 GMC 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1573. Plaintiff Linda Rike (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 GMC 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1574.   Plaintiff Marc Rogers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2011 Chevrolet 2500 in the State of North Carolina.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1575.   Plaintiff Jack Satterfield (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2011 GMC 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1576.   Plaintiff Matthew Savage (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2013 Chevrolet 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1577. Plaintiff Burrell Segars (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2016 GMC 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1578.   Plaintiff Michael Sewell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 Chevrolet 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1579.   Plaintiff Kenneth Shaw (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2011 Chevrolet 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1580.   Plaintiff Harvey Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 GMC 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1581.   Plaintiff Jackson Steele (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2016 GMC 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1582.   Plaintiff Joe Stoutz (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2011 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1583.   Plaintiff Alejandro Suleta (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2012 Chevrolet 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1584.   Plaintiff Harvey Taylor (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2015 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1585.   Plaintiff Reginald Tucker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2015 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1586.  Plaintiff James Varnell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2013 GMC 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1587.  Plaintiff Brandy Walser (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2011 Chevrolet 2500 in the State of North Carolina.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1588.  Plaintiffs Shane Wegner and Tandi Wegner (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of North Carolina who acquired a 2012 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d)

sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1589. Plaintiff Pete White (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1590.   Plaintiff Robbie White (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1591.  Plaintiff James Williams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1592. Plaintiff Ray Williams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2015 Chevrolet 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1593.   Plaintiff Timothy Wilson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 GMC 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1594. Plaintiff John Wright (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2013 Chevrolet 2500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1595. Plaintiff Robert Zampardi (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2011 GMC 3500 in the State of North Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## NORTH DAKOTA PLAINTIFFS

1596. The following Plaintiffs are hereinafter referred to as the "North Dakota Plaintiffs."

1597. Plaintiff Brandon Brackett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Dakota who acquired a 2015 GMC 2500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful,

and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1598.   Plaintiff Gary Brezonick (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado who acquired a 2012 GMC 2500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1599.   Plaintiff Clark Culbertson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Dakota who acquired a 2012 Chevrolet 3500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1600.  Plaintiff Leo Cummings (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Dakota who acquired a 2014 Chevrolet 3500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1601.   Plaintiff Dallas Delorme (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Dakota who acquired a 2015 Chevrolet 3500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1602.  Plaintiff Cheri Frye (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Dakota who acquired a 2013 Chevrolet 3500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

**2024**

performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1603. Plaintiff Alex Haspert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Dakota who acquired a 2013 Chevrolet 2500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1604.  Plaintiffs Rick Holmen and Cheryl Holmen (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of North Dakota who acquired a 2015 Chevrolet 2500 in the

State of North Dakota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1605.   Plaintiff Lucas Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 GMC 2500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1606. Plaintiff Curt Leslie (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Dakota who acquired a 2015 Chevrolet 2500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1607.   Plaintiff Jay Myers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Dakota who acquired a 2013 Chevrolet 2500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1608.   Plaintiff Jason Paulson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2016 GMC 2500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1609. Plaintiff Andy Placher (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2014 Chevrolet 2500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1610.  Plaintiff Andrew Reed (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2014 Chevrolet 2500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1611. Plaintiff Robert Sain (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2015 GMC 2500 and a 2016 GMC 2500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1612.  Plaintiff Troy Schumacher (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Vermont who acquired a 2011 Chevrolet 2500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1613.  Plaintiff Brian Stuhlmiller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Dakota who acquired a 2016 Chevrolet 2500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

**2038**

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1614.   Plaintiff Kevin Thacker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2013 GMC 3500 in the State of North Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **OHIO PLAINTIFFS**

1615.   The following Plaintiffs are hereinafter referred to as the "Ohio Plaintiffs."

1616.   Plaintiff James Back (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2013 GMC 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1617.  Plaintiff Rick Bago (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2014 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1618. Plaintiff Joseph Barker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2014 GMC 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1619.   Plaintiff Scott Beam (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2012 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1620.  Plaintiff Stephen Bell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2011 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1621. Plaintiff Matt Bennett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2011 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1622.   Plaintiff David Bick (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1623. Plaintiff Rich Boyd (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 GMC 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1624.   Plaintiff Kenneth Brown (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1625.   Plaintiffs Chester Carpenter and Lisa Carpenter (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Ohio who acquired a 2016 GMC 3500 in the State of Ohio. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1626.   Plaintiff Daniel Chambers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio and Plaintiff I.P.S., LLC is a business in the State of Ohio, who acquired a 2015 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance

throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before acquiring the vehicle, Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1627.   Plaintiff Daniel Chambers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive

conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1628.   Plaintiff Robbie Collins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1629.   Plaintiff Tommy Colvin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2016 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1630. Plaintiff Steve Connor (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2016 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

**2059**

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1631.   Plaintiff Michael Cool (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2012 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1632.   Plaintiff Robert Corwin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2013 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1633.   Plaintiff Joe Crabbe (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2013 GMC 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1634.   Plaintiff Mark Crane (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1635.   Plaintiff Daniel Dailey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1636. Plaintiff Tim DeVore (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2013 GMC 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1637.  Plaintiff Richad DiStefano (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1638.   Plaintiff David Diver (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1639.   Plaintiff Ronald Dufrene (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 GMC 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1640. Plaintiff Dean Erbaugh (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1641.   Plaintiff William Farabee (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2012 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1642. Plaintiff Jason Farkas (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2013 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1643.   Plaintiff James Flowers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2013 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1644.   Plaintiff Mike French (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1645.   Plaintiff Trent (T-jay) Gascho (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan and Plaintiff GSC, LLC is a business in the State of Michigan, who acquired a 2015 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources

touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1646.   Plaintiff Carol Greentree (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2016 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the

inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1647. Plaintiff Chris Grimes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2012 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**2082**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1648. Plaintiff Anthony Gusumano (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1649.  Plaintiff Nathan Hale (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 GMC 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1650.   Plaintiff Robert Hamilton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1651.  Plaintiff Joshua Heackock (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2011 GMC 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1652.  Plaintiff Darwin Helms (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2013 GMC 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1653.   Plaintiff Mitch Henderson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2016 GMC 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1654.   Plaintiff Steve Herr (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 GMC 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1655.  Plaintiff Eugene Heuerman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1656.   Plaintiff Alan Hissam (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2015 GMC 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1657. Plaintiff Gary Hollabaugh (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2013 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1658. Plaintiff Susan Hughey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2014 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1659. Plaintiff Randal Izor (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2011 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1660.   Plaintiff William Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 GMC 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**2099**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1661.   Plaintiff Dennis Kinney (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2016 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1662.   Plaintiff Daniel Kuhns (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 GMC 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1663. Plaintiff Marilyn Lanning (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2012 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1664.   Plaintiff Keith Lepley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2014 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1665.   Plaintiff George Levi (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 GMC 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1666. Plaintiff Max Linton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2013 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1667.   Plaintiff Branko Markulin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2011 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1668.  Plaintiff William Mccullough (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1669.   Plaintiff UJ McDaniel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2013 GMC 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1670.   Plaintiff Bob McManus (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2013 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1671. Plaintiff Dennis Meguire (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2011 GMC 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1672.  Plaintiff John Messmer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2016 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1673.   Plaintiff Kenny Miller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1674.   Plaintiff Michael O'Neal (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2016 GMC 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1675. Plaintiff Joseph Osborne (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2011 GMC 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1676.   Plaintiff Matthew Pippin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1677.   Plaintiffs Thomas Powers and Joyce Powers (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Ohio who acquired a 2011 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1678.   Plaintiff Robert Pritchard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2016 GMC 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1679.   Plaintiff Corey Proctor (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2016 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1680.   Plaintiff Dan Raleigh (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2016 GMC 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1681.   Plaintiff Connie Ramey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1682. Plaintiffs James Randall and Tammy Jo Randall (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Ohio who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1683.   Plaintiff Shane Reynard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2016 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

**2129**

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1684. Plaintiffs Denver Rice and Kimberly Rice (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kentucky who acquired a 2011 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1685. Plaintiff Taylor Richards (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1686.   Plaintiff Victor Riley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2016 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1687.   Plaintiff Duane Roberts (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2013 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1688.  Plaintiffs Matthew Rogers and Bailey Rogers (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Tennessee who acquired a 2015 GMC 3500 in the State of Ohio. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1689.   Plaintiff John Sanford (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2011 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1690.  Plaintiff Christopher Sayles (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1691.   Plaintiff Simon Semonin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2016 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1692.  Plaintiff Donna Shoemaker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2013 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1693.   Plaintiff Bennie Sloan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2012 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1694.   Plaintiff Chad Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2011 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1695.  Plaintiffs Rodney Smith and Margie Smith (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Ohio who acquired a 2015 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1696.   Plaintiff Jill Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2016 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1697. Plaintiff James Snyder (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1698.  Plaintiffs Mike Sowers and Shelly Sowers (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Ohio who acquired a 2014 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1699.   Plaintiff Bart Starr (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2014 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1700.   Plaintiff Diana Storer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2013 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1701. Plaintiff Scott Stowers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2011 GMC 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1702. Plaintiff Ray Swicegood (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2011 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1703. Plaintiffs Derek Tellup and Clare Reilly (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Ohio who acquired a 2015 GMC 3500 in the State of Ohio. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1704.   Plaintiff Autumn Thompson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2013 GMC 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1705.   Plaintiffs Orvil Trefelner and Deborah Trefelner (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2015 GMC 3500 in the State of Ohio. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during

normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1706.   Plaintiff Ronnie Trusty (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1707. Plaintiff John Vidovich (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1708.   Plaintiff Doug Vogel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2015 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1709.  Plaintiffs Jim Walker and Mary Walker (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Ohio who acquired a 2016 GMC 2500 in the State of Ohio. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs

would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1710.   Plaintiff Charles Watson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1711.  Plaintiff Lance Whitsell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2016 GMC 3500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1712.   Plaintiffs Colton Wilmarth and Kirk Wilmarth (for the purpose of this paragraph,
"Plaintiffs") are citizens of the State of Ohio who acquired a 2016 GMC 2500 in the State of Ohio.
Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel
economy and performance because it was equipped with an emissions system that, during normal
driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful,
and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle
without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of
overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or
recklessly disregarded, the inadequate emission controls during normal driving conditions, but did
not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the
reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"
complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its
promised fuel economy and performance throughout its useful life. Plaintiffs selected and
ultimately acquired the vehicle, in part, because of the diesel system, as represented through
advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs
reviewed one or more of the following sources touting the efficiency, fuel economy, power, and
performance of the engine:  (a) advertisements and information on GM's website; (b) online
advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures
prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of
the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this
design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs
would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an
ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1713.   Plaintiff Jeremy Zack (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2016 GMC 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1714.  Plaintiff Robert Zwick (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2016 Chevrolet 2500 in the State of Ohio. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

**2169**

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

**OKLAHOMA PLAINTIFFS**

1715.   The following Plaintiffs are hereinafter referred to as the "Oklahoma Plaintiffs."

1716. Plaintiff Chandry Abney (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2016 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**2171**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1717.  Plaintiffs Rodney Bailey and Candice Bailey (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oklahoma who acquired a 2016 GMC 2500 in the State of Oklahoma. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1718.  Plaintiff Frank Baker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2015 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1719. Plaintiff Mark Banik (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2012 Chevrolet 3500 in the State of Oklahoma. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1720.   Plaintiff Darren Bartosovsky (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2016 GMC 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1721.  Plaintiff Jeff Brandon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2014 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1722.  Plaintiff Kevin Burch (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2014 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1723.   Plaintiff Brad Burris (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2011 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1724.   Plaintiff Kimberly Clark (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2016 Chevrolet 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1725.   Plaintiffs Scotty Cox and Mary Cox (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oklahoma who acquired a 2015 Chevrolet 3500 in the State of Oklahoma. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1726.   Plaintiff Gary Coyle (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2014 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1727.  Plaintiff Calvin Cureington (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1728. Plaintiff Adam Davidson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2015 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1729.   Plaintiff Marshall DeJear (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2015 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1730.   Plaintiffs Donavan Dudley and Denessa Dudley (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oklahoma who acquired a 2014 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1731.  Plaintiff Bruce Duncan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2015 Chevrolet 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1732. Plaintiff Monty Ervin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2015 GMC 3500 in the State of Oklahoma. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1733.   Plaintiff Chad Estes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2013 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1734.  Plaintiff Mike Estes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2013 GMC 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1735.  Plaintiff David Finch (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2016 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1736.   Plaintiff Joseph Foster (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2016 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1737.   Plaintiffs Garyl Henderson and Gayle Henderson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oklahoma who acquired a 2013 GMC 2500 in the State of Oklahoma. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs

selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1738.   Plaintiff Rocky Hinchey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2016 GMC 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1739.   Plaintiff Charlie Horning (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1740.   Plaintiff Brad Humphries (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2011 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1741.  Plaintiff Larry Jackson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2016 GMC 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1742.   Plaintiff Charles Jewell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2016 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**2205**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1743.   Plaintiff Ted Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma and Plaintiff Foothill Consulting, LLC is a business in the State of Oklahoma, who acquired a 2012 GMC 2500 in the State of Oklahoma. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following

sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1744.   Plaintiffs Duane Keeler and Tammy Keeler (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oklahoma who acquired a 2016 Chevrolet 3500 in the State of Oklahoma. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew

about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1745.   Plaintiff Henry Killion (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2012 Chevrolet 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1746.   Plaintiff Cody Koch (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1747. Plaintiff Matt Ladd (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2012 Chevrolet 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1748.  Plaintiff Darlene Lehman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2013 Chevrolet 3500 in the State of Oklahoma. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1749.   Plaintiff Chris Lemer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2014 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1750.  Plaintiff Todd Mankin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1751. Plaintiff John Marsh (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2014 GMC 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1752.   Plaintiff Charles McFall (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2016 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1753.  Plaintiffs Rick Meason and Lacey Meason (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arizona who acquired a 2011 GMC 3500 in the State of Oklahoma. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs

selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1754. Plaintiffs Billy Meier and Kona Meier (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oklahoma who acquired a 2016 GMC 3500 in the State of Oklahoma. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1755.   Plaintiff Timothy Melton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2015 Chevrolet 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1756. Plaintiff Forrest Mize (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1757. Plaintiff Robert Morrow (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2011 Chevrolet 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1758.   Plaintiff Heath Newland (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2012 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**2226**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1759.  Plaintiff Jim Olivas (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2012 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1760.  Plaintiff Brian Pfeiff (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2015 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1761.  Plaintiffs Gary Richardson and Wilma Richardson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oklahoma who acquired a 2011 Chevrolet 3500

in the State of Oklahoma. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to

what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1762. Plaintiff Brandon Ristau (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2016 Chevrolet 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM;

(c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1763.   Plaintiff Jan Schumann Russell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2013 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the

reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1764.  Plaintiff Billy Savoie (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2011 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and

performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1765.   Plaintiff Richard Shadduck (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2011 Chevrolet 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1766. Plaintiff Robert Sharp (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2015 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised

fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1767.  Plaintiff Clayton Simon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2011 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1768.   Plaintiffs Harry Simpson and L. Elaine Simpson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oklahoma who acquired a 2015 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1769.  Plaintiff Robert Specht (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2012 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1770.  Plaintiff Frank Speed (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2015 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1771.   Plaintiff Jay Standifer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2012 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1772.   Plaintiff Steve Stockton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2015 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1773. Plaintiff Scott Taunton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2015 GMC 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1774.   Plaintiff Kevin Thacker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas and Plaintiff Landon Thacker (for the purpose of this paragraph,

"Plaintiff") is a citizen of the State of Oklahoma, who acquired a 2011 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including

but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1775.   Plaintiff Erick Walker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2015 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM;

(c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1776. Plaintiffs Randall Ward and Melinda Ward (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oklahoma who acquired a 2015 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the

vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1777.   Plaintiff Daniel Weskamp (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2016 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and

performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1778.   Plaintiff EJ Williams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2015 GMC 3500 and a 2016 Chevrolet 3500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1779. Plaintiffs Terry Wilson and Bonnie Wilson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oklahoma who acquired a 2015 Chevrolet 2500 in the State of Oklahoma. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would

retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1780.   Plaintiff Jerome Yeargain (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2011 GMC 2500 in the State of Oklahoma. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1781. Plaintiffs Royce Zybach and DeLois Zybach (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Oklahoma. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

### OREGON PLAINTIFFS

1782. The following Plaintiffs are hereinafter referred to as the "Oregon Plaintiffs."

1783. Plaintiff Jesus Andrade (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2015 Chevrolet 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised

fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1784.  Plaintiffs Bruce Becking and Linda Becking (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oregon who acquired a 2016 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's

unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1785. Plaintiff Matthew Beckman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2011 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1786. Plaintiffs Brian Brewer and Carrie Brewer (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oregon who acquired a 2011 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1787.  Plaintiffs Robert Cour and Christine Cour (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oregon who acquired a 2016 Chevrolet 3500 in the State of Oregon. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the

form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1788.  Plaintiff John Deshazer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2016 GMC 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1789.  Plaintiff Kirk Dority (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2012 Chevrolet 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1790.  Plaintiff Isaac Duling (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2016 Chevrolet 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1791. Plaintiffs Brian Engel and Rashell Engel (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2013 GMC 2500 in the State

of Oregon. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1792. Plaintiff Luke Fortier (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2016 GMC 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1793. Plaintiffs Carl Gage and Gloria Gage (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oregon who acquired a 2014 GMC 2500 in the State of Oregon. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1794. Plaintiff Joseph Garrott (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2013 Chevrolet 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1795.   Plaintiff Randy Gonzales (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2016 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1796. Plaintiff Michael Grant (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2015 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1797.   Plaintiff Ryan Groom (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2015 Chevrolet 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1798.   Plaintiff Jeff Heath (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2016 GMC 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1799. Plaintiff James Hekker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2015 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1800.  Plaintiff Paul Hockersmith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2013 Chevrolet 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1801.   Plaintiffs Kenneth Johnson and Katie Johnson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oregon who acquired a 2013 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1802. Plaintiffs Peter Kerbs and Kay Kerbs (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oregon who acquired a 2013 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1803.  Plaintiffs Jeff Kershaw and Neila Vanaken (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oregon who acquired a 2011 GMC 2500 in the State of Oregon. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1804.  Plaintiff Eric Klopman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2013 GMC 2500 in the State of Oregon. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

**2285**

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1805.   Plaintiff Eric Klopman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington and Plaintiff Travis Bowen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon, who acquired a 2015 GMC 3500 in the State of Oregon. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online

advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1806.   Plaintiff Michael Leary (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2015 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable

but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1807.  Plaintiff Keith Leete (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2013 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and

performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1808.   Plaintiff David Lewis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2015 Chevrolet 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g)

representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1809.   Plaintiff Robert Mager (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2016 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised

fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1810.  Plaintiffs Chinh Nguyen and Leslie Nguyen (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oregon who acquired a 2015 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's

unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1811. Plaintiff Cody Owens (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2016 Chevrolet 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1812.   Plaintiff James Pallo (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2014 GMC 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1813.  Plaintiff Melissa Pennington (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2015 GMC 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1814.   Plaintiff Brad Peters (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2011 GMC 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1815. Plaintiff Jonathan Phelan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2016 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1816.  Plaintiff Jeremiah Platt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2016 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1817.   Plaintiff Darrick Ritter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2012 Chevrolet 3500 in the State of Oregon. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1818. Plaintiff Brandon Roberts (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2016 Chevrolet 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1819.  Plaintiff Alan Rockwood (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2016 GMC 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1820.   Plaintiff Dawn Sayles (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2013 GMC 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1821.   Plaintiff Randy Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2015 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1822. Plaintiff Viktor Sorokin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2016 GMC 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1823.  Plaintiffs Brandon Spry and Keira Coburn-Spry (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oregon who acquired a 2016 GMC 3500 in the State of Oregon. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1824.   Plaintiffs Joseph Steinbruck and Julie Steinbruck (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Oregon who acquired a 2015 Chevrolet 3500 in the State of Oregon. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1825.   Plaintiff Shaun Taylor (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2016 GMC 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1826. Plaintiff Lewis Titus (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2014 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1827.   Plaintiff Steve Woodward (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2015 GMC 3500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**2315**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1828.   Plaintiff Richard Zeegers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oregon who acquired a 2016 Chevrolet 2500 in the State of Oregon. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **PENNSYLVANIA PLAINTIFFS**

1829.   The following Plaintiffs are hereinafter referred to as the "Pennsylvania Plaintiffs."

1830.   Plaintiff Amy Albright (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2015 GMC 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1831.   Plaintiff Noel Allen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York and Plaintiff Danielle Allen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania, who acquired a 2013 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs

have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1832.   Plaintiff Francis Almeter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 Chevrolet 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff

reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1833.  Plaintiff Lance Anthony (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2013 Chevrolet 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or

recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1834.   Plaintiff Brian Atkinson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 GMC 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1835.   Plaintiff Bryan Barnes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2013 GMC 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1836.  Plaintiff Ryan Beichner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2013 GMC 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1837.  Plaintiffs James Bird and Dorothea Bird (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Pennsylvania who acquired a 2014 Chevrolet 2500 in the

State of Pennsylvania. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1838.   Plaintiff Clint Blaney (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2014 GMC 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1839.   Plaintiff Dave Blazavich (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2015 Chevrolet 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1840. Plaintiff Robert Blenis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2014 GMC 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1841.   Plaintiff Allan Boyd (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2015 GMC 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1842.  Plaintiff David Brumbaugh (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2015 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected

and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1843.   Plaintiff Andrew Buslepp (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2011 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1844.   Plaintiff Robert Catoia (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2015 GMC 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1845. Plaintiffs Timothy Chilson and Robyn Chilson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Pennsylvania who acquired a 2011 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1846.  Plaintiffs Andrew Coble and Lori Coble (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of West Virginia who acquired a 2016 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss

in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1847.   Plaintiffs Pat Damiani and Margaret Damiani (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of New York who acquired a 2014 GMC 3500 in the State of Pennsylvania. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1848.   Plaintiff Donald Davis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1849.  Plaintiff Jerry Derouen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2013 GMC 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1850.   Plaintiff Randy Eaton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maine who acquired a 2015 Chevrolet 2500 in the State of Pennsylvania. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1851.   Plaintiff Zachary Embry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1852. Plaintiff Brian Faleshock (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania and Plaintiff Derry Street Resources, LLC is a business in the State of Pennsylvania, who acquired a 2015 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable

but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1853.   Plaintiff Brian Faleshock (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania and Plaintiff Four Season Property Services, LLC is a business in the State of Pennsylvania, who acquired a 2015 Chevrolet 3500 and a 2016 Chevrolet 2500 in the

State of Pennsylvania. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1854.   Plaintiffs Joseph Faraci and Irma Rivera Faraci (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of New Jersey who acquired a 2011 GMC 3500 in the State of Pennsylvania. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales

brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1855.  Plaintiff Tim Feerst (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1856. Plaintiff Tammy Fowble (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2015 GMC 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1857.   Plaintiff Andrew Gingerich (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 Chevrolet 2500 and a 2016 Chevrolet 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer.

Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1858.   Plaintiff Ronald Golden (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2015 GMC 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1859.   Plaintiffs Mike Goodman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania and KEMCO Enterprises, Inc. is a business in the State of Pennsylvania who acquired a 2016 GMC 2500 in the State of Pennsylvania. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive

conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1860.   Plaintiff Gary Green (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2016 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1861. Plaintiffs Robert Hershman and Renita Hershman (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Maryland who acquired a 2016 GMC 3500 in the State of Pennsylvania. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system,

as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1862. Plaintiffs Richard Heycock and Rose Heycock (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Virginia who acquired a 2016 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1863.   Plaintiff Alan Hodge (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 Chevrolet 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1864.   Plaintiff Jake Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2011 GMC 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1865.  Plaintiff Brandon Jones (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 GMC 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1866.   Plaintiff Dennis Kornbrobst (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2011 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1867.   Plaintiff Karl Kovacs (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2011 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1868.  Plaintiff Mark Kowalczyk (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2011 GMC 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1869.  Plaintiff Mark Krause (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2013 GMC 2500 in the State of Pennsylvania. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

2369

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1870.   Plaintiff Matthew Leamer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2015 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1871.   Plaintiff Kevin Long (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2015 GMC 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1872.  Plaintiff Sam Lyons (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2011 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1873. Plaintiff Kenneth Mason (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2014 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1874.   Plaintiff Bruce Maze (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2015 Chevrolet 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1875. Plaintiffs Douglas McClung and Stacey McClung (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Pennsylvania who acquired a 2015 GMC 3500 in the State of Pennsylvania. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing,

selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.   Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully

high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1876. Plaintiff Thomas McCombs (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2011 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1877. Plaintiff Scott Meckes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2012 GMC 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1878. Plaintiff Virgil Miller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2011 GMC 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1879.   Plaintiff James Moyer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2015 GMC 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1880. Plaintiff Joy Mulkern (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1881.  Plaintiff Badur Otarashvili (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 Chevrolet 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1882.   Plaintiff Joseph Pacheco (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2011 Chevrolet 3500 in the State of Pennsylvania.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1883.   Plaintiff David Patton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2015 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1884.   Plaintiff Timothy Plance (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2012 GMC 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1885.  Plaintiffs Wilbert Powell and Carolyn Powell (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Pennsylvania who acquired a 2015 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system

that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the

vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1886.   Plaintiff Ronald Pritt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2011 GMC 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1887.   Plaintiff Shawn Pulver (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2015 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1888.  Plaintiff Michael Rizzo (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2012 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1889.   Plaintiff Dave Russell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2015 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1890. Plaintiffs Shawn Schmidt and Jamie Schmidt (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Pennsylvania who acquired a 2015 GMC 2500 in the State of Pennsylvania. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1891.  Plaintiff Anthony Spennato (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Delaware who acquired a 2013 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1892. Plaintiff Andrew Stiner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2014 GMC 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1893.  Plaintiff Alexander Sulkowski (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 GMC 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1894.  Plaintiff Jeff Tracey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2012 Chevrolet 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1895. Plaintiff Allen Truax (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2011 GMC 2500 in the State of Pennsylvania. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1896.   Plaintiffs Rodney Vanlandingham and Greta Vanlandingham (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Kentucky who acquired a 2014 Chevrolet 3500 in the State of Pennsylvania. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.   Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions

advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1897.   Plaintiff Charles Weber (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2016 Chevrolet 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the

reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1898.  Plaintiff Mark Wettstein (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2011 GMC 3500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel

economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase,

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1900.   Plaintiff John Zrebny (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2011 GMC 2500 in the State of Pennsylvania. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised

fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **RHODE ISLAND PLAINTIFFS**

1901.   The following Plaintiffs are hereinafter referred to as the "Rhode Island Plaintiffs."

1902.   Plaintiff Eric Morrow (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Massachusetts who acquired a 2016 GMC 3500 in the State of Rhode Island. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and

performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1903.   Plaintiff David Sutton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Rhode Island who acquired a 2013 Chevrolet 3500 in the State of Rhode Island. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

### SOUTH CAROLINA PLAINTIFFS

1904.   The following Plaintiffs are hereinafter referred to as the "South Carolina Plaintiffs."

1905.   Plaintiff David Akins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2011 Chevrolet 2500, a 2013 Chevrolet 2500, a 2014 Chevrolet 2500 and a 2015 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the

inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1906.   Plaintiff Mike Bell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2014 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1907.  Plaintiff Chris Brock (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2015 Chevrolet 3500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1908.  Plaintiff Preston Burnett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2016 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1909.  Plaintiffs Denny Conley and Cody Walters (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of South Carolina who acquired a 2012 GMC 3500 in the

State of South Carolina. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to

what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1910.  Plaintiffs Janelle Couch and Josh Rex (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Georgia who acquired a 2015 GMC 2500 in the State of South Carolina. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b)

online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1911.  Plaintiff Alexander Curlington (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2016 GMC 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the

reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1912.  Plaintiff John Evans (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2014 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel

economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase,

and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1913.  Plaintiff Roy Floyd (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2013 Chevrolet 2500 and 2015 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1914.   Plaintiff Terry Garvin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2013 Chevrolet 3500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its

promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1915. Plaintiff Kyle Hamilton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2015 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful,

and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1916.  Plaintiff Kendra Hammons (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2016 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1917.  Plaintiff Samuel Harrelson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2014 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1918. Plaintiff Dean Hensley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2016 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1919.   Plaintiff Craig Kaplenski (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2011 Chevrolet 3500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1920.   Plaintiffs Barry Kimmons and Janna Kimmons (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Georgia who acquired a 2012 Chevrolet 3500 in the State of South Carolina. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1921. Plaintiff Greg Leviner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2011 GMC 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1922.  Plaintiff Mark Mack (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2013 GMC 2500 in the State of South Carolina.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1923.   Plaintiff Tom McCombs (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2011 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1924. Plaintiff Jason McKay (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2011 GMC 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1925.  Plaintiff David Milliken (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2015 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1926.   Plaintiff Tonya Nesbitt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2015 Chevrolet 3500 and a 2016 Chevrolet 3500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1927.   Plaintiff George Oliver (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2016 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1928.   Plaintiff Hugh Parker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina and Plaintiff Parker Construction of Union, LLC is a business in the State of North Carolina, who acquired a 2012 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful,

and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1929.   Plaintiff Marcus Pierce (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2014 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1930.   Plaintiff Abraham Porter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2015 GMC 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1931.  Plaintiff Darren Rogers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2011 GMC 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1932.   Plaintiff Josh Shumpert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2016 Chevrolet 3500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1933.  Plaintiff Alex Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2013 GMC 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1934.  Plaintiff Sam Taylor (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2016 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1935. Plaintiff Bryan Watkins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2011 Chevrolet 2500 in the State of South Carolina.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1936.   Plaintiff James Whisenhunt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2011 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1937.   Plaintiff Timothy Wilkes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Carolina who acquired a 2015 Chevrolet 2500 in the State of South Carolina. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## SOUTH DAKOTA PLAINTIFFS

1938.   The following Plaintiffs are hereinafter referred to as the "South Dakota Plaintiffs."

1939.   Plaintiff John Baumiller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Dakota who acquired a 2012 Chevrolet 2500 in the State of South Dakota.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1940. Plaintiff Jerry Bell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Dakota who acquired a 2016 Chevrolet 3500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1941.   Plaintiff Sheena Cossette (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Dakota who acquired a 2011 GMC 2500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1942.  Plaintiff Robert Crandall (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Dakota who acquired a 2012 GMC 2500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1943.  Plaintiffs Ronald Denman and Janet Denman (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of South Dakota who acquired a 2013 GMC 2500 in the State of South Dakota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM

disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1944.   Plaintiff Robert Donat (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Dakota who acquired a 2015 GMC 2500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1945.  Plaintiffs Mark Doyle and Tina Doyle (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wyoming who acquired a 2016 Chevrolet 3500 in the State of South Dakota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1946.   Plaintiff Boe Finkbeiner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2014 GMC 2500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1947. Plaintiff Edwin Flemming (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Dakota who acquired a 2015 Chevrolet 3500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1948.  Plaintiffs Daniel French and Stacie French (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of South Dakota who acquired a 2015 Chevrolet 2500 in the State of South Dakota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss

in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1949.   Plaintiff Brian Hadrick (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska who acquired a 2016 Chevrolet 3500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1950.  Plaintiff Chad Hasert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Dakota who acquired a 2016 GMC 2500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1951.  Plaintiffs Douglas Hulscher and Patty Hulscher (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of South Dakota who acquired a 2015 Chevrolet 2500 in the State of South Dakota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1952. Plaintiffs Jim Johnson and Juleen Johnson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Nebraska who acquired a 2015 Chevrolet 2500 in the State

of South Dakota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1953. Plaintiff Tom Martin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2011 GMC 2500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1954.  Plaintiff Zach Routt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Dakota who acquired a 2012 GMC 2500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1955.   Plaintiff Casey Schaaf (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nebraska and Plaintiff Nebraskaland Pets, Inc. is a business in the State of Nebraska, who acquired a 2011 Chevrolet 2500 in the State of South Dakota. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance

because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1956.   Plaintiff David Self (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Dakota who acquired a 2016 Chevrolet 3500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1957.   Plaintiff John Sternhagen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Dakota who acquired a 2016 Chevrolet 3500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its

promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1958.   Plaintiff Clinton Streeter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2015 Chevrolet 2500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful,

and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1959.   Plaintiff Dillan Vancil (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2015 GMC 2500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1960.   Plaintiff Darin Wieseler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Dakota who acquired a 2015 GMC 3500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1961.  Plaintiff Terry Williams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 Chevrolet 2500 in the State of South Dakota. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **TENNESSEE PLAINTIFFS**

1962.   The following Plaintiffs are hereinafter referred to as the "Tennessee Plaintiffs."

1963.   Plaintiff Danny Anderson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2016 GMC 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1964.  Plaintiff Don Atwood (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2012 Chevrolet 3500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1965.  Plaintiff Matthew Barnhill (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2012 GMC 3500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1966.   Plaintiff Eric Cannon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2016 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1967.   Plaintiff Garry Clausing (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kansas who acquired a 2013 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1968. Plaintiff Thomas Collins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2015 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1969.   Plaintiff Tom Cuff (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2015 GMC 2500 in the State of Tennessee. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1970.   Plaintiff Marcel Fortier (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2011 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1971. Plaintiff Victor Franco (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2016 GMC 3500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1972.   Plaintiff John Gass (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2013 Chevrolet 3500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1973.   Plaintiff Michael Hartke (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2015 GMC 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1974.   Plaintiff Pam Head (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2016 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1975.   Plaintiff Mike Helms (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2012 GMC 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1976. Plaintiffs Mark Hickman and Connie Hickman (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Tennessee who acquired a 2014 Chevrolet 3500 in the State of Tennessee. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1977.   Plaintiff Roger Hornsby (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2014 GMC 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1978.  Plaintiff Will Howard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2015 GMC 3500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1979.   Plaintiff George Hughes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2016 GMC 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1980.   Plaintiff Joe Hughes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2015 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1981.  Plaintiffs Charles Hurmiz and Annette Hurmiz (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Tennessee who acquired a 2011 Chevrolet 3500 in the State of Tennessee. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1982.   Plaintiff Rachel Jackson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2015 GMC 2500 in the State of Tennessee. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1983.   Plaintiff Nicole Jones (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2015 GMC 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1984.  Plaintiff Curtis Kennedy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2012 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1985.  Plaintiff Scott Kolinski (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2015 Chevrolet 3500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1986.   Plaintiff Harold Lewis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2014 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1987. Plaintiff Thomas Lewis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2015 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1988.   Plaintiff Nathan Mackie (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1989.   Plaintiff William Marler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2013 GMC 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1990.   Plaintiff Dennis Martin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Kentucky who acquired a 2011 Chevrolet 3500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1991.  Plaintiff Christopher McCulley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2011 GMC 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1992.  Plaintiff Robert Mckell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2016 GMC 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1993.   Plaintiff Larry McMillan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2016 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1994. Plaintiff Patrick Monier (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 Chevrolet 3500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1995.  Plaintiffs David Phillips and Deborah Phillips (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Tennessee who acquired a 2012 Chevrolet 2500 in the State

of Tennessee. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1996.   Plaintiffs Kenneth Phillips and Brenda Phillips (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Tennessee who acquired a 2015 Chevrolet 3500 in the State of Tennessee. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales

brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1997. Plaintiffs Randy Ragon and Sharon Ragon (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Tennessee who acquired a 2014 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low

emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1998.  Plaintiff Eric Rankin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2015 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

1999.   Plaintiff Cathy Romine (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2011 Chevrolet 3500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2000.   Plaintiff Joseph Rowe (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2015 GMC 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2001.   Plaintiff Carl Sanford (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2011 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2002.   Plaintiff James Shaw (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2015 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2003. Plaintiffs John Skaggs and Linda Skaggs (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Tennessee who acquired a 2016 GMC 2500 in the State of Tennessee. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2004.   Plaintiff James Tanner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2011 Chevrolet 3500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2005.   Plaintiff Richard Vasser (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2016 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2006.  Plaintiff Rich Wine (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2015 GMC 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2007.  Plaintiff Carley Young (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2011 Chevrolet 2500 in the State of Tennessee. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2008.   Plaintiff Dave Zeman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2011 Chevrolet 3500 in the State of Tennessee. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

**TEXAS PLAINTIFFS**

2009.   The following Plaintiffs are hereinafter referred to as the "Texas Plaintiffs."

2010.   Plaintiff Shelby Belcher (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2012 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2011. Plaintiffs Janine Cope and Kevin Cope (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Louisiana who acquired a 2012 Chevrolet 2500 and a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during

normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.   Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2012.   Plaintiff Kris Abbott (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2013.   Plaintiff Richard Abel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2014.  Plaintiff Michael Abke (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2015.   Plaintiff Joseph Abraham (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2016.   Plaintiff Cecil Adkisson and Diane Harrelle (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2017.   Plaintiff Mike Allbright (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2018.  Plaintiff Wayland Allen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2019.   Plaintiff Ted Alley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2020.  Plaintiff Xavier Amador (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2021. Plaintiff Roberto Arce (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the

inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that

the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and

performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following

sources touting the efficiency, fuel economy, power, and performance of the engine:  (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio

and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g)

representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of

GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the

Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2022.   Plaintiff Jose Armendariz (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2023. Plaintiff KoRee Arnold (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2024. Plaintiff Joseph Astling (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2025.   Plaintiff Stephen Santellana (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2026.   Plaintiff Joseph Santiago (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2027.   Plaintiff Chris Savage (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2028. Plaintiff Jeff Perry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at

the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2029.  Plaintiffs Robin Perry and Richard Perry (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2014 Chevrolet 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2030.  Plaintiffs Rhett Peterson and Bailey Peterson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2031.  Plaintiff Mark Pethtel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2032.   Plaintiff Marcus Petty (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2033.   Plaintiff Marie Plant (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2034. Plaintiff Danny Poole (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2035.   Plaintiff Thomas Posey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2036.   Plaintiff Brenda Potter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2037.   Plaintiff Laramie Potts (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2038.   Plaintiff Alex Priest (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2039.   Plaintiff Keith Pryor (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 2500 and (2) 2014 Chevrolet 3500s in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2040.  Plaintiff James Quinn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2041.   Plaintiff Juan Carlos Quiroa (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 3500 in the State of Texas. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2042.   Plaintiff Kenneth Ramb (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2043.   Plaintiff Robbie Raymond (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2011 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

2590

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2044.   Plaintiff Gus Reinolds (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2045.   Plaintiff Ruben Reyes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2046.   Plaintiff Daniel Reyna (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2047. Plaintiff Chuck Reynolds (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2048. Plaintiff Jonathan Richards (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2049. Plaintiff Ron Rivera (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2050. Plaintiff Brian Robertson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2051.  Plaintiff Joey Rodriguez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2052.   Plaintiff Matthew Roy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2053.  Plaintiff Alfredo Rueda (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2054. Plaintiffs Shreves Minton and Jeanette Minton (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of

Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2055.   Plaintiff William Mitchell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2056.   Plaintiff Willie Molina (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2057. Plaintiff Jose Montalvo (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2058.   Plaintiff Sergio Montemayor (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2059.   Plaintiff Dilma Morales (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2060.  Plaintiff William Morefield (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2061.   Plaintiff Grant Morgan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2062.   Plaintiff Thomas Morgan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2063.  Plaintiff Logan Morris (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2064.  Plaintiffs Paul Morris and Barbara Morris (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2065.   Plaintiff Tyler Morrow (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2066.  Plaintiff Alton Mosley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2067.   Plaintiff Robert Mossman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2068.   Plaintiff Darel Mowry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2069. Plaintiff Eric Muenzler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2070.  Plaintiff Ronald Murphy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2071. Plaintiff Tom Nairn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2072.   Plaintiffs Joseph Necaise and Nancy Necaise (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2011 Chevrolet 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2073.  Plaintiff Brandon Newcomb (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2011 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2074.   Plaintiff James Nickelson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2075.   Plaintiff Roger O'Dell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2076.  Plaintiffs Ronald Odom and Christina Odom (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of

**2633**

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2077.   Plaintiff John Orfila (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2078.   Plaintiff Johnny Orosco (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2079. Plaintiff Kevin Osterson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2080.  Plaintiff Zane Paddack (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2081.   Plaintiff Colt Patterson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2082.  Plaintiffs Michael Pearson and James Harp (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2083.  Plaintiff Augustin Pena (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2084.   Plaintiff Gregory Perales (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2085.   Plaintiff Benito Perez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2086. Plaintiff Carlos Perez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the

inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that

the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and

performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following

sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio

and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g)

representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of

GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the

Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2087.   Plaintiff Joe Russell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2088. Plaintiff Scott Saathoff (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2089. Plaintiff John Sackett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2090. Plaintiff Justin Sain (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**2652**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2091.   Plaintiff Carlos Sanchez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of California who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2092.   Plaintiff Joey Aten (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2093.  Plaintiff Tommy Authement (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2094. Plaintiff Cory Bachausen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2095. Plaintiff Gustavo Baez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 and a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2096.  Plaintiff Timothy Baeza (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2097.   Plaintiff Scott Banks (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2011 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2098.   Plaintiff Derrick Barber (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2099.  Plaintiff Christopher Barnes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2100.   Plaintiff Joe Basham (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2101.  Plaintiff Jim Batben (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2102.  Plaintiff Adam Baxter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2103.   Plaintiffs Terry Beasley and Donna Beasley (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Alabama who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2104.   Plaintiff Jeffery Bell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2105. Plaintiff David Belvin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2106.   Plaintiff Nitin Bhakta (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2016 GMC 2500 in the State of Texas. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2107. Plaintiff Todd Blackburn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2108.   Plaintiff Justin Blodgett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2109. Plaintiffs James Borden and Jennifer Borden (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2014 Chevrolet 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during

normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2110.   Plaintiff James Borders (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2111. Plaintiff Richard Bowen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2112. Plaintiff Janet Bowen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 and a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2113. Plaintiff Trent Bowman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Indiana who acquired a 2011 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2114.   Plaintiffs William Bowman and Letitia Bowman (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2115. Plaintiff Dana Boyd (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2116.   Plaintiffs Joshua Boyd and Casey Tapley (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2117.   Plaintiff Larry Bozeman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2118.  Plaintiff Stuart Bozeman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2119.   Plaintiff Susan Bozeman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2120.  Plaintiff Michael Bradberry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2121.   Plaintiff William Brandau (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2013 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2122.   Plaintiff Billy Brimberry (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2123.   Plaintiff Corey Brittain (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2124. Plaintiffs Curtis Brown and Rebecca Brown (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2125.   Plaintiff Alfredo Bustinza (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2126.   Plaintiff William Byers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2127.   Plaintiff Jay Cantwell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2128. Plaintiffs Joshua Carradine and Angela Carradine (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Tennessee who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss

in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2129.   Plaintiff Adolfo Carrasco (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired (2) 2012 Chevrolet 3500s in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2130.   Plaintiff Carlos Castillo (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2131.  Plaintiff Joe Castillo (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2132.   Plaintiff John Cauley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 GMC 3500 in the State of Texas. Unknown to Plaintiff at

the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2133.   Plaintiff Timothy Ceasar (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2134.  Plaintiff Gayle Chaney (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2135.   Plaintiff Terry Christian (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2136.   Plaintiff Albert Cisneros (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2137.   Plaintiff Russell Coats (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2138.   Plaintiff Carson Coleman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired (2) 2016 Chevrolet 2500s in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2139.   Plaintiff Tim Cones (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2140.   Plaintiff Brian Cook (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2141.  Plaintiff James Cooley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Mississippi who acquired a 2012 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2142.   Plaintiff Greg Coon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Colorado and Plaintiff Advanced Wallboard, LLC is a business in the State of Colorado, who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result

of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2143. Plaintiff Robert Cormier (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following

sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2144. Plaintiff Wayne Daniel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly

disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2145.   Plaintiff Luis Dasilva (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**2724**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2146.   Plaintiff Juan Davila (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2147.  Plaintiff Johnnie Day (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2148.  Plaintiff Gloria De La Riva (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2149.   Plaintiff Stewart Dearing (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2150. Plaintiffs Robert Dennis and Peggy Dennis (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2013 GMC 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2151.   Plaintiff Joe Detwiler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2152.  Plaintiffs Charles Dillard and Trisha Dillard (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2153.   Plaintiff Grant Dixon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2154. Plaintiff John Dornak (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the

inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that

the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and

performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following

sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio

and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g)

representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of

GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the

Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2155. Plaintiff Lance Driskill (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Missouri who acquired a 2013 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2156. Plaintiffs Chuck Dunn and Jackie Dunn (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2157.  Plaintiff Larry Dyer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2158.   Plaintiff Donald Ealand (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2159.   Plaintiff Michael Eaton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2160.   Plaintiff Roy Eddins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2161.  Plaintiffs Marc Edelman and Luanne Edelman (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2015 GMC 2500 in the State of

Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2162.  Plaintiff Drannon Edmison (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2163.   Plaintiffs Kevin Eldridge and Christine Eldridge (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2011 GMC 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2164.  Plaintiffs James Ethridge and Paula Ethridge (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2013 Chevrolet 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during

normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2165.   Plaintiff Clint Evans (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2166.   Plaintiff Shannon Everitt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2167.   Plaintiff Rodney Farmer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2168.   Plaintiff Joe Faulkner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2169. Plaintiffs Brad Fielder and Tracy Fielder (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2013 GMC 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2170.  Plaintiff Mark Files (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2011 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2171. Plaintiff John Finch (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**2758**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2172. Plaintiff Rob Fitzsimmons (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2012 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2173.  Plaintiffs Adolfo Flores and Cecilia Flores (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2174.  Plaintiffs Hank Flowers and Diann Flowers (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2015 GMC 2500 in the State of

Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2175.   Plaintiff Chris Fontenot (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2176.  Plaintiff Kevan Fowler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2177.   Plaintiff Tommy Franklin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2178.   Plaintiff Ricky Frazier (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2179.   Plaintiff Richard Frier (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Dakota who acquired a 2012 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2180.   Plaintiff Rudy Galvan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2181.   Plaintiff Jesse Garcia (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2182.   Plaintiff Luis Garcia (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2183. Plaintiff Matthew Garcia (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of California who acquired a 2011 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2184.   Plaintiff Edward Garza (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2185.  Plaintiff Gustavo Garza (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2186.   Plaintiff Leonel Garza (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2187.  Plaintiff Chris Gaul (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2188.  Plaintiff Randy Gill (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2189.  Plaintiff Abel Gonzales (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2190. Plaintiff Dennis Gonzales (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2191.   Plaintiffs David Gooch and Laura Gooch (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2192.   Plaintiff Emmett Gotcher (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2193.   Plaintiff Leonard Graham (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2194.   Plaintiff Ryan Grant (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2195. Plaintiff Jimmie Gray (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2196.  Plaintiff Garry Green (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2197.   Plaintiffs Johnnie Guelker and Cindy Guelker (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2198.   Plaintiff Esther Gutierrez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2199. Plaintiff Anton Hackebeil (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2200.  Plaintiff Roger Hair (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired (2) 2011 GMC 2500s in the State of Texas. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2201.   Plaintiff Lisa Hall (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.   Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2202.  Plaintiff Tarek Hamedi (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2203.  Plaintiff Kenneth Hancock (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2204. Plaintiff Mike Hardin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

**2801**

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2205. Plaintiff Ronnie Harris (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arkansas who acquired a 2011 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2206.   Plaintiff Lester Harrison (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2207.   Plaintiff Albert Hawkins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2208.  Plaintiff Dale Haynes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2209.  Plaintiff Brandi Henderson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2210.   Plaintiffs Chris Hendricks and Nicole Hendricks (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2011 GMC 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2211.  Plaintiff Gerardo Hernandez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2015 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2212.  Plaintiffs Victor Hernandez and Rosa Diaz-Hernandez (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2014 Chevrolet 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2213.  Plaintiff Uhola Herrington (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 GMC 3500 in the State of Texas. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2214.   Plaintiff Kenneth Hibbs (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2215.  Plaintiff Rebecca Hiers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2216. Plaintiff Timothy Hill (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2217.   Plaintiff Scott Hines (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2218.   Plaintiff John Hoelewyn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2219.  Plaintiff Highland Holloway (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2220.   Plaintiff Robert Holmes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2221. Plaintiff Doug Hornsby (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2222. Plaintiff Reagan Houston (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2223.   Plaintiff Ross Houston (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**2826**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2224. Plaintiffs Rick Howe and Laura Howe (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2225. Plaintiffs Charles Humphrey and Dinah Humphrey (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arkansas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2226.  Plaintiff Steve Hundt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2227.   Plaintiff Chester Hurst (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2228. Plaintiffs Blaine Irvin and Cecelia Irvin (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2229.   Plaintiff Carl Ivers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2230.  Plaintiff Kevin Jackson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2231. Plaintiff Christopher Jagneaux (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2232.   Plaintiff Thomas Jenkins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2233.  Plaintiff Brian Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2234.   Plaintiff Matt Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2235.  Plaintiff Harvey Kalina (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2236. Plaintiff Larry Kee (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2237.   Plaintiff Sean Keller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2238. Plaintiff Lonnie Kellermeier (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2239. Plaintiff Kenneth Kelly (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2012 GMC 3500 in the State of Texas. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2240.   Plaintiff Robin Kemp (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2011 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.   Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2241.  Plaintiff Kevin Kendall (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2242.   Plaintiff Roger Keys (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2243.   Plaintiff Timothy Kiker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2244.  Plaintiffs Danny Kimball and Angelika Kimball (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Iowa who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2245.  Plaintiff David Kington (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2246.   Plaintiff Shawn Knight (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 Chevrolet 2500 and a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2247. Plaintiff Cody Koch (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2248.  Plaintiff LeRoy Koenig (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2249.   Plaintiffs Chris Koru and Misty Koru (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2012 GMC 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2250.  Plaintiff Casey Kral (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2251.  Plaintiff Robert Lane (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2011 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2252. Plaintiff Jack Laney (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2011 GMC 3500 in the State of Texas. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2253.   Plaintiff Larry Langley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2254. Plaintiffs Barry Larkin and Lynne Larkin (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2015 GMC 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2255. Plaintiff Nathan LaRue (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2256.   Plaintiff Ollie LeBlanc (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2257.   Plaintiff Brent Lee (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2258.   Plaintiff Ronnie Leonard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2259.   Plaintiff Andy Leone (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2260.  Plaintiff Carl Lively (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2261. Plaintiff Tommy Lopez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2262.   Plaintiff Noe Lucero (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2263.   Plaintiff Larry Lytle (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2264. Plaintiff Cody Main (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Oklahoma who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2265.  Plaintiff Ricardo Maldonado (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2266.   Plaintiff Jack Maldonaldo (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2267.   Plaintiff Perfecto Mancha (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2268.  Plaintiff William Marguerat (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2269. Plaintiff Darin Martin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired (2) 2015 Chevrolet 2500s in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2270.  Plaintiff Dionicio Martinez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of TX who acquired a 2011 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2271.   Plaintiff Joaquin Martinez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2272.   Plaintiff Randy McAdams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2273.   Plaintiff Nathan McGuire (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2274. Plaintiffs Toby McPherson and CrystalRae McPherson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the

form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2275.   Plaintiff Mark Medinger (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2276.   Plaintiff Will Medsger (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2277.   Plaintiff Johnny Mejia (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of California who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2278.   Plaintiff Bryan Meredith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 Chevrolet 2500 in the State of Texas. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2279. Plaintiff Karl Meyer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2280. Plaintiff James Miles (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2281.  Plaintiff Micahel Miles (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2282.   Plaintiff Jamie Miller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2283.  Plaintiff Ray Miller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2284.   Plaintiff Keith Minter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2285.   Plaintiff Christopher Scott (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2286.   Plaintiff Robert Secody (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Arizona who acquired a 2013 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2287.   Plaintiff Lloyd Seeley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2288.   Plaintiffs Israel Segovia and Dolores Segovia (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2016 GMC 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2289.   Plaintiff Volley Seymore (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2290.  Plaintiff Michael Sharp (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2291.  Plaintiff Patrick Shea (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2012 GMC 3500 in the State of Texas. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2292.   Plaintiff Michael Short (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2293.  Plaintiff Sam Sifuentes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2013 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2294.  Plaintiff Carl Thomas (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2295. Plaintiff Michael Tingley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2296.  Plaintiff Tommy Tompkins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2297.   Plaintiff Dan Toth (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the

inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that

the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and

performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made

by GM.   Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following

sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio

and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g)

representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of

GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the

Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2298.   Plaintiff Lane Toups (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2299. Plaintiff Van Tran (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2300. Plaintiff Jeremy Treadway (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2301. Plaintiff Ricky Treadway (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**2928**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2302.  Plaintiff Clint Trewin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2303. Plaintiff Michael Tucker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2304.   Plaintiff Dale Umphrey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2305.   Plaintiff David Vander Straten (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2306. Plaintiff Kenny VanPelt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2307. Plaintiff Arturo Vasquez (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2308.   Plaintiff Abilio Vela (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2309.   Plaintiff Philip Vezorak (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2310. Plaintiffs Gary Virden and Mary Virden (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2014 Chevrolet 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2311.   Plaintiff Greg Vital (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Tennessee who acquired a 2014 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2312.   Plaintiff Rodney Wade (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2313.  Plaintiff Arlen Walker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2314.   Plaintiff Garrett Walker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2315.  Plaintiff Curt Wallace (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2316.   Plaintiff Eric Warren (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2317.  Plaintiffs Edward Way and Krystal Way (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Tennessee who acquired a 2015 Chevrolet 3500 in the State

of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2318.   Plaintiff Nick Webster (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2319. Plaintiff Steve White (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2320. Plaintiffs Hank Whitehead and Lisa Whitehead (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2015 GMC 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during

normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2321.   Plaintiff Jonathan Whitmire (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2322.   Plaintiff James Whitt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2323. Plaintiff Roger Wieland and Deborah Wieland (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2324.   Plaintiff Russell Wiese (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2325.   Plaintiff Arvil Williams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2326.  Plaintiff Daryl Williams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2327.   Plaintiff Chad Wilson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2328.  Plaintiff Clifford Wineland (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2329. Plaintiff Marshall Womack (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2330.   Plaintiff Bill Wood (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at

the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2331.   Plaintiff James Wootten (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maine who acquired a 2015 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2332.  Plaintiff Ryan Yerby (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Louisiana who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2333. Plaintiff Jonathan Yocom (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2334. Plaintiffs Clayton Ziegler and Gene Ziegler (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2013 GMC 2500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2335.   Plaintiff Coy Sloan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2336.   Plaintiff Scott Sly (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2337.   Plaintiff Eric Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2338.  Plaintiff Steven Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2339.  Plaintiff Presley Smithwick (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2340.   Plaintiff Mike Snow (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2341.   Plaintiff Rodney Soileau (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2342.  Plaintiff Arturo Solis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2343.   Plaintiff Jeff Spencer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff

at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2344.  Plaintiff Dylan Stahle (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2345.   Plaintiff Tim Richardson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2346.   Plaintiff Charles Richnow (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2014 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2347.   Plaintiffs Eric Ridenhour and Lisa Ridenhour (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Missouri who acquired a 2011 GMC 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2348. Plaintiff Robert Stanger (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2011 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2349.   Plaintiff James Stavinoha (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 Chevrolet 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2350.   Plaintiff Leland Stennett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2013 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2351. Plaintiff Joe Stern (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of TX who acquired a 2015 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2352. Plaintiffs Donnie Stevenson and Patricia Stevenson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the

form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2353. Plaintiff Patrick Stokey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2016 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2354.   Plaintiff Jeremy Stoliker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2011 GMC 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2355. Plaintiffs Jay Stoner and Vera Stoner (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of South Dakota who acquired a 2015 Chevrolet 3500 in the State of Texas. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2356.  Plaintiff Michael Sutton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Alabama who acquired a 2013 Chevrolet 3500 in the State of Texas. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2357.   Plaintiff Caitlin Szanyi (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2012 Chevrolet 2500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2358.   Plaintiff Martin Testorff (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Mexico who acquired a 2013 GMC 3500 in the State of Texas. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## UTAH PLAINTIFFS

2359.   The following Plaintiffs are hereinafter referred to as the "Utah Plaintiffs."

2360.   Plaintiffs Rex Alger and Mary Alger (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Utah who acquired a 2016 Chevrolet 3500 in the State of Utah.

Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2361. Plaintiffs Timothy Anderson and Cherie Anderson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Utah who acquired a 2011 Chevrolet 2500 in the State of Utah. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales

brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2362.   Plaintiff Trent Anderson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2011 GMC 2500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2363. Plaintiff Burl Applegate (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2013 Chevrolet 2500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2364. Plaintiff Ted Barber (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2014 GMC 3500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2365.   Plaintiff Brigham Barlow (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2016 GMC 2500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2366. Plaintiffs Tim Bennett and Amanda Bennett (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Utah who acquired a 2015 GMC 3500 in the State of Utah. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2367.   Plaintiff Kelly Bills (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2016 Chevrolet 2500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2368.   Plaintiff Brian Bradford (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2015 Chevrolet 3500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2369. Plaintiff Shane Canal (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2011 GMC 3500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2370.   Plaintiffs Tim Carey and Deborah Cusic (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Colorado who acquired a 2013 Chevrolet 3500 in the State of Utah. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2371.   Plaintiffs Donald Deputy and Ritchie Deputy (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2012 GMC 2500 in the State of Utah. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2372.  Plaintiff Lloyd Garrard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2016 Chevrolet 3500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2373.   Plaintiff Gary Gillett (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2016 GMC 3500 in the State of Utah. Unknown to Plaintiff at

the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2374.   Plaintiff Roccy Hansana (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2016 GMC 3500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2375. Plaintiff Mike Hanyon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2014 GMC 3500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2376. Plaintiff Nate Knight (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2016 GMC 2500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2377.   Plaintiffs Michael Lucas and Donna York (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Utah who acquired a 2016 Chevrolet 3500 in the State of Utah. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2378. Plaintiffs Chet Manczak and Kimberly Manczak (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Maine who acquired a 2012 GMC 2500 in the State of Utah. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2379.  Plaintiff Linn McCourt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2012 Chevrolet 3500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2380.   Plaintiff Robert McLean (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2015 Chevrolet 2500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2381.  Plaintiff Kelly Murphy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2015 GMC 2500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2382.  Plaintiff Joshua Ohl (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2015 GMC 2500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time

**3032**

of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.   Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2383.   Plaintiffs Herman Pluim and Deanne Pluim (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Utah who acquired a 2015 GMC 2500 in the State of Utah. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2384.   Plaintiff Jon Pulley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2013 GMC 2500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2385.   Plaintiffs Paul Reutlinger and Sherry Reutlinger (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2015 GMC 2500 in the State of Utah. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2386.   Plaintiff Robby Robinson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2016 GMC 3500 in the State of Utah. Unknown to Plaintiff at

the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2387. Plaintiff Johnny Roche (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2016 Chevrolet 2500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2388.   Plaintiff Rees Rumsey (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2011 Chevrolet 3500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2389.   Plaintiff Travis Sanderson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2015 GMC 3500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions,

exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2390.   Plaintiff Mike Schille (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2011 Chevrolet 2500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2391.   Plaintiff Christopher Spencer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Dakota who acquired a 2015 GMC 2500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2392.   Plaintiff Matthew Stark (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2013 GMC 3500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2393.   Plaintiff Kristie Sutton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Idaho who acquired a 2011 GMC 2500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2394.   Plaintiff Randy Taylor (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2015 GMC 3500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made

by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2395. Plaintiffs Tony Whittaker and Melissa Whittaker (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Nevada who acquired a 2015 Chevrolet 3500 in the State of Utah. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2396.   Plaintiff Brian Williams (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2015 GMC 3500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2397.   Plaintiff Allan Willis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2012 Chevrolet 2500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a)

advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2398.  Plaintiff Steven Wright (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Texas who acquired a 2015 Chevrolet 3500 in the State of Utah. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **VERMONT PLAINTIFFS**

2399. The following Plaintiffs are hereinafter referred to as the "Vermont Plaintiffs."

2400.   Plaintiff Stanley Alt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Vermont who acquired a 2012 GMC 3500 in the State of Vermont. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2401.   Plaintiff Christine Cole (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2011 GMC 2500 in the State of Vermont. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2402.  Plaintiff Beverly Gavin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2014 GMC 2500 in the State of Vermont. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2403.  Plaintiff Brian Gibbs (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Vermont who acquired a 2015 Chevrolet 2500 in the State of Vermont. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2404.   Plaintiff Randy Howard (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Vermont who acquired a 2011 Chevrolet 2500 in the State of Vermont. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2405. Plaintiff Andrew Mattison (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Vermont who acquired a 2011 GMC 2500 in the State of Vermont. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2406.   Plaintiff Michael Sheehe (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Vermont and Plaintiff Sheehe's Heating & Home Improvements, Inc. is a business in the State of Vermont, who acquired a 2011 GMC 3500 in the State of Vermont. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and

performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2407.   Plaintiff Lawrence White (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Vermont who acquired a 2015 GMC 2500 in the State of Vermont. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g)

representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **VIRGINIA PLAINTIFFS**

2408. The following Plaintiffs are hereinafter referred to as the "Virginia Plaintiffs."

2409. Plaintiff Michael Brown (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2013 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the

reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2410.  Plaintiff Julie Bullock (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2012 Chevrolet 3500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and

performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2411.   Plaintiff Michael Burt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2016 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g)

representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2412.   Plaintiff Michael Calkins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2011 Chevrolet 3500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised

3069

fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2413.   Plaintiff Danny Carter (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2013 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2414. Plaintiff Robert Chapman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of South Dakota who acquired a 2013 GMC 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2415. Plaintiffs Justin Clark and Audrey Clark (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of North Carolina who acquired a 2015 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2416.  Plaintiff Zack Crosby (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2016 Chevrolet 3500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2417.   Plaintiff Leonard Dameron (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2011 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2418.  Plaintiff David Driscoll (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2016 GMC 3500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2419.  Plaintiffs Charles Eaton and Linda Thompson-Eaton (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Virginia who acquired a 2015 GMC 2500 in the State of Virginia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2420. Plaintiff Andrew Ferguson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2015 Chevrolet 2500 in the State of Virginia.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2421. Plaintiffs Ken Fleegle and Holly Fleegle (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Pennsylvania who acquired a 2013 Chevrolet 3500 in the State of Virginia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales

brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2422.   Plaintiff Grayson Francis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2015 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2423.  Plaintiffs Doug Gasser and Bonnie Gasser (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Virginia who acquired a 2011 GMC 3500 in the State of Virginia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during

normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2424.   Plaintiff Kathryn Harden (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2014 GMC 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2425.  Plaintiff Wayne Huffman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2014 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2426. Plaintiff Clayton Hunt (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2013 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2427.   Plaintiff Barry Hurley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2015 GMC 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2428. Plaintiff Myra Jackson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2011 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2429.  Plaintiff Emory Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2016 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2430.   Plaintiff John King (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2013 GMC 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**3093**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2431.   Plaintiff Randy Lambert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2016 GMC 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2432.  Plaintiff Robert Lapera (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 Chevrolet 3500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2433.   Plaintiff Mick Lay (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2011 Chevrolet 2500 in the State of Virginia. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

**3097**

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2434.   Plaintiff James Linton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia and Plaintiff Shore Professional Services, LLC is a business in the State of Virginia, who acquired a 2016 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio

and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2435. Plaintiff David Mcfall (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2014 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable

but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2436.  Plaintiff Tim Monahan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2011 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and

performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2437.   Plaintiff Justin Montgomery (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Maryland who acquired a 2016 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2438.   Plaintiff Roy Mullins (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2011 Chevrolet 3500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised

fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2439. Plaintiff Almedin Muminovic (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2015 GMC 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2440. Plaintiff Kenneth Neel (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2015 Chevrolet 3500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2441.   Plaintiff Kevin O'Connell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2016 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2442.  Plaintiff Michael Orndorff (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2016 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2443.   Plaintiff Frank O'Rourke (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New York who acquired a 2016 Chevrolet 3500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2444.  Plaintiff Brandon Pendergrass (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Florida who acquired a 2016 Chevrolet 3500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2445.  Plaintiff Ron Randall (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2015 GMC 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or

their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2446.   Plaintiff James Stokes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2016 Chevrolet 2500 in the State of Virginia. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2447.   Plaintiff Dennis Tate (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2011 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2448. Plaintiff Edward Tate (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2013 GMC 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions

standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2449.  Plaintiff Christopher Tinker (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Carolina who acquired a 2016 GMC 3500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2450.  Plaintiff Krestopher VanDyke (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2015 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2451. Plaintiff Brent Wilke (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Virginia who acquired a 2013 Chevrolet 3500 in the State of Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2452.  Plaintiffs Emmett Charles Cofield and Lisa Cofield are citizens of the State of Alabama who acquired a 2015 Chevrolet 2500 in the State of Virginia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## WASHINGTON PLAINTIFFS

2453. The following Plaintiffs are hereinafter referred to as the "Washington Plaintiffs."

2454. Plaintiff Michael Amos (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2011 Chevrolet 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2455.   Plaintiff Brad Beauchamp (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2016 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its

promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2456.  Plaintiff Daniel Bradley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2016 Chevrolet 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful,

**3125**

and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2457.   Plaintiff Kelly Brewer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2011 Chevrolet 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2458.  Plaintiff Dave Bryant (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2012 GMC 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2459.  Plaintiffs Brian Campbell and Jennifer Riley (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2015 Chevrolet 2500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss

in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2460.   Plaintiff Brian Campbell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2016 Chevrolet 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2461.   Plaintiffs James Craig and Joilin Craig (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2011 Chevrolet 2500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2462.  Plaintiff Kevin Davis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2015 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2463.   Plaintiff Cara Deviny (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2014 Chevrolet 2500 in the State of Washington.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2464.   Plaintiff Brett Dreher (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2015 GMC 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2465.   Plaintiff Alexander Dunn (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2011 Chevrolet 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2466.  Plaintiff Aaron Eissens (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2015 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2467.   Plaintiff Mark Fabian (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2011 GMC 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2468.   Plaintiff Gary Fors (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2013 Chevrolet 3500 and a 2015 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected

and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2469.  Plaintiffs John Garcia and Debbie Garica (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2012 Chevrolet 2500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling,

and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2470.  Plaintiffs Rick Gordon and Susan Gordon (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2011 GMC 3500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2471. Plaintiff Pat Graham (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2015 GMC 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2472.  Plaintiff Brian Hamilton (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2012 Chevrolet 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2473.   Plaintiff David Haughin (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of California who acquired a 2015 GMC 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**3148**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2474.   Plaintiff Con Higley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2015 Chevrolet 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2475.  Plaintiff Shaun Hoag (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington and Plaintiff C&S Construction of Spokane is a business in the State of Washington, who acquired a 2015 Chevrolet 2500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly

disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2476.  Plaintiffs Ira Holman and Jennifer Holman (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2016 Chevrolet 3500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2477. Plaintiffs Devyn Holmes and Rodney Holmes (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2011 Chevrolet 2500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2478. Plaintiff Jeff Holmes (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington and Plaintiff Environmental Pest, Inc. is a business in the State of Washington, who acquired a 2015 Chevrolet 2500 and a 2016 Chevrolet 2500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew

about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2479.   Plaintiff Jim Iovinelli (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2011 Chevrolet 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2480.  Plaintiff Sean Isaac (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2016 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2481.  Plaintiff Richard Jankowski (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2011 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2482. Plaintiffs Mike Jennings and Karina Jennings (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2015 Chevrolet 3500 in the

State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2483.   Plaintiff Corey Joyce (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2015 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2484.   Plaintiff Jason Kadrmas (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of North Dakota who acquired a 2013 GMC 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2485.  Plaintiff Daren Keeney (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2015 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal

driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2486.   Plaintiff Thomas Konkle (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2016 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2487.   Plaintiff Greg Kowalsky (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2015 GMC 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2488.  Plaintiff Slavik Kuznetsov (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2016 GMC 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2489.   Plaintiff Casey McConville (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2016 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2490.   Plaintiff Joe Myers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2011 GMC 2500 and a 2016 Chevrolet 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

3170

advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2491. Plaintiff Ricky Nelson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2015 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2492. Plaintiff Dan Nita (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2016 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**3173**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2493. Plaintiffs Loc Ohl and Dennis Ohl (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2015 Chevrolet 3500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2494.  Plaintiffs Mike Phillips and Mary Phillips (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2016 Chevrolet 2500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2495.   Plaintiffs Michael Poirier and Christine Poirier (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2015 Chevrolet 2500 in the

State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2496. Plaintiffs Ronald Reinhardt and Connie Reinhardt (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2013 Chevrolet 2500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions

advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2497.  Plaintiff Marcus Reum (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2014 GMC 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable

but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2498.  Plaintiff David Ross (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2013 GMC 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and

performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future

additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2499.  Plaintiff Jackie Ross (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2012 Chevrolet 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2500.  Plaintiff Ken Rusch (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2016 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its

promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2501.  Plaintiff Mike Russell (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2013 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful,

and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2502. Plaintiff David Shahon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2015 Chevrolet 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2503.  Plaintiff Chris Shea (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Nevada who acquired a 2012 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2504.  Plaintiff Benjy Stephens (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington and Plaintiff Stephens & Sons, Inc. is a business in the State of Washington, who acquired a 2015 Chevrolet 2500, a 2015 Chevrolet 3500 and a 2016 GMC 2500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing,

selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.   Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully

high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2505.   Plaintiff Ryan Stevens (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2012 Chevrolet 2500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2506.   Plaintiffs Amanda Stevens and Casey Thaxton (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2011 GMC 2500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

**3191**

through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2507.  Plaintiffs Thomas Stewart and Johnna Stewart (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2011 Chevrolet 2500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss

in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2508.   Plaintiff David Strickler (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2016 Chevrolet 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2509.  Plaintiff Lukas Sullivan (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Washington who acquired a 2011 GMC 3500 in the State of Washington. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2510. Plaintiffs Jason Wakefield and Kendra Wakefield (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2012 Chevrolet 2500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during

normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.   Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:   (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2511.   Plaintiffs John Welch and Diane Welch (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2013 Chevrolet 3500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2512.  Plaintiffs Shane Young and Julie Young (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Washington who acquired a 2012 Chevrolet 3500 in the State of Washington. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## WEST VIRGINIA PLAINTIFFS

2513. The following Plaintiffs are hereinafter referred to as the "West Virginia Plaintiffs."

2514. Plaintiff Joshua Alexander (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2012 GMC 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2515.   Plaintiff Christopher Allen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2013 Chevrolet 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2516. Plaintiff Brian Butcher (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2016 Chevrolet 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2517.  Plaintiff Larry Casto (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2016 GMC 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2518.  Plaintiff Mark Collis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2014 Chevrolet 3500 in the State of West Virginia.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2519.   Plaintiff Brian Cramlet (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Ohio who acquired a 2011 GMC 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2520. Plaintiffs Robert Davis and Marsh Davis (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Virginia who acquired a 2013 GMC 2500 in the State of West Virginia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low

emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2521.  Plaintiff Eric DeMoss (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2015 GMC 3500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2522.   Plaintiffs Dennis Diem and Wendy Diem (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of South Carolina who acquired a 2015 Chevrolet 2500 in the State of West Virginia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM

disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2523.   Plaintiff Cobin Dixon (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2014 Chevrolet 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2524. Plaintiffs James Eagle and Laura Eagle (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of West Virginia who acquired a 2016 Chevrolet 2500 in the State of West Virginia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling,

and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2525.   Plaintiff Ken Fleegle (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2011 Chevrolet 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff

would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2526.  Plaintiffs Thomas Glass and Hillery Glass (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of West Virginia who acquired a 2016 Chevrolet 2500 in the State of West Virginia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2527.  Plaintiff Steve Hamner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2011 GMC 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of

overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2528.   Plaintiff Gene Herbert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2014 GMC 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2529.   Plaintiff Clyde Lantz (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2015 Chevrolet 3500 and a 2016 Chevrolet 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2530. Plaintiff Sean Madden (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2016 GMC 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2531.  Plaintiffs William McKinney and Julie McKinney (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of West Virginia who acquired a 2013 Chevrolet

3500 in the State of West Virginia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to

what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2532. Plaintiffs Greg Miller and April Miller (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of West Virginia who acquired a 2015 Chevrolet 2500 in the State of West Virginia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b)

online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2533. Plaintiff Jonathan Miller (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2011 Chevrolet 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the

reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2534.  Plaintiff Aaron Monroe (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2015 GMC 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel

economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase,

and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2535.   Plaintiff Michael Myers (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2014 GMC 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of

the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2536.  Plaintiff Timothy Osborne (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2016 GMC 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its

promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2537. Plaintiffs Aaron Shipp and Terry Shipp (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of West Virginia who acquired a 2016 Chevrolet 2500 in the State of West Virginia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.

GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2538.   Plaintiff Terry Shipp (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia and Plaintiff S&S Mobile Home Transporting, LLC is a business in the State of West Virginia, who acquired a 2012 GMC 2500 and a 2013 GMC 3500 in the State of West Virginia. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM

disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2539. Plaintiff Gary Swiger (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2016 Chevrolet 3500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and

**3233**

ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2540.   Plaintiff James Wingfield (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of West Virginia who acquired a 2015 GMC 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle

without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2541. Plaintiff Mark Zirkle (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Georgia who acquired a 2014 Chevrolet 2500 in the State of West Virginia. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

## **WISCONSIN PLAINTIFFS**

2542. The following Plaintiffs are hereinafter referred to as the "Wisconsin Plaintiffs."

2543. Plaintiffs David Ames and Lois Ames (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wisconsin who acquired a 2016 Chevrolet 3500 in the State of Wisconsin. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would

retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2544.  Plaintiff Doug Baril (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2016 Chevrolet 3500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and

deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2545.   Plaintiffs David Bates and Jill Bates (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wisconsin who acquired a 2013 GMC 2500 in the State of Wisconsin. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs

would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2546.   Plaintiff Dan Belman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin and Plaintiff Belman Construction, LLC is a business in the State of Wisconsin, who acquired a 2015 Chevrolet 3500 in the State of Wisconsin. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in

part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2547. Plaintiff Ryan Bendelow (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2011 Chevrolet 3500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2548.   Plaintiff Todd Berzowski (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2011 GMC 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2549.   Plaintiff Chris Biese (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2012 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2550.   Plaintiff Tom Boisvert (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2015 GMC 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2551. Plaintiff Ronald Bonte (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2013 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

**3248**

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2552.  Plaintiff Terry Brazeau (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2013 Chevrolet 3500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2553. Plaintiffs Kyle Casimer and Carissa Casimer (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Illinois who acquired a 2015 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2554.  Plaintiff William Clark (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2016 GMC 3500 in the State of Wisconsin. Unknown to

Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2555. Plaintiff John Cordery (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2016 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2556.  Plaintiffs Elizabeth Dahl and Shaun Morgan (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Texas who acquired a 2016 Chevrolet 3500 in the State of Wisconsin. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low

emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2557.   Plaintiffs Clarence Dalbeck and Kristy Dalbeck (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wisconsin who acquired a 2016 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system

that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the

vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2558.   Plaintiff Luke Delsman (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2015 GMC 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2559. Plaintiffs Randy Dennis and Paula Dennis (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wisconsin who acquired a 2013 GMC 2500 in the State of Wisconsin. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs

selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2560.   Plaintiff Scott Dooley (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2011 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2561.   Plaintiff Adam Doyen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2015 GMC 3500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2562. Plaintiff Louie Dreger (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2016 GMC 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2563.   Plaintiff Matt Ellerbrook (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2015 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2564.   Plaintiff Michael Fisher (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2011 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2565.   Plaintiff Darald Gearing (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2011 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2566.  Plaintiff Tanya Grawien (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2016 GMC 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2567.   Plaintiff Garett Gray (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Pennsylvania who acquired a 2015 Chevrolet 3500 in the State of Wisconsin. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2568.  Plaintiff Joseph Gronemus (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2015 Chevrolet 3500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures

prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2569.   Plaintiffs Jesse Hall and Amber Hall (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wisconsin who acquired a 2015 GMC 2500 in the State of Wisconsin. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel,"

complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2570.  Plaintiff Jason Hull (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2016 GMC 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2571.  Plaintiff Chris Huth (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2011 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2572.   Plaintiff Joshane Karlen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2011 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2573.  Plaintiffs Jon Kiermas and Debra Kiermas (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wisconsin who acquired a 2012 GMC 2500 in the State of Wisconsin. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other

representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2574.   Plaintiff Chris Klar (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2013 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2575.   Plaintiff Brian Lafferty (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2011 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2576.  Plaintiffs Daniel L'Allier and Tabitha L'Allier (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Minnesota who acquired a 2016 Chevrolet 3500 in the State of Wisconsin. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss

in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2577.   Plaintiff Jeff Luther (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2014 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise

associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2578.   Plaintiff Daniel Maki (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Michigan who acquired a 2011 Chevrolet 3500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2579.  Plaintiff Daniel May (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2015 GMC 3500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2580.   Plaintiff Nick Murray (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2013 Chevrolet 2500 in the State of Wisconsin. Unknown

to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket

losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2581.   Plaintiff Scott Nelson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2013 Chevrolet 3500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2582. Plaintiff Justin Neuharth (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Minnesota who acquired a 2015 GMC 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2583. Plaintiff Matthew Olson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2011 GMC 3500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving

conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2584.  Plaintiff Adam Pietroske (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2014 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2585. Plaintiff Jerry Pollifson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2012 GMC 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2586. Plaintiff Scott Randall (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2013 Chevrolet 3500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2587. Plaintiff Dale Rawls (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Illinois who acquired a 2011 Chevrolet 3500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2588. Plaintiffs Everet Reeve and Katie Reeve (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wisconsin who acquired a 2015 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented

through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2589.  Plaintiff John Remington (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2015 Chevrolet 3500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2590.   Plaintiffs Bruce Roberts and Stephanie Roberts (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wisconsin who acquired a 2015 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2591.   Plaintiffs Matt Roenz and Jennifer Roenz (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wisconsin who acquired a 2015 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy,

power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2592.  Plaintiff David Schulze (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2013 GMC 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2593.  Plaintiff Michael Schwabe (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2015 Chevrolet 2500 in the State of Wisconsin.

Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a

gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2594.  Plaintiff Jamie Skinner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of New Jersey who acquired a 2012 GMC 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2595.   Plaintiff Scott Soleski (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2016 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied

with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2596.   Plaintiff David Steensen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2013 Chevrolet 3500 and a 2015 Chevrolet 3500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that,

during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles,

and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2597.  Plaintiffs James Sullivan and Brittany Sullivan (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wisconsin who acquired a 2011 GMC 2500 in the State of Wisconsin. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM

disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2598.   Plaintiff Jeremy VanHulle (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2016 GMC 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2599. Plaintiff Aaron Vincent (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2012 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2600.   Plaintiffs Brent Williamson and Bambi Williamson (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wisconsin who acquired a 2016 GMC 2500 in the State of Wisconsin. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of

pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2601. Plaintiff Roger Willoughby (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2012 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through

3313

advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2602. Plaintiff Darrel Zerbe (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2014 GMC 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2603.  Plaintiff Tanner Zwiefellhofer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wisconsin who acquired a 2015 Chevrolet 2500 in the State of Wisconsin. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

**WYOMING PLAINTIFFS**

2604. The following Plaintiffs are hereinafter referred to as the "Wyoming Plaintiffs."

2605. Plaintiff Randy Bunner (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2012 GMC 3500 in the State of Wyoming. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2606.   Plaintiff Tyson Dennis (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2016 Chevrolet 2500 in the State of Wyoming. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2607. Plaintiffs Adam Edelman and Casey Rhoads (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Arizona who acquired a 2011 GMC 2500 in the State of Wyoming. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and

Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2608.  Plaintiff Robert Evans (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2011 Chevrolet 3500 and a 2015 Chevrolet 3500 in the State of Wyoming. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and

performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2609.  Plaintiffs Jerry Grissom and Elizabeth Grissom (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wyoming who acquired a 2012 Chevrolet 3500 in the State of Wyoming. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving

conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2610.  Plaintiffs Vance Harmon and Karen Harmon (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wyoming who acquired a 2011 GMC 2500 in the State of

Wyoming. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid

for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2611.   Plaintiff Randy Himle (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2012 Chevrolet 2500 in the State of Wyoming. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print

advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2612.  Plaintiffs Carlos Hoschar and Debra Hoschar (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wyoming who acquired a 2015 Chevrolet 2500 in the State of Wyoming. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low

emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2613.  Plaintiffs Duane Jewell and Gabriele Jewell (for the purpose of this paragraph, "Plaintiffs") are citizens of the State of Wyoming who acquired a 2015 GMC 3500 in the State of Wyoming. Unknown to Plaintiffs at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that,

during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiffs selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiffs acquired the vehicle, Plaintiffs reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have acquired the vehicle or would have paid less for it. Plaintiffs have suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the

vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2614.   Plaintiff Delbert Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2016 Chevrolet 2500 in the State of Wyoming. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the

vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2615. Plaintiff Nick Kennedy (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Montana who acquired a 2012 Chevrolet 2500 in the State of Wyoming. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired

the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2616. Plaintiff Jerold Looney (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2014 GMC 2500 in the State of Wyoming. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without

proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the

existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2617.   Plaintiff Sage McCormick (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Utah who acquired a 2012 GMC 3500 in the State of Wyoming. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the

vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2618.  Plaintiff Paul Moore (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2016 Chevrolet 2500 in the State of Wyoming. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and

representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2619. Plaintiff Todd Neufer (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2011 GMC 2500 in the State of Wyoming. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the

time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2620. Plaintiff Kenneth Peterson (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2015 Chevrolet 2500 in the State of Wyoming. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants'

operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2621.  Plaintiff Robert Poff (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2013 GMC 3500 in the State of Wyoming. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM.  Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the

engine:  (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

2622.  Plaintiff David Steensen (for the purpose of this paragraph, "Plaintiff") is a citizen of the State of Wyoming who acquired a 2015 Chevrolet 3500 in the State of Wyoming. Unknown to Plaintiff at the time the vehicle was acquired, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of acquisition, and diminished value of the vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not

disclose such facts or their effects to Plaintiff, so Plaintiff acquired the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately acquired the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. Before Plaintiff acquired the vehicle, Plaintiff reviewed one or more of the following sources touting the efficiency, fuel economy, power, and performance of the engine: (a) advertisements and information on GM's website; (b) online advertisements by GM; (c) radio and/or televisions advertisements by GM; (d) sales brochures prepared by GM; (e) print advertisements by GM; (f) news articles and/or consumer reviews of the subject vehicle; and (g) representations from GM's authorized dealer. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have acquired the vehicle or would have paid less for it. Plaintiff has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the Duramax engine system, including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the vehicle prior to acquisition.

**B.     Defendants**

      **1.     General Motors**

2623.   Defendant General Motors LLC (GM) is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen of the States of Delaware and Michigan. The sole member and owner of General Motors LLC is General Motors Holdings LLC. General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in the State of Michigan.

2624.   GM, through its various entities, including Chevrolet and GMC, designs, manufactures, markets, distributes, and sells GM automobiles in this District and multiple other locations in the United States and worldwide. GM and/or its agents designed, manufactured, and installed the GM engine systems in the Silverado and Sierra vehicles. GM also developed and disseminated the owner's manuals and warranty booklets, brochures, advertisements, and other promotional materials relating to the Fraudulent Vehicles.

### 2.     The Bosch Defendants

2625.   From at least 2005 to 2015, Robert Bosch GmbH, Robert Bosch LLC, and currently unnamed Bosch employees (together, "Bosch") were knowing and active participants in the creation, development, marketing, and sale of illegal defeat devices specifically designed to evade U.S. emissions requirements in vehicles sold solely in the United States and Europe. These vehicles include the GM vehicles in this case and the Dodge Ram 1500 EcoDiesel and Jeep Grand Cherokee EcoDiesel, as well as numerous models made by Volkswagen, Audi, Porsche, and Mercedes.

2626.   The following is a list, excluding the GM vehicles in this case, of all diesel models in the United States with Bosch-supplied software whose emissions exceed federal and California emission standards and whose emissions are beyond what a reasonable consumer would expect from cars marketed as "clean" or "low emission":



2627. Bosch participated not just in the development of the defeat device, but also in the scheme to prevent U.S. regulators from uncovering the device's true functionality. Moreover, Bosch's participation was not limited to engineering the defeat device (in a collaboration described as unusually close). Rather, Bosch GmbH and Bosch LLC marketed "clean diesel" in the United States and lobbied U.S. regulators to approve "clean diesel," another highly unusual activity for a mere supplier. These lobbying efforts, taken together with evidence of Bosch's actual knowledge that its software could be operated as a defeat device and participation in concealing the true functionality of the device from U.S. regulators, can be interpreted only one way under U.S. law: Bosch was a knowing and active participant in a massive, decade-long conspiracy with Volkswagen, Audi, Mercedes, GM, and others to defraud U.S. consumers, regulators, and diesel

car purchasers or lessees. Bosch GmbH and Bosch LLC have enabled over 1.3 million vehicles to be on the road in the United States polluting at levels that exceed emissions standards and which use software that manipulate emissions controls in a manner not expected by a reasonable consumer.

2628. Robert Bosch GmbH is a German multinational engineering and electronics company headquartered in Gerlingen, Germany. Robert Bosch GmbH is the parent company of Robert Bosch LLC. Robert Bosch GmbH, directly and/or through its North American subsidiary Robert Bosch LLC, at all material times, designed, manufactured, and supplied elements of the defeat device to GM for use in the Fraudulent Vehicles. Bosch GmbH is subject to the personal jurisdiction of this Court because it has availed itself of the laws of the United States through its management and control over Bosch LLC and over the design, development, manufacture, distribution, testing, and sale of hundreds of thousands of the defeat devices installed in the Fraudulent Vehicles sold or leased in the U.S. Employees of Bosch GmbH and Bosch LLC have collaborated in the emissions scheme with GM in this judicial district and have been present in this district.

2629. Robert Bosch LLC is a Delaware limited liability company with its principal place of business located at 38000 Hills Tech Drive, Farmington Hills, Michigan. Robert Bosch LLC is a wholly owned subsidiary of Robert Bosch GmbH. Robert Bosch LLC, directly and/or in conjunction with its parent Robert Bosch GmbH, at all material times, designed, manufactured, and supplied elements of the defeat device to GM for use in the Fraudulent Vehicles.

2630. Both Bosch GmbH and Bosch LLC (together, "Bosch") operate under the umbrella of the Bosch Group, which encompasses some 340 subsidiaries and companies. The "Bosch Group" is divided into four business sectors: Mobility Solutions (formerly Automotive

Technology), Industrial Technology, Consumer Goods, and Energy and Building Technology. The Mobility Solutions sector, which supplies parts to the automotive industry, and its Diesel Systems division, which develops, manufacturers and applies diesel systems, are particularly at issue here and include the relevant individuals at both Bosch GmbH and Bosch LLC. Bosch's sectors and divisions are grouped not by location, but by subject matter. Mobility Solutions includes the individuals involved in the RICO enterprise and conspiracy at both Bosch GmbH and Bosch LLC. Some individuals worked at both Bosch LLC and Bosch GmbH during the course of the RICO conspiracy. The acts of individuals described in this Complaint have been associated with Bosch GmbH and Bosch LLC whenever possible. Regardless of whether an individual works for Bosch LLC in the U.S. or Bosch GmbH in Germany, the individuals often hold themselves out as working for "Bosch." This collective identity is captured by Bosch's mission statement: "We are Bosch," a unifying principle that links each entity and person within the Bosch Group.[2] Bosch documents and press releases often refer to the source of the document as "Bosch" without identifying any particular Bosch entity. Thus, the identity of which Bosch defendant was the author of such documents and press releases cannot be ascertained with certainty until Bosch GmbH and Bosch LLC respond to discovery requests in this matter.

2631.   Bosch holds itself out to the world as one entity: "the Bosch Group." The Diesel Systems division, which developed the EDC17, is described as part of the Bosch Group. In the case of the Mobility Solutions sector, which oversees the Diesel Systems Group, the Bosch Group competes with other large automotive suppliers.[3]

---

[2] Exhibit 2 to the Duramax Class Complaint, Dkt 18-3, Bosch 2014 Annual Report, available at http://www.bosch.com/en/com/bosch_group/bosch_figures/publications/archive/archive-cg12.php
[3] *See, e.g.*, Exhibit 3 to the Duramax Class Complaint, Dkt 18-4, Bosch's 2016 Annual Report, available at https://assets.bosch.com/media/global/bosch_group/our_figures/pdf/bosch-annual- report-2016.pdf, at 23.

2632. The Bosch publication *Bosch in North America* represents that "Bosch supplies . . . clean-diesel fuel technology for cars and trucks." Throughout the document describing its North American operations, the company refers to itself as "Bosch" or "the Bosch Group."[4]

2633. The *Bosch in North America* document proclaims that Automotive Technology is "Bosch's largest business sector in North America." In this publication, Bosch never describes the actions of any separate Bosch legal entity, like Bosch LLC, when describing its business, but always holds itself out as "the Bosch Group."[5]

2634. German authorities are now investigating Bosch GmbH and are focusing on certain Bosch employees:[6]

> **Three Bosch Managers Targeted as German Diesel Probe Expands**
>
> A German probe into whether Robert Bosch GmbH helped Volkswagen AG cheat on emissions tests intensified as Stuttgart prosecutors said they were focusing on three managers at the car-parts maker.
>
> While Stuttgart prosecutors didn't identify the employees, the step indicates that investigators may have found specific evidence in the probe. Previously, prosecutors have said they were looking into the role "unidentified" Bosch employees may have played in providing software that was used to cheat on emission tests.
>
> "We have opened a probe against all three on suspicions they aided fraud in connection to possible manipulation in emissions treatments in VW cars," Jan Holzner, a spokesman for the agency, said in an emailed statement. "All of them are managers with the highest in middle management."
>
> Bosch, which is also being investigated by the U.S. Department of Justice, has been caught up in the VW diesel scandal that emerged

---

[4] Exhibit 4 to the Duramax Class Complaint, Dkt 18-5, *Bosch in North America* (May 2007), available at http://www.bosch.us/content/language1/downloads/BINA07.pdf, at 2.

[5] *Id*. at 5.

[6] Exhibit 5 to the Duramax Class Complaint, Dkt 18-6, *Three Bosch Managers Targeted as German Diesel Probe Expands*, Bloomberg (June 29, 2007), https://www.bloomberg.com/news/articles/2017-06-29/three-bosch-managers-targeted-as-german-diesel-probe-expands.

in 2015 over allegations its employees may have helped rig software that helped the carmaker to cheat emission tests. Earlier this year, Stuttgart prosecutors opened a similar probe into Bosch's role in connection with emission tests of Daimler cars.

A spokesman for Bosch said that while he can't comment on individual employees, the company "takes the overall allegations in diesel cases seriously and has been cooperating fully from the beginning of the probes."

The Stuttgart probe is running parallel to the central criminal investigation in Braunschweig, closer to VW's headquarters. That investigation is targeting nearly 40 people on fraud allegations related to diesel-emission software, including former VW Chief Executive Officer Martin Winterkorn.

Prosecutors' interest extends to multiple units in the VW family -- including luxury brands Audi and Porsche. In addition, Stuttgart prosecutors are also reviewing a third case related to Bosch's cooperation with Fiat Chrysler Automobiles NV on software for diesel engines.

2635.   Recently researchers from Rohr-Universität in Bochum, Germany, and University of California-San Diego uncovered Bosch's role in connection with the manipulation of emission controls in certain Volkswagen and FCA vehicles. The researchers found no evidence that Volkswagen and FCA wrote the code that allowed the operation of defeat devices. All the code they analyzed was found in documents copyrighted by Robert Bosch GmbH. These researchers found that in the "function sheets" copyrighted by Robert Bosch GmbH, the code to cheat the emissions test was labeled as modifying the "acoustic condition" of the engine, a label that helped the cheat fly under the radar. Given that GM cars have a Bosch EDC17 as did the cheating Volkswagen and FCA cars, and given testing by Class Counsel experts described below that reveals defeat devices in GM cars, it is plausible to allege that Bosch was a participant in the scheme to hide the true emissions of Silverados and Sierras, and supplied a similar "function sheet" to GM to enable a similar emission deception.

## FACTUAL ALLEGATIONS

**A.**   **The Environmental Challenges Posed by Diesel Engines and the U.S. Regulatory Response Thereto**

2636.   The United States government, through the Environmental Protection Agency, has passed and enforced laws designed to protect United States citizens from pollution and, in particular, certain chemicals and agents known to cause disease in humans. Automobile manufacturers must abide by these laws and must adhere to EPA rules and regulations.

2637.   The U.S. Clean Air Act has strict emissions standards for vehicles, and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the U.S. meet applicable federal emissions standards to control air pollution. Every vehicle sold in the U.S. must be covered by an EPA-issued certificate of conformity.

2638.   There is a very good reason that these laws and regulations exist, particularly in regards to vehicles with diesel engines: in 2012, the World Health Organization declared diesel vehicle emissions to be carcinogenic and about as dangerous as asbestos.

2639.   Diesel engines pose a particularly difficult challenge to the environment because they have an inherent trade-off between power, fuel efficiency, and emissions: the greater the power and fuel efficiency, the dirtier and more harmful the emissions.

2640.   Instead of using a spark plug to combust highly refined fuel with short hydrocarbon chains, as gasoline engines do, diesel engines compress a mist of liquid fuel and air to very high temperatures and pressures, which causes the diesel to spontaneously combust. This causes a more powerful compression of the pistons, which produces greater engine torque (that is, more power).

2641.   The diesel engine is able to do this both because it operates at a higher compression ratio than a gasoline engine and because diesel fuel contains more energy than gasoline.

2642.   But this greater energy and fuel efficiency comes at a cost: diesel produces dirtier and more dangerous emissions. One byproduct of diesel combustion is oxides of nitrogen (NOx), which includes a variety of nitrogen and oxygen chemical compounds that only form at high temperatures.

2643.   NOx pollution contributes to nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the atmosphere to form ozone. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illnesses serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory illness are at acute risk of health effects from these pollutants. As a ground level pollutant, NO2, a common byproduct of NOx reduction systems using an oxidation catalyst, is highly toxic in comparison to nitric oxide (NO). If overall NOx levels are not sufficiently controlled, then concentrations of NO2 levels at ground level can be quite high, where they have adverse acute health effects.

2644.   Though more efficient, diesel engines come with their own set of challenges, as emissions from diesel engines can include higher levels of NOx and particulate matter (PM) or soot than emissions from gasoline engines due to the different ways the different fuels combust and the different ways the resulting emissions are treated following combustion. Another way NOx emissions can be reduced is through exhaust gas recirculation or "EGR," whereby exhaust gases are routed back into the intake of the engine and mixed with fresh incoming air. Exhaust gas recirculation lowers NOx by reducing the available oxygen increasing the heat capacity of the exhaust gas mixture and by reducing maximum combustion temperatures; however, EGR can also lead to an increase in PM as well. Another way NOx and PM emissions can be reduced is through

expensive exhaust gas after-treatment devices, primarily, catalytic converters, which use a series of chemical reactions to transform the chemical composition of a vehicle's NOx emissions into less harmful, relatively inert, and nitrogen gas (N2), water (H2O) and carbon dioxide (CO2).

2645.   Diesel engines thus operate according to this trade-off between price, NOx, and PM, and for the EPA to designate a diesel car as a "clean" vehicle, it must produce both low PM and low NOx. In 2000, the EPA announced stricter emission standards requiring all diesel models starting in 2007 to produce drastically less NOx and PM than years prior. Before introducing a Fraudulent Vehicle into the U.S. stream of commerce (or causing the same), GM was required to first apply for, and obtain, an EPA-administered COC certifying that the vehicle comported with the emission standards for pollutants enumerated in 40 C.F.R. §§ 86.1811-04, 86.1811-09, & 86.1811-10. The CAA expressly prohibits automakers, like GM, from introducing a new vehicle into the stream of commerce without a valid EPA COC. Moreover, vehicles must be accurately described in the COC application "in all material respects" to be deemed covered by a valid COC. California's emission standards are even more stringent than those of the EPA. California's regulator, CARB, requires a similar application from automakers to obtain an Executive Order, confirming compliance with California's emission regulations, before allowing the vehicle onto California's roads.

**B.     Both the Silverado and Sierra Share a Common Duramax Engine**

2646.   To meet the EPA emissions requirements applicable to 2011 vehicles GM introduced a new Duramax V8 diesel engine in both the Silverado and Sierra.

2647.   For the purposes of this complaint, the following terms are used to describe the Duramax engine found in all Silverado and Sierra vehicles at issue in this case. These two models share the same engine test group and are considered by EPA and ARB to have identical engines.

2648.   Common critical components of the Duramax engine are:

**1.      HCI – Hydrocarbon Injector**

2649.   The hydrocarbon injector (HCI) is located in the turbocharger downpipe. It is simply a fuel injector used to inject diesel fuel into the exhaust stream during active regeneration (cleaning of the diesel particulate filter). This active regeneration strategy is unique as the previous version allowed fuel to be injected into the cylinder during the exhaust stroke instead of utilizing a separate injector.

**2.      DOC – Diesel Oxidation Catalyst**

2650.   The diesel oxidation catalyst (DOC) converts hydrocarbons and carbon monoxide into water and carbon dioxide through an oxidization reaction. The DOC also converts nitric oxide to nitrogen dioxide to generate favorable conditions for the reduction of NOx in the SCR system downstream of the DOC. Finally, the DOC oxidizes fuel injected from the HCI to generate the temperatures required for active regeneration.

**3.      Diesel Exhaust Fluid Injector**

2651.   The diesel exhaust fluid (DEF) is injected downstream of the DOC. DEF is composed of 32.5% urea (its active ingredient), distilled water, and a very small amount of additives. Because of its urea content, some people call the process "urea injection." DEF is required for the selective catalytic reduction process to occur. The heat of the exhaust converts the DEF into carbon dioxide and ammonia.

**4.      SCR – Selective Catalytic Reduction**

2652.   Once DEF is added to the exhaust, it travels through the selective catalytic reduction (SCR) catalyst. Here, oxides of nitrogen (NOx) are converted to nitrogen gas (N2) and water (H2O) by means of a reduction reaction. The SCR system significantly reduces NOx

emissions, reducing the frequency of active regeneration cycles and allowing for more freedom in the calibration of the engine. The drawback of SCR is its increased complexity and the need to carry and replenish the urea fluid (also known by its trademark name AdBlue).

### 5.      DPF – Diesel Particulate Filter

2653.   Once the exhaust stream has been treated by the DOC and SCR, it travels through the diesel particulate filter (DPF), where particulate matter (soot) is trapped and stored. The DPF is cleaned through a process known as regeneration, which is divided into two strategies. Passive regeneration occurs at any time the vehicle is being operated and the exhaust gas temperature is high enough to burn the particulate matter trapped by the filter. It is a continuously occurring process, meaning that it naturally occurs whenever the conditions are met under normal operation. Active regeneration occurs only when the engine senses that the DPF needs to be cleaned as the DPF is approaching maximum capacity and generating too much exhaust backpressure. When active regeneration occurs, fuel is injected into the exhaust stream via the HCI to increase the exhaust gas temperature so that the particulate matter can be burned off at carbon's non-catalytic oxidation temperature. Active regeneration dramatically reduces fuel economy since fuel is being used for purposes other than moving the vehicle. The exhaust system features a specifically designed air-cooled exhaust tip to reduce the heat of the exhaust gases as they are expelled. While the DPF is highly effective at trapping particulates, as the amount of particulates accumulates, the resistance to air flow increases also, increasing the load of the engine. To purge the DPF of accumulated deposits, it must undergo a regeneration cycle approximately every 500 km, lasting about 30 minutes. DPF regeneration requires high exhaust temperatures of approximately 600°C that are almost never achieved under normal engine operating conditions. Unfortunately, these conditions may not arise in normal urban driving, requiring the ECU to perform *active*

*regeneration*. In this mode, the ECU adjusts engine operation to increase exhaust temperature to regenerate the DPF; however, if the vehicle is only driven for short distances, such a temperature may never be reached. At sufficiently high soot load, the vehicle will illuminate a special warning lamp, prompting the driver to drive the vehicle at increased speed to allow active regeneration to take place. Thus, while the DPF is highly effective at reducing particulate emissions, it imposes a performance penalty and can become a hassle for owners who drive their vehicle for short distances.

### 6.    EGR – Exhaust Gas Recirculation

2654.   Exhaust gas recirculation (EGR) is used to reduce NOx emissions. Since oxides of nitrogen form in oxygen rich, high temperature environments, introducing exhaust gases back into the intake air charge reduces the amount of these compounds that form. Exhaust gas recirculation is not a new technology and has been regularly used on diesel engines for many years.

2655.   The following is a depiction of these components:



### C.    Emission Test Cycles and Emission Standards

2656.   An emissions test cycle defines a protocol that enables repeatable and comparable measurements of exhaust emissions to evaluate compliance. The protocol specifies all conditions under which the engine is tested, including lab temperature and vehicle conditions. Most importantly, the test cycle defines the speed and load over time that is used to simulate a typical driving scenario. An example of a driving cycle is shown in Figure A. This graph represents the

FTP-75 (Federal Test Procedure) cycle that has been created by the EPA and is used for emission certification and fuel economy testing of light-duty vehicles in the U.S. The cycle simulates an urban route with frequent stops, combined with both a cold and a hot start transient phase. The cycle lasts 1,877 seconds (about 31 minutes) and covers a distance of 11.04 miles (17.77 km) at an average speed of 21.2 mph (34.12 km/h).

**Figure A**



2657.   Besides urban test cycles such as FTP-75, there are also cycles that simulate driving patterns under different conditions. To assess conformance, several of these tests are carried out on a chassis dynamometer, a fixture that holds a car in place while allowing its drive wheel to turn with varying resistance. Emissions are measured during the test and compared to an emissions standard that defines the maximum pollutant levels that can be released during such a test. In the U.S., emissions standards are managed on a national level by the EPA. In addition, California has its own emissions standards that are defined and enforced by the California Air Resources Board (CARB). California standards are also used by a number of other states ("Section 177" states). Together with California, these states cover a significant fraction of the U.S. market, making them

a de facto second national standard. In Europe, the emissions standards are called Euro 1 through Euro 6, where Euro 6 is the most recent standard—in effect since September 2014.

2658.   The FTP-75 is the primary dynamometer cycle used to certify the light- and medium-duty passenger cars/trucks. This cycle is primarily a dynamic cycle, with rapid changes in speed and acceleration meant to reflect city driving along with some steadier higher speed sections meant to account for some highway driving.

2659.   One critically important thing to understand about the FTP-75 is that it's a "cold start" cycle. That means the vehicle starts the cycle with the engine having been off for at least eight hours and in a completely cold state. The "cold start" portion of the test is challenging for diesel engines like the Duramax employing SCR because catalysts meant to control emissions are not yet at temperatures where they work (i.e., above their "light-off" temperature).

**D.   GM Profited from Using Multiple Defeat Devices in Its Duramax Diesel Powertrains**

2660.   As noted, the Duramax exhaust treatment system consists of four components: the Exhaust Gas Recirculation System (EGR); the Diesel Oxidation Catalyst (DOC); the Selective Catalytic Reduction (SCR); and the Diesel Particulate Filter (DPF). The DPF traps particulate pollutants (like soot) but has to regenerate regularly in order to maintain low exhaust backpressure. There are two ways the DPF can regenerate: passively through catalysts built into the components (Passive Regeneration) that use $NO_2$ (nitrogen dioxide) as the primary oxidizer, and actively, where the engine and HCI generate temperatures high enough to oxidize trapped carbon via direct (i.e., non-catalytic) oxidation (Active Regeneration). Active Regenerations generally, though not always, require the vehicle to be driven at highway speeds for a continuous period. Active Regeneration reduces fuel economy, decreasing miles per gallon and engine efficiency. Thus, manufacturers like GM seek to minimize Active Regeneration cycles. Active Regeneration also

leads to excessive NOx and reduces the life span of the SCR catalyst as the high temperatures drive hydrothermal aging and deactivation of the SCR catalyst.

2661. Passive regeneration relies on the presence of NOx (specifically NO2) to catalytically oxidize captured soot. The catalyst oxidizes nitric oxide to nitrogen dioxide, which then reacts at relatively low temperatures to oxidize and remove captured soot. That is, it works best when the exhaust passing through the DPF still contains high levels of NOx pollutants that trigger the catalyst to regenerate the filter. As a result, most diesel engine manufacturers put the DOC upstream of the SCR system where NOx concentrations are still relatively high and the DPF is more likely to regenerate via the passive regeneration mechanism.[7]



**Figure 11.** Schematic of typical US 2010 aftertreatment system

2662. While the SCR is very effective at reducing NOx emissions, it requires hot exhaust for the urea catalyst to function properly. Thus, when it is placed downstream of the DPF, so as to increase Passive Regeneration and decrease the need for Active Regeneration, the system takes some time to warm up and does not work well when the engine system is cold. The DPF absorbs much of the heat during exhaust warmup and delays the time for the SCR catalyst to reach its light-off temperature.

2663. But emissions testing to allow trucks such as those at issue here to be sold in the United States requires a "cold start" emissions measurement. That is, trucks must emit low levels

---

[7] Exhibit 6 to the Duramax Class Complaint, Dkt 18-7, Hannu Jääskeläinen et al., *Heavy-Duty Diesel Engines with Aftertreatment*, DieselNet (Dec. 2016), https://www.dieselnet.com/tech/engine_heavy-duty_aftertreatment.php.

of NOx even when they have just started and are not yet operating at high exhaust temperatures. GM did not want to increase Engine Gas Recirculation (EGR) or use other inefficient methods to reduce "cold start" emissions, so it departed from the DOC–DPF–SCR order that other manufacturers use and designed its Duramax engines with the SCR system closer to the engine than the DPF. In the Duramax, the order is as follows:



2664.   This configuration allows the SCR system to warm up sooner, thus allowing sufficiently reduced NOx emissions to pass the cold start test required for certification. But there is a catch. Because the NOx is reduced before the exhaust reaches the DPF filter, there is little Passive Regeneration in the DPF. Without relatively high NOx levels going into the DPF, more active regenerations would be required, resulting in reduced fuel economy, reduced lifetime of the SCR catalysts, and a significant increase in overall NOx emissions.

2665.   GM was unwilling to leave the lucrative diesel market to other manufacturers. Unknown to GM other manufacturers, like FCA, also were unable to meet the new emission requirements. So, unwilling to be left behind, GM plunged ahead.

2666.   GM's solution to its problem was to use at least three separate "defeat devices" to increase engine power and efficiency, increase NOx levels into the DPF, and decrease the need for Active Regeneration. These defeat devices are explained in detail below. GM could not meet the new and tougher emissions requirements effective in 2011 without these devices. GM cared not

that these defeat devices caused the Duramax engine to emit 1.5 to 5.5 times the permissible limit for deadly NOx pollutants during real-world driving.

2667.  The defeat devices solved GM's problem by decreasing the dosing of urea used by the SCR system and reducing the overall EGR rate: above (Defeat Device 1) and below (Defeat Device 2) the narrow temperature band in which certification testing is performed (68-86°F); and decreasing the dose of the SCR system and rate of EGR (Defeat Device 3) after 5-8 minutes of relatively constant engine speed (which never happens during an emissions test). By decreasing the dosing of urea, the SCR allows more NOx to pass through to the DPF, thus increasing Passive Regeneration in the DPF and decreasing the need for Active Regenerations, which reduce fuel economy, reduce the lifetime of the SCR catalysts, and result in significant increases in overall NOx emissions. Reduced urea dosing has the added advantage of lower urea consumption, which means lower operating costs and longer service intervals between having to fill the urea catalyst tank.

2668.  Thus, by putting the SCR in front of the DPF and employing the defeat devices, GM was able to market and sell Duramax-equipped trucks with power and efficiency characteristics that made them very appealing but also caused illegal levels of deadly NOx pollution. If GM had not employed illegal defeat devices, then its trucks would have been less efficient and less powerful, meaning that GM would not have sold as many and would not have been able to charge a premium for them.

**E.  GM Promoted the Silverado and Sierra Duramax as Low Emission Vehicles Because It Knew the Environment Is Material to a Reasonable Consumer**

2669.  GM understood that a vehicle's pollution footprint is a factor in a reasonable consumer's decision to purchase a vehicle. GM, in press releases, owner's manuals, and brochures that it intended to reach the eyes of consumers, promoted the Duramax engine as delivering "low

emissions" or having "reduced NOx emissions." GM was acutely aware of this due to the public

perception that diesels are "dirty."

2670.   Here is an example of GM promoting clean diesel:[8]



2671.   The following are examples of GM advertising promoting lower emissions, power,

and fuel economy.

**1.      Silverado advertising promises "a remarkable reduction" in emissions and fuel economy.**

2672.   GM's brochure for the Sierra Duramax engine promised "low emissions" and

"great power":[9]

**DIRECT INJECTION TECHNOLOGY**

For fast starts in cold weather, quiet operation and maximum
efficiency, the direct injection system helps Sierra HD with the
available DURAMAX diesel engine start in as little as 3 seconds at

---

[8] Exhibit 7 to the Duramax Class Complaint, Dkt 18-8, *Five Diesel Myths Debunked*, GM, available at
http://www.torquenews.com/sites/default/files/image-119/%5Btitle-raw%5D/ dieselmyths_v2.jpg (last
accessed May 24, 2017).

[9] Exhibit 8, to the Duramax Class Complaint, Dkt 18-9, *2016 Sierra 2500*, GMC,
http://www.gmc.com/previous-year/ sierra-2500hd-pickup-truck.html (last accessed May 24, 2017)
(emphasis added).  Nearly identical representations were made in the brochures for the 2011-2015 Sierra
2500's,

-40°C and operates at nearly 30,000 psi to turn heavy diesel fuel into a fine mist, delivering *low emissions and great power*….

2673. A 2011 Silverado GM publication promised a 63% reduction in emissions over the previous model and more horsepower and torque:[10]

### New system reduces tailpipe NOx emissions

The enhanced, legendary Duramax 6.6L Turbo-Diesel is the most powerful Duramax ever built-generating more horsepower and torque than any competitor. This proven powerplant gets the job done while being *friendlier to the environment*.

The improved Duramax uses the *latest emission control technology, reducing Nitrogen Oxide (NOx) emissions by a whopping 63%*, when compared to the 2010 model. GM engineers determined the best way to accomplish *this remarkable reduction of diesel emissions was to* employ a Selective Catalytic Reduction (SCR) system that uses Diesel Exhaust Fluid (DEF).

### Diesel exhaust fluid (DEF)

Diesel Exhaust Fluid (DEF) is a non-flammable fluid comprised of 33% ammonia-based urea and 67% purified water. DEF is used with diesel engine exhaust systems to reduce the amount of emissions produced by turning Nitrogen Oxide (NOx) into nitrogen and water vapor. DEF technology has a proven track record since it has been used in Europe for years.

2674. The GM 2011 publication represented that the Duramax "runs cleaner."[11]

---

[10] Exhibit 9 to the Duramax Class Complaint, Dkt 18-10, *Using Diesel Exhaust Fluid with the Duramax 6.6L Turbo-Diesel*, Chevrolet (emphasis added).
[11] *Id*.





2675.   The publication went into detail concerning emissions reduction:[12]



2676.   The 2011 document contained additional information on reducing emissions:[13]



2677.   A 2011 advertisement for the Duramax engine stated:[14]

---

[13] *Id.*

[14] Exhibit 10 to the Duramax Class Complaint, Dkt 18-11, 6.6L Duramax LML, Duramax Hub, http://www.duramaxhub.com/lml.html (last accessed May 24, 2017) (emphasis added).

**6.6L Duramax LML**
**Duramax LML SPECS & INFO**

The LML Duramax was released for 2011 model General Motors & Chevrolet HD trucks. The latest version of the 6.6L Duramax requires *advanced emissions equipment*, including the use of diesel exhaust fluid injection, to *reduce nitrogen oxide emission levels by 63 percent* over LMM powered trucks.

2678.   Elsewhere, this document promises a reduction in NOx:[15]

**LML Duramax DEF**

The LML Duramax is equipped with a SCR system that requires the use of DEF (diesel exhaust fluid). DEF is injected into the exhaust stream where a chemical reaction occurs that reduces NOx emissions. The DEF tank is approximately 5 gallons (18.9 liters). On pickup trucks, the DEF tank fill nozzle is located on the passenger side, under the hood and is sealed by a blue cap. On vans, the DEF tank fill nozzle is located in the fuel fill door, and is also sealed by a blue cap. The DEF system will illuminate a warning indicator in the instrument panel when the DEF fluid levels range is estimated to be 1,000 miles. Subsequent warnings will follow.

2679.   A press release for the 2013 Silverado 2500 and 3500 indicates that "Highlights of the Duramax diesel include . . . greater fuel efficiency, improved performance and reduced emissions."[16]

2680.   A brochure for the 2014 Silverado promised fuel efficiency and lower emissions:[17]

**FUEL EFFICIENCY**

On the Vortec 6.0L V8 engine, Variable Valve Timing (VVT) adjusts airflow in and out of the combustion chamber under all engine speeds, which helps lower emissions and improve fuel economy.

---

[15] *Id.*

[16] Exhibit 11 to the Duramax Class Complaint, Dkt 18-12, GM Press Release, Chevrolet Silverado 2500HD and 3500HD, available at https://media.gm.com/content/media/us/en/chevrolet/vehicles/silveradohd/2013/_jcr_content/iconrow/textfile/file.res/13_PG_Chevrolet_SilveradoHD.pdf (last accessed Aug. 3, 2017)

[17] Exhibit 12 to the Duramax Class Complaint, Dkt 18-13, 2014 Silverado HD brochure, at 5.

2.      **Sierra advertising promises emissions and fuel economy.**

2681.   The Sierra 2500 and 3500 was introduced in 2011. GMC promised that the Duramax Diesel "delivers 11 percent better highway fuel economy than previous models." GMC also promised that the engine turned the diesel by-product into a fine mist that results in "lower emissions":[18]

2682.



[18] Exhibit 13 to the Duramax Class Complaint, Dkt 18-14, 2011 GMC Sierra Heavy Duty brochure, available at
https://www.gmc.com/content/dam/GMC/global/master/nscwebsite/en/home/Tools/Download_A_Brochure/01_Images/2011-sierra-2500-and-3500-brochure.pdf (last accessed Aug. 3, 2017).

2683.   GM's advertising for the Sierra consistently featured claims of "low emissions" and great power:[19]

**2016 Sierra 2500HD**

**DIRECT INJECTION TECHNOLOGY**

For fast starts in cold weather, quiet operation and maximum efficiency, the direct injection system helps Sierra HD with the available Duramax diesel engine start in as little as 3 seconds at -40°C and operates at nearly 30,000 psi to turn heavy diesel fuel into a fine mist, delivering *low emissions and great power*.

2684.   An owner's manual for the 2011 Duramax vehicles promised a "whopping reduction" in emissions:[20]

**NEW SYSTEM REDUCES TAILPIPE NOx EMISSIONS**

The enhanced, legendary Duramax 6.6L Turbo-Diesel is the most powerful Duramax ever built-generating more horsepower and torque than any competitor. This proven powerplant gets the job done while being friendlier to the environment.

The improved Duramax uses the latest emission control technology, reducing Nitrogen Oxide (NOx) emissions by a *whopping* 63%, when compared to the 2010 model. GM engineers determined the best way to accomplish *this remarkable reduction of diesel emissions was* to employ a Selective Catalytic Reduction (SCR) system that uses Diesel Exhaust Fluid (DEF).

2685.   A 2011 GM press release promised more power and lower emissions:[21]

New 6.6L Duramax diesel delivering more power, up to 11-percent greater highway fuel economy up to 63- percent lower emissions, B20 biodiesel capability and quicker acceleration

---

[19] Exhibit 8 to the Duramax Class Complaint, Dkt 18-9, 2016 Sierra 2500, GMC, http://www.gmc.com/previous-year/ sierra-2500hd-pickup-truck.html (last accessed May 24, 2017) (emphasis added)

[20] Exhibit 9 to the Duramax Class Complaint, Dkt 18-10, *Using Diesel Exhaust Fluid with the Duramax 6.6L Turbo-Diesel*, Chevrolet (emphasis added)

[21] Exhibit 14 to the Duramax Class Complaint, Dkt 18-15, 2011 GMC Sierra 2500HD Denali 2500HD highlights and information, GMC Pressroom, http://media.gmc.com/media/us/en/gmc/vehicles/ sierra_hd/2011.brand_gmc.html (last accessed May 24, 2017)

2686. Another example, from the 2015 GMC Sierra 2500HD brochure, promises "lower emissions":[22]

> FOR FASTER STARTS IN COLD WEATHER, QUIETER OPERATION AND MAXIMUM EFFICIENCY, DIRECT INJECTION HELPS THE AVAILABLE DURAMAX DIESEL START IN AS LITTLE AS 3.0 SECONDS AT -40QF AND OPERATE AT NEARLY 30,000 PSI TO TURN HEAVY DIESEL FUEL INTO A FINE MIST, ***BURNING CLEANER AND FASTER WITH LOWER EMISSIONS AND GREATER POWER*** THAN THE PREVIOUS MODEL.

2687. An advertisement for the 2014 GMC Sierra 2500HD promises "lower emissions":[23]

> Duramax HIGH-PRESSURE DIRECT INJECTION For fast starts in cold weather, quieter operation and maximum efficiency, the direct-injection system operates at nearly 30,000 psi to turn heavy diesel fuel into a fine mist, *burning clean and fast with lower emissions*.

2688. An advertisement for the 2013 GMC Sierra 2500HD promises "reduced emissions and a better fuel budget":[24]

> Duramax B20 BIODIESEL CAPABILITY To reduce carbon dioxide emissions and stretch your fuel budget, the Duramax 6.6L can operate on B20 biodiesel a mix of 20 percent biodiesel from domestic, renewable resources, and 80 percent petroleum diesel.

2689. An advertisement for the 2012 GMC Sierra 2500HD promises "clean and lower emissions":[25]

---

[22] Exhibit 15 to the Duramax Class Complaint, Dkt 18-16, 2015 GMC Sierra 2500HD brochure, available at http://www.auto-brochures.com/makes/GMC/Sierra/GMC_US%20SierraHD_2015-2.pdf (last accessed May 24, 2017) (emphasis added).

[23] Exhibit 16 to the Duramax Class Complaint, Dkt 18-17, 2014 GMC Sierra 2500HD brochure, available at http://www.auto-brochures.com/makes/GMC/Sierra/GMC_US%20SierraHD_2014.pdf (last accessed May 24, 2017) (emphasis added)

[24] Exhibit 17 to the Duramax Class Complaint, Dkt 18-18, 2013 GMC Sierra 2500HD brochure, available at http://www.auto-brochures.com/makes/GMC/Sierra/GMC_US%20Sierra_2013.pdf (last accessed May 24, 2017).

[25] Exhibit 18 to the Duramax Class Complaint, Dkt 18-19, 2012 GMC Sierra 2500HD brochure, available at http://www.auto-brochures.com/makes/GMC/Sierra/GMC_US%20Sierra_2012.pdf (last accessed May 24, 2017).

Duramax HIGH-PRESSURE DIRECT INJECTION For fast starts in cold weather, quieter operation and maximum efficiency, the direct injection system operates at nearly 30,000 psi to turn heavy diesel fuel into a fine mist, burning clean and fast with lower emissions and greater power than the previous model.

2690.  A brochure for the 2011 Silverado promises that, "The new, available Duramax runs cleaner too, with a 60% reduction in NOx emissions from our previous model."

2691.  A brochure for the 2013 Sierra promotes "cleaner" emissions:

**DURAMAX HIGH-PRESSURE DIRECT INJECTION**

For fast starts in cold weather, quieter operation and maximum efficiency, the direct injection system operates at nearly 30,000 psi to turn heavy diesel fuel into a fine mist, burning cleaner and faster with lower emissions and greater power than the previous model.

2692.  A brochure for the 2014 Sierra promises to have been "born of a strict adherence to engineering excellence," and lower emissions:

**DURAMAX HIGH-PRESSURE DIRECT INJECTION**

For fast starts in cold weather, quieter operation and maximum efficiency, the direct-injection system operates at nearly 30,000 psi to turn heavy diesel fuel into a fine mist, burning clean and fast with lower emissions.

**F.      The Deception**

**1.      The 2013 Silverado 2500 diesel test setup.**

2693.  Experts for Class Counsel in the Duramax Class Action have extensively tested a 2013 Silverado 2500 diesel using a Portable Emissions Measurement System (PEMS).  Below is a description of the testing and the results they reported.

2694.  The vehicle was representative of the class of Duramax diesel engines present in both the Chevrolet Silverado and GMC Sierra model years 2011 to 2016. The population of both

the 2500 series and 3500 is large, though the population will most certainly be dominated by the 2500 series. For this reason, a 2500 series was chosen.

2695.   The vehicle as acquired had approximately 51,000 miles. It was therefore less than mid-way through its full useful life and was still covered under the emissions warranty. Furthermore, the vehicle was factory certified at the time of purchase.

2696.   The vehicle went through a rigorous check-in process. The vehicle was placed on a hydraulic rack, the underbody cowlings were removed, and the emission control system was examined to confirm the configuration was as expected and that parts were intact and free from damage. The emissions tag was analyzed and compared to the expected emission control group to ensure beyond a shadow of a doubt that the right engine was present and is being compared to the right certified emission standard.

2697.   The vehicle was also checked for engine faults and maintenance to ensure the maintenance records are clean and that there are no fault codes related to the emission control system. In this case, the vehicle purchased was factory certified, as previously mentioned.

2698.   The tire pressure and vehicle weight were checked, and the vehicle was loaded to the weight for the test configuration, in this case 9,500 lbs, so that the configuration is equivalent to the certification configuration.

### 2.   Initial results indicate higher than expected emissions.

2699.   The testing confirmed that the vehicle complied with emissions standards at the temperature windows where the emissions test is performed for certification. But the NOx emissions increase significantly when the temperature is below 68ºF or above 86ºF. This means that GM, using software supplied by Bosch, employs a "defeat device" that allows the vehicle to

meet emissions standards in the test temperature range. At all other times, NOx was allowed to be emitted in a much greater amount.

2700.   The experts created a special program that is specific to each vehicle to allow communication with the vehicle's computer (ECM) in order to extract important operational information like exhaust temperatures, EGR rates, NOx concentrations upstream of the SCR catalysts, and other information the vehicle's computer might collect.

2701.   The Silverado was certified at 100 mg/mile for the highway fuel economy standard test (HWFET), where the standard is 400 mg/mile. Initial testing at steady 60 mph speeds indicated emissions of 533 mg/mile on flat roads or 1.3 times the standard. The Silverado's emission on flat roads for the stop and go standard was 538 mg/mile or 2.7 times the standard of 200 mg/mile.

2702.   Further testing was done by Class Counsel experts in stop-and-go conditions with average speeds and relative positive acceleration values that correlate well with the FTP-75 emissions cycle. The blue dots show data where the defeat device below 68°F was active; the green dots represent conditions within the certification temperature window (68°F-86°F); the red dots represent data where the defeat device above 86°F was active. The vertical blue lines represent the temperature limits of the test standard for the test cycle, while the horizontal red line represents the emission standard.



2703.  One important point must be emphasized in analyzing this data. The PEMS temperature sensor, which collects ambient temperature data, is mounted on top of the vehicle (*i.e.*, at roof level), shielded from the sun by horizontal white metal fins, and well ventilated. This is the ideal setup to collect the true ambient temperature of the surroundings without complication from the sun's radiant heat or stagnant heating because of poor flow.

2704.  The vehicle's ambient temperature sensor, by contrast, is usually mounted in front of the radiator close to the road. These sensors are not necessarily shielded from the sun and are highly susceptible to false readings at high ambient temperatures from heat generated by hot black top.

2705.  When it comes to a defeat device based on ambient temperature, obviously the vehicle will be using its own sensors to trigger the defeat. There are several temperature sensors in the intake manifold for the engine, any combination of which could be used to trigger a defeat device (in addition to the possible use of the ambient temperature sensor). The temperature sensors may not directly measure ambient temperature but are certainly related to ambient temperature. Therefore, the cutoff temperatures, as measured by the PEMS ambient temperature sensor, are not necessarily exactly 68°F or 86°F.

2706.  It should be noted that the effect of ambient temperature on the inlet NOx concentrations, the inlet temperature to the SCR catalyst, and outlet temperature of the SCR catalyst were studied to rule out the possibility of delayed light-off because of low ambient temperature. When compared to cold start conditions within the certification temperature window, the cold start temperatures into and out of the SCR catalyst as well as the NOx concentrations into the SCR catalyst were found to be the same. Thus, the effect of ambient temperature on its own was ruled out as the cause of the high cold start emissions at cold temperature. Clearly, the engine was programmed to produce higher emissions at temperatures below 68°F.

2707.  The points labeled with a "C" are cold start tests, with distances, RPAs (relative positive accelerations), average speeds, and overall distance that represent very well the characteristics of the FTP-75 certification cycle. In the case of temperatures below 68°F, cold start emissions exceed the standard by a factor of 2.1 at 428 mg/mile of NOx with a maximum of 483 mg/mile. During active regenerations, emissions are 1,402 mg/mile on average, or 7 times the emission standard. In the certification temperature window, cold start emissions are 178 mg/mile, which is close to the certification emissions of 200 mg/mile and below the standard of 200 mg/mile. At temperatures above 86°F, cold start emissions were not examined in great detail

because hot start emissions were so far in excess of the standard. On average, emissions above 86°F are 479 mg/mile (2.4 times the standard), with excursions as high 1,153 mg/mile (5.8 times the standard).

2708.   It should be noted, significantly, that the same high temperature behavior was observed in the Chevrolet Cruze and is part of that vehicle's defeat strategy. Given that the Silverado is a Chevrolet product, it is not surprising that the same defeat strategy was employed.

2709.   Based on a study of temperatures in 30 major metropolitan areas as well as the demographics of Silverado sales, Class Counsel experts estimated that the high temperature defeat device is active 30-35% of the total population vehicle miles traveled (VMT). Similar estimates show that the cold temperature defeat device is active approximately 35% of the VMT. In total, these two defeat devices are active 65-70% of VMT with emissions that are 2.1 to 5.8 times the standard.

2710.   This type of emissions performance is not what a reasonable consumer would expect from a vehicle that "turns NOx into nitrogen and water vapor," or "into a fine mist," or "reduces emissions by a whopping amount."

**3.      Further testing by Class Counsel experts demonstrates that GM—enabled by Bosch's EDC17—employs three defeat devices.**

2711.   Further testing by experts for the Class Counsel for the Duramax Class Action was conducted so that the vehicle was tested for over 3,500 miles and over a wide range of conditions.

2712.   The testing confirmed the existence of three "defeat devices." The three cheats, or defeat devices, are:

**Defeat Device One:**

The vehicles produce emissions above the certification tests at temperatures above the certification range (86ºF).

**Defeat Device Two:**

The vehicles produce higher emissions when temperatures are below the certification test range (68ºF).

**Defeat Device Three:**

Higher emissions occur after the vehicle has been run for 200-500 seconds of steady speed operation on average by a factor of 4.5 in all temperature windows.

### a.    Defeat Devices One and Two: the Temperature Defeat Devices

2713.   The test results for Defeat Device One, in stop and go testing with temperatures above 86ºF, were 2.4 times the emissions standard, with maximum measured emissions of 1,153 mg/mile or 5.8 times the standard.

2714.   The test results for Defeat Device Two, in stop-and-go testing at temperatures below 68ºF, were 2.1 times the emissions standard.

2715.   Further testing at temperatures below 68ºF revealed that the vehicle had several active regenerations. Such regenerations were on average 7 times the emissions standard.

### b.    Defeat Device Three: the Steady Speed Time-Out Defeat

2716.   In controlled track testing at steady speed, following at steady speeds of 40, 50, and 60 mph, the following observations were made. The blue line represents the NOx emissions in mg/mile, while the orange line shows vehicle speed in km/hour. What is clear is that NOx emissions increased over time and markedly about 500 seconds after the steady speed is achieved (40 mph in this case). This is counterintuitive as, if anything, emissions performance should improve as the catalyst warms ups. It should be noted, importantly, that this data was taken at ambient temperatures in the certification test window.

2717.   In this case, the emissions increase by about a factor of 4, while the EGR rate and SCR reduction are significantly reduced. Note that CO2 emissions go down, which would be reflected in better fuel economy.

2718.   The motivation for such a defeat is simple. It increases the NOx going into the DPF, thereby ensuring better passive regeneration performance and, perhaps just as important, better fuel economy. Furthermore, decreasing the effectiveness of the SCR system economizes urea usage, which leads to improved customer satisfaction. Lower EGR rates and higher NOx mode are generally associated with better fuel economy.

2719.   An example of this timing defeat device is depicted below:



2720.   The same behavior is observed in the 50 mph test. Again, a large increase in emissions (factor of 2.2) with a drop in EGR rate, a small decrease in SCR rate, and a decrease in CO2 emissions (i.e., better fuel economy).



2721.   At 60 mph, the same phenomenon was observed. Emissions double, while EGR rate and SCR reduction go down.



2722.   After observing this behavior on the test track, the experts reviewed previous over-the-road test data in a variety of steady speed conditions (mostly at approximately 60 mph) and found at least 22 instances where the same time phenomenon occurred.

2723.   The following table summarizes the events observed and measured by the experts:

| Condition | Ambient Temp. (°F) | Event # | Pre timeout NOx (mg/mile) | After timeout NOx (mg/mile) | Factor Increase | Increase in NOx (mg/mile) from pre-timeout condition |
|---|---|---|---|---|---|---|
| Downhill 0.7% | 55.5 | 1 | 200 | 422 | 2.1 | 222 |
| Downhill 0.4% | 77.3 | 2 | 274 | 360 | 1.3 | 86 |
| Flat | 47 | 3 | 344 | 512 | 1.5 | 168 |
| Uphill 0.7% | 63.6 | 4 | 62 | 197 | 3.2 | 135 |
| Mild Hills | 63 | 5 | 442 | 531 | 1.2 | 89 |
| Downhill 0.7% | 52.5 | 6 | 17 | 276 | 16.2 | 259 |
| Flat | 47.6 | 7 | 21 | 191 | 9.1 | 170 |
| Downhill 0.4% | 48.3 | 8 | 94 | 372 | 4.0 | 278 |
| Downhill 0.6% | 53.3 | 9 | 47 | 265 | 5.6 | 218 |
| Downhill 0.5% | 62.9 | 10 | 149 | 408 | 2.7 | 259 |
| Flat | 78.8 | 11 | 152 | 273 | 1.8 | 121 |
| Downhill 1.3% | 70 | 12 | 152 | 596 | 3.9 | 444 |
| Uphill 1.3% | 64.9 | 13 | 177 | 1428 | 8.1 | 1251 |
| Slight hills | 68.8 | 14 | 129 | 286 | 2.2 | 157 |
| Downhill 0.5% | 62.6 | 15 | 37 | 203 | 5.5 | 166 |
| Downhill 0.4% | 73 | 16 | 72 | 393 | 5.5 | 321 |
| Flat | 75.3 | 17 | 27 | 168 | 6.2 | 141 |

| Condition | Ambient Temp. (°F) | Event # | Pre timeout NOx (mg/mile) | After timeout NOx (mg/mile) | Factor Increase | Increase in NOx (mg/mile) from pre-timeout condition |
|---|---|---|---|---|---|---|
| Downhill 0.7% | 90.1 | 18 | 28 | 309 | 11.0 | 281 |
| Downhill 0.3% | 87.9 | 19 | 61 | 164 | 2.7 | 103 |
| Downhill 0.2% | 88.4 | 20 | 94 | 231 | 2.5 | 137 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Downhill 1.4% | 67.3 | **21** | 475 | 778 | 1.6 | 303 |
| Downhill 0.3% | 102.5 | **22** | 291 | 442 | 1.5 | 151 |
| | | | | **Average** | **4.5** | **248** |

2724. The key conclusion here is that this defeat device appears to be active at all temperatures. In general, the "timeout" defeat device results in a factor of 4.5 increase in NOx once activated. The exact time for the defeat device to activate varies, but is generally 200-500 seconds. At steady speed, the average increase in NOx once the defeat device kicks in is 248 mg/mile.

2725. On average, there is a reduction in the EGR rate (from 18.9% to 17.9% pre- and post-timer) and SCR effectiveness (from 90% to 74% pre- and post-timer). The de-rated use of the SCR system would result in significant savings in urea and would also ensure better operation of the downstream DPF.

**4. The vehicles pollute heavily when driven on hills.**

2726. Hills are not part of the testing protocol for certification of new vehicles. However, it would be a material fact to a reasonable consumer to know that the GM vehicles were polluting during hill driving of levels above what a reasonable consumer would expect to be produced by "Eco" vehicles. Testing shows that hills are challenging for GM's "clean diesels."

2727. The testing done on the Silverado indicates that in stop-and-go conditions on a hill with a grade of less than 1.5 percent, average emissions are 300 mg/mile with some excursions reading as high as 715 mg/mile. Note that road grades below 1.5 percent would be considered quite mild and are often encountered in areas that would be described as "flat." Again, there appears to be a significant increase in emissions at ambient temperatures below the certification test window.



2728.   When operating on grades above 1.5 percent, average emissions were 350 mg/mile with excursions up to 704 mg/mile.



2729.  Some may assume that higher emissions uphill are offset by low emissions downhill when less power is needed. Not so. When testing on a downhill mild grade at temperatures below 68ºF average, emissions were 425 mg/mile, which is higher than the same grades uphill. At temperatures above 86ºF, average emissions were 760 mg/mile, with excursions up to 3,843 mg/mile. In the second plot, the 3,843 mg/mile data point is omitted so that data points closer to the standard can be easily viewed. Downhill grades steeper than 1.5% show similar results.







2730.  When tested using highway speeds on grades less than 1.5 percent, average emissions are 340, 322, and 308 mg/mile for cold, mild, and high temperatures, with excursions as high as 1,794 mg/mile. Although higher exhaust temperatures are generated under the slightly higher load generated while traveling uphill, which should result in better SCR performance, it appears the Silverado produces emissions well above the standard across all temperature ranges.



2731.  When tested using highway speeds on grades above 1.5 percent, EGR rates are reduced to maintain power and average emissions increase to 1,095 mg/mile, 833 mg/mile, and 783 mg/mile for cold, mild, and high temperatures. Road grades were tested ranged between 1.8% and 4.4%. These road grades produce NOx emissions far in excess of the standard. Excursions as high as 2,621 mg/mile were observed.



2732.   The same behavior is observed in mild downhill highway driving as observed with stop and go driving. These downhill emissions, which are generated under very low engine load, do not offset the extreme uphill NOx emissions. Although the vehicle is under significantly lower load than flat or uphill grades, NOx emissions are well above the standard with average emission rates of 420, 425, and 301 mg/mile for cold, mild, and high temperatures. Excursions as high as 826 mg/mile are observed, and most data points tested fall well above the standard.



2733.   Downhill grades steeper than 1.5% exhibit similar performance, though none of the data points tested fell below the standard. On average, emissions were 494, 565, and 398 mg/mile for cold, mild, and high temperatures. Excursions as high as 650 mg/mile are observed. In all cases, these emission rates are well in excess of the standard.



2734.   In general, contrary to what a reasonable consumer would expect, the Silverados and Sierras pollute at high levels going both uphill and downhill.

**5.      The test vehicle is representative of all Sierra and Silverado vehicles.**

2735.   Plaintiffs allege that the following GM models are affected by the unlawful, unfair, deceptive, and otherwise defective emission controls: 2011-2016 Silverado 2500HD/3500HD trucks and Sierra 2500HD/3500HD trucks.

2736.   Class Counsel experts did not test each model to derive plausible allegations that each Fraudulent Vehicle violates U.S. and CARB emissions standards and produces emissions beyond those a reasonable consumer would have expected when he or she purchased their vehicles. Class Counsel did not need to. As set forth in more detail below, all of the models share either identical or very similar engines and emissions systems, allowing experts to plausibly conclude

that all Fraudulent Vehicles violate U.S. and CARB standards and the expectations of a reasonable consumer.

2737.   GM itself grouped the engine used for both the Silverado and Sierra into the same application and test group. CARB and EPA certified the engines in the test group which means, from an emissions standpoint, the engines are considered identical.

2738.   All variants of the Silverado and Sierra sold in the U.S. are well represented by both the Plaintiffs' list of vehicles and the test vehicles since GM did not change the engine in any significant way between 2011 and 2016; all vehicles employ the same generation of Duramax engine.

2739.   Experts for Class Counsel also conducted additional research into the technical literature to understand the various configurations of Duramax engines sold between 2011 and 2016. The literature provides some insight into the architecture of the variants of the engines. In all cases, the engines are shown to have much more commonality than not, leading those experts to conclude that there is a strong basis for sufficient similarity or "sameness" to warrant inclusion on the list of Fraudulent Vehicles. The vehicles are either equivalent from an emissions standpoint to the test vehicles or use the same core technologies and engine platforms as the test vehicles.

## G.      This Is Not the Only GM Model to Employ This Deception

2740.   GM's deceptive emissions practice are also found in the GM Chevy Cruze, giving rise to the inference that its emissions manipulation strategy occurred here and is part of an overall diesel strategy employed by GM and facilitated by Bosch.

2741.   This is what GM promised for the Chevy Cruze:



2742.   Class Counsel for the Duramax Class Action has also tested the Cruze using a Portable Emissions Measurement System (PEMS). Testing revealed that the Cruze fails to meet U.S. emissions standards as promised. The U.S. standard on the HWFET test is 70 mg/mile. In steady highway driving at 60 mph, the Cruze averaged 128 mg/mile with a high of 557 mg/mile. In stop and go driving, the average was 182 mg/mile with a maximum of 689 mg/mile, or 3.6 to 13.8 times the federal standard. When tested at temperatures below 50ºF, the NOx was 689 mg/mile and it appears the emissions control system stops working. The same is true at temperatures over 85ºF, where NOx rates were tested and ran at 450 to 550 mg/mile. The Cruze thus has a defeat device similar to the devices in the Silverado and Sierras.

**H.     The Bosch EDC17**

2743.   All modern engines are integrated with sophisticated computer components to manage the vehicle's operation, such as an electronic diesel control. Bosch GmbH tested, manufactured, and sold the EDC system used by Volkswagen, FCA, Mercedes, and GM. This

system is more formally referred to as the Electronic Diesel Control Unit 17 ("EDC Unit 17" or "ED17"). Upon its introduction, EDC Unit 17 was publicly touted by Bosch as follows:[26]

> EDC17 . . . controls every parameter that is important for effective, low-emission combustion.
>
> Because the computing power and functional scope of the new EDC17 can be adapted to match particular requirements, it can be used very flexibly in any vehicle segment on all the world's markets. In addition to controlling the precise timing and quantity of injection, exhaust gas recirculation, and manifold pressure regulation, it also offers a large number of options such as the control of particulate filters or systems for reducing nitrogen oxides. The Bosch EDC17 determines the injection parameters for each cylinder, making specific adaptations if necessary. This improves the precision of injection throughout the vehicle's entire service life. The system therefore makes an important contribution to observing future exhaust gas emission limits.

2744.   Bosch worked with each vehicle manufacturer that utilized EDC Unit 17 to create a unique set of specifications and software code to manage the vehicles' engine operation.

2745.   Bosch's EDC Unit 17 controls emissions by periodically reading sensor values, evaluating a control function, and controlling actuators based on the control signal.[27] Sensor readings include crankshaft position, air pressure, air temperature, air mass, fuel temperature, oil temperature, coolant temperature, vehicle speed, exhaust oxygen content, as well as driver inputs such as accelerator pedal position, brake pedal position, cruise control setting, and selected gear. Based on sensor input, EDC17 controls and influences the fuel combustion process including, in particular, fuel injection timing, which affects engine power, fuel consumption, and the composition of the exhaust gas.[28]

---

[26] See Exhibit 19 to the Duramax Class Complaint, Dkt 18-20, Bosch Press Release, *The brain of diesel injection: New Bosch EDC17 engine management system* (Feb. 28, 2006), http://www.bosch-presse.de/presseforum/details.htm?txtID=2603&locale=en.

[27] Moritz Contag *et al.*, How They Did It: An Analysis of Emission Defeat Devices in Modern Automobiles, p.4 (2017).

[28] *Id.*

2746.   All Bosch ECUs, including the EDC17, run on complex, highly proprietary engine management software over which Bosch exerts near-total control. In fact, the software is typically locked to prevent customers, like GM, from making significant changes on their own. Accordingly, both the design and implementation are interactive processes, requiring Bosch's close collaboration with the automaker from beginning to end.

2747.   With respect to the Fraudulent Vehicles, the EDC 17 was used surreptitiously to evade emissions regulations. Bosch and GM worked together to develop and implement a specific set of software algorithms for implementation in the Fraudulent Vehicles, including algorithms to adjust fuel levels, exhaust gas recirculation, air pressure levels, and urea injection rates in vehicles equipped with SCR systems.

2748.   Bosch and GM worked together to develop and implement a specific set of software algorithms for implementation in the Fraudulent Vehicles, which enabled GM to adjust fuel levels, exhaust gas recirculation, air pressure levels, and even urea injection rates (for applicable vehicles).[29] When carmakers test their vehicles against EPA emission standards, they place their cars on dynamometers (large rollers) and then perform a series of specific maneuvers prescribed by federal regulations. Bosch's EDC Unit 17 gave Volkswagen, GM, and other manufacturers the power to detect test scenarios by monitoring vehicle speed, acceleration, engine operation, air pressure, and even the position of the steering wheel. When the EDC Unit 17's detection algorithm detected that the vehicle was on a dynamometer (and undergoing an emission test), additional software code within the EDC Unit 17 downgraded the engine's power and performance and upgraded the emissions control systems' performance by switching to a "dyno calibration" to cause

---

[29] *See, e.g.*, Exhibit 20 to the Duramax Class Complaint, Dkt 18-21, *Engine management*, Bosch Auto Parts, http://de.bosch-automotive.com/en/parts_and_accessories/motor_and_sytems/diesel/engine_management_2/engine_control_unit_1 (last accessed May 24, 2017).

a subsequent reduction in emissions to legal levels. Once the EDC Unit 17 detected that the emission test was complete, the EDC Unit would then enable a different "road calibration" that caused the engine to return to full power while reducing the emissions control systems' performance, and consequently caused the vehicle to spew the full amount of illegal NOx emissions out on the road.[30] This process is illustrated in the following diagram, applicable to GM as well:



---

2749.   This workaround was illegal. The Clean Air Act expressly prohibits defeat devices, defined as any auxiliary emission control device "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use." 40 C.F.R. § 86.1803-01; *see also id.* § 86.1809-10 ("No new light-duty vehicle, light-duty truck, medium-duty passenger vehicle, or complete heavy-duty vehicle shall be equipped with a defeat device."). Moreover, the Clean Air Act prohibits the sale of components used as defeat devices "where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use." 42 U.S.C. § 7522(a)(3). Finally, in order to obtain a certificate of compliance (COC), automakers must submit an application that lists all auxiliary emission control devices installed in the vehicle, a justification for each, and an explanation of why the control device is not a defeat device.

2750.   Thus, in order to obtain the COCs necessary to sell their vehicles, GM did not disclose, and affirmatively concealed from government regulators, the presence of the test-detecting and performance-altering software code that it developed with Bosch, thus making that software an illegal defeat device. In other words, GM, working closely with Bosch, lied to the government, its customers,  and the public at large.

2751. Because the COCs were fraudulently obtained, and because the Fraudulent Vehicles did not conform "in all material respects" to the specifications provided in the COC applications, the Fraudulent Vehicles were never covered by a valid COC, and thus were never legal for sale, nor were they EPA- and/or CARB- compliant as represented. GM and Bosch hid these facts from the EPA, CARB and other regulators, and consumers, and it continued to sell and lease the Fraudulent Vehicles to the driving public despite their illegality and with the complicity of Bosch.

2752.   GM's illegal workaround was enabled by its close partnership with Bosch, which enjoyed a sizable portion of its annual revenue from manufacturing parts used in GM's and other manufacturers' diesel vehicles.[31] Bosch was well aware that GM was using its emissions control components as a defeat device and, in fact, worked with GM to develop the software algorithm specifically tailored for the Fraudulent Vehicles.

2753.   Because the COCs were fraudulently obtained, the Fraudulent Vehicles were never covered by valid COCs and thus were never offered legally for sale. GM hid these facts from the EPA, CARB and other state regulators, and consumers, and it continued to sell and lease the Fraudulent Vehicles despite their illegality and with the complicity of Bosch.

**I.      Bosch Played a Critical Role in the Defeat Device Scheme in Many Diesel Vehicles in the U.S., Giving Rise to a Strong Inference That Bosch Played a Key Role in Implementing the GM Emission Strategy**

2754.   Although this case is not about Volkswagen, Bosch's history with Volkswagen provides background and support for its participation in the RICO enterprise alleged herein, of which Bosch and GM were participants. On information and belief, Plaintiffs allege that the same level of coordination between Bosch and Volkswagen also occurred between Bosch and GM.

**1.      Volkswagen and Bosch conspire to develop the illegal defeat device.**

2755.   Bosch tightly controlled development of the control units in the Fraudulent Vehicles and actively participated in the development of the defeat device.

2756.   As discussed above, Bosch introduced a new generation of diesel ECUs for Volkswagen.

---

[31] Approximately 50,000 of Bosch's 375,000 employees worked in the diesel technology operations branch of Bosch, and Volkswagen was the biggest diesel manufacturer in the world. *See* Exhibit 22 to the Duramax Class Complaint, Dkt 18-21, *Bosch probes whether its staff helped VW's emissions rigging*, Automotive News (Jan. 27, 2016), http://www.autonews.com/article/20160127/COPY01/301279955/bosch-probes- whether-its-staff-helped-vws-emissions-rigging

2757.   A February 28, 2006 Bosch press release introduced the "New Bosch EDC17 engine management system" as the "brain of diesel injection" which "controls every parameter that is important for effective, low-emission combustion." The EDC17 offered "[e]ffective control of combustion" and a "[c]oncept tailored for all vehicle classes and markets." In the press release, Bosch touted the EDC17 as follows:[32]

### EDC17: Ready for future demands

Because the computing power and functional scope of the new EDC17 can be adapted to match particular requirements, it can be used very flexibly in any vehicle segment on all the world's markets. In addition to controlling the precise timing and quantity of injection, exhaust gas recirculation, and manifold pressure regulation, it also offers a large number of options such as the control of particulate filters or systems for reducing nitrogen oxides. The Bosch EDC17 determines the injection parameters for each cylinder, making specific adaptations if necessary. This improves the precision of injection throughout the vehicle's entire service life. The system therefore makes an important contribution to observing future exhaust gas emission limits.

2758.   Bosch and Volkswagen worked together closely to modify the software and to create specifications for each Volkswagen vehicle model. Indeed, customizing a road-ready ECU is an intensive three- to five-year endeavor involving a full-time Bosch presence at an automaker's facility. Such was the case with GM as well.

2759.   All Bosch ECUs, including the EDC17, run on complex, highly proprietary engine management software over which Bosch exerts nearly total control. In fact, the software is typically locked to prevent customers, like Volkswagen and GM, from making significant changes on their own.

---

[32] *See* Exhibit 19 to the Duramax Class Complaint, Dkt 18-20, Bosch press release, *The brain of diesel injection: New Bosch EDC17 engine management system* (Feb. 28, 2006), http://www.bosch-presse.de/presseforum/details.htm?txtID=2603&locale=en.

2760.  Bosch's security measures further confirm that its customers cannot make significant changes to Bosch software without Bosch involvement. Bosch boasts that its security modules protect vehicle systems against unauthorized access in every operating phase, meaning that no alteration could have been made without either a breach of that security—and no such claims have been advanced— or Bosch's knowing participation.[33]

2761.  Unsurprisingly, then, at least one car company engineer has confirmed that Bosch maintains absolute control over its software as part of its regular business practices:[34]

> I've had many arguments with Bosch, and they certainly own the dataset software and let their customers tune the curves. Before each dataset is released it goes back to Bosch for its own validation.
>
> Bosch is involved in all the development we ever do. They insist on being present at all our physical tests and they log all their own data, so someone somewhere at Bosch will have known what was going on.
>
> All software routines have to go through the software verification of Bosch, and they have hundreds of milestones of verification, that's the structure . . . .
>
> The car company is *never* entitled by Bosch to do something on their own.

2762.  Thus, Bosch GmbH and Bosch LLC cannot convincingly argue that the development of the Volkswagen defeat device was the work of a small group of rogue engineers.

2763.  In fact, Volkswagen's and Bosch's work on the EDC17 reflected a highly unusual degree of coordination. It was a massive project that required the work of numerous Bosch coders

---

[33] Exhibit 23 to the Duramax Class Complaint, Dkt 18-22, *Reliable Protection for ECUs*, ESCRYPT (May 12, 2016),  https://www.escrypt.com/en/news-events/protection-for-ecus.
[34] Exhibit 24 to the Duramax Class Complaint, Dkt 18-23, Michael Taylor, *EPA Investigating Bosch over VW Diesel Cheater Software*, Car and Driver (Nov. 23, 2015), http://blog.caranddriver.com/ epa-investigating-bosch-over-vw-diesel-cheater-software/.

for a period of more than ten years, or perhaps more.[35] Although Bosch publicly introduced the EDC17 in 2006, it had started to develop the engine management system years before.[36]

2764.   In fact, Bosch was in on the secret and knew that Volkswagen was using Bosch's software algorithm as an "on/off" switch for emission controls when the vehicles were undergoing testing. As noted above, it has been said the decision to cheat was an "open secret" at Volkswagen.[37] It was an "open secret" at Bosch as well.

2765.   Volkswagen and Bosch personnel employed code language for the defeat device, referring to it as the "acoustic function" (in German, "akustikfunktion"). As described above, the roots of the "akustikfunktion"—and likely the cheating—can be traced back to the late 1990s when Audi devised software called the "akustikfunktion" that could switch off certain functions when the vehicle was in a test mode.[38] The "akustik" term is derived from the function's ability to modify the noise and vibration produced by the engine. News articles report that, in 2006, Volkswagen further developed this "akustikfunktion" for the affected vehicles.[39]

---

[35] Approximately 50,000 of Bosch's 375,000 employees worked in the diesel technology operations branch of Bosch, and Volkswagen was the biggest diesel manufacturer in the world. *See* Exhibit 22 to the Duramax Class Complaint, Dkt 18-23, *Bosch Probes Whether Its Staff Helped VW's Emissions Rigging*, Automotive News (Jan. 27, 2016), http://www.autonews.com/article/20160127/COPY01/301279955/bosch-probes-whether-its-staff-helped-vws-emissions-rigging

[36] Exhibit 19 to the Duramax Class Complaint, Dkt 18-20,  Bosch press release, *The brain of diesel injection: New Bosch EDC17 engine management system* (Feb. 28, 2006), http://www.bosch-presse.de/presseforum/details.htm?txtID=2603&locale=en.

[37] Exhibit 25 to the Duramax Class Complaint, Dkt 18-26, Georgina Prodham, *Volkswagen probe finds manipulation was open secret in department*, Reuters (Jan. 23, 2016), http://www.reuters.com/article/us-volkswagen-emissions-investigation-idUSKCN0V02E7. *See also* Exhibit 26 to the Duramax Class Complaint, Dkt 18-27, Jay Ramey, *VW chairman Poetsch: Company 'tolerated breaches of rules'*, Autoweek (Dec. 10, 2015), http://autoweek.com/article/vw-diesel-scandal/vw-chairman-poetsch-company-tolerated-breaches-rules (it was necessary for the "EA 189 engine to pass U.S. diesel emissions limits within the budget and time frame allotted")

[38] Exhibit 27 to the Duramax Class Complaint, Dkt 18-28, Martin Murphy, *Dieselgate's Roots Stretch Back to Audi*, Handelsblatt Global (Apr. 19, 2016), https://global.handelsblatt.com/edition/413/ressort/companies-markets/article/dieselgates-roots-stretch-back-to-audi?ref=MTI 5ODU1.

[39] Exhibit 25 to the Duramax Class Complaint, Dkt 18-26, Georgina Prodham, *Volkswagen probe finds manipulation was open secret in department*, Reuters (Jan. 23, 2016), http://www.reuters.com/ article/us-

2766.  In sum, Bosch GmbH worked hand-in-glove with Volkswagen to develop and maintain the akustikfunktion/defeat device. On information and belief, it did so with GM as well.

### 2.      Volkswagen and Bosch conspire to conceal the illegal "akustikfunktion."

2767.  By 2007, and likely earlier, Bosch GmbH was critical not only in developing the "akustikfunktion" but also in concealing it.

2768.  Bosch GmbH was concerned about getting caught participating in the defeat device fraud. As reported in a German newspaper, *Bild am Sonntag*, and a French publication, a Volkswagen internal inquiry found that in 2007, Bosch GmbH warned Volkswagen by letter that using the emissions-altering software in production vehicles would constitute an "offense."[40]

### 3.      Volkswagen and Bosch conspire in the U.S. and Germany to elude U.S. regulators who regulated not just Volkswagen diesels but all diesels.

2769.  The purpose of the defeat device was to evade stringent U.S. emissions standards. Once Bosch GmbH, Bosch LLC, and Volkswagen perfected the defeat device, therefore, their attention turned to deceiving U.S. regulators not just for the benefit of Volkswagen but also for the benefit of GM, Mercedes, and FCA.

---

volkswagen-emissions-investigation-idUSKCN0V02E7. Volkswagen Group Chairman Hans Dieter Poetsch explained that a small group of engineers and managers was involved in the creation of the manipulating software. *See* Exhibit 26 to the Duramax Class Complaint, Dkt 18-27, Jay Ramey, *VW chairman Poetsch: Company 'tolerated breaches of rules'*, Autoweek (Dec. 10, 2015), http://autoweek.com/article/vw-diesel-scandal/ vw-chairman-poetsch-company-tolerated-breaches-rules. *See also* Exhibit 21 to the Duramax Class Complaint, Dkt 18-22, Russell Hotten, *Volkswagen: The scandal explained*, BBC (Dec. 10, 2015),  http://www.bbc.com/news/business-34324772; Exhibit 28 to the Duramax Class Complaint, Dkt 18-29, Matt Burt, *VW emissions scandal: how Volkswagen's 'defeat device' works*, Autocar (Sept. 23, 2015), http://www.autocar.co.uk/car-news/industry/vw-emissions-scandal-how- volkswagens-defeat-device-works.
[40] Exhibit 29 to the Duramax Class Complaint, Dkt 18-30, *Bosch warned VW about illegal software use in diesel cars, report says*, Automotive News (Sept. 27, 2015), http://www.autonews.com/ article/20150927/COPY01/309279989/bosch-warned-vw-about-illegal-software- use-in-diesel-cars-report-says; Exhibit 30 to the Duramax Class Complaint, Dkt 18-31, *VW Scandal*: Company Warned over Test Cheating Years Ago, BBC (Sept. 27, 2015), http://www.bbc.com/news/ business-34373637.

2770.   Bosch's North American subsidiary, defendant Robert Bosch LLC, was also part of and essential to the fraud. Bosch LLC worked closely with Bosch GmbH and Volkswagen in the United States and in Germany to ensure that the non-compliant affected vehicles passed U.S. emissions tests. Bosch LLC employees frequently communicated with U.S. regulators and actively worked to ensure the affected vehicles were approved by regulators.

2771.   Employees of Bosch LLC, Bosch GmbH, and IAV provided specific information to U.S. regulators about how Volkswagen's vehicles functioned and unambiguously stated that the vehicles met emissions standards. Bosch LLC regularly communicated to its colleagues and clients in Germany about ways to deflect and diffuse questions from U.S. regulators about the affected vehicles— particularly CARB.

### 4.   Bosch keeps Volkswagen's secret safe and pushes "clean" diesel in the U.S. as a concept applicable to all diesel car manufacturers.

2772.   Bosch not only kept Volkswagen's dirty secret safe, it went a step further and actively lobbied lawmakers to push "clean diesel" in the U.S., including making affected vehicles available for regulators to drive.

2773.   As early as 2004, Bosch announced a push to convince U.S. automakers that its diesel technology could meet tougher 2007 U.S. emission standards.[41] Its efforts ended up being a multi-year, multi-million dollar effort involving key players from both Robert Bosch GmbH in Germany and Bosch LLC in the U.S.

---

[41] Exhibit 31 to the Duramax Class Complaint, Dkt 18-32, Edmund Chew, *Bosch boosts US diesel lobbying*, Autonews (Mar. 8, 2004), http://www.autonews.com/article/20040308/SUB/403080876/ bosch-boosts-us-diesel-lobbying.

2774. Bosch's promotion of diesel technology specifically targeted the U.S. For example, Bosch put on "California Diesel Days"[42] and "SAE World Congress in Detroit."[43] In 2008, Bosch LLC and Volkswagen America co-sponsored the "Future Motion Made in Germany-Second Symposium on Modern Drive Technologies" at the German Embassy in Washington, D.C., with the aim of providing a venue for "stakeholders to gain insight into the latest technology trends and engage in a vital dialogue with industry leaders and policymakers."[44]

2775. Bosch LLC hosted multi-day conferences open to many regulators and legislators and held private meetings with regulators in which it proclaimed extensive knowledge of the specifics of Volkswagen technology, including calibrations necessary for the affected vehicles to comply with emissions regulations.

2776. In April 2009, Bosch LLC organized and hosted a two-day "California Diesel Days" event in Sacramento, California. Bosch invited a roster of lawmakers, journalists, executives, regulators, and NGOs[45] with the aim of changing perceptions of diesel from "dirty" to "clean." The event featured affected vehicles as ambassadors of "clean diesel" technology, including a 2009 Volkswagen Jetta "green car." The stated goals were to "build support for light-

---

[42] Exhibit 32 to the Duramax Class Complaint, Dkt 18-33, *Bosch drives clean diesel in California*, Bosch, http://www.bosch.us/content/language1/html/734_4066.htm?section= 28799C0E86C147799E02226E942307F2 (last accessed May 24, 2017).

[43] *See, e.g.*, Exhibit 33 to the Duramax Class Complaint, Dkt 18-34, *Bosch Brings Innovation, Green Technology to SAE 2009 World Congress*, Bosch, http://www.bosch.us/content/language1/html/734_7432.htm?section=CDAF31A468D9483198ED857706 0384B3 (last accessed May 24, 2017)

[44] Exhibit 34 to the Duramax Class Complaint, Dkt 18-35, *Bosch: Clean Diesel is Key Part of Future Technology Mix*, Bosch, http://us.bosch-press.com/tbwebdb/bosch-usa/en-US/PressText.cfm? CFID=60452038&CFTOKEN=9c778a2564be2c9b-56CC21B6-96AB-5F79- 32445B13EC121DBE&nh=00&Search=0&id=364 (last accessed May 24, 2017)

[45] Exhibit 32 to the Duramax Class Complaint, Dkt 18-33, *Bosch drives clean diesel in California*, Bosch, http://www.bosch.us/content/language1/html/734_4066.htm?section=28799C0E 86C147799E02226E942307F2 (last accessed May 24, 2017); *see also* Exhibit 35 to the Duramax Class Complaint, Dkt 18-36, *California Diesel Days*, The U.S. Coalition for Advanced Diesel Cars, http://www.californiadieseldays.com/ (last accessed May 24, 2017)

duty diesel as a viable solution for achieving California's petroleum and emission reduction objectives."

2777.   In 2009, Bosch also became a founding member of the U.S. Coalition for Advanced Diesel Cars.[46] One of this advocacy group's purposes included "promoting the energy efficiency and environmental benefits of advanced clean diesel technology for passenger vehicles in the U.S. marketplace."[47] This group lobbies Congress, U.S. regulators, and the California Air Resources Board in connection with rules affecting "clean diesel" technology.[48]

2778.   In 2010, Bosch sponsored the Virginia International Raceway with the support of the 2010 Volkswagen Jetta TDI Cup Series. This event included TDI vehicles featuring Bosch technology.[49]

2779.   In 2012, Audi, BMW, Bosch, Daimler, Porsche, and Volkswagen joined to form The Clearly Better Diesel initiative.[50] The initiative was announced in Berlin by the German Association of the Automotive Industry. Its stated goal was to promote the sale of clean diesel vehicles in the U.S. The initiative's slogan was "Clean Diesel. Clearly Better."

---

[46] Exhibit 36 to the Duramax Class Complaint, Dkt 18-37, Chrissie Thompson, *New Coalition Aims To Promote Diesel Cars*, Automotive News (Feb. 2, 2009), http://www.autonews.com/article/20090202/OEM06/302029728/new-coalition-aims-to-promote-diesel-cars.

[47] Exhibit 37 to the Duramax Class Complaint, Dkt 18-38, *About the Coalition*, The U.S. Coalition for Advanced Diesel Cars, http://cleandieseldelivers.com/about/ (last accessed May 24, 2017).

[48] *Id. See also, e.g.*, Exhibit 38, Dkt 18-39, Letter to Chairman Mary Nichols and CARB concerning a statement made about diesel technology (Jan. 8, 2016), available at http://cleandieseldelivers.com/media/Mary-Nichols-Letter-01082016.pdf.

[49] Exhibit 39 to the Duramax Class Complaint, Dkt 18-40, *Volkswagen Jetta TDI Cup Drivers Take to the Track for the First Time in 2010 at VIR*, Volkswagen of America, Inc. (April 23, 2010), available at http://www.prnewswire.com/news-releases/volkswagen-jetta-tdi-cup-drivers-take- to-the-track-for-the-first-time-in-2010-at-vir-91985604.html.

[50] Exhibit 40 to the Duramax Class Complaint, Dkt 18-41, *"Clean Diesel Clearly Better" Campaign for Clean Diesel Cars Welcomed, Diesel Technology Forum* (Dec. 12, 2012), available at http://www.prnewswire.com/news-releases/clean-diesel-clearly-better-campaign- for-clean-diesel-cars-welcomed-183261432.html.

2780.   In its efforts to promote "clean diesel," including the affected vehicles, Bosch GmbH acted on behalf of its global group.

**5.   Bosch also made the EDC17 found in FCA vehicles that pollute excessively.**

2781.   To appeal to environmentally conscious consumers, FCA *vigorously* markets its "EcoDiesel" vehicles as "clean diesel" with ultra-low emissions, high fuel economy, and powerful torque and towing capacity. FCA calls its EcoDiesel "ultra clean," "emissions compliant," and claims that "***no NOx***" exits the tailpipe. FCA charges a premium for EcoDiesel-equipped vehicles. For example, selecting the 3.0-liter EcoDiesel engine for the 2016 Dodge Ram 1500 Laramie adds $4,770 to the purchase price. And the 2016 Jeep Grand Cherokee Overland EcoDiesel costs $4,500 more than its gasoline counterpart.

2782.   These representations are deceptive and false. FCA programmed its EcoDiesel vehicles to significantly reduce the effectiveness of the NOx reduction systems during real-world driving conditions. The EPA has determined that the affected vehicles contain defeat devices.  On January 12, 2017, the EPA issued a Notice of Violation against FCA because FCA "failed to disclose Auxiliary Emission Control Devices (AECDs)" in the affected vehicles.[51] The EPA identified eight specific devices that cause the vehicle to perform effectively when being tested for compliance and then reduce the effectiveness of the emissions control system during normal operation and use

---

[51] Exhibit 41 to the Duramax Class Complaint, Dkt 18-42,EPA's January 12, 2017 Notice of Violation to FCA, available at  https://www.epa.gov/sites/production/files/2017-01/documents/fca-caa-nov-2017- 01-12.pdf.

2783.   "Once again," said CARB Chair Mary D. Nichols about FCA's cheating, "a major automaker made the business decision to skirt the rules and got caught."[52]

2784.   The same experts that tested the Silverado's performance did on-road testing of the FCA vehicles and confirmed that FCA's so-called EcoDiesel cars produced NOx emissions at an average of 222 mg/mile in city driving (four times the FTP standard of 50 mg/mile) and 353 mg/mile in highway driving (five times higher than the U.S. highway standard of 70 mg/mile). In many instances, NOx values were in excess of 1,600 mg/mile, more than 20 times the standards. This testing occurred before the EPA announcement.

2785.   Bosch made the EDC17 for the polluting FCA vehicles.

**6.      Bosch GmbH also made the EDC17 found in polluting Mercedes diesels.**

2786.   Experts tested the Mercedes diesel vehicles and made the first public disclosure of Mercedes' unlawful conduct through certain of the counsel in this case in a civil suit filed in the District of New Jersey. Reportedly as a result of that lawsuit, Mercedes is under investigation by DOJ and German authorities with respect to its BlueTEC diesel vehicles. Over 14 Mercedes diesel models are alleged to produce emissions 8.1 to 19.7 times relevant standards. Bosch GmbH supplied the EDC17 in the polluting Mercedes vehicles.

**J.      The Damage from Excessive NOx**

2787.   NOx contributes to ground-level ozone and fine particulate matter. According to the EPA, "Exposure to these pollutants has been linked with a range of serious health effects, including increased asthma attacks and other respiratory illnesses that can be serious enough to send people to the hospital. Exposure to ozone and particulate matter have also been associated

---

[52] Exhibit 42 to the Duramax Class Complaint, Dkt 18-43,EPA News Release, EPA *Notifies Fiat Chrysler of Clean Air Act Violations* (Jan.12, 2017), available at https://www.epa.gov/newsreleases/epa- notifies-fiat-chrysler-clean-air-act-violations.

with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory disease are particularly at risk for health effects of these pollutants."

2788.   The EPA describes the danger of NOx as follows:

**Acid Rain** - $NO_x$ and sulfur dioxide react with other substances in the air to form acids which fall to earth as rain, fog, snow, or dry particles. Some may be carried by the wind for hundreds of miles.  Acid rain damages forests; causes deterioration of cars, buildings, and historical monuments; and causes lakes and streams to become acidic and unsuitable for many fish.



**Water Quality Deterioration** - Increased nitrogen loading in water bodies, particularly coastal estuaries, upsets the chemical balance of nutrients used by aquatic plants and animals.  Additional nitrogen accelerates "eutrophication," which leads to oxygen depletion and reduces fish and shellfish populations. $NO_x$ emissions in the air are one of the largest sources of nitrogen pollution to the Chesapeake Bay.





**Toxic Chemicals** - In the air, $NO_x$ reacts readily with common organic chemicals, and even ozone, to form a wide variety of toxic products, some of which may cause biological mutations. Examples of these chemicals include the nitrate radical, nitroarenes, and nitrosamines.

**Ground-level Ozone (Smog)** - is formed when $NO_x$ and volatile organic compounds (VOCs) react in the presence of heat and sunlight. Children, the elderly, people with lung diseases such as asthma, and people who work or exercise outside are susceptible to adverse effects such as damage to lung tissue and reduction in lung function. Ozone can be transported by wind currents and cause health impacts far from the original sources. Millions of Americans live in areas that do not meet the health standards for ozone. Other impacts from ozone include damaged vegetation and reduced crop yields.





**Particles** - NO$_x$ react with ammonia, moisture, and other compounds to form nitric acid vapor and related particles. Human health concerns include effects on breathing and the respiratory system, damage to lung tissue, and premature death. Small particles penetrate deeply into sensitive parts of the lungs and can cause or worsen respiratory disease, such as emphysema and bronchitis, and aggravate existing heart disease.



**Global Warming** - One member of the NO$_x$ family, nitrous oxide, is a greenhouse gas. It accumulates in the atmosphere with other greenhouse gases causing a gradual rise in the earth's temperature. This will lead to increased risks to human health, a rise in the sea level, and other adverse changes to plant and animal habitat.

2789.  A recent study published in NATURE estimates that there are 38,000 deaths worldwide due to excess NOx emissions.

2790.  GM and Bosch will not be able to make the Fraudulent Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their fuel efficiency. As a result, even if GM and Bosch are able to make the Fraudulent Vehicles EPA-compliant, Plaintiffs will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised. This will necessarily result in a diminution in value of every Fraudulent Vehicle and it will cause owners

of Fraudulent Vehicles to pay more for fuel while using their Fraudulent Vehicles; and it results in Plaintiffs overpaying for their vehicles at the time of acquisition.

2791.   Plaintiffs paid a premium of nearly $9,000, as GM charged more for its Duramax engine than a comparable gas car. For example, here is an advertisement for a 2016 Sierra 2500 indicating the Duramax costs an additional $8,595:[53]



---

[53] Exhibit 43 to the Duramax Class Complaint, Dkt 18-44, 2016 Sierra 2500HD Build Your Own Vehicle webpage,  http://www.gmfleet.com/previous-model-year/gmc/sierra-2500hd-heavy-duty- truck/build-your-own.html.

2792.   As a result of GM's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Fraudulent Vehicles are not "clean" diesels, emit more pollutants than do gasoline- powered vehicles, and emit more pollutants than permitted under federal and state laws, owners and/or lessees of the Fraudulent Vehicles have suffered losses in money and/or property. Had Plaintiffs known of the higher emissions at the time they purchased or leased their Fraudulent Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did. Moreover, when and if GM recalls the Fraudulent Vehicles and degrades the GM Clean Diesel engine performance and fuel efficiency in order to make the Fraudulent Vehicles compliant with EPA standards, Plaintiffs will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased. Moreover, the Fraudulent Vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency and increased wear on their cars' engines.

2793.   Without cheating emissions, GM could not achieve the fuel economy and range that it promises. Moreover, when and if GM recalls the Fraudulent Vehicles and degrades the Duramax engine performance in order to make the Fraudulent Vehicles compliant with EPA standards, Plaintiffs will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles as promised when purchased. And Fraudulent Vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency and increased wear on their vehicles' engines and this results in an overpayment by Plaintiffs at the time of purchase.

**K.**     **The GM Scheme Is Just the Latest in a Worldwide Diesel Emissions Cheating Scandal That Adds Plausibility to the Allegations as Virtually All Diesel Manufacturers Are Falsely Advertising Their Vehicles.**

2794.   As noted, the world was shocked to learn that Volkswagen had manufactured over 11 million cars that were on the road in violation of European emissions standards, and over 480,000 vehicles were operating in the U.S. in violation of EPA and state standards. But Volkswagen was not the only manufacturer of vehicles that exceeded emissions standards.

2795.   In the wake of the major scandal involving Volkswagen and Audi diesel vehicles evading emissions standards with the help of certain software that manipulates emissions controls (called "defeat devices"),[54] scientific literature and reports and testing indicate that most of the diesel vehicle manufactures of so- called "clean diesel" vehicles emit far more pollution on the road than in lab tests. The EPA has widened its probe of auto emissions to include, for example, the Mercedes E250 BlueTEC.

2796.   In May 2015, a study conducted on behalf of the Dutch Ministry of Infrastructure and the Environment found that all sixteen vehicles made by a variety of manufacturers, when tested, emitted significantly more NOx on real- world trips while they passed laboratory tests. The report concluded that "[i]n most circumstances arising in normal situations on the road, the system scarcely succeeded in any effective reduction of NOx emissions."[55]

---

[54] Exhibit 44 to the Duramax Class Complaint, Dkt 18-45, EPA's Sept. 18, 2015 Notice of Violation to Volkswagen Group of America, Inc., available at https://www.epa.gov/sites/production/files/2015-10/documents/vw-nov-caa-09-18-15.pdf. As detailed in the NOV, software in Volkswagen and Audi diesel vehicles detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. But otherwise, while the vehicle is running, the emissions controls are suppressed. This results in cars that meet emissions standards in the laboratory or at the state testing station, but during normal operation they emit NOx at up to 40 times the standard allowed under U.S. laws and regulations. Volkswagen has admitted to installing a defeat device in its diesel vehicles.

[55] Exhibit 45 to the Duramax Class Complaint, Dkt 18-46, *Detailed investigations and real-world emission performance of Euro 6 diesel passenger cars*, TNO (May 18, 2015), http://publications.tno.nl/publication/34616868/a1Ug1a/TNO-2015-R10702.pdf.

2797.   The report further remarked:[56]

> It is remarkable that the NOx emission under real-world conditions exceeds the type approval value by [so much]. It demonstrates that the settings of the engine, the EGR and the SCR during a real-world test trip are such that they do not result in low NOx emissions in practice. In other words: ***In most circumstances arising in normal situations on the road, the systems scarcely succeed in any effective reduction of NOx emissions***.

The lack of any "effective reduction of NOx emissions" is a complete contradiction of GM's claim that its vehicles are clean.

2798.   Other organizations are beginning to take notice of the emissions deception. The Transportation and Environment (T&E) organization, a European group aimed at promoting sustainable transportation, compiled data from "respected testing authorities around Europe." T&E stated in September 2015 that real-world emissions testing showed drastic differences from laboratory tests such that models tested emitted more pollutants on the road than in their laboratory tests. "For virtually every new model that comes onto the market the gap between test and real-world performance leaps," the report asserts.[57]

2799.   In a summary report, T&E graphically depicted the widespread failure of most manufacturers:[58]

---

[56] *Id.* at 6 (emphasis added).
[57] Exhibit 46 to the Duramax Class Complaint, Dkt 18-47, *VW's cheating is just the tip of the iceberg*, Transport & Environment (Sept. 21, 2015), http://www.transportenvironment.org/publications/vw%E2%80%99s-cheating-just-tip-iceberg.
[58] Exhibit 47 to the Duramax Class Complaint, Dkt 18-48, *Five facts about diesel the car industry would rather not tell you*, Transport & Environment (Sept. 2015), http://www.transportenvironment.org/sites/te/files/publications/2015_09_Five_facts_about_diesel_FINAL.pdf.

**2. The problem is endemic across the car industry – but the performance of individual models and manufacturers varies widely**

In tests by the ICCT[1] 12 out of 13 modern diesel cars failed to achieve the Euro 6 limit in on the road. The worst vehicle, an Audi, emitted 22 times the allowed limit. Emissions are highest in urban areas where most people are exposed to the pollution. On average a new diesel car emits **over** 800mg/km of nitrogen oxides driving in town compared to the limit of 80mg/km. Data obtained on around 20 modern diesel cars by T&E shows every major manufacturer is selling cars that fail to meet Euro 6 limits on the road. A minority of vehicles do meet the limits – but most don't. This is because the industry uses cheaper less effective exhaust treatment systems or fails to configure the best systems in a way that minimizes emissions. The cost of a modern diesel after treatment system is just €300.



Source: T&E                                                                      Transport & Environment

2800.   The T&E report found that the current system for testing cars in a laboratory produces "meaningless results."[59]

2801.   Emissions Analytics is a U.K. company which says that it was formed to "overcome the challenge of finding accurate fuel consumption and emissions figures for road vehicles." With regard to its recent on-road emissions testing, the company explains:[60]

---

[59] *Id.*

[60] Exhibit 48 to the Duramax Class Complaint, Dkt 18-49,Emissions Analytics Press Release (Sept. 28, 2015), available at  http://www.abvwc.com/home/emissions-analytics.

[I]n the European market, we have found that real-world emissions of the regulated nitrogen oxides are four times above the official level, determined in the laboratory. Real-world emissions of carbon dioxide are almost one- third above that suggested by official figures. For car buyers, this means that fuel economy on average is one quarter worse than advertised. This matters, even if no illegal activity is found.

## TOLLING OF THE STATUTE OF LIMITATIONS

**A. Discovery Rule Tolling**

2802. Plaintiffs had no way of knowing about GM's deception with respect to the comparatively and unlawfully high emissions of its GM Clean Diesel engine system in the Fraudulent Vehicles. To be sure, GM continues to market the Fraudulent Vehicles as "clean" diesels that have lower emissions than gasoline vehicles and also continues to claim that the Fraudulent Vehicles comply with EPA emissions standards.

2803. Within the period of any applicable statutes of limitation, Plaintiffs could not have discovered through the exercise of reasonable diligence that GM was concealing the conduct complained of herein and misrepresenting the Company's true position with respect to the emission qualities of the Fraudulent Vehicles.

2804. Plaintiffs did not discover, and did not know of, facts that would have caused a reasonable person to suspect that GM did not report information within its knowledge to federal and state authorities or consumers; nor would a reasonable and diligent investigation by Plaintiffs have disclosed that GM had concealed information about the true emissions of the Fraudulent Vehicles, which was discovered by Plaintiffs only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiffs have disclosed that GM valued profits over truthful marketing and compliance with the law.

2805. For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Fraudulent Vehicles.

**B.    Fraudulent Concealment Tolling**

2806. All applicable statutes of limitation have also been tolled by GM's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

2807. Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the Fraudulent Vehicles were far worse than represented, and of its disregard of the law, GM falsely represented that the Fraudulent Vehicles had emissions cleaner than their gasoline-powered counterparts, complied with federal and state emissions standards, that the diesel engines were "clean," and that it was a reputable manufacturer whose representations could be trusted.

**C.    Estoppel**

2808. GM was under a continuous duty to disclose to Plaintiffs the true character, quality, and nature of emissions from the Fraudulent Vehicles and of those vehicles' emissions systems.

2809. GM knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the emissions systems, and the emissions, of the Fraudulent Vehicles.

2810. Based on the foregoing, GM is estopped from relying on any statutes of limitations in this action.

## CLAIMS FOR RELIEF

2811.  Plaintiffs hereby clarify that all of the following claims are premised on nondisclosure/failure to disclose.  Plaintiffs herby disavow any claims premised on affirmative misrepresentation.  To the extent this Complaint contains allegations about representations made by Defendants, such allegations are intended only to support Plaintiffs' nondisclosure/failure-to-disclose claims (e.g. by showing the materiality of Defendants' omission).

## FEDERAL CLAIMS

### FEDERAL COUNT 1
### FEDERAL COUNT VIOLATIONS OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)
### VIOLATION OF 18 U.S.C. § 1962(C), (D)
#### (On behalf of all Plaintiffs)

2812.  Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

2813.  Plaintiffs bring this Count against Defendants GM, Robert Bosch GmbH, and Robert Bosch LLC (collectively, the "RICO Defendants" for purposes of this Count).

2814.  The RICO Defendants are all "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

2815.  Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Section 1962(d), in turn, makes it unlawful for "any person to conspire to violate."

2816.  For many years now, the RICO Defendants have aggressively sought to increase the sales of Fraudulent Vehicles in an effort to bolster revenue, augment profits, and increase GM's

share of the diesel truck market. Finding it impossible to achieve their goals lawfully, however, the RICO Defendants resorted instead to orchestrating a fraudulent scheme and conspiracy. In particular, the RICO Defendants, along with other entities and individuals, created and/or participated in the affairs of an illegal enterprise ("Clean Diesel Fraud Enterprise") whose direct purpose was to deceive the regulators and the public into believing the Fraudulent Vehicles were "clean" and "environmentally friendly." As explained in greater detail below, the RICO Defendants' acts in furtherance of the Clean Diesel Fraud Enterprise violate Section 1962(c) and (d).

### 1.    The members of the Clean Diesel Fraud Enterprise

2817.   Upon information and belief, the Clean Diesel Fraud Enterprise consisted of at least the following entities and individuals: GM, Robert Bosch GmbH, and Robert Bosch LLC.

2818.   Robert Bosch GmbH and Robert Bosch LLC tested, manufactured, and sold the electronic control module (ECM) that managed the emissions control system used by GM in the Fraudulent Vehicles. This particular ECM is more formally referred to as the Electronic Diesel Control Unit 17.

2819.   Defendant Bosch GmbH is a multinational engineering and electronics company headquartered in Gerlingen, Germany, which has hundreds of subsidiaries and companies. It wholly owns defendant Bosch LLC, a Delaware limited liability company headquartered in Farmington Hills, Michigan. As explained above, Bosch's sectors and divisions are grouped by subject matter, not location. Mobility Solutions (formerly Automotive Technology) is the Bosch sector at issue, particularly its Diesel Services division, and it encompasses employees of Bosch GmbH and Bosch LLC. These individuals were responsible for the design, manufacture,

development, customization, and supply of the defeat device to GM for use in the Fraudulent Vehicles.

2820.   Bosch worked with GM, Volkswagen, Mercedes, and FCA to develop and implement a specific and unique set of software algorithms to surreptitiously evade emissions regulations. Bosch customized their EDC Unit 17s for installation in the Fraudulent Vehicles with unique software code to detect when it was undergoing emissions testing, as described above, and did so for other vehicles with defeat devices in Volkswagen and Mercedes vehicles.[61]

2821.   Bosch's conduct with respect to Volkswagen and other manufacturers, outlined below, adds plausibility to its participation in the enterprise described herein. For example, Bosch was well aware that the EDC Unit 17 would be used by automobile manufacturers, including GM, to cheat on emissions testing. Bosch was also critical to the concealment of the defeat device in communications with U.S. regulators and went even further to actively lobby U.S. lawmakers on behalf of Volkswagen and its "clean diesel" vehicles.

2822.   EDC Unit 17 could not effectively lower NOx emissions to legal levels during normal operating conditions. In order to pass the emissions test, then, EDC Unit 17 is equipped with a "defeat device," which is software that allows the vehicle to determine whether it is being operated under normal conditions or testing conditions.

2823.   The EDC 17 ECU was manufactured by Bosch GmbH and sold to GM. Bosch built the ECU hardware and developed the software running in the ECU. Bosch developed a "function sheet" that documents the functional behavior of a particular release of the ECU firmware. All

---

[61] Exhibit 24 to the Duramax Class Complaint, Dkt 18-25, Michael Taylor, *EPA Investigating Bosch over VW Diesel Cheater Software*, Car and Driver (Nov. 23, 2015), http://blog.caranddriver.com/ epa-investigating-bosch-over-vw-diesel-cheater-software/.

function sheets used in the GM EDC, on information and belief, bear a "Robert Bosch GmbH" copyright.

2824.   As was publicly reported, the Bosch defendants, seeking to conceal their involvement in the unlawful Clean Diesel Fraud Enterprise, sent a letter to Volkswagen AG in 2007 stating that Volkswagen Diesels *could not be lawfully operated* if the LNT or SCR after-treatment system was disabled.[62] The exact same logic applies to the GM Fraudulent Vehicles—*i.e.*, they could not be lawfully operated with the defeat device.

2825.   Indeed, notwithstanding their knowledge that the Volkswagen Diesels *could not be lawfully operated* if the emissions system was disabled, the Bosch defendants, driven to cement their position as a leading supplier of diesel emissions equipment, went on to sell approximately *eleven million* EDC Unit 17s to Volkswagen over an eight-year period and sold hundreds of thousands of EDC units to GM for use in Fraudulent Vehicles, as well as hundreds of thousands of units to Mercedes and FCA.[63]

2826.   The persons and entities described in the preceding section are members of and constitute an "association-in-fact" enterprise.

2827.   At all relevant times, the Clean Diesel Fraud Enterprise: (a) had an existence separate and distinct from each Defendant; (b) was separate and distinct from the pattern of racketeering in which the RICO Defendants engaged; and (c) was an ongoing organization consisting of legal entities, including GM, the Bosch defendants, and other entities and individuals associated for the common purpose of designing, manufacturing, distributing, testing, and selling

---

[62] Exhibit 49 to the Duramax Class Complaint, Dkt 18-50, Stef Shrader, *Feds Are Now Investigating Volkswagen Supplier Bosch Over Dieselgate*, Jalopnik (Nov. 19, 2015), http://jalopnik.com/feds-are-now-investigating-volkswagen-supplier-bosch-ov-1743624448.

[63] Exhibit 24 to the Duramax Class Complaint, Dkt 18-25, Michael Taylor, *EPA Investigating Bosch over VW Diesel Cheater Software*, Car and Driver (Nov. 23, 2015), http://blog.caranddriver.com/ epa-investigating-bosch-over-vw-diesel-cheater-software/.

the Fraudulent Vehicles through fraudulent COCs and EOs, false emissions tests, deceptive and misleading marketing and materials, and deriving profits and revenues from those activities. Each member of the Clean Diesel Fraud Enterprise shared in the bounty generated by the enterprise—*i.e.*, by sharing the benefit derived from increased sales revenue generated by the scheme to defraud consumers nationwide.

2828. The Clean Diesel Fraud Enterprise functioned by selling vehicles and component parts to the consuming public. Many of these products are legitimate, including vehicles that do not contain defeat devices and software capable of allowing the engine to manipulate the software such that the emissions system is turned on or off at certain times. However, the RICO Defendants and their co- conspirators, through their illegal Enterprise, engaged in a pattern of racketeering activity, which involves a fraudulent scheme to increase revenue for Defendants and the other entities and individuals associated-in-fact with the Enterprise's activities through the illegal scheme to sell the Fraudulent Vehicles.

2829. The Clean Diesel Fraud Enterprise engaged in and its activities affected interstate and foreign commerce because it involved commercial activities across state boundaries, such as the marketing, promotion, advertisement and sale or lease of the Fraudulent Vehicles throughout the country and the receipt of monies from the sale of the same.

2830. Within the Clean Diesel Fraud Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The Clean Diesel Fraud Enterprise used this common communication network for the purpose of manufacturing, marketing, testing, and selling the Fraudulent Vehicles to the general public nationwide.

2831. Each participant in the Clean Diesel Fraud Enterprise had a systematic linkage to each other through corporate ties, contractual relationships, financial ties, and continuing

coordination of activities. Through the Clean Diesel Fraud Enterprise, the RICO Defendants functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes of increasing their revenues and market share, and minimizing losses.

2832.   The RICO Defendants participated in the operation and management of the Clean Diesel Fraud Enterprise by directing its affairs, as described herein. While the RICO Defendants participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

2833.   GM exerted substantial control and participated in the affairs of the Clean Diesel Fraud Enterprise by:

a.   Designing in conjunction with Robert Bosch GmbH the Fraudulent Vehicles with defeat devices;

b.   Failing to correct or disable the defeat devices;

c.   Manufacturing, distributing, and selling the Fraudulent Vehicles that emitted greater pollution than allowable under the applicable regulations;

d.   Misrepresenting and omitting (or causing such misrepresentations and omissions to be made) vehicle specifications on COC and EO applications;

e.   Introducing the Fraudulent Vehicles into the stream of U.S. commerce without a valid COC and/or EO;

f.   Concealing the existence of the defeat devices and the unlawfully high emissions from regulators and the public;

g.   Persisting in the manufacturing, distribution, and sale of the Fraudulent Vehicles even after questions were raised about the emissions testing and discrepancies concerning the same;

h.   Misleading government regulators as to the nature of the defeat devices and the defects in the Fraudulent Vehicles;

      i.     Misleading the driving public as to the nature of the defeat devices and the defects in the Fraudulent Vehicles;

      j.     Designing and distributing marketing materials that misrepresented and concealed the defects in the vehicles;

      k.     Otherwise misrepresenting or concealing the defective nature of the Fraudulent Vehicles from the public and regulators; and

      l.     Illegally selling and/or distributing the Fraudulent Vehicles; collecting revenues and profits from the sale of such products; and ensuring that the other RICO Defendants and unnamed co-conspirators complied with the fraudulent scheme.

2834. Bosch also participated in, operated, and/or directed the Clean Diesel Fraud Enterprise. Bosch participated in the fraudulent scheme by manufacturing, installing, testing, modifying, and supplying the EDC Unit 17 which operated as a "defeat device" in the Fraudulent Vehicles. Bosch exercised tight control over the coding and other aspects of the defeat device software and closely collaborated with GM to develop, customize, and calibrate the defeat devices. Additionally, Bosch continuously cooperated with GM to ensure that the EDC Unit 17 was fully integrated into the Fraudulent Vehicles. Bosch also participated in the affairs of the Enterprise by concealing the defeat devices on U.S. documentation and in communications with U.S. regulators. Bosch collected tens of millions of dollars in revenues and profits from the hidden defeat devices installed in the Fraudulent Vehicles.

2835. Without the RICO Defendants' willing participation, including Bosch's active involvement in developing and supplying the critical defeat devices for the Fraudulent Vehicles, the Clean Diesel Fraud Enterprise's scheme and common course of conduct would not have been successful.

2836. The RICO Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiffs cannot fully know at present because such information lies in the Defendants' and others' hands.

2837. The members of the Clean Diesel Fraud Enterprise all served a common purpose; namely, to outsell their law-abiding competitors and increase their revenues through the sale of as many Fraudulent Vehicles (including the emissions components made and sold by Bosch) as possible. Each member of the Clean Diesel Fraud Enterprise shared the bounty generated by the enterprise—i.e., by sharing the benefit derived from increased sales revenue generated by the scheme to defraud. GM sold more Fraudulent Vehicles by utilizing an emissions control system that was cheaper to install and allowed for generous performance and efficiency tuning, all while charging consumers a premium for purportedly "clean" and "fuel efficient" Fraudulent Vehicles. The Bosch defendants, in turn, sold more EDC Units because GM manufactured and sold more Fraudulent Vehicles. The RICO Defendants achieved their common purpose by repeatedly misrepresenting and concealing the nature of the Fraudulent Vehicles and the ability of the emissions control systems (including the Bosch-supplied parts) to effectively reduce toxic emissions during normal operating conditions.

2838. The RICO Defendants continued their enterprise even after the Volkswagen scandal became public in September 2015. GM continued to manufacture and sell 2016 Fraudulent Vehicles. Assuming top executives at GM did not know of the defeat devices in its vehicles (an assumption not true of Volkswagen or Bosch), a responsible chief executive would have inquired: Do we have a diesel problem? Either top executives at GM failed to ask questions or they agreed to continue a cover-up because GM did not stop selling Fraudulent Vehicles and has continued to conceal the truth.

## 2.     The Predicate Acts

2839.   To carry out, or attempt to carry out, the scheme to defraud, the RICO Defendants conducted or participated in the conduct of the affairs of the Clean Diesel Fraud Enterprise through a pattern of racketeering activity that employed the use of mail and wire facilities, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).

2840.   Specifically, the RICO Defendants participated in the scheme to defraud by using mail, telephone, and the Internet to transmit writings travelling in interstate or foreign commerce.

2841.   The RICO Defendants' use of the mails and wires include but are not limited to the transmission, delivery, or shipment of the following by the RICO Defendants or third parties that were foreseeably caused to be sent as a result of Defendants' illegal scheme:

a.     Application for certificates submitted to the EPA and CARB;

b.     The Fraudulent Vehicles themselves;

c.     Component parts for the defeat devices;

d.     Essential hardware for the Fraudulent Vehicles;

e.     Falsified emission tests;

f.     Fraudulently-obtained COCs and EOs;

g.     Vehicle registrations and plates as a result of the fraudulently-obtained COCs and EOs;

h.     Documents and communications that facilitated the falsified emission tests;

i.     False or misleading communications intended to lull the public and regulators from discovering the defeat devices and/or other auxiliary devices;

j.     Sales and marketing materials, including advertising, websites, product packaging, brochures, and labeling, which misrepresented and concealed the true nature of the Fraudulent Vehicles;

k.   Documents intended to facilitate the manufacture and sale of the Fraudulent Vehicles, including bills of lading, invoices, shipping records, reports and correspondence;

l.   Documents to process and receive payment for the Fraudulent Vehicles, including invoices and receipts;

m.   Payments to Bosch;

n.   Deposits of proceeds;

o.   SEC filings where GM has failed to disclose the scheme and has continued to do so post the Volkswagen scandal; and

p.   Other documents and things, including electronic communications.

2842.   The RICO Defendants utilized the interstate and international mail and wires for the purpose of obtaining money or property by means of the omissions, false pretense, and misrepresentations described therein.

2843.   The RICO Defendants also used the Internet and other electronic facilities to carry out the scheme and conceal the ongoing fraudulent activities. Specifically, GM made misrepresentations about the Fraudulent Vehicles on GM websites, YouTube, and through ads online, all of which were intended to mislead regulators and the public about the fuel efficiency, emissions standards, and other performance metrics.

2844.   The RICO Defendants also communicated by U.S. Mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, dealerships, and other third-party entities in furtherance of the scheme.

2845.   The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct to deceive regulators and consumers and lure consumers into purchasing the Fraudulent Vehicles, which Defendants knew or recklessly disregarded as emitting illegal amounts of pollution, despite their advertising campaign that the

Fraudulent Vehicles were "clean" diesel cars or vehicles with a "remarkable reduction in emission."

2846.  Many of the precise dates of the fraudulent uses of U.S. Mail and interstate wire facilities have been deliberately hidden and cannot be alleged without access to Defendants' books and records. However, Plaintiffs have described the types of, and in some instances, occasions on which the predicate acts of mail and/or wire fraud occurred. They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described in the preceding paragraphs.

2847.  The RICO Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In violation of 18 U.S.C. § 1962(d), the RICO Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms, and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with the RICO Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase market share, and/or minimize losses for the Defendants and their unnamed co-conspirators throughout the illegal scheme and common course of conduct.

2848.  The RICO Defendants aided and abetted others in the violations of the above laws, thereby rendering them indictable as principals in the 18 U.S.C. §§ 1341 and 1343 offenses.

2849.  To achieve their common goals, the RICO Defendants hid from the general public the unlawfulness and emission dangers of the Fraudulent Vehicles and obfuscated the true nature of the defect even after regulators raised concerns. The RICO Defendants suppressed and/or ignored warnings from third parties, whistleblowers, and governmental entities about the discrepancies in emissions testing and the defeat devices present in the Fraudulent Vehicles.

2850.   The RICO Defendants and each member of the conspiracy, with knowledge and intent, have agreed to the overall objectives of the conspiracy and participated in the common course of conduct to commit acts of fraud and indecency in designing, manufacturing, distributing, marketing, testing, and/or selling the Fraudulent Vehicles (and the defeat devices contained therein).

2851.   Indeed, for the conspiracy to succeed, each of the RICO Defendants and their co-conspirators had to agree to implement and use the similar devices and fraudulent tactics—specifically, complete secrecy about the defeat devices in the Fraudulent Vehicles.

2852.   The RICO Defendants knew and intended that government regulators, as well as Plaintiffs, would rely on the material misrepresentations and omissions made by them about the Fraudulent Vehicles. The RICO Defendants knew and intended that Plaintiffs would incur costs and damages as a result. As fully alleged herein, Plaintiffs relied upon Defendants' representations and omissions that were made or caused by them. Plaintiffs' reliance is made obvious by the fact that: (1) they purchased hundreds of thousands of vehicles that never should have been introduced into the U.S. stream of commerce and whose worth is far less than was paid. In addition, the EPA, CARB, and other regulators relied on the misrepresentations and material omissions made or caused to be made by the RICO Defendants; otherwise, GM could not have obtained valid COCs and EOs to sell the Fraudulent Vehicles.

2853.   The RICO Defendants' conduct in furtherance of this scheme was intentional. Plaintiffs were harmed as a result of the RICO Defendants' intentional conduct. Plaintiffs, regulators, and consumers, among others, relied on the RICO Defendants' material misrepresentations and omissions.

2854.  As described herein, the RICO Defendants engaged in a pattern of related and continuous predicate acts for many years. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of defrauding Plaintiffs and obtaining significant monies and revenues from them and through them while providing Fraudulent Vehicles worth significantly less than the invoice price paid. The predicate acts also had the same or similar results, participants, victims, and methods of commission. The predicate acts were related and not isolated events.

2855.  The predicate acts all had the purpose of generating significant revenue and profits for the RICO Defendants at the expense of Plaintiffs and consumers. The predicate acts were committed or caused to be committed by the RICO Defendants through their participation in the Clean Diesel Fraud Enterprise and in furtherance of its fraudulent scheme, and were interrelated in that they involved obtaining Plaintiffs' funds, artificially inflating the brand and dealership goodwill values, and avoiding the expenses associated with remediating the Fraudulent Vehicles.

2856.  During the design, manufacture, testing, marketing, and sale of the Fraudulent Vehicles, the RICO Defendants shared technical, marketing, and financial information that plainly revealed the emissions control systems in the Fraudulent Vehicles as the ineffective, illegal, and fraudulent piece of technology they were and are. Nevertheless, the RICO Defendants shared and disseminated information that deliberately represented Fraudulent Vehicles as "clean," "environmentally friendly," and "fuel efficient."

2857.  By reason of and as a result of the conduct of the RICO Defendants, and in particular its pattern of racketeering activity, Plaintiffs have been injured in multiple ways, including but not limited to:

a.      Overpayment for Fraudulent Vehicles, in that Plaintiffs at the time of purchase believed they were paying for vehicles that met certain emission and fuel efficiency standards and obtained vehicles that did not meet these standards and were worth less than what was paid;

b.      The value of the Fraudulent Vehicles has diminished, thus reducing their sale and resale value, and has resulted in a loss of property for Plaintiffs; and

c.      Plaintiffs have been wrongfully deprived of their property in that the price for their vehicles was artificially inflated by deliberate acts of false statements, omissions and concealment and by Defendants' acts of racketeering.

2858.   The RICO Defendants' violations of 18 U.S.C. § 1962(c) and (d) have directly and proximately caused injuries and damages to Plaintiffs, and Plaintiffs are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c). Each of the RICO Defendants knew, understood, and intended for Plaintiffs to acquire the Fraudulent Vehicles, and knew, understood, and foresaw that revelation of the truth would injure Plaintiff.

## FRAUD AND CONSUMER PROTECTION COUNTS BY STATE

2859.   In addition to their RICO Claims, the following Plaintiffs bring the following fraud and consumer protection claims under their relevant states' laws.

## ALABAMA

2860.   The Alabama Plaintiffs acquired their Fraudulent Vehicles while in the State of Alabama. As such, they bring the following causes of action against all defendants.

### ALABAMA COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Alabama Plaintiffs)

3424

2861.   The Alabama Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2862.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

2863.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

2864.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Alabama Plaintiffs information that was highly relevant to their purchasing decision.

2865.   GM further affirmatively misrepresented to the Alabama Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Alabama Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

2866.   GM knew these representations were false when made.

2867.   The Fraudulent Vehicles purchased or leased by the Alabama Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a

much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.   A reasonable consumer would not have expected that the emission treatment  technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the  Fraudulent Vehicles would spew unmitigated pollution during normal operation.

2868.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

2869.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

2870.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Alabama Plaintiffs did not know of these facts and GM actively concealed these facts from the Alabama Plaintiffs.  The Alabama Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers,

the Alabama Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Alabama Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

2871. GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Alabama Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Alabama Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Alabama Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

2872. GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the

Alabama Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

2873.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Alabama Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

2874.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Alabama Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

2875.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Alabama Plaintiffs.

2876.  When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate

disclosures, and continues to defraud the Alabama Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

2877. The Alabama Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

2878. The Alabama Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Alabama Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Alabama Plaintiffs.

2879. Because of the concealment and/or suppression of the facts, the Alabama Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Alabama Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Alabama Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

2880. The value of the Alabama Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Alabama Plaintiffs' vehicles and made any reasonable consumer reluctant to

purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

2881. Accordingly, GM is liable to the Alabama Plaintiffs for damages in an amount to be proven at trial.

2882. The Alabama Plaintiffs hereby sue Defendants for damages in an amount to be proven at trial. Defendants engaged in fraud that was malicious, oppressive, or gross and the statements were made recklessly without regard to their truth and without caring or knowing if they were true or not. Defendants' conduct thus warrants substantial exemplary damages in an amount to be determined at trial, which the Alabama Plaintiffs hereby sue for.

## ALABAMA COUNT 2
## VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT
### (ALA. CODE § 8-19-1 ET SEQ.)

2883. The Alabama Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

2884. The Alabama Deceptive Trade Practices Act (Alabama DTPA) declares several specific actions to be unlawful, including: "engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." ALA. CODE § 8-19-5. Defendants violated the Alabama DTPA

2885. The Alabama Plaintiffs are "consumers" within the meaning of ALA. CODE. § 8-19-3(2).

2886. The Alabama Plaintiffs and Defendants are "persons" within the meaning of ALA. CODE § 8-19-3(3).

2887. Each defendant was and is engaged in "trade or commerce" within the meaning of ALA. CODE § 8-19-3(8).

2888. The Alabama Plaintiffs have complied with all applicable pre-suit notice letter provisions.

2889. Pursuant to ALA. CODE § 8-19-10, the Alabama Plaintiffs hereby sue Defendants for actual damages in an amount to be determined at trial. The Alabama Plaintiffs also hereby sue Defendants for three times the amount of actual damages plus attorneys' fees and costs per ALA. CODE § 8-19-10 plus any other just and proper relief available under the Ala. Code § 8-19-1, et seq.

<u>ALASKA</u>

2890. The Alaska Plaintiffs acquired their Fraudulent Vehicles while in the State of Alaska. As such, they bring the following causes of action against all defendants.

**ALASKA COUNT 1- FRAUD BY CONCEALMENT**
**(On behalf of the Alaska Plaintiffs)**

2891. The Alaska Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2892. GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

2893. GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

2894. GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard

for the truth and denied the Alaska Plaintiffs information that was highly relevant to their purchasing decision.

2895.   GM further affirmatively misrepresented to the Alaska Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Alaska Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

2896.   GM knew these representations were false when made.

2897.   The Fraudulent Vehicles purchased or leased by the Alaska Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment  technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the  Fraudulent Vehicles would spew unmitigated pollution during normal operation.

2898.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted

higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

2899.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

2900.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Alaska Plaintiffs did not know of these facts and GM actively concealed these facts from the Alaska Plaintiffs.  The Alaska Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Alaska Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Alaska Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

2901.    GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating

components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Alaska Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Alaska Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Alaska Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

2902.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Alaska Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.   GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.   The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

2903.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Alaska Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they

are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

2904.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Alaska Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

2905.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Alaska Plaintiffs.

2906.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Alaska Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

2907.   The Alaska Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

2908.   The Alaska Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Alaska

Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Alaska Plaintiffs.

2909.   Because of the concealment and/or suppression of the facts, the Alaska Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Alaska Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Alaska Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

2910.   The value of the Alaska Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Alaska Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

2911.   Accordingly, GM is liable to the Alaska Plaintiffs for damages in an amount to be proven at trial.

2912.   The Alaska Plaintiffs hereby sue Defendants for damages in an amount to be proven at trial.  Defendants engaged in fraud that was malicious, oppressive, or gross and the statements were made recklessly without regard to their truth and without caring or knowing if they were true or not.  Defendants' conduct thus warrants substantial exemplary damages in an amount to be determined at trial, which the Alaska Plaintiffs hereby sue for.

**ALASKA COUNT 2**
**VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER**
**PROTECTION ACT**
**(ALASKA STAT. ANN. § 45.50.471 ET SEQ.)**

2913.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

2914.   The Alaska Unfair Trade Practices and Consumer Protection Act (Alaska CPA) declared unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." ALASKA STAT. ANN. § 45.50.471.

2915.   Pursuant to ALASKA STAT ANN. § 45.50.531, Plaintiffs seek monetary relief against each Defendant measured as the greater of (a) three times the actual damages in an amount to be determined at trial or (b) $500 for each plaintiff.  Plaintiffs also attorneys' fees, costs, and any other just and proper relief available under the Alaska CPA.

## ARIZONA

2916.   The Arizona Plaintiffs acquired their Fraudulent Vehicles while in the State of Arizona.    As such, they bring the following causes of action against all defendants.

**ARIZONA COUNT 1- FRAUD BY CONCEALMENT**
**(On behalf of the Arizona Plaintiffs)**

2917.   The Arizona Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2918.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

2919.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

2920.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Arizona Plaintiffs information that was highly relevant to their purchasing decision.

2921.   GM further affirmatively misrepresented to the Arizona Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Arizona Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

2922.   GM knew these representations were false when made.

2923.   The Fraudulent Vehicles purchased or leased by the Arizona Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited

during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

2924.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

2925.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

2926.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Arizona Plaintiffs did not know of these facts and GM actively concealed these facts from the Arizona Plaintiffs.  The Arizona Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Arizona Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM

intended to deceive the Arizona Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

2927.  GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Arizona Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Arizona Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Arizona Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

2928.  GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Arizona Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent

Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles. GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics. The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

2929. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Arizona Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

2930. GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Arizona Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

2931. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Arizona Plaintiffs.

2932. When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect. GM has still not made full and adequate

disclosures, and continues to defraud the Arizona Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

2933.   The Arizona Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

2934.   The Arizona Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Arizona Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Arizona Plaintiffs.

2935.   Because of the concealment and/or suppression of the facts, the Arizona Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Arizona Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Arizona Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

2936.   The value of the Arizona Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Arizona Plaintiffs' vehicles and made any reasonable consumer reluctant to

purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

2937.   Accordingly, GM is liable to the Arizona Plaintiffs for damages in an amount to be proven at trial.

2938.   The Arizona Plaintiffs hereby sue Defendant for damages in an amount to be proven at trial.  Defendant's wrongful conduct was guided by evil motives or willful or wanton disregard of the interests of others.  Defendant's conduct thus warrants substantial punitive damages in an amount to be determined at trial, for which the Arizona Plaintiffs hereby sue Defendant.

<div align="center">

**ARIZONA COUNT 2**
**VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT**
**(ARIZONA REV. STAT. § 44-1521 ET SEQ.)**

</div>

2939.   The Arizona Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

2940.   The Arizona Consumer Fraud Act (Arizona CFA) provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud . . . , misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." ARIZ. REV. STAT. § 44-1522(A). Defendants' aforementioned conduct violated the Arizona CFA.

2941.   Defendants and the Arizona Plaintiffs are "persons" within the meaning of the Arizona CFA, ARIZ. REV. STAT. § 44-1521(6).

2942.   Each Polluting Vehicle at issue is "merchandise" within the meaning of ARIZ. REV. STAT. § 44-1521(5).

2943.   Defendants' conduct, as set forth above, occurred in the conduct of trade or commerce.

2944.   Pursuant to the Arizona CFA, the Arizona Plaintiffs seek monetary relief against each Defendant in an amount to be determined at trial. The Arizona Plaintiffs also seek punitive damages because each Defendant engaged in aggravated and outrageous conduct with an evil mind.  The Arizona Plaintiffs also seek attorneys' fees, costs, and any other just and proper relief available under the Arizona CFA.

## ARKANSAS

2945.   The Arkansas Plaintiffs acquired their Fraudulent Vehicles while in the State of Arkansas. As such, they bring the following causes of action against all defendants.

### ARKANSAS COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Arkansas Plaintiffs)

2946.   The Arkansas Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2947.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

2948.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

2949.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard

for the truth and denied the Arkansas Plaintiffs information that was highly relevant to their purchasing decision.

2950.   GM further affirmatively misrepresented to the Arkansas Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Arkansas Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

2951.   GM knew these representations were false when made.

2952.   The Fraudulent Vehicles purchased or leased by the Arkansas Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

2953.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted

higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

2954.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

2955.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Arkansas Plaintiffs did not know of these facts and GM actively concealed these facts from the Arkansas Plaintiffs.  The Arkansas Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Arkansas Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Arkansas Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

2956.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating

components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Arkansas Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Arkansas Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Arkansas Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

2957.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Arkansas Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

2958.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Arkansas Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they

are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

2959.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Arkansas Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

2960.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Arkansas Plaintiffs.

2961.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Arkansas Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

2962.   The Arkansas Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

2963.   The Arkansas Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The

Arkansas Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Arkansas Plaintiffs.

2964.   Because of the concealment and/or suppression of the facts, the Arkansas Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Arkansas Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Arkansas Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

2965.   The value of the Arkansas Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Arkansas Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

2966.   Accordingly, GM is liable to the Arkansas Plaintiffs for damages in an amount to be proven at trial.

2967.   The Arkansas Plaintiffs hereby sue Defendant for damages in an amount to be proven at trial.  Defendant's wrongful conduct was willful or so reckless as to be equivalent thereto. Defendant's conduct thus warrants substantial punitive damages law in an amount to be determined at trial, for which the Arkansas Plaintiffs hereby sue Defendant.

## ARKANSAS COUNT 2-
## VIOLATION OF THE ARKANSAS DECEPTIVE TRADE
## PRACTICES ACT
## (ARK. CODE ANN. § 4-88-101 ET SEQ.)

2968. The Arkansas Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

2969. The Arkansas Deceptive Trade Practices Act (Arkansas DTPA) prohibits "[d]eceptive and unconscionable trade practices," which include but are not limited to "[e]ngaging in any . . . unconscionable false, or deceptive act or practice in business, commerce, or trade." ARK. CODE. ANN. § 4-88-107(a)(10). The Arkansas DTPA also prohibits, in connection with the sale or advertisement of any goods, "(1) the act, use, or employment by any person of any deception, fraud, or pretense; or (2) the concealment, suppression, or omission of any material fact with intent that other rely upon the concealment, suppression, or omission." ARK CODE. ANN. § 4-88-108. Defendants' aforementioned conduct violated the Arkansas DTPA.

2970. Defendants and the Arkansas Plaintiffs are "persons" within the meaning of ARK. CODE. ANN. § 4-88-102(5).

2971. Each Polluting Vehicle at issue constitutes "goods" within the meaning of ARK. CODE ANN. § 4-88-102(4).

2972. The Arkansas Plaintiffs seek monetary relief against Defendants in an amount to be determined at trial. The Arkansas Plaintiffs also seek attorneys' fees, costs, and any other just and proper relief available under the Arkansas DTPA.

## <u>COLORADO</u>

2973. The Colorado Plaintiffs acquired their Fraudulent Vehicles while in the State of Colorado. As such, they bring the following causes of action against all defendants.

## COLORADO COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Colorado Plaintiffs)

2974.   The Colorado Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2975.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

2976.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

2977.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Colorado Plaintiffs information that was highly relevant to their purchasing decision.

2978.   GM further affirmatively misrepresented to the Colorado Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Colorado Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

2979.   GM knew these representations were false when made.

2980. The Fraudulent Vehicles purchased or leased by the Colorado Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions. A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

2981. As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

2982. GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

2983. GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Colorado Plaintiffs did not know of these facts and

GM actively concealed these facts from the Colorado Plaintiffs.  The Colorado Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Colorado Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Colorado Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

2984.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Colorado Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Colorado Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Colorado Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

2985.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the

true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Colorado Plaintiffs.  GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

2986.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Colorado Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

2987.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Colorado Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

2988.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Colorado Plaintiffs.

2989.  When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Colorado Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

2990.  The Colorado Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

2991.  The Colorado Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Colorado Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Colorado Plaintiffs.

2992.  Because of the concealment and/or suppression of the facts, the Colorado Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Colorado Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Colorado Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

2993.  The value of the Colorado Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the

high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Colorado Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

2994.   Accordingly, GM is liable to the Colorado Plaintiffs for damages in an amount to be proven at trial.

2995.   The Colorado Plaintiffs hereby sue Defendant for damages in an amount to be proven at trial.  Defendant engaged in willful and wanton conduct, that is, conduct purposefully committed which Defendant must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the Colorado Plaintiffs.  Defendant's conduct thus warrants substantial exemplary damages in an amount to be determined at trial, for which the Colorado Plaintiffs sue Defendant.

## COLORADO COUNT 2
## VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
## (COLO. REV. STAT. § 6-1-101 ET SEQ.)

2996.   The Colorado Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

2997.   The Colorado Consumer Protection Act (Colorado CPA) prohibits deceptive practices in the course of a person's business, including but not limited to "fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." COLO. REV. STAT. § 6-1-105.   Defendants' aforementioned conduct violated the Colorado CPA.

2998.   Each Defendant is a "person" under COLO. REV. STAT. § 6-1-102(6).

2999.   The Colorado Plaintiffs are "consumers" for purposes of COL. REV. STAT § 6-1-113(1)(a).

3000.   Each Defendant's conduct, as set forth above, occurred in the conduct of trade or commerce.

3001.   Pursuant to COLO. REV. STAT. § 6-1-113, the Colorado Plaintiffs seek monetary relief against each Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each plaintiff.  The Colorado Plaintiffs also seek attorneys' fees and costs, and any other just and proper remedy under the Colorado CPA.

## CONNECTICUT

3002.   The Connecticut Plaintiffs acquired their Fraudulent Vehicles while in the State of Connecticut.   As such, they bring the following causes of action against all defendants.

### CONNECTICUT COUNT 1- FRAUD BY CONCEALMENT
#### (On behalf of the Connecticut Plaintiffs)

3003.   The Connecticut Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3004.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3005.  GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3006.  GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising

campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Connecticut Plaintiffs information that was highly relevant to their purchasing decision.

3007. GM further affirmatively misrepresented to the Connecticut Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage. The Connecticut Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3008. GM knew these representations were false when made.

3009. The Fraudulent Vehicles purchased or leased by the Connecticut Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions. A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3010. As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that

the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3011.  GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3012.  GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Connecticut Plaintiffs did not know of these facts and GM actively concealed these facts from the Connecticut Plaintiffs.  The Connecticut Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Connecticut Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Connecticut Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3013.  GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading

without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Connecticut Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Connecticut Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Connecticut Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3014.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Connecticut Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3015.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment

and reduced emissions. It also emphasized profits and sales above the trust that the Connecticut Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3016.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Connecticut Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3017.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Connecticut Plaintiffs.

3018.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Connecticut Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3019.   The Connecticut Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3020.   The Connecticut Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles,

or would have taken other affirmative steps in light of the information concealed from them. The Connecticut Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Connecticut Plaintiffs.

3021.   Because of the concealment and/or suppression of the facts, the Connecticut Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Connecticut Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Connecticut Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3022.   The value of the Connecticut Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Connecticut Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3023.   Accordingly, GM is liable to the Connecticut Plaintiffs for damages in an amount to be proven at trial.

3024.   Defendant is liable to the Connecticut Plaintiffs for damages in an amount to be proven at trial, and the Connecticut Plaintiffs hereby sue for such damages.  Defendant engaged in

3462

wanton and malicious misconduct.  Defendant's conduct thus warrants substantial exemplary damages in an amount to be determined at trial, for which the Connecticut Plaintiffs hereby sue.

## CONNECTICUT COUNT 2
## VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
## (CONN. GEN. STAT. § 42-110A ET SEQ.)

3025.  The Connecticut Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3026.  The Connecticut Unfair Trade Practices Act (Connecticut UTPA) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a).  Defendants' aforementioned conduct violated this statute.

3027.  The Connecticut Plaintiffs and Defendants are each a "person" within the meaning of CONN. GEN. STAT. § 42-110a(3).

3028.  Defendants' challenged conduct occurred in "trade" or "commerce" within the meaning of CONN. GEN. STAT. § 42-110a(4).

3029.  The Connecticut Plaintiffs are entitled to recover their actual damages, punitive damages, and attorneys' fees and costs pursuant to CONN. GEN. STAT. § 42-110g.

3030.  Defendants acted with reckless indifference to another's rights, or wanton or intentional violation of another's rights, and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard for the rights of others. Therefore, punitive damages are warranted.

## <u>DELAWARE</u>

3031.  The Delaware Plaintiffs acquired their Fraudulent Vehicles while in the State of Delaware.   As such, they bring the following causes of action against all defendants.

## DELAWARE COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Delaware Plaintiffs)

3032.   The Delaware Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3033.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3034.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3035.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Delaware Plaintiffs information that was highly relevant to their purchasing decision.

3036.   GM further affirmatively misrepresented to the Delaware Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Delaware Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3037.   GM knew these representations were false when made.

3038.   The Fraudulent Vehicles purchased or leased by the Delaware Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.   A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3039.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3040.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3041.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Delaware Plaintiffs did not know of these facts and

GM actively concealed these facts from the Delaware Plaintiffs.  The Delaware Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Delaware Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Delaware Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3042.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Delaware Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Delaware Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Delaware Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3043.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the

true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Delaware Plaintiffs.  GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3044.  GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Delaware Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3045.  GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Delaware Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3046.  GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Delaware Plaintiffs.

3047. When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Delaware Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3048. The Delaware Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3049. The Delaware Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Delaware Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Delaware Plaintiffs.

3050. Because of the concealment and/or suppression of the facts, the Delaware Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Delaware Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Delaware Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3051. The value of the Delaware Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the

high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Delaware Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3052.   Accordingly, GM is liable to the Delaware Plaintiffs for damages in an amount to be proven at trial.

3053.   Defendant is liable to the Delaware Plaintiff for damages in an amount to be proven at trial, for which the Delaware Plaintiff hereby sues Defendant.  Defendant acted in a manner that was an extreme deviation from reasonable standards of conduct, and the acts were performed with an understanding of or disregard for their likely consequences.  Defendant acted with knowledge, intent, malice, oppression, fraud, gross negligence, wantonness, willfulness and deliberation. Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the Delaware Plaintiff hereby sues Defendant.

## DELWARE COUNT 2
## VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT
## (DEL. CODE TIT. 6, § 2513 ET SEQ.)

3054.   The Delaware Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3055.   The Delaware Consumer Fraud Act (Delaware CFA) prohibits the "act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease or advertisement of any merchandise, whether or nor any person has in fact been misled, deceived,

or damaged thereby." DEL. CODE TIT. 6, § 2513(a).   Defendants' aforementioned conduct violated this statute.

3056.   Each Defendant is a "person" within the meaning of DEL. CODE TIT. 6, § 2511(7).

3057.   Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.

3058.   The Delaware Plaintiffs seek damages under the Delaware CFA for injury resulting from the direct and natural consequences of each Defendant's unlawful conduct. See, e.g., Stephenson v. Capano Dev., Inc., 462 A.2d 1069, 1077 (Del. 1980). The Delaware Plaintiffs also seek attorneys' fees and costs, and any other just and proper relief available under the Delaware CFA.

3059.   Defendants engaged in gross, oppressive, or aggravated conduct justifying the imposition of punitive damages.

## FLORIDA

3060.   The Florida Plaintiffs acquired their Fraudulent Vehicles while in the State of Florida.    As such, they bring the following causes of action against all defendants.

### FLORIDA COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Florida Plaintiffs)

3061.   The Florida Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3062.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3063.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3064.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Florida Plaintiffs information that was highly relevant to their purchasing decision.

3065.   GM further affirmatively misrepresented to the Florida Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Florida Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3066.   GM knew these representations were false when made.

3067.   The Fraudulent Vehicles purchased or leased by the Florida Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3068.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3069.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3070.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Florida Plaintiffs did not know of these facts and GM actively concealed these facts from the Florida Plaintiffs.  The Florida Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Florida Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Florida Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3071.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and

incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Florida Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Florida Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Florida Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3072.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Florida Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3473

3073.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Florida Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3074.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Florida Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3075.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Florida Plaintiffs.

3076.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Florida Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3077.   The Florida Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3078.   The Florida Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed

facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Florida Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Florida Plaintiffs.

3079.   Because of the concealment and/or suppression of the facts, the Florida Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Florida Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Florida Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3080.   The value of the Florida Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Florida Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3081.   Accordingly, GM is liable to the Florida Plaintiffs for damages in an amount to be proven at trial.

3082.   Defendant is liable to the Florida Plaintiffs for damages in an amount to be proven at trial,  for which the Florida Plaintiffs hereby sue.  Defendant engaged in fraud in conduct with

actual malice and deliberate oppression.  Defendant engaged in intentional misconduct, that is, Defendant had actual knowledge of the wrongfulness of the conduct and there was a high probability of injury or damage to the Florida Plaintiffs and, despite that knowledge, Defendant intentionally pursued that course of conduct, resulting in injury or damage.  Defendant also engaged in gross negligence, that is, conduct that was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.  Defendant engaged in fraud, malice, oppression or such recklessness or negligence as evinces a conscious disregard of the rights of others.   Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the Florida Plaintiffs hereby sue.

### FLORIDA COUNT 2
### VIOLATIONS OF FLORIDA'S UNFAIR &
### DECEPTIVE TRADE PRACTICES ACT
### (Fla. Stat. § 501.201, et seq.)

3083.   The Florida Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3084.   The Florida Plaintiffs have complied with all applicable, pre-suit notice letter provisions, if any, of the Florida Unfair and Deceptive Trade Practices Act.

3085.   The Florida Plaintiffs are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

3086.   Defendants are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

3087.   FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …"

Fla. Stat. § 501.204(1). Defendants participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

3088.   The Florida Plaintiffs hereby sue Defendants to recover their actual damages under Fla. Stat. § 501.211(2) plus punitive damages plus attorneys' fees and costs under Fla. Stat. § 501.2105(1) plus any other just and proper relief under FUDTPA.

### GEORGIA

3089.   The Georgia Plaintiffs acquired their Fraudulent Vehicles while in the State of Georgia.   As such, they bring the following causes of action against all defendants.

### GEORGIA COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Georgia Plaintiffs)

3090.   The Georgia Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3091.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3092.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3093.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Georgia Plaintiffs information that was highly relevant to their purchasing decision.

3094.  GM further affirmatively misrepresented to the Georgia Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Georgia Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3095.  GM knew these representations were false when made.

3096.  The Fraudulent Vehicles purchased or leased by the Georgia Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment  technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the  Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3097.  As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3098.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3099.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Georgia Plaintiffs did not know of these facts and GM actively concealed these facts from the Georgia Plaintiffs.  The Georgia Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Georgia Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Georgia Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3100.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that  caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Georgia Plaintiffs, GM had the duty

to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Georgia Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Georgia Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3101.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Georgia Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3102.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Georgia Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3103. GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Georgia Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3104. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Georgia Plaintiffs.

3105. When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect. GM has still not made full and adequate disclosures, and continues to defraud the Georgia Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3106. The Georgia Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3107. The Georgia Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Georgia Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Georgia Plaintiffs.

3108.   Because of the concealment and/or suppression of the facts, the Georgia Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Georgia Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Georgia Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3109.   The value of the Georgia Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Georgia Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3110.   Accordingly, GM is liable to the Georgia Plaintiffs for damages in an amount to be proven at trial.

3111.   Defendants are liable to the Georgia Plaintiffs for damages in an amount to be proven at trial, for which the Georgia Plaintiffs hereby sue Defendants.  Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences. Defendants' conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the Georgia Plaintiffs hereby sue Defendants.

**GEORGIA COUNT 2**
**VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT**
**(GA. CODE ANN. § 10-1-390 ET SEQ.)**

3112.   The Georgia Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3113.   The Georgia Fair Business Practices Act (Georgia FBPA) declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, GA. CODE. ANN. § 101-393(b), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised." GA. CODE. ANN. § 10-1-393(b).  Defendants' aforementioned conduct violated this statute.

3114.   The Georgia Plaintiffs are "consumers" within the meaning of GA. CODE. ANN. § 10-1-393(b).

3115.   Each Defendant engaged in "trade or commerce" within the meaning of GA. CODE. ANN. § 10-1-393(b).

3116.   The Georgia Plaintiffs have complied with all applicable, pre-suit notice letter provisions of the Georgia FBPA.

3117.   The Georgia Plaintiffs seek damages and exemplary damages (for intentional violations) per GA. CODE. ANN. § 10-1-399(a).  The Georgia Plaintiffs also seek an attorneys' fees and expenses of litigation, and any other just and proper relief available under the Georgia FBPA per GA. CODE. ANN. § 10-1-399.

**GEORGIA COUNT 3**
**VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(GA. CODE. ANN § 10-1-370 ET SEQ.)**

3118.   The Georgia Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3119.   Georgia's Uniform Deceptive Trade Practices Act (Georgia UDTPA) prohibits "deceptive trade practices," which include "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised." GA. CODE ANN. § 10- 1-393(b). Defendants' aforementioned conduct violated this statute.

3120.   Defendants and the Georgia Plaintiffs are "persons" within the meaning of GA. CODE ANN. § 10-1-371(5).

3121.   The Georgia Plaintiffs are entitled to recover, and hereby sue Defendants for, actual damages, plus attorney's fees and expenses of litigation per Ga. Code Ann. § 10-1-399(d) plus exemplary damages (for intentional violations) per Ga. Code. Ann. § 10-1-399(a).  The Georgia Plaintiffs also sue Defendants for any other just and proper relief available under Georgia UDTPA per Ga. Code. Ann. § 10-1-399.

3122.   The Georgia Plaintiffs have complied with all applicable, pre-suit notice letter provisions, if any, including those of the Georgia Fair Business Practices Act.

## IOWA

3123.   The Iowa Plaintiffs acquired their Fraudulent Vehicles while in the State of Iowa. As such, they bring the following causes of action against all defendants.

## IOWA COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Iowa Plaintiffs)

3124.   The Iowa Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3125.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3126.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3127.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Iowa Plaintiffs information that was highly relevant to their purchasing decision.

3128.   GM further affirmatively misrepresented to the Iowa Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Iowa Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3129.   GM knew these representations were false when made.

3130. The Fraudulent Vehicles purchased or leased by the Iowa Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions. A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3131. As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3132. GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3133. GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Iowa Plaintiffs did not know of these facts and GM

**3486**

actively concealed these facts from the Iowa Plaintiffs. The Iowa Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Iowa Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Iowa Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3134. GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Iowa Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Iowa Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Iowa Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3135. GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to

such facts, and because GM knew these facts were not known to or reasonably discoverable by the Iowa Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3136.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Iowa Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3137.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Iowa Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3138.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Iowa Plaintiffs.

3139.  When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Iowa Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3140.  The Iowa Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3141.  The Iowa Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Iowa Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Iowa Plaintiffs.

3142.  Because of the concealment and/or suppression of the facts, the Iowa Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Iowa Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Iowa Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3143.  The value of the Iowa Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the

high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Iowa Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3144.  Accordingly, GM is liable to the Iowa Plaintiffs for damages in an amount to be proven at trial.

3145.  Defendant is liable to the Iowa Plaintiffs for damages in an amount to be proven at trial, and the Iowa Plaintiffs hereby sue Defendant for such damages.  Defendant acted toward the Iowa Plaintiffs with knowledge, intent, willful conduct, wanton conduct, fraud and malice. Defendant's conduct thus warrants the award of substantial punitive and exemplary damages in an amount to be determined at trial, for which the Iowa Plaintiffs hereby sue Defendant.

<div style="text-align:center">

**IOWA COUNT 2-**
**VIOLATION OF THE IOWA PRIVATE RIGHT**
**OF ACTION FOR CONSUMER FRAUDS ACT**
**(IOWA CODE § 714H.1 ET SEQ.)**

</div>

3146.  The Iowa Plaintiffs have complied with all applicable, pre-suit notice letter provisions, if any, of the Iowa Private Right of Action for Consumer Frauds Act.

3147.  The Iowa Private Right of Action for Consumer Frauds Act (the "Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression or omission in connection with the advertisement, sale, or lease of consumer merchandise." IOWA CODE § 714H.3.

3148.  Each Defendant is a "person" under IOWA CODE § 714H.2(7).

<div style="text-align:center">

**3490**

</div>

3149.   The Iowa Plaintiffs are "consumers" as defined by IOWA CODE § 714H.2(3) who purchased or leased one or more Fraudulent Vehicles.

3150.   Pursuant to IOWA CODE § 714H.5, Plaintiffs actual damages, statutory damages up to three times the amount of actual damages awarded as a result of each Defendant's willful and wanton disregard for the rights of others, attorneys' fees, and other such relief to which they might be entitled under the Iowa CFA.

## IDAHO

3151.   The Idaho Plaintiffs acquired their Fraudulent Vehicles while in the State of Idaho. As such, they bring the following causes of action against all defendants.

## IDAHO COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Idaho Plaintiffs)

3152.   The Idaho Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3153.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3154.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3155.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Idaho Plaintiffs information that was highly relevant to their purchasing decision.

3156. GM further affirmatively misrepresented to the Idaho Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage. The Idaho Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3157. GM knew these representations were false when made.

3158. The Fraudulent Vehicles purchased or leased by the Idaho Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions. A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3159. As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3160.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3161.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Idaho Plaintiffs did not know of these facts and GM actively concealed these facts from the Idaho Plaintiffs.  The Idaho Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Idaho Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Idaho Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3162.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Idaho Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were

material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Idaho Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Idaho Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3163. GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Idaho Plaintiffs. GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles. GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics. The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3164. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Idaho Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3165. GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in

the value of the vehicles. As GM well knew, its customers, including the Idaho Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3166.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Idaho Plaintiffs.

3167.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Idaho Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3168.   The Idaho Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3169.   The Idaho Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Idaho Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Idaho Plaintiffs.

3170.   Because of the concealment and/or suppression of the facts, the Idaho Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure

to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Idaho Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Idaho Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3171. The value of the Idaho Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Idaho Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3172. Accordingly, GM is liable to the Idaho Plaintiffs for damages in an amount to be proven at trial.

3173. Defendant is liable to the Idaho Plaintiffs for damages in an amount to be proven at trial, for which the Idaho Plaintiffs hereby sue Defendant. Defendant acted in a manner that was an extreme deviation from reasonable standards of conduct, and the acts were performed with an understanding of or disregard for their likely consequences. Defendant acted with malice, oppression, fraud, gross negligence, wantonness, willfulness and deliberation. Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the Idaho Plaintiffs hereby sue Defendant.

## **ILLINOIS**

3174. The Illinois Plaintiffs acquired their Fraudulent Vehicles while in the State of Illinois. As such, they bring the following causes of action against all defendants.

## ILLINOIS COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Illinois Plaintiffs)

3175.   The Illinois Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3176.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3177.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3178.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Illinois Plaintiffs information that was highly relevant to their purchasing decision.

3179.   GM further affirmatively misrepresented to the Illinois Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Illinois Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3180.   GM knew these representations were false when made.

3181.   The Fraudulent Vehicles purchased or leased by the Illinois Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.   A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3182.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3183.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3184.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Illinois Plaintiffs did not know of these facts and

GM actively concealed these facts from the Illinois Plaintiffs.  The Illinois Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Illinois Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Illinois Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3185.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Illinois Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Illinois Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Illinois Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3186.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the

true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Illinois Plaintiffs. GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles. GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics. The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3187. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Illinois Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3188. GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Illinois Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3189. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Illinois Plaintiffs.

3190.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Illinois Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3191.   The Illinois Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3192.   The Illinois Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Illinois Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Illinois Plaintiffs.

3193.   Because of the concealment and/or suppression of the facts, the Illinois Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Illinois Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Illinois Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3194.   The value of the Illinois Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the

high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Illinois Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3195.   Accordingly, GM is liable to the Illinois Plaintiffs for damages in an amount to be proven at trial.

3196.   Pursuant to 815 ILCS 505/10a(a), the Illinois Plaintiffs sue Defendant for actual damages plus punitive damages because Defendant acted with fraud and/or malice and/or was grossly negligent and its conduct was willful or intentional and done with evil motive or reckless indifference to the rights of others.  Defendant's conduct resulted in public injury constituted a pattern or an effect on consumers and the public interest. The Illinois Plaintiffs also seek attorney's fees and costs per 815 ILCS § 505/10a(c) plus any other just and proper relief available under the Illinois CFA.

### ILLINOIS COUNT 2-
### VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND
### DECEPTIVE BUSINESS PRACTICES ACT
### (815 ILCS 505/1, et seq. and 720 ILCS 295/1a)

3197.   The Illinois Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

3198.   The Illinois Plaintiffs have complied with all applicable, pre-suit notice letter provisions, including those of the Illinois Consumer Fraud and Deceptive Business Practices Act. Specifically, the Illinois Plaintiffs have served a notice and demand upon named defendants at least 30 days prior to the filing of this action.

3199.   Defendants are "person[s]" as that term is defined in 815 ILCS 505/1(c).

3502

3200.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2. Defendants' aforementioned conduct intentionally violated the Illinois CFA.

3201.   Pursuant to 815 ILCS 505/10a(a), the Illinois Plaintiffs sue Defendants for actual damages, plus punitive damages because Defendants acted with fraud and/or malice and/or were grossly negligent and their conduct was willful or intentional and done with evil motive or reckless indifference to the rights of others.  Defendants' conduct resulted in public injury constituted a pattern or an effect on consumers and the public interest. The Illinois Plaintiffs also seek attorney's fees and costs per 815 ILCS § 505/10a(c) plus any other just and proper relief available under the Illinois CFA.

## **INDIANA**

3202.   The Indiana Plaintiffs acquired their Fraudulent Vehicles while in the State of Indiana.  As such, they bring the following causes of action against all defendants.

### **INDIANA COUNT 1- FRAUD BY CONCEALMENT**
### **(On behalf of the Indiana Plaintiffs)**

3203.   The Indiana Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3204.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3205.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3206.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Indiana Plaintiffs information that was highly relevant to their purchasing decision.

3207.   GM further affirmatively misrepresented to the Indiana Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Indiana Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3208.   GM knew these representations were false when made.

3209.   The Fraudulent Vehicles purchased or leased by the Indiana Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving

conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3210.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3211.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3212.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Indiana Plaintiffs did not know of these facts and GM actively concealed these facts from the Indiana Plaintiffs.  The Indiana Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Indiana Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Indiana Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3213. GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Indiana Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Indiana Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Indiana Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3214. GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Indiana Plaintiffs. GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles. GM used the Defeat Device to conceal the defective nature

of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3215.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Indiana Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3216.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Indiana Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3217.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Indiana Plaintiffs.

3218.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Indiana Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3219.   The Indiana Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3220.   The Indiana Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Indiana Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Indiana Plaintiffs.

3221.   Because of the concealment and/or suppression of the facts, the Indiana Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Indiana Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Indiana Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3222.   The value of the Indiana Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Indiana Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3223.   Accordingly, GM is liable to the Indiana Plaintiffs for damages in an amount to be proven at trial.

3224.   Defendant is liable to the Indiana Plaintiffs for damages in an amount to be proven at trial.  Defendant's actions amounted to willful and wanton misconduct.  Further Defendant acted maliciously, fraudulently, oppressively, and with gross negligence.  Defendant's conduct thus warrants the award of substantial punitive and exemplary damages in an amount to be determined at trial.

<div align="center">

**INDIANA COUNT 2**
**VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT**
**(IND. CODE § 24-5-0.5-3)**

</div>

3225.   The Indiana Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3226.   Indiana's Deceptive Consumer Sales Act (Indiana DCSA) prohibits a person from engaging in a "deceptive business practice[s]" or acts, including but not limited to "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; . . . (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; . . . (b) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall

state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false." Defendants' aforementioned conduct violated this statute.

3227.   Each Defendant is a "person" within the meaning of IND. CODE § 25- 5-0.5-2(a)(2) and a "supplier" within the meaning of IND. CODE § 24-5-0.5-2(a)(3).

3228.   The Indiana Plaintiffs' vehicle purchases are "consumer transactions" within the meaning of IND. CODE § 24-5-0.5-2(a)(3).

3229.   The Indiana Plaintiffs have complied with all applicable, pre-suit notice letter provisions of the Indiana DSCA.

3230.   Pursuant to IND. CODE § 24-5-0.5-4, the Indiana Plaintiffs seek monetary relief against each Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each plaintiff, including treble damages up to $1,000 for Defendants' willfully deceptive acts.   The Indiana Plaintiffs further seek reasonable attorney fees and costs per Ind. Code § 24-5-0.5-4.  The Indiana Plaintiffs also seek punitive damages based on the outrageousness and recklessness of each Defendant's conduct.

## KANSAS

3231.   The Kansas Plaintiffs acquired their Fraudulent Vehicles while in the State of Kansas.    As such, they bring the following causes of action against all defendants.

### KANSAS COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Kansas Plaintiffs)

3232.   The Kansas Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

**3510**

3233.  GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3234.  GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3235.  GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Kansas Plaintiffs information that was highly relevant to their purchasing decision.

3236.  GM further affirmatively misrepresented to the Kansas Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Kansas Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3237.  GM knew these representations were false when made.

3238.  The Fraudulent Vehicles purchased or leased by the Kansas Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited

during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3239.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3240.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3241.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Kansas Plaintiffs did not know of these facts and GM actively concealed these facts from the Kansas Plaintiffs.  The Kansas Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Kansas Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM

intended to deceive the Kansas Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3242.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Kansas Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Kansas Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Kansas Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3243.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Kansas Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent

Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3244.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Kansas Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3245.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Kansas Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3246.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Kansas Plaintiffs.

3247.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate

disclosures, and continues to defraud the Kansas Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3248. The Kansas Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3249. The Kansas Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Kansas Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Kansas Plaintiffs.

3250. Because of the concealment and/or suppression of the facts, the Kansas Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Kansas Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Kansas Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3251. The value of the Kansas Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Kansas Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase

any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3252.   Accordingly, GM is liable to the Kansas Plaintiffs for damages in an amount to be proven at trial.

3253.   Defendant is liable to the Kansas Plaintiffs for damages in an amount to be proven at trial, and the Kansas Plaintiffs hereby sue Defendant for such damages.  Defendant acted toward the Kansas Plaintiffs with willful conduct, wanton conduct, fraud and malice.  Defendant's conduct thus warrants the award of substantial punitive and exemplary damages in an amount to be determined at trial, for which the Kansas Plaintiffs hereby sue Defendant.

## KANSAS COUNT 2
## VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT (KAN. STAT. ANN. § 50-623 ET SEQ.)

3254.   The Kansas Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3255.   The Kansas Consumer Protection Act (Kansas CPA) states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." KAN. STAT. ANN. § 50-626(a). Deceptive acts or practices include but are not limited to "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact" and "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." KAN. STAT. ANN. § 50-626. Defendants' aforementioned conduct violated this statute.

3256.   The Kansas Plaintiffs are "consumers" within the meaning of KAN. STAT. ANN. § 50-624(b) who purchased or leased one or more Fraudulent Vehicles.

3257.   Each sale or lease of a Polluting Vehicle to the Kansas Plaintiffs was a "consumer transaction" within the meaning of KAN. STAT. ANN. § 50-624(c).

3258.   Pursuant to KAN. STAT. ANN. § 50-634, the Kansas Plaintiffs seek monetary relief against each Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each plaintiff.  The Kansas Plaintiffs also seek attorneys' fees and costs, and any other just and proper relief available under KAN. STAT. ANN. § 50-623 et seq.

## **KENTUCKY**

3259.   The Kentucky Plaintiffs acquired their Fraudulent Vehicles while in the State of Kentucky.    As such, they bring the following causes of action against all defendants.

### **KENTUCKY COUNT 1- FRAUD BY CONCEALMENT**
### **(On behalf of the Kentucky Plaintiffs)**

3260.   The Kentucky Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3261.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3262.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3263.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard

for the truth and denied the Kentucky Plaintiffs information that was highly relevant to their purchasing decision.

3264.  GM further affirmatively misrepresented to the Kentucky Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Kentucky Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3265.  GM knew these representations were false when made.

3266.  The Fraudulent Vehicles purchased or leased by the Kentucky Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3267.  As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted

higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3268.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3269.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Kentucky Plaintiffs did not know of these facts and GM actively concealed these facts from the Kentucky Plaintiffs.  The Kentucky Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Kentucky Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Kentucky Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3270.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating

components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Kentucky Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Kentucky Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Kentucky Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3271.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Kentucky Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3272.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Kentucky Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they

are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3273.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Kentucky Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3274.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Kentucky Plaintiffs.

3275.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Kentucky Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3276.   The Kentucky Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3277.   The Kentucky Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The

Kentucky Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Kentucky Plaintiffs.

3278. Because of the concealment and/or suppression of the facts, the Kentucky Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Kentucky Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Kentucky Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3279. The value of the Kentucky Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Kentucky Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3280. Accordingly, GM is liable to the Kentucky Plaintiffs for damages in an amount to be proven at trial.

3281. Defendant is liable to the Kentucky Plaintiffs for damages in an amount to be proven at trial, for which the Kentucky Plaintiffs hereby sue. Defendant acted towards the Kentucky Plaintiffs with fraud, oppression, and malice. Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the Kentucky Plaintiffs hereby sue.

## LOUISIANA

3282.   The Louisiana Plaintiffs acquired their Fraudulent Vehicles while in the State of Louisiana.   As such, they bring the following causes of action against all defendants.

### LOUSIANA COUNT 1
### REDHIBITION
### (LA. REV. STAT. § 9:2520 *ET SEQ.*)

3283.   The Louisiana Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

3284.   GM knew that the Fraudulent Vehicles were defective and intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx.

3285.   GM is liable for the return of the price of the Fraudulent Vehicles with interest from the time it was paid, reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the Fraudulent Vehicles, and also for damages and reasonable attorney fees.  La. Rev. Stat. § 9:2545.  GM's conduct was wanton and reckless, such conduct threatened the public safety, and the Louisiana Plaintiffs' injuries were caused by such wanton and reckless conduct.  GM's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the Louisiana Plaintiffs hereby sue.

3286.   The Louisiana Plaintiffs have sent notice to GM of the redhibitory defect, though no notice was not required because GM had actual knowledge of the defect.

**MAINE**

3287.   The Maine Plaintiffs acquired their Fraudulent Vehicles while in the State of Maine. As such, they bring the following causes of action against all defendants.

**MAINE COUNT 1- FRAUD BY CONCEALMENT**
**(On behalf of the Maine Plaintiffs)**

3288.   The Maine Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3289.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3290.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3291.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Maine Plaintiffs information that was highly relevant to their purchasing decision.

3292.   GM further affirmatively misrepresented to the Maine Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Maine Plaintiffs reasonably relied on GM's material representations that the

Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3293.   GM knew these representations were false when made.

3294.   The Fraudulent Vehicles purchased or leased by the Maine Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.   A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3295.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3296.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3297.  GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Maine Plaintiffs did not know of these facts and GM actively concealed these facts from the Maine Plaintiffs.  The Maine Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Maine Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Maine Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3298.  GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Maine Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Maine Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Maine Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3299.  GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Maine Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3300.  GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Maine Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3301.  GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Maine Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3302.  GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Maine Plaintiffs.

3303.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.   GM has still not made full and adequate disclosures, and continues to defraud the Maine Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3304.   The Maine Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3305.   The Maine Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Maine Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Maine Plaintiffs.

3306.   Because of the concealment and/or suppression of the facts, the Maine Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Maine Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Maine Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3307. The value of the Maine Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Maine Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3308. Accordingly, GM is liable to the Maine Plaintiffs for damages in an amount to be proven at trial.

3309. Defendant is liable to the Maine Plaintiffs in an amount to be proven at trial, for which the Maine Plaintiffs hereby sue. Defendant's conduct was motivated by actual ill will and the conduct was so outrageous that malice is implied. Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the Maine Plaintiffs hereby sue.

## MAINE COUNT 2
### VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT (ME. REV. STAT. ANN. TIT. 5, § 205-A ET SEQ.)

3310. The Maine Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3311. The Maine Unfair Trade Practices Act (Maine UTPA) makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." ME. REV. STAT. ANN. TIT. 5, § 207. Defendants' aforementioned conduct violated this statute.

3312. Defendants and the Maine Plaintiffs are "persons" within the meaning of ME. REV. STAT. ANN. TIT. § 5, 206(2).

3313.   Defendants are engaged in "trade" or "commerce" within the meaning of ME. REV. STAT. ANN. TIT. § 5, 206(3).

3314.   Pursuant to Me. Rev. Stat. Ann. Tit. 5 § 213, the Maine Plaintiffs sue Defendants for actual damage plus punitive damages under Maine law plus attorneys' fees and costs per Me. Rev. Stat. Ann. Tit. 5 § 213(2), plus any other just and proper relief available under the Maine UTPA.

3315.   The Maine Plaintiffs have complied with all applicable, pre-suit notice letter provisions of the Maine UTPA.

### **MARYLAND**

3316.   The Maryland Plaintiffs acquired their Fraudulent Vehicles while in the State of Maryland.   As such, they bring the following causes of action against all defendants.

### **MARYLAND COUNT 1- FRAUD BY CONCEALMENT**
### **(On behalf of the Maryland Plaintiffs)**

3317.   The Maryland Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3318.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3319.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3320.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard

for the truth and denied the Maryland Plaintiffs information that was highly relevant to their purchasing decision.

3321.   GM further affirmatively misrepresented to the Maryland Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Maryland Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3322.   GM knew these representations were false when made.

3323.   The Fraudulent Vehicles purchased or leased by the Maryland Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.   A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3324.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted

higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3325.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3326.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Maryland Plaintiffs did not know of these facts and GM actively concealed these facts from the Maryland Plaintiffs.  The Maryland Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Maryland Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Maryland Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3327.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating

**3532**

components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Maryland Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Maryland Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Maryland Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3328.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Maryland Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.   GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.   The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3329.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Maryland Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they

are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3330.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Maryland Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3331.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Maryland Plaintiffs.

3332.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Maryland Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3333.   The Maryland Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3334.   The Maryland Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The

Maryland Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Maryland Plaintiffs.

3335. Because of the concealment and/or suppression of the facts, the Maryland Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Maryland Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Maryland Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3336. The value of the Maryland Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Maryland Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3337. Accordingly, GM is liable to the Maryland Plaintiffs for damages in an amount to be proven at trial.

3338. Defendant is liable to the Maryland Plaintiffs for damages in an amount to be proven at trial, for which the Maryland Plaintiffs hereby sue. Defendant acted toward the Maryland Plaintiffs with actual malice, fraud, evil intent and oppression. Defendant's conduct thus warrants the award of substantial punitive and exemplary damages law in an amount to be determined at trial, for which the Maryland Plaintiffs hereby sue.

## MARYLAND COUNT 2
## VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT
### (MD. CODE ANN., COM. LAW § 13-101 ET SEQ.)

3339.   The Maryland Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3340.   The Maryland Consumer Protection Act (Maryland CPA) provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good, including "failure to state a material fact if the failure deceives or tends to deceive" and "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same," MD. CODE ANN., COM. LAW § 13-301, regardless of whether the consumer is actually deceived or damaged, MD. CODE ANN., COM. LAW § 13-302. Defendants' aforementioned conduct violated this statute.

3341.   Defendants and the Maryland Plaintiffs are "persons" within the meaning of MD. CODE ANN., COM. LAW § 13-101(h).

3342.   Pursuant to MD. CODE ANN., COM. LAW § 13-408, the Maryland Plaintiffs seek actual damages, punitive damages, attorneys' fees and costs, and any other just and proper relief available under the Maryland CPA.

## MASSACHUSETTS

3343.   The Massachusetts Plaintiffs acquired their Fraudulent Vehicles while in the State of Massachusetts.    As such, they bring the following causes of action against all defendants.

## MASSACHUSETTS COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Massachusetts Plaintiffs)

3344.   The Massachusetts Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3345. GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3346. GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3347. GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Massachusetts Plaintiffs information that was highly relevant to their purchasing decision.

3348. GM further affirmatively misrepresented to the Massachusetts Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage. The Massachusetts Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3349. GM knew these representations were false when made.

3350. The Fraudulent Vehicles purchased or leased by the Massachusetts Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off

or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3351.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3352.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3353.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Massachusetts Plaintiffs did not know of these facts and GM actively concealed these facts from the Massachusetts Plaintiffs.  The Massachusetts Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Massachusetts Plaintiffs did not, and could not, unravel GM's deception on

their own. Rather, GM intended to deceive the Massachusetts Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3354.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Massachusetts Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Massachusetts Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Massachusetts Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3355.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the

Massachusetts Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3356.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Massachusetts Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3357.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Massachusetts Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3358.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Massachusetts Plaintiffs.

3359. When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect. GM has still not made full and adequate disclosures, and continues to defraud the Massachusetts Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3360. The Massachusetts Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3361. The Massachusetts Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Massachusetts Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Massachusetts Plaintiffs.

3362. Because of the concealment and/or suppression of the facts, the Massachusetts Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Massachusetts Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Massachusetts Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3363.   The value of the Massachusetts Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Massachusetts Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3364.   Accordingly, GM is liable to the Massachusetts Plaintiffs for damages in an amount to be proven at trial.

3365.   Defendant is liable to the Massachusetts Plaintiffs for damages in an amount to be proven at trial, and the Massachusetts Plaintiffs hereby sue Defendant for such damages, for which the Massachusetts Plaintiffs hereby sue. Defendant's conduct was willful, intentional, fraudulent, wanton and reckless, and such conduct threatened the public safety.  Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, which the Massachusetts Defendants hereby sue for.

## MASSACHUSETTS COUNT 2
## VIOLATION OF THE MASSACHUSETTS GENERAL LAW CHAPTER 93(A)
### (MASS. GEN. LAWS CH. 93A, § 1 ET SEQ.)

3366.   The Massachusetts Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3367.   Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Defendants violated the Massachusetts Act.

3368.   Defendants and the Massachusetts Plaintiffs are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

3369.   Defendants are engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

3370.   Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Massachusetts Plaintiffs sue Defendants for actual damages in an amount to be determined at trial. Because Defendants' conduct was committed willfully and knowingly, the Massachusetts Plaintiffs are entitled to recover for each Plaintiff, and hereby sue Defendants for, up to three times actual damages, but no less than two times actual damages.  The Massachusetts Plaintiffs further sue Defendants for reasonable attorney's fees and costs per Mass. Gen. Laws ch. 93A, § 9 plus any other relief available under the Massachusetts Act.

3371.   The Massachusetts Plaintiffs have complied with all applicable, pre-suit notice letter provisions of the Massachusetts Act.

## <u>MICHIGAN</u>

3372.   The Michigan Plaintiffs acquired their Fraudulent Vehicles while in the State of Michigan.    As such, they bring the following causes of action against all defendants.

### MICHIGAN COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Plaintiffs)

3373.   The Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3374.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3375.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3376.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had

defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Plaintiffs information that was highly relevant to their purchasing decision.

3377. GM further affirmatively misrepresented to the Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage. The Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3378. GM knew these representations were false when made.

3379. The Fraudulent Vehicles purchased or leased by the Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions. A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3380. As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine,

but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3381.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3382.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Plaintiffs did not know of these facts and GM actively concealed these facts from the Plaintiffs.  The Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3383.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental

friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3384.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.   GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.   The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3385.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Plaintiffs placed

in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3386.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3387.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Plaintiffs.

3388.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.   GM has still not made full and adequate disclosures, and continues to defraud the Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3389.   The Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3390.   The Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Plaintiffs'

actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Plaintiffs.

3391.   Because of the concealment and/or suppression of the facts, the Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3392.   The value of the Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3393.   Accordingly, GM is liable to the Plaintiffs for damages in an amount to be proven at trial.

3394.   Defendant is liable to the Plaintiffs for damages in an amount to be proven at trial, for which the Plaintiffs hereby sue.  Defendant's conduct was fraudulent, intentional, willful and wanton and proximately caused damage to the Plaintiffs.  Further, justice and the public good require that the Plaintiffs be awarded an amount of money which will punish Defendant and discourage Defendant and others from similar conduct.  Defendant's conduct thus warrants the

award of substantial punitive and exemplary damages in an amount to be determined at trial, for which the Plaintiffs hereby sue.

## MICHIGAN COUNT 2
## VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. LAWS § 445.903 *ET SEQ.*)

3395.   The Michigan Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3396.   The Michigan Consumer Protection Act (Michigan CPA) prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; or "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS § 445.903(1).  Defendants' aforementioned conduct violated this statute.

3397.   The Michigan Plaintiffs are "person[s]" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d).

3398.   Each Defendant is a "person" engaged in "trade or commerce" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d) and (g).

3399.   The Plaintiffs seek monetary relief against each Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each plaintiff; reasonable attorneys' fees and costs; and any other just and proper relief available under MICH. COMP. LAWS § 445.911.

## MINNESOTA

3400.   The Minnesota Plaintiffs acquired their Fraudulent Vehicles while in the State of Minnesota.    As such, they bring the following causes of action against all defendants.

### MINNESOTA COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Minnesota Plaintiffs)

3401.   The Minnesota Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3402.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3403.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3404.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Minnesota Plaintiffs information that was highly relevant to their purchasing decision.

3405.   GM further affirmatively misrepresented to the Minnesota Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Minnesota Plaintiffs reasonably relied on GM's material representations that

the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3406.   GM knew these representations were false when made.

3407.   The Fraudulent Vehicles purchased or leased by the Minnesota Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.   A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3408.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3409.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3410.  GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Minnesota Plaintiffs did not know of these facts and GM actively concealed these facts from the Minnesota Plaintiffs.  The Minnesota Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Minnesota Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Minnesota Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3411.  GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Minnesota Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Minnesota Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer.

GM represented to the Minnesota Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3412. GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Minnesota Plaintiffs. GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles. GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics. The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3413. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Minnesota Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3414. GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Minnesota Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3415.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Minnesota Plaintiffs.

3416.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Minnesota Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3417.   The Minnesota Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3418.   The Minnesota Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Minnesota Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Minnesota Plaintiffs.

3419.   Because of the concealment and/or suppression of the facts, the Minnesota Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Minnesota Plaintiffs been aware of the true

emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Minnesota Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3420.   The value of the Minnesota Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Minnesota Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3421.   Accordingly, GM is liable to the Minnesota Plaintiffs for damages in an amount to be proven at trial.

3422.   Defendant is liable to the Minnesota Plaintiffs for damages in an amount to be proven at trial, for which the Minnesota Plaintiffs hereby sue.  Defendant's acted with deliberate disregard for the rights or safety of others.  Defendant knew about facts or intentionally ignored facts that created a high probability of injury to the rights or safety of others, and deliberately acted with conscious or intentional disregard or with indifference to the high probability of injury to the rights or safety of others. Defendant's conduct thus warrants the award of substantial punitive and exemplary damages in an amount to be determined at trial, for which the Minnesota Plaintiffs hereby sue.

## MINNESOTA COUNT 2
## VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT
### (MINN. STAT. § 325F.68 ET SEQ.)

3423.   The Minnesota Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3424.  The Minnesota Prevention of Consumer Fraud Act (Minnesota CFA) prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." MINN. STAT. § 325F.69(1).  Defendants' aforementioned conduct violated this statute.

3425.  Each purchase or lease of a Polluting Vehicle constitutes "merchandise" within the meaning of MINN. STAT. § 325F.68(2).

3426.  Pursuant to MINN. STAT. § 8.31(3a), the Minnesota Plaintiffs seek actual damages, attorneys' fees and costs, and any other just and proper relief available under the Minnesota CFA.

## MINNESOTA COUNT 3
## VIOLATION OF THE MINNESOTA DECEPTIVE TRADE PRACTICES ACT
### (MINN. STAT. § 325D.43-48 ET SEQ.)

3427.  The Minnesota Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3428.  The Minnesota Deceptive Trade Practices Act (Minnesota DTPA) prohibits deceptive trade practices, which include "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." MINN. STAT. § 325F.69(1). Defendants' aforementioned conduct violated this statute.

3429.  Pursuant to MINN. STAT. § 8.31(3a), the Minnesota Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

**MISSISSIPPI**

3430.   The Mississippi Plaintiffs acquired their Fraudulent Vehicles while in the State of Mississippi.    As such, they bring the following causes of action against all defendants.

### MISSISSIPPI COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Mississippi Plaintiffs)

3431.   The Mississippi Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3432.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3433.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3434.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Mississippi Plaintiffs information that was highly relevant to their purchasing decision.

3435.   GM further affirmatively misrepresented to the Mississippi Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Mississippi Plaintiffs reasonably relied on GM's material representations

that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3436.   GM knew these representations were false when made.

3437.   The Fraudulent Vehicles purchased or leased by the Mississippi Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.   A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3438.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3439.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3440. GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Mississippi Plaintiffs did not know of these facts and GM actively concealed these facts from the Mississippi Plaintiffs. The Mississippi Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Mississippi Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Mississippi Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3441. GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Mississippi Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Mississippi Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer.

GM represented to the Mississippi Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3442.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Mississippi Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3443.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Mississippi Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3444.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Mississippi Plaintiffs

highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3445. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Mississippi Plaintiffs.

3446. When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect. GM has still not made full and adequate disclosures, and continues to defraud the Mississippi Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3447. The Mississippi Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3448. The Mississippi Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Mississippi Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Mississippi Plaintiffs.

3449. Because of the concealment and/or suppression of the facts, the Mississippi Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the

actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Mississippi Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Mississippi Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3450. The value of the Mississippi Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Mississippi Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3451. Accordingly, GM is liable to the Mississippi Plaintiffs for damages in an amount to be proven at trial.

3452. Defendant is liable to the Mississippi Plaintiffs for damages in an amount to be proven at trial, for which the Mississippi Plaintiffs hereby sue. Defendant's acted with malice, gross negligence, and with reckless disregard for the rights of others. Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the Mississippi Plaintiffs hereby sue.

## MISSOURI

3453. The Missouri Plaintiffs acquired their Fraudulent Vehicles while in the State of Missouri. As such, they bring the following causes of action against all defendants.

## MISSOURI COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Missouri Plaintiffs)

3454.   The Missouri Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3455.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3456.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3457.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Missouri Plaintiffs information that was highly relevant to their purchasing decision.

3458.   GM further affirmatively misrepresented to the Missouri Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Missouri Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3459.   GM knew these representations were false when made.

3460.   The Fraudulent Vehicles purchased or leased by the Missouri Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.   A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3461.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3462.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3463.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Missouri Plaintiffs did not know of these facts and

GM actively concealed these facts from the Missouri Plaintiffs.  The Missouri Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Missouri Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Missouri Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3464.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Missouri Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Missouri Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Missouri Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3465.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the

true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Missouri Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3466.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Missouri Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3467.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Missouri Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3468.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Missouri Plaintiffs.

3469. When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect. GM has still not made full and adequate disclosures, and continues to defraud the Missouri Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3470. The Missouri Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3471. The Missouri Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Missouri Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Missouri Plaintiffs.

3472. Because of the concealment and/or suppression of the facts, the Missouri Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Missouri Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Missouri Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3473. The value of the Missouri Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the

high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Missouri Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3474.   Accordingly, GM is liable to the Missouri Plaintiffs for damages in an amount to be proven at trial.

3475.   Defendant is liable to the Missouri Plaintiffs for damages in an amount to be proven at trial, for which the Missouri Plaintiffs hereby sue.  Defendant's conduct was outrageous because of Defendant's evil motive or reckless indifference to the rights of others. Defendant's conduct thus warrants the award of substantial punitive and exemplary damages in an amount to be determined at trial, for which the Missouri Plaintiffs hereby sue.

## MONTANA

3476.   The Montana Plaintiffs acquired their Fraudulent Vehicles while in the State of Montana. As such, they bring the following causes of action against all defendants.

## MONTANA COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Montana Plaintiffs)

3477.   The Montana Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3478.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3479.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3480.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had

defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Montana Plaintiffs information that was highly relevant to their purchasing decision.

3481.   GM further affirmatively misrepresented to the Montana Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage. The Montana Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3482.   GM knew these representations were false when made.

3483.   The Fraudulent Vehicles purchased or leased by the Montana Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions. A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3484.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine,

but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3485.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3486.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Montana Plaintiffs did not know of these facts and GM actively concealed these facts from the Montana Plaintiffs. The Montana Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Montana Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Montana Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3487.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices

with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Montana Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Montana Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Montana Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3488.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Montana Plaintiffs.  GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles. GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics. The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3489.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment

and reduced emissions. It also emphasized profits and sales above the trust that the Montana Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3490.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Montana Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3491.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Montana Plaintiffs.

3492.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.   GM has still not made full and adequate disclosures, and continues to defraud the Montana Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3493.   The Montana Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3494.   The Montana Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles,

or would have taken other affirmative steps in light of the information concealed from them. The Montana Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Montana Plaintiffs.

3495.   Because of the concealment and/or suppression of the facts, the Montana Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Montana Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Montana Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3496.   The value of the Montana Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Montana Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3497.   Accordingly, GM is liable to the Montana Plaintiffs for damages in an amount to be proven at trial.

3498.   Defendant is liable to the Montana Plaintiffs for damages in an amount to be proven at trial, for which the Montana Plaintiffs hereby sue. Defendant engaged in actual fraud and actual malice. Defendant had knowledge of facts or intentionally disregarded facts that create a high probability of injury to the Montana Plaintiffs and deliberately proceeded to act in conscious or

intentional disregard of the high probability of injury to the Montana Plaintiffs or deliberately proceeded to act with indifference to the high probability of injury to the Montana Plaintiffs. Defendant made representations with knowledge of their falsity and concealed material facts with the purpose of depriving the Montana Plaintiffs of property or legal rights or otherwise causing injury. Defendant's conduct thus warrants the award of substantial punitive and exemplary damages in an amount to be determined at trial, for which the Montana Plaintiffs hereby sue.

**MONTANA COUNT 2**
**VIOLATION OF THE MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973**
**(MONT. CODE ANN. § 30-14-101 ET SEQ.)**

3499. The Montana Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3500. The Montana Unfair Trade Practices and Consumer Protection Act (Montana CPA) makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." MONT. CODE ANN. § 30-14-103. Defendants' aforementioned conduct violated this statute.

3501. Defendants and the Montana Plaintiffs are "persons" within the meaning of MONT. CODE ANN. § 30-14-102(6).

3502. The Montana Plaintiffs are "consumer[s]" under MONT. CODE ANN. § 30-14-102(1).

3503. The sale or lease of each Polluting Vehicle at issue occurred within "trade and commerce" within the meaning of MONT. CODE ANN. § 30-14-102(8), and each Defendant committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

3504.   Because Defendants' unlawful methods, acts, and practices have caused the Montana Plaintiffs to suffer an ascertainable loss of money and property, the Montana Plaintiffs seek from each Defendant: the greater of actual damages or $500; discretionary treble damages; and reasonable attorneys' fees. The Montana Plaintiffs additionally seek any other relief the Court considers necessary or proper, under MONT. CODE ANN. § 30-14-133.

## NEBRASKA

3505.   The Nebraska Plaintiffs acquired their Fraudulent Vehicles while in the State of Nebraska.   As such, they bring the following causes of action against all defendants.

### NEBRASKA COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Nebraska Plaintiffs)

3506.   The Nebraska Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3507.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3508.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3509.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Nebraska Plaintiffs information that was highly relevant to their purchasing decision.

3510.  GM further affirmatively misrepresented to the Nebraska Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Nebraska Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3511.  GM knew these representations were false when made.

3512.  The Fraudulent Vehicles purchased or leased by the Nebraska Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3513.  As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3514. GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3515. GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Nebraska Plaintiffs did not know of these facts and GM actively concealed these facts from the Nebraska Plaintiffs. The Nebraska Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Nebraska Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Nebraska Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3516. GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Nebraska Plaintiffs, GM had the duty

to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Nebraska Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Nebraska Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3517. GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Nebraska Plaintiffs. GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles. GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics. The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3518. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Nebraska Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3519.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Nebraska Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3520.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Nebraska Plaintiffs.

3521.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Nebraska Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3522.   The Nebraska Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3523.   The Nebraska Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Nebraska Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Nebraska Plaintiffs.

3524.   Because of the concealment and/or suppression of the facts, the Nebraska Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Nebraska Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Nebraska Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3525.   The value of the Nebraska Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Nebraska Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3526.   Accordingly, GM is liable to the Nebraska Plaintiffs for damages in an amount to be proven at trial.

3527.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Nebraska Plaintiff's rights and the representations that Defendant made to them, in order to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### NEBRASKA COUNT 2
### VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
### (NEB. REV. STAT. § 59-1601 ET SEQ.)

3528.   The Nebraska Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3529.   The Nebraska Consumer Protection Act (Nebraska CPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." NEB. REV. STAT. § 59-1602.  Defendants' aforementioned conduct violated this statute.

3530.   Defendants and the Nebraska Plaintiffs are "person[s]" under NEB. REV. STAT. § 59-1601(1).

3531.   Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under NEB. REV. STAT. § 59-1601(2).

3532.   Because Defendants' conduct caused injury to the Nebraska Plaintiffs' property through violations of the Nebraska CPA, the Nebraska Plaintiffs seek recovery of actual damages as well as enhanced damages up to $1,000, costs of Court, reasonable attorneys' fees, and any other just and proper relief available under NEB. REV. STAT. § 59-1609.

### NEVADA

3533.   The Nevada Plaintiffs acquired their Fraudulent Vehicles while in the State of Nevada.    As such, they bring the following causes of action against all defendants.

### NEVADA COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Nevada Plaintiffs)

3534.   The Nevada Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3535.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3536.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3537.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Nevada Plaintiffs information that was highly relevant to their purchasing decision.

3538.   GM further affirmatively misrepresented to the Nevada Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Nevada Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3539.   GM knew these representations were false when made.

3540.   The Fraudulent Vehicles purchased or leased by the Nevada Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving

conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3541.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3542.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3543.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Nevada Plaintiffs did not know of these facts and GM actively concealed these facts from the Nevada Plaintiffs.  The Nevada Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Nevada Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Nevada Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3544.  GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Nevada Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Nevada Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Nevada Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3545.  GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Nevada Plaintiffs.  GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature

of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3546.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Nevada Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3547.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Nevada Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3548.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Nevada Plaintiffs.

3549.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Nevada Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3550.   The Nevada Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3551.   The Nevada Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Nevada Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Nevada Plaintiffs.

3552.   Because of the concealment and/or suppression of the facts, the Nevada Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Nevada Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Nevada Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3553.   The value of the Nevada Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Nevada Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3554.   Accordingly, GM is liable to the Nevada Plaintiffs for damages in an amount to be proven at trial.

3555.   Defendant is liable to the Nevada Plaintiffs for damages in an amount to be proven at trial, for which the Nevada Plaintiffs sue Defendant.  Defendant is guilty of oppression, fraud and malice, express or implied.  Defendant's conduct thus warrants the award of substantial punitive and exemplary damages in an amount to be determined at trial, for which the Nevada Plaintiffs sue Defendant.

<div align="center">

**NEVADA COUNT 2**
**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**
**(NEV. REV. STAT. § 598.0903 ET SEQ.)**

</div>

3556.   The Nevada Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3557.   The Nevada Deceptive Trade Practices Act (Nevada DTPA) prohibits deceptive trade practices. NEV. REV. STAT. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "[r]epresents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "[a]dvertises goods or services with intent not to sell or lease them as advertised"; or "[k]nowingly makes any other false representation in a transaction." NEV. REV. STAT. §§ 598.0915– 598.0925.  Defendants' aforementioned conduct violated this statute.

3558.   Accordingly, the Nevada Plaintiffs seek their actual damages, punitive damages, costs of Court, attorney's fees, and all other appropriate and available remedies under the Nevada DTPA. NEV. REV. STAT. § 41.600.

## NEW HAMPSHIRE

3559.   The New Hampshire Plaintiffs acquired their Fraudulent Vehicles while in the State of New Hampshire.   As such, they bring the following causes of action against all defendants.

### NEW HAMPSHIRE COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the New Hampshire Plaintiffs)

3560.   The New Hampshire Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3561.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3562.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3563.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the New Hampshire Plaintiffs information that was highly relevant to their purchasing decision.

3564.   GM further affirmatively misrepresented to the New Hampshire Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant

defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The New Hampshire Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3565.   GM knew these representations were false when made.

3566.   The Fraudulent Vehicles purchased or leased by the New Hampshire Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3567.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3568.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-

powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3569.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the New Hampshire Plaintiffs did not know of these facts and GM actively concealed these facts from the New Hampshire Plaintiffs.   The New Hampshire Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the New Hampshire Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the New Hampshire Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3570.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the New Hampshire Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the New Hampshire Plaintiffs. Whether a manufacturer's products pollute and whether

that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the New Hampshire Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3571.  GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the New Hampshire Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3572.  GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the New Hampshire Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3573.  GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in

the value of the vehicles. As GM well knew, its customers, including the New Hampshire Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3574.  GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the New Hampshire Plaintiffs.

3575.  When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the New Hampshire Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3576.  The New Hampshire Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3577.  The New Hampshire Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The New Hampshire Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the New Hampshire Plaintiffs.

3578.  Because of the concealment and/or suppression of the facts, the New Hampshire Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a

result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the New Hampshire Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the New Hampshire Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3579.   The value of the New Hampshire Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the New Hampshire Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3580.   Accordingly, GM is liable to the New Hampshire Plaintiffs for damages in an amount to be proven at trial.

3581.   Defendant is liable to the New Hampshire Plaintiffs in an amount to be proven at trial, for which the New Hampshire Plaintiffs sue Defendant.  Defendant's conduct was wanton, malicious, or oppressive.  Defendant's conduct thus warrants the award of substantial punitive and exemplary damages in an amount to be determined at trial, for which the New Hampshire Plaintiffs sue Defendant.

**NEW HAMPSHIRE COUNT 2**
**VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT**
**(N.H. REV. STAT. ANN. § 358-A:1 ET SEQ.)**

3582.   The New Hampshire Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3583.   The New Hampshire Consumer Protection Act (New Hampshire CPA) prohibits a person, in the conduct of any trade or commerce, from "using any unfair or deceptive act or practice," including "but . . . not limited to, the following: … [r]epresenting that goods or services have . . . characteristics, . . . uses,   benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade, . . . if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised." N.H. REV. STAT. § 358-A:2.  Defendants' aforementioned conduct violated this statute.

3584.   Defendants and the New Hampshire Plaintiffs are "persons" under N.H. REV. STAT. ANN. § 358-A:1.

3585.   Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. REV. STAT. ANN. § 358-A:1.

3586.   Because Defendants' willful conduct caused injury to the New Hampshire Plaintiffs' property through violations of the New Hampshire CPA, the New Hampshire Plaintiffs seek recovery of actual damages or $1,000, whichever is greater; treble damages; costs and reasonable attorneys' fees; and any other just and proper relief under N.H. REV. STAT. ANN. § 358-A:10.

## NEW JERSEY

3587.   The New Jersey Plaintiffs acquired their Fraudulent Vehicles while in the State of New Jersey.   As such, they bring the following causes of action against all defendants.

## NEW JERSEY COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the New Jersey Plaintiffs)

3588.   The New Jersey Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3589.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3590.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3591.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the New Jersey Plaintiffs information that was highly relevant to their purchasing decision.

3592.   GM further affirmatively misrepresented to the New Jersey Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The New Jersey Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3593.   GM knew these representations were false when made.

3594.   The Fraudulent Vehicles purchased or leased by the New Jersey Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.   A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3595.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3596.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3597.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the New Jersey Plaintiffs did not know of these facts

and GM actively concealed these facts from the New Jersey Plaintiffs.  The New Jersey Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the New Jersey Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the New Jersey Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3598.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the New Jersey Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the New Jersey Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the New Jersey Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3599.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the

true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the New Jersey Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3600.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the New Jersey Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3601.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the New Jersey Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3602.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the New Jersey Plaintiffs.

3603.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the New Jersey Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3604.   The New Jersey Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3605.   The New Jersey Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The New Jersey Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the New Jersey Plaintiffs.

3606.   Because of the concealment and/or suppression of the facts, the New Jersey Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the New Jersey Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth,

the New Jersey Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3607. The value of the New Jersey Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the New Jersey Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3608. Accordingly, GM is liable to the New Jersey Plaintiffs for damages in an amount to be proven at trial.

3609. Defendant is liable to the New Jersey Plaintiffs for damages in an amount to be proven at trial, for which the New Jersey Plaintiffs sue Defendant. Defendant engaged in intentional, willful and wanton wrongdoing with recklessness in disregard of what might happen to someone. Defendant's conduct thus warrants substantial exemplary damages in an amount to be determined at trial, for which the New Jersey Plaintiffs sue Defendant.

## NEW JERSEY COUNT 2
## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J. STAT. ANN. § 56:8-1 *ET SEQ.*)

3610. The New Jersey Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3611. The New Jersey Consumer Fraud Act (New Jersey CFA) makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression

or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. STAT. ANN. § 56:8-2. Defendants' aforementioned conduct violated this statute.

3612. Defendants and the New Jersey Plaintiffs are "persons" within the meaning of N.J. STAT. ANN. § 56:8-1(d).

3613. Defendants engaged in "sales" of "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (d).

3614. Plaintiffs are entitled to recover monetary relief for actual damages, treble damages, costs, and reasonable attorneys' fees pursuant to N.J. STAT. ANN. § 56:8-19, and any other just and appropriate relief.

## NEW MEXICO

3615. The New Mexico Plaintiffs acquired their Fraudulent Vehicles while in the State of New Mexico. As such, they bring the following causes of action against all defendants.

### NEW MEXICO COUNT 1- FRAUD BY CONCEALMENT
#### (On behalf of the New Mexico Plaintiffs)

3616. The New Mexico Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3617. GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3618. GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3619. GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had

defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the New Mexico Plaintiffs information that was highly relevant to their purchasing decision.

3620.   GM further affirmatively misrepresented to the New Mexico Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The New Mexico Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3621.   GM knew these representations were false when made.

3622.   The Fraudulent Vehicles purchased or leased by the New Mexico Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3623.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine,

but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3624.  GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3625.  GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the New Mexico Plaintiffs did not know of these facts and GM actively concealed these facts from the New Mexico Plaintiffs.  The New Mexico Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the New Mexico Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the New Mexico Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3626.  GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices

with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the New Mexico Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the New Mexico Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the New Mexico Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3627.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the New Mexico Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3628.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the New Mexico Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3629.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the New Mexico Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3630.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the New Mexico Plaintiffs.

3631.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the New Mexico Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3632.   The New Mexico Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3633.   The New Mexico Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or

suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The New Mexico Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the New Mexico Plaintiffs.

3634.   Because of the concealment and/or suppression of the facts, the New Mexico Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the New Mexico Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the New Mexico Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3635.   The value of the New Mexico Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the New Mexico Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3636.   Accordingly, GM is liable to the New Mexico Plaintiffs for damages in an amount to be proven at trial.

3637.   Defendant is liable to the New Mexico Plaintiffs for damages in an amount to be proven at trial, for which the New Mexico Plaintiffs sue Defendant.  Defendant's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith. Defendant's conduct thus warrants the award of substantial punitive and exemplary damages in an amount to be determined at trial, for which the New Mexico Plaintiffs sue Defendant.

<div align="center">

**NEW MEXICO COUNT 2**
**VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT**
**(N.M. STAT. ANN. § 57-12-1 *ET SEQ.*)**

</div>

3638.   The New Mexico Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3639.   The New Mexico Unfair Trade Practices Act (New Mexico UTPA) makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M. STAT. ANN. § 57-12-2(D).  Defendants' aforementioned conduct violated this statute.

3640.   Defendants and the New Mexico Plaintiffs are "person[s]" under N.M. STAT. ANN. § 57-12-2.

3641.   Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. STAT. ANN. § 57-12-2.

3642.   Because Defendants' unconscionable, willful conduct caused actual harm to the New Mexico Plaintiffs, the New Mexico Plaintiffs seek recovery of actual damages or $100,

whichever is greater; discretionary treble damages; and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. STAT. ANN. § 57-12-10.

## NEW YORK

3643.  The New York Plaintiffs acquired their Fraudulent Vehicles while in the State of New York.   As such, they bring the following causes of action against all defendants.

### NEW YORK COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the New York Plaintiffs)

3644.  The New York Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3645.  GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3646.  GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3647.  GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the New York Plaintiffs information that was highly relevant to their purchasing decision.

3648.  GM further affirmatively misrepresented to the New York Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven

in normal usage. The New York Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3649. GM knew these representations were false when made.

3650. The Fraudulent Vehicles purchased or leased by the New York Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions. A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3651. As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3652. GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-

powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3653.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the New York Plaintiffs did not know of these facts and GM actively concealed these facts from the New York Plaintiffs.  The New York Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the New York Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the New York Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3654.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the New York Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the New York Plaintiffs. Whether a manufacturer's products pollute and whether that

manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the New York Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3655.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the New York Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.   GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.   The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3656.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the New York Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3657.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the New York Plaintiffs

highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3658. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the New York Plaintiffs.

3659. When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect. GM has still not made full and adequate disclosures, and continues to defraud the New York Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3660. The New York Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3661. The New York Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The New York Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the New York Plaintiffs.

3662. Because of the concealment and/or suppression of the facts, the New York Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual

emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the New York Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the New York Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3663. The value of the New York Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the New York Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3664. Accordingly, GM is liable to the New York Plaintiffs for damages in an amount to be proven at trial.

3665. Defendant is liable to the New York Plaintiffs for damages in an amount to be proven at trial, for which the New York Plaintiffs sue Defendant. Defendant's conduct was highly morally culpable, gross, wanton, and willful and so reprehensible as to warrant the imposition of punitive damages. Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the New York Plaintiffs sue Defendant.

**NEW YORK COUNT 2**
**VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW**
**(N.Y. GEN. BUS. LAW §§ 349–350)**

3666. The New York Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3667.   The New York General Business Law (New York GBL) makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. GEN. BUS. LAW § 349. Defendants' aforementioned conduct violated this statute.

3668.   The New York Plaintiffs are "persons" within the meaning of N.Y. GEN. BUS. LAW § 349(h).

3669.   Each Defendant is a "person," "firm," "corporation," or "association" within the meaning of N.Y. GEN. BUS. LAW § 349.

3670.   Defendants' deceptive acts and practices, which were intended to mislead consumers who purchased or leased a Polluting Vehicle, was conduct directed at consumers.

3671.   Because Defendants' willful and knowing conduct caused injury to the New York Plaintiffs, the New York Plaintiffs seek recovery of actual damages or $50, whichever is greater; discretionary treble damages up to $1,000; punitive damages; reasonable attorneys' fees and costs; and any other just and proper relief available under N.Y. GEN. BUS. LAW § 349.

## <u>NORTH CAROLINA</u>

3672.   The North Carolina Plaintiffs acquired their Fraudulent Vehicles while in the State of North Carolina. As such, they bring the following causes of action against all defendants.

### NORTH CAROLINA COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the North Carolina Plaintiffs)

3673.   The North Carolina Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3674.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3675.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3676.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the North Carolina Plaintiffs information that was highly relevant to their purchasing decision.

3677.   GM further affirmatively misrepresented to the North Carolina Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage. The North Carolina Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3678.   GM knew these representations were false when made.

3679.   The Fraudulent Vehicles purchased or leased by the North Carolina Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions. A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3680.  As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3681.  GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3682.  GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the North Carolina Plaintiffs did not know of these facts and GM actively concealed these facts from the North Carolina Plaintiffs. The North Carolina Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the North Carolina Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the North Carolina Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3683.  GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and

incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the North Carolina Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the North Carolina Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the North Carolina Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3684.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the North Carolina Plaintiffs. GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles. GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics. The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles

because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3685.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the North Carolina Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3686.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the North Carolina Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3687.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the North Carolina Plaintiffs.

3688.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect. GM has still not made full and adequate disclosures, and continues to defraud the North Carolina Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3689.   The North Carolina Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3690.   The North Carolina Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The North Carolina Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the North Carolina Plaintiffs.

3691.   Because of the concealment and/or suppression of the facts, the North Carolina Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the North Carolina Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the North Carolina Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3692.   The value of the North Carolina Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the North Carolina Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3693. Accordingly, GM is liable to the North Carolina Plaintiffs for damages in an amount to be proven at trial.

3694. Defendant is liable to the North Carolina Plaintiffs for damages in an amount to be proven at trial, for which the North Carolina Plaintiffs sue Defendant. Defendant's conduct was fraudulent, done with malice, and willful and wanton. Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the North Carolina Plaintiffs sue Defendant.

<div align="center">

**NORTH CAROLINA COUNT 2**
**VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS AND**
**PRACTICES ACT**
**(N.C. GEN. STAT. § 75-1.1 ET SEQ.)**

</div>

3695. The North Carolina Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3696. North Carolina's Unfair and Deceptive Acts and Practices Act (the North Carolina Act) broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. GEN. STAT. § 75-1.1(a). Defendants' aforementioned conduct violated this statute.

3697. Defendants engaged in "commerce" within the meaning of N.C. GEN. STAT. § 75-1.1(b).

3698. The North Carolina Plaintiffs seek monetary relief for their actual damages, an order for treble their actual damages, costs of Court, attorney's fees, and any other just and proper relief available under the North Carolina Act, N.C. GEN. STAT. § 75-16.

<div align="center">

**<u>NORTH DAKOTA</u>**

</div>

3699. The North Dakota Plaintiffs acquired their Fraudulent Vehicles while in the State of North Dakota. As such, they bring the following causes of action against all defendants.

<div align="center">

**3620**

</div>

## NORTH DAKOTA COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the North Dakota Plaintiffs)

3700.   The North Dakota Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3701.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3702.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3703.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the North Dakota Plaintiffs information that was highly relevant to their purchasing decision.

3704.   GM further affirmatively misrepresented to the North Dakota Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The North Dakota Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3705.   GM knew these representations were false when made.

3706.   The Fraudulent Vehicles purchased or leased by the North Dakota Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3707.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3708.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3709.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the North Dakota Plaintiffs did not know of these facts

and GM actively concealed these facts from the North Dakota Plaintiffs. The North Dakota Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the North Dakota Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the North Dakota Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3710.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the North Dakota Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the North Dakota Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the North Dakota Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3711.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the North Dakota Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3712.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the North Dakota Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3713.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the North Dakota Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3714.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the North Dakota Plaintiffs.

3715.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the North Dakota Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3716.   The North Dakota Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3717.   The North Dakota Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The North Dakota Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the North Dakota Plaintiffs.

3718.   Because of the concealment and/or suppression of the facts, the North Dakota Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the North Dakota Plaintiffs been aware of the true

emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the North Dakota Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3719.   The value of the North Dakota Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the North Dakota Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3720.   Accordingly, GM is liable to the North Dakota Plaintiffs for damages in an amount to be proven at trial.

3721.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of North Dakota Plaintiff's rights and the representations that Defendant made to them, in order to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### NORTH DAKOTA COUNT 2
### VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT (N.D. CENT. CODE § 51-15-02)

3722.   The North Dakota Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3723.   The North Dakota Consumer Fraud Act (North Dakota CFA) makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale

or advertisement of any merchandise." N.D. CENT. CODE § 51-15-02. Defendants' aforementioned conduct violated this statute.

3724. Defendants and the North Dakota Plaintiffs are "persons" within the meaning of N.D. CENT. CODE § 51-15-02(4).

3725. Defendants' engaged in the "sale" of "merchandise" within the meaning of N.D. CENT. CODE § 51-15-02(3), (5).

3726. Defendants knowingly committed the conduct described above and therefore, under N.D. CENT. CODE § 51-15-09, Defendants are liable to the North Dakota Plaintiffs for damages, treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements. The North Dakota Plaintiffs further seek other just and proper available relief under the North Dakota CFA.

## OHIO

3727. The Ohio Plaintiffs acquired their Fraudulent Vehicles while in the State of Ohio. As such, they bring the following causes of action against all defendants.

### OHIO COUNT 1- FRAUD BY CONCEALMENT
#### (On behalf of the Plaintiffs)

3728. The Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3729. GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3730. GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3731. GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had

defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Plaintiffs information that was highly relevant to their purchasing decision.

3732.   GM further affirmatively misrepresented to the Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.   The Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3733.   GM knew these representations were false when made.

3734.   The Fraudulent Vehicles purchased or leased by the Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.   A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3735.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine,

but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3736.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3737.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Plaintiffs did not know of these facts and GM actively concealed these facts from the Plaintiffs.  The Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3738.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental

friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3739.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.   GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.   The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3740.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Plaintiffs placed

in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3741.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3742.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Plaintiffs.

3743.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3744.   The Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3745.   The Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Plaintiffs'

actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Plaintiffs.

3746.  Because of the concealment and/or suppression of the facts, the Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3747.  The value of the Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3748.  Accordingly, GM is liable to the Plaintiffs for damages in an amount to be proven at trial.

3749.  Defendant is liable to the Plaintiffs for damages in an amount to be proven at trial, for which the Plaintiffs sue Defendant. Defendant acted with willfulness, fraud, malice, and wantonness.   Further, Defendant has acted with express and actual malice, legal and implied. Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the Plaintiffs sue Defendant.

## OHIO COUNT 2
## VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT (OHIO REV. CODE ANN. § 1345.01 ET SEQ.)

3750.  The Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3751.  Ohio Consumer Sales Practices Act (Ohio CSPA), OHIO REV. CODE ANN. § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits (1) representing that Fraudulent Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Fraudulent Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Fraudulent Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer. OHIO REV. CODE ANN. § 1345.02. Defendants' aforementioned conduct violated this statute.

3752.  The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of GM in this Complaint, including but not limited to the failure to honor both implied warranties and express warranties, the making and distribution of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the OCSPA. These cases include, but are not limited to, the following:

a.  *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

b.  *State ex rel. Betty D. Montgomery v. Volkswagen Motor Co.* (OPIF #10002123);

c.  *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

**3633**

d. *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

e. *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

f. *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

g. *Mark J. Craw Volkswagen, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

h. *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

i. *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

j. *Khouri v. Don Lewis* (OPIF #100001995);

k. *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326);

l. *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524); and

m. *Brown v. Spears* (OPIF #10000403).

3753.   Each Defendant is a "supplier" as that term is defined in OHIO REV. CODE ANN. § 1345.01(C).

3754.   The Plaintiffs are "consumers" as that term is defined in OHIO REV. CODE ANN. § 1345.01(D), and their purchase or lease of one or more Fraudulent Vehicles is a "consumer transaction" within the meaning of OHIO REV. CODE ANN. § 1345.01(A).

3755.   As a result of the foregoing wrongful conduct, the Plaintiffs have been damaged in an amount to be proven at trial and seek all just and proper remedies, including but not limited to actual and statutory damages, treble damages, court costs, and reasonable attorneys' fees, pursuant to OHIO REV. CODE ANN. § 1345.09 et seq.

## OKLAHOMA

3756.   The Oklahoma Plaintiffs acquired their Fraudulent Vehicles while in the State of Oklahoma.   As such, they bring the following causes of action against all defendants.

### OKLAHOMA COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Oklahoma Plaintiffs)

3757.   The Oklahoma Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3758.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3759.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3760.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Oklahoma Plaintiffs information that was highly relevant to their purchasing decision.

3761.   GM further affirmatively misrepresented to the Oklahoma Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Oklahoma Plaintiffs reasonably relied on GM's material representations that

3635

the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3762.   GM knew these representations were false when made.

3763.   The Fraudulent Vehicles purchased or leased by the Oklahoma Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.   A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3764.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3765.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3766. GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Oklahoma Plaintiffs did not know of these facts and GM actively concealed these facts from the Oklahoma Plaintiffs. The Oklahoma Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Oklahoma Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Oklahoma Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3767. GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Oklahoma Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Oklahoma Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer.

GM represented to the Oklahoma Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3768.  GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Oklahoma Plaintiffs.  GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3769.  GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Oklahoma Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3770.  GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Oklahoma Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3771.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Oklahoma Plaintiffs.

3772.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.   GM has still not made full and adequate disclosures, and continues to defraud the Oklahoma Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3773.   The Oklahoma Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3774.   The Oklahoma Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Oklahoma Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Oklahoma Plaintiffs.

3775.   Because of the concealment and/or suppression of the facts, the Oklahoma Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Oklahoma Plaintiffs been aware of the true

emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Oklahoma Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3776.   The value of the Oklahoma Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Oklahoma Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3777.   Accordingly, GM is liable to the Oklahoma Plaintiffs for damages in an amount to be proven at trial.

3778.   Defendant is liable to the Oklahoma Plaintiffs for damages in an amount to be proven at trial, for which the Oklahoma Plaintiffs sue Defendant.   Defendant engaged in conduct that was or amounted to fraud, oppression, gross negligence, malice (actual or presumed), evil intent, and/or reckless and wanton disregard of another's rights.   Defendant's conduct thus warrants the award of substantial exemplary damages in an amount to be determined at trial, for which the Oklahoma Plaintiffs sue Defendant.

## OKLAHOMA COUNT 2
## VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT
### (OKLA. STAT. TIT. 15, § 751 ET SEQ.)

3779.   The Oklahoma Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3780.   The Oklahoma Consumer Protection Act (Oklahoma CPA) declares unlawful, inter alia, the following acts or practices when committed in the course of business: making a

"misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person" and "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." OKLA. STAT. TIT. 15, §§ 752–753. Defendants' aforementioned conduct violated this statute.

3781.   The Oklahoma Plaintiffs are "persons" under OKLA. STAT. TIT. 15, § 752.

3782.   Each Defendant is a "person," "corporation," or "association" within the meaning of OKLA. STAT. TIT. 15, § 15-751(1).

3783.   The sale or lease of a Polluting Vehicle to each Plaintiff was a "consumer transaction" within the meaning of OKLA. STAT. TIT. 15, § 752 and each Defendants' actions as set forth herein occurred in the conduct of trade or commerce.

3784.   Defendants' acts were made knowingly, intentionally, and with malice. Defendants demonstrated a complete lack of care and were in reckless disregard for the rights of the Oklahoma Plaintiffs. The Oklahoma Plaintiffs are therefore entitled to an award of punitive damages to the extent permitted under applicable law.

3785.   Defendants' conduct as alleged herein was unconscionable because (1) Defendants, knowingly or had reason to know, took advantage of consumers reasonably unable to protect their interests because of their ignorance of GM's fraudulent omissions and representations; (2) at the time the consumer transaction was entered into, Defendants knew or had reason to know that price the consumers were charged grossly exceeded the price at which they would have paid if they had known of the Defendants' scheme, and (3) Defendant knew or had reason to know that the transaction Defendants induced the consumers to enter into was excessively one-sided in favor of each Defendant.

3786.  Because Defendants' unconscionable conduct caused injury to the Oklahoma Plaintiffs, the Oklahoma Plaintiffs seek recovery of actual damages, discretionary penalties up to $2,000 per violation, and reasonable attorneys' fees and costs, under OKLA. STAT. TIT. 15, § 761.1. The Oklahoma Plaintiffs further seek any other just and proper relief available under the Oklahoma CPA.

## OREGON

3787.  The Oregon Plaintiffs acquired their Fraudulent Vehicles while in the State of Oregon.   As such, they bring the following causes of action against all defendants.

### OREGON COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Oregon Plaintiffs)

3788.  The Oregon Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3789.  GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3790.  GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3791.  GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Oregon Plaintiffs information that was highly relevant to their purchasing decision.

3792.   GM further affirmatively misrepresented to the Oregon Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Oregon Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3793.   GM knew these representations were false when made.

3794.   The Fraudulent Vehicles purchased or leased by the Oregon Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3795.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3796.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3797.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Oregon Plaintiffs did not know of these facts and GM actively concealed these facts from the Oregon Plaintiffs. The Oregon Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Oregon Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Oregon Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3798.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Oregon Plaintiffs, GM had the duty

to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Oregon Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Oregon Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3799.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Oregon Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3800.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Oregon Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3801.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Oregon Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3802.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Oregon Plaintiffs.

3803.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Oregon Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3804.   The Oregon Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3805.   The Oregon Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Oregon Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Oregon Plaintiffs.

3806.   Because of the concealment and/or suppression of the facts, the Oregon Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Oregon Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Oregon Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3807.   The value of the Oregon Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Oregon Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3808.   Accordingly, GM is liable to the Oregon Plaintiffs for damages in an amount to be proven at trial.

3809.   Defendant is liable to the Oregon Plaintiffs for damages in an amount to be proven at trial, for which the Oregon Plaintiffs sue Defendant.   Defendant's conduct has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety, and welfare of others.   Further, Defendant has acted with malice. Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the Oregon Plaintiffs sue Defendant.

**OREGON COUNT 2**
**VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT**
**(OR. REV. STAT. § 646.605 *ET SEQ.*)**

3810.   The Oregon Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3811.   The Oregon Unfair Trade Practices Act (Oregon UTPA) prohibits a person from, in the course of the person's business, doing any of the following: representing that goods have characteristics uses, benefits, or qualities that they do not have; representing that goods are of a particular standard or quality if they are of another; advertising goods or services with intent not to provide them as advertised; and engaging in any other unfair or deceptive conduct in trade or commerce. OR. REV. STAT. § 646.608(1). Defendants' aforementioned conduct violated this statute.

3812.   Each Defendant is a person within the meaning of OR. REV. STAT. § 646.605(4).

3813.   Each Polluting Vehicle is a "good" obtained primarily for personal family or household purposes within the meaning of OR. REV. STAT. § 646.605(6).

3814.   The Oregon Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to OR. REV. STAT. § 646.638(1) plus attorneys' fees and costs per Or. Rev. Stat. § 646.638(3) plus any other just and proper relief available under the Oregon UTPA.  The Oregon Plaintiffs are also entitled to punitive damages because Defendants engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

## PENNSYLVANIA

3815.   The Pennsylvania Plaintiffs acquired their Fraudulent Vehicles while in the State of Pennsylvania.   As such, they bring the following causes of action against all defendants.

**3648**

## PENNSYLVANIA COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Pennsylvania Plaintiffs)

3816.   The Pennsylvania Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3817.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3818.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3819.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Pennsylvania Plaintiffs information that was highly relevant to their purchasing decision.

3820.   GM further affirmatively misrepresented to the Pennsylvania Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Pennsylvania Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3821.   GM knew these representations were false when made.

3822.  The Fraudulent Vehicles purchased or leased by the Pennsylvania Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3823.  As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3824.  GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3825.  GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Pennsylvania Plaintiffs did not know of these facts

and GM actively concealed these facts from the Pennsylvania Plaintiffs. The Pennsylvania Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Pennsylvania Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Pennsylvania Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3826. GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Pennsylvania Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Pennsylvania Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Pennsylvania Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3827.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Pennsylvania Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3828.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Pennsylvania Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3829.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Pennsylvania Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3830. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Pennsylvania Plaintiffs.

3831. When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect. GM has still not made full and adequate disclosures, and continues to defraud the Pennsylvania Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3832. The Pennsylvania Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3833. The Pennsylvania Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Pennsylvania Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Pennsylvania Plaintiffs.

3834. Because of the concealment and/or suppression of the facts, the Pennsylvania Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Pennsylvania Plaintiffs been aware of the true

emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Pennsylvania Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3835. The value of the Pennsylvania Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Pennsylvania Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3836. Accordingly, GM is liable to the Pennsylvania Plaintiffs for damages in an amount to be proven at trial.

3837. Defendant is liable to the Pennsylvania Plaintiffs for damages in an amount to be proven at trial, for which the Pennsylvania Plaintiffs sue Defendant. Defendant's conduct was outrageous, that is, it was malicious, wanton, willful, and oppressive, and shows reckless indifference to the interests of others. Further, Defendant has acted with malice. Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the Pennsylvania Plaintiffs sue Defendant.

## PENNSYLVANIA COUNT 2
## VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES
## AND CONSUMER PROTECTION LAW (73 PA. CONS. STAT. § 201-1 ET SEQ.)

3838. The Pennsylvania Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3839. The Pennsylvania Unfair Trade Practices and Consumer Protection Law (Pennsylvania CPL) prohibits unfair or deceptive acts or practices, including representing that

goods or services have characteristics, benefits or qualities that they do not have; representing that goods or services are of a particular standard, quality or grade if they are of another; advertising goods or services with intent not to sell them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4). Defendants' aforementioned conduct violated this statute.

3840.   Defendants and the Pennsylvania Plaintiffs are "persons" within the meaning of 73 PA. CONS. STAT. § 201-2(2).

3841.   The Pennsylvania Plaintiffs purchased or leased Fraudulent Vehicles primarily for personal, family, or household purposes within the meaning of 73 PA. CONS. STAT. § 201-9.2.

3842.   All of the acts complained of herein were perpetrated by Defendants in the course of trade or commerce within the meaning of 73 PA. CONS. STAT. § 201-2(3).

3843.   Defendants are liable to the Pennsylvania Plaintiffs for their actual damages, treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 PA. CONS. STAT. § 201-9.2(a). The Pennsylvania Plaintiffs further seek any other just and proper relief available under the Pennsylvania UTPA.

## **RHODE ISLAND**

3844.   The Rhode Island Plaintiffs acquired their Fraudulent Vehicles while in the State of Rhode Island.    As such, they bring the following causes of action against all defendants.

### **RHODE ISLAND COUNT 1- FRAUD BY CONCEALMENT**
#### **(On behalf of the Rhode Island Plaintiffs)**

3845.   The Rhode Island Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3846.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3847.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3848.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Rhode Island Plaintiffs information that was highly relevant to their purchasing decision.

3849.   GM further affirmatively misrepresented to the Rhode Island Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Rhode Island Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3850.   GM knew these representations were false when made.

3851.   The Fraudulent Vehicles purchased or leased by the Rhode Island Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world

driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3852.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3853.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3854.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Rhode Island Plaintiffs did not know of these facts and GM actively concealed these facts from the Rhode Island Plaintiffs.  The Rhode Island Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Rhode Island Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Rhode Island Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3855.  GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Rhode Island Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Rhode Island Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Rhode Island Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3856.  GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Rhode Island Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that

the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3857.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Rhode Island Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3858.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Rhode Island Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3859.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Rhode Island Plaintiffs.

3860.  When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate

disclosures, and continues to defraud the Rhode Island Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3861.   The Rhode Island Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3862.   The Rhode Island Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Rhode Island Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Rhode Island Plaintiffs.

3863.   Because of the concealment and/or suppression of the facts, the Rhode Island Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Rhode Island Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Rhode Island Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3864.   The value of the Rhode Island Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand

name attached to the Rhode Island Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3865.   Accordingly, GM is liable to the Rhode Island Plaintiffs for damages in an amount to be proven at trial.

3866.   The Rhode Island Plaintiffs hereby sue Defendant for damages in an amount to be proven at trial.  Defendant engaged in willful, wanton and malicious misconduct.  Defendant's conduct thus warrants substantial punitive damages in an amount to be determined at trial, which the Rhode Island Plaintiffs hereby sue for.

## RHODE ISLAND COUNT 2
## VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES
## AND CONSUMER PROTECTION ACT (R.I. GEN. LAWS § 6-13.1 ET SEQ.)

3867.   The Rhode Island Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3868.   Rhode Island's Unfair Trade Practices and Consumer Protection Act (Rhode Island CPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce," including "[e]ngaging in any act or practice that is unfair or deceptive to the consumer" and "[u]sing any other methods, acts or practices which mislead or deceive members of the public in a material respect." R.I. GEN. LAWS § 6-13.1-1(6). Defendants' aforementioned conduct violated this statute.

3869.   Defendants and the Rhode Island Plaintiffs are "persons" within the meaning of R.I. GEN. LAWS § 6-13.1-1(3).

3870.   Defendants were engaged in "trade" and "commerce" within the meaning of R.I. GEN. LAWS § 6-13.1-1(5).

3871.   The Rhode Island Plaintiffs purchased or leased Fraudulent Vehicles primarily for personal, family, or household purposes within the meaning of R.I. GEN. LAWS § 6- 13.1-5.2(a).

3872.   Pursuant to R.I. Gen. Laws § 6-13.1-5.2(a), the Rhode Island Plaintiffs hereby sue Defendants to recover their actual damages plus attorneys' fees and costs plus any other just and proper relief under Rhode Island DTPA. The Rhode Island Plaintiffs also sue for punitive damages because Defendants engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

<div align="center">**SOUTH CAROLINA**</div>

3873.   The South Carolina Plaintiffs acquired their Fraudulent Vehicles while in the State of South Carolina.    As such, they bring the following causes of action against all defendants.

<div align="center">**SOUTH CAROLINA COUNT 1- FRAUD BY CONCEALMENT**
**(On behalf of the South Carolina Plaintiffs)**</div>

3874.   The South Carolina Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3875.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3876.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3877.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard

<div align="center">**3662**</div>

for the truth and denied the South Carolina Plaintiffs information that was highly relevant to their purchasing decision.

3878. GM further affirmatively misrepresented to the South Carolina Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage. The South Carolina Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3879. GM knew these representations were false when made.

3880. The Fraudulent Vehicles purchased or leased by the South Carolina Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions. A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3881. As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted

higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3882.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3883.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the South Carolina Plaintiffs did not know of these facts and GM actively concealed these facts from the South Carolina Plaintiffs.  The South Carolina Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the South Carolina Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the South Carolina Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3884.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating

components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the South Carolina Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the South Carolina Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the South Carolina Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3885.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the South Carolina Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3886.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the South Carolina

Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3887.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the South Carolina Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3888.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the South Carolina Plaintiffs.

3889.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.   GM has still not made full and adequate disclosures, and continues to defraud the South Carolina Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3890.   The South Carolina Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3891.   The South Carolina Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The

South Carolina Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the South Carolina Plaintiffs.

3892. Because of the concealment and/or suppression of the facts, the South Carolina Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the South Carolina Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the South Carolina Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3893. The value of the South Carolina Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the South Carolina Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3894. Accordingly, GM is liable to the South Carolina Plaintiffs for damages in an amount to be proven at trial.

3895. Defendant is liable to the South Carolina Plaintiffs for damages in an amount to be proven at trial, for which the South Carolina Plaintiffs sue Defendant. Defendant's misconduct was willful, wanton, and in reckless disregard of the South Carolina Plaintiffs' rights. Defendant's

conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the South Carolina Plaintiffs sue Defendant.

## SOUTH CAROLINA COUNT 2
## VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
## (S.C. CODE ANN. § 39-5-10 ET SEQ.)

3896.   The South Carolina Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3897.   The South Carolina Unfair Trade Practices Act (South Carolina UTPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. CODE ANN. § 39-5-20(a). Defendants' aforementioned conduct violated this statute.

3898.   Each Defendant is a "person" under S.C. CODE ANN. § 39-5-10. 622.

3899.   Pursuant to S.C. CODE ANN. § 39-5-140(a), the South Carolina Plaintiffs seek monetary relief to recover their economic losses. Because Defendants' actions were willful and knowing, the South Carolina Plaintiffs' damages should be trebled.  The South Carolina Plaintiffs further seek attorneys' fees and costs plus any other just and proper relief available under the South Carolina UTPA.

3900.   The South Carolina Plaintiffs further allege that Defendants' malicious and deliberate conduct warrants an assessment of punitive damages because Defendants carried out despicable conduct with willful and conscious disregard of the rights of others. Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## SOUTH DAKOTA

3901.   The South Dakota Plaintiffs acquired their Fraudulent Vehicles while in the State of South Dakota.    As such, they bring the following causes of action against all defendants.

## SOUTH DAKOTA COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the South Dakota Plaintiffs)

3902.   The South Dakota Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3903.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3904.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3905.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the South Dakota Plaintiffs information that was highly relevant to their purchasing decision.

3906.   GM further affirmatively misrepresented to the South Dakota Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The South Dakota Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3907.   GM knew these representations were false when made.

3908. The Fraudulent Vehicles purchased or leased by the South Dakota Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions. A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3909. As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3910. GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3911. GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the South Dakota Plaintiffs did not know of these facts

and GM actively concealed these facts from the South Dakota Plaintiffs.  The South Dakota Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the South Dakota Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the South Dakota Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3912.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the South Dakota Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the South Dakota Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the South Dakota Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3913.  GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the South Dakota Plaintiffs.  GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3914.  GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the South Dakota Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3915.  GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the South Dakota Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3916.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the South Dakota Plaintiffs.

3917.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.   GM has still not made full and adequate disclosures, and continues to defraud the South Dakota Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3918.   The South Dakota Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3919.   The South Dakota Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The South Dakota Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the South Dakota Plaintiffs.

3920.   Because of the concealment and/or suppression of the facts, the South Dakota Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the South Dakota Plaintiffs been aware of the true

emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the South Dakota Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3921.  The value of the South Dakota Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the South Dakota Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3922.  Accordingly, GM is liable to the South Dakota Plaintiffs for damages in an amount to be proven at trial.

3923.  The South Dakota Plaintiffs hereby sue Defendant for damages in an amount to be proven at trial.  Defendant engaged in fraud that was malicious, oppressive, or gross and the statements were made recklessly without regard to their truth and without caring or knowing if they were true or not.  Defendant's conduct thus warrants substantial exemplary and punitive damages in an amount to be determined at trial, which the South Dakota Plaintiffs hereby sue for.

<div align="center">

**SOUTH DAKOTA COUNT 2**
**VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW**
**(S.D. CODIFIED LAWS § 37-24-6)**

</div>

3924.  The South Dakota Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3925.  The South Dakota Deceptive Trade Practices and Consumer Protection Law (South Dakota CPL) prohibits deceptive acts or practices, which include "[k]nowingly act[ing], us[ing], or employ[ing] any deceptive act or practice, fraud, false pretense, false promises, or

<div align="center">

3674

</div>

misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby." S.D. CODIFIED LAWS §§ 37-24-6(1), 37-24-31. Defendants' aforementioned conduct violated this statute.

3926.  Under S.D. CODIFIED LAWS § 37-24-31, the South Dakota Plaintiffs are entitled to a recovery of their actual damages suffered as a result of Defendants' acts and practices.  The South Dakota Plaintiffs further sue for punitive damages plus reasonable attorneys' fees and costs plus any other just and proper relief available under the South Dakota CPL.

### TENNESSEE

3927.  The Tennessee Plaintiffs acquired their Fraudulent Vehicles while in the State of Tennessee.   As such, they bring the following causes of action against all defendants.

### TENNESSEE COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Tennessee Plaintiffs)

3928.  The Tennessee Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3929.  GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3930.  GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3931.  GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard

for the truth and denied the Tennessee Plaintiffs information that was highly relevant to their purchasing decision.

3932.   GM further affirmatively misrepresented to the Tennessee Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Tennessee Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3933.   GM knew these representations were false when made.

3934.   The Fraudulent Vehicles purchased or leased by the Tennessee Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.   A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3935.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted

higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3936. GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3937. GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Tennessee Plaintiffs did not know of these facts and GM actively concealed these facts from the Tennessee Plaintiffs. The Tennessee Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Tennessee Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Tennessee Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3938. GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating

components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Tennessee Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Tennessee Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Tennessee Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3939.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Tennessee Plaintiffs.  GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3940.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Tennessee Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they

are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3941.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Tennessee Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3942.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Tennessee Plaintiffs.

3943.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Tennessee Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3944.   The Tennessee Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3945.   The Tennessee Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The

Tennessee Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Tennessee Plaintiffs.

3946.   Because of the concealment and/or suppression of the facts, the Tennessee Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Tennessee Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Tennessee Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3947.   The value of the Tennessee Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Tennessee Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3948.   Accordingly, GM is liable to the Tennessee Plaintiffs for damages in an amount to be proven at trial.

3949.   Defendant is liable to the Tennessee Plaintiffs for damages in an amount to be proven at trial, for which the Tennessee Plaintiffs sue Defendant.   Defendant has acted intentionally, recklessly, maliciously, and fraudulently.   Defendant's conduct thus warrants the

award of substantial punitive damages in an amount to be determined at trial, for which the Tennessee Plaintiffs sue Defendant.

## TENNESSEE COUNT 2
## VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT OF 1977
### (Tenn. Code Ann. § 47-18-101, et seq.)

3950.   The Tennessee Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

3951.   The Tennessee Plaintiffs are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-103(2). Defendants are "person[s]" within the meaning of Tenn. Code § 47-18-103(9).

3952.   Defendants are engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(9).

3953.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.  The Tennessee CPA prohibits (1) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods; (2) representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; (3) representing that goods are of a particular standard, quality or grade if they are of another; (4) advertising goods with intent not to sell them as advertised; (5) engaging in any other act or practice which is deceptive to the consumer or to any other person. Tenn. Code § 47-18-104(b)(2), (5),  (7), (9), (27).   Defendants intentionally violated the aforementioned provisions of the Tennessee CPA.

3954.   Pursuant to Tenn. Code § 47-18-109, the Tennessee Plaintiffs hereby sue Defendants for actual damages plus treble damages for willful and knowing violations, pursuant

to § 47-18-109(a)(3), plus punitive damages plus attorneys' fees and  costs per Tenn. Code § 47-18-109(e)(1), plus any other just and proper relief to the extent available under the Tennessee CPA.

## TEXAS

3955.   The Texas Plaintiffs acquired their Fraudulent Vehicles while in the State of Texas. As such, they bring the following causes of action against all defendants.

### TEXAS COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Texas Plaintiffs)

3956.   The Texas Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3957.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3958.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3959.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Texas Plaintiffs information that was highly relevant to their purchasing decision.

3960.   GM further affirmatively misrepresented to the Texas Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven

in normal usage. The Texas Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

3961. GM knew these representations were false when made.

3962. The Fraudulent Vehicles purchased or leased by the Texas Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions. A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

3963. As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

3964. GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-

powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

3965.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Texas Plaintiffs did not know of these facts and GM actively concealed these facts from the Texas Plaintiffs.  The Texas Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Texas Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Texas Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

3966.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Texas Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Texas Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented

to the Texas Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

3967.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.   GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.   The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

3968.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Texas Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

3969.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Texas Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3970.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Texas Plaintiffs.

3971.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.   GM has still not made full and adequate disclosures, and continues to defraud the Texas Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

3972.   The Texas Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

3973.   The Texas Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Texas Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Plaintiffs.

3974.   Because of the concealment and/or suppression of the facts, the Texas Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Texas Plaintiffs been aware of the true emissions facts with

regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Texas Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

3975.   The value of the Texas Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Texas Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

3976.   Accordingly, GM is liable to the Texas Plaintiffs for damages in an amount to be proven at trial.

3977.   Defendant is liable to Texas Plaintiffs for actual damages in an amount to be proven at trial, for which Texas Plaintiffs hereby sue Defendant. Texas Plaintiffs further seek to recover the full purchase price of the vehicle, or, alternatively the diminished value of the vehicle (the difference at the time of purchase between the value of the Vehicle as accepted and the value the Vehicle would have had if it had been as advertised, warranted or represented).  Defendant, as set forth herein, is guilty of oppression, fraud, and malice, express or implied in the Deceptive Emissions Scheme, including the Cheat Device.  Defendant's conduct thus warrants the award of substantial punitive and exemplary damages in an amount to be determined at trial, for which Texas Plaintiffs hereby sue Defendant.

<div align="center">

**TEXAS COUNT 2**
**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT (TEX. BUS. & COM. CODE § 17.4 ET SEQ.)**

</div>

3978.   The Texas Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3979.   The Texas Plaintiffs are individuals with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets). See TEX. BUS. & COM. CODE § 17.41.

3980.   The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") provides a private right of action to a consumer where the consumer suffers economic damage as the result of either (i) the use of false, misleading, or deceptive act or practice specifically enumerated in TEX. BUS. & COM. CODE § 17.46(b); or (ii) "an unconscionable action or course of action by any person." TEX. BUS. & COM. CODE § 17.50(a)(2) & (3). The Texas DTPA declares several specific actions to be unlawful, including: "(5) Representing that goods or services have. sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have"; "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and "(9) advertising goods or services with intent not to sell them as advertised." An "unconscionable action or course of action" means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE § 17.45(5). As detailed herein, Defendants have engaged in an unconscionable action or course of action and thereby caused economic damages to the Texas Plaintiffs.

3981.   In the course of business, Defendants willfully failed to disclose and actively concealed the conduct discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of

any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Fraudulent Vehicles.

3982.  Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Texas Plaintiffs, about the true performance of the Fraudulent Vehicles, the devaluing of the environmental impacts of its vehicles at GM, and the true value of the Fraudulent Vehicles.

3983.  Defendants intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead the Texas Plaintiffs.

3984.  Defendants knew or should have known that their conduct violated the Texas DTPA.

3985.  Defendants owed the Texas Plaintiffs a duty to disclose the true environmental impact, performance, fuel mileage, and reliability of the Fraudulent Vehicles, because Defendants:

      a.  Possessed exclusive knowledge that they were selling and distributing Fraudulent Vehicles throughout the United States that did not perform as advertised;

      b.  Intentionally concealed the foregoing from the Texas Plaintiffs; and/or

      c.  Made incomplete representations about the environmental friendliness, fuel mileage, towing capacity, and performance of the Fraudulent Vehicles while purposefully withholding material facts from the Plaintiffs that contradicted these representations.

3986.  Because Defendants fraudulently concealed the defective emissions treatment system, the value of the Fraudulent Vehicles has greatly diminished. In light of the stigma attached

to the Fraudulent Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

3987.  Defendants' omissions and/or misrepresentations about the emissions treatment system of the Fraudulent Vehicles were material to the Texas Plaintiffs.

3988.  The Texas Plaintiffs suffered ascertainable loss caused by Defendants' misrepresentations and their concealment of and failure to disclose material information. The Texas Plaintiffs who purchased the Fraudulent Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all but for Defendants' violations of the Texas DTPA.

3989.  Defendants had an ongoing duty to all GM customers to refrain from unfair and deceptive practices under the Texas DTPA. All owners of Fraudulent Vehicles suffered ascertainable loss in the form of the diminished value of their vehicle as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

3990.  Defendants' violations present a continuing risk to the Texas Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3991.  As a direct and proximate result of Defendants' violations of the Texas DTPA, the Texas Plaintiffs have suffered injury-in-fact and/or actual damage.

3992.  The Texas Plaintiffs have sent a letter complying with TEX. BUS. & COM. CODE ANN. § 17.505 to Defendants.

3993.  Pursuant to Tex. Bus. & Com. Code § 17.50, The Texas Plaintiffs seek economic damages, additional damages for knowing and intentional violations of the Texas DTPA,  punitive

damages, and attorneys' fees, costs, and any other just and proper relief available under the Texas DTPA.

3994. Alternatively, or additionally, pursuant to TEX. BUS. & COM. CODE § 17.50(b)(3) & (4), the Texas Plaintiffs are also entitled to disgorgement or to rescission or to any other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA or which the Court deems proper.

## UTAH

3995. The Utah Plaintiffs acquired their Fraudulent Vehicles while in the State of Utah. As such, they bring the following causes of action against all defendants.

### UTAH COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Utah Plaintiffs)

3996. The Utah Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

3997. GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

3998. GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

3999. GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Utah Plaintiffs information that was highly relevant to their purchasing decision.

4000.   GM further affirmatively misrepresented to the Utah Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Utah Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

4001.   GM knew these representations were false when made.

4002.   The Fraudulent Vehicles purchased or leased by the Utah Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

4003.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

4004.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

4005.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Utah Plaintiffs did not know of these facts and GM actively concealed these facts from the Utah Plaintiffs.  The Utah Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Utah Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Utah Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

4006.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Utah Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were

material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Utah Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Utah Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

4007.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Utah Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

4008.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Utah Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

4009.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in

the value of the vehicles. As GM well knew, its customers, including the Utah Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

4010.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Utah Plaintiffs.

4011.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Utah Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

4012.   The Utah Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

4013.   The Utah Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Utah Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Utah Plaintiffs.

4014.   Because of the concealment and/or suppression of the facts, the Utah Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to

timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Utah Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Utah Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

4015.   The value of the Utah Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Utah Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

4016.   Accordingly, GM is liable to the Utah Plaintiffs for damages in an amount to be proven at trial.

4017.   Defendant is liable to the Utah Plaintiffs for damages in an amount to be proven at trial, for which the Utah Plaintiffs sue Defendant.  Defendant has acted with actual/malice in fact and legal malice, that is, conduct that manifests a reckless disregard or indifference to the rights and safety of others. Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the Utah Plaintiffs sue Defendant.

### UTAH COUNT 2
### VIOLATION OF THE UTAH CONSUMER SALE PRACTICES ACT
### (UTAH CODE ANN. § 13-11-1 ET SEQ.)

4018.   The Utah Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

4019.   The Utah Consumer Sales Practices Act (Utah CSPA) makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction," including but not limited to indicating that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not; indicating that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not; and "indicat[ing] that a specific price advantage exists, if it does not." UTAH CODE ANN. § 13-11-4. Defendants' aforementioned conduct violated this statute.

4020.   Defendants knew, or had reason to know, that consumers would rely on their failure to disclose the defects in its emissions system. Defendants therefore engaged in an unconscionable act within the meaning of UTAH CODE ANN. § 13- 11-5.

4021.   Pursuant to the Utah CSPA, the Utah Plaintiffs hereby sue Defendants for actual damages. The Utah Plaintiffs further sue Defendants for punitive damages plus attorneys' fees and court costs per Utah Code § 13-11-19 plus any other just and proper relief to the extent available under the Utah CPSA.

## VERMONT

4022.   The Vermont Plaintiffs acquired their Fraudulent Vehicles while in the State of Vermont.    As such, they bring the following causes of action against all defendants.

### VERMONT COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Vermont Plaintiffs)

4023.   The Vermont Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

4024.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

4025.  GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

4026.  GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Vermont Plaintiffs information that was highly relevant to their purchasing decision.

4027.  GM further affirmatively misrepresented to the Vermont Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Vermont Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

4028.  GM knew these representations were false when made.

4029.  The Fraudulent Vehicles purchased or leased by the Vermont Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.  A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving

conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

4030.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

4031.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

4032.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Vermont Plaintiffs did not know of these facts and GM actively concealed these facts from the Vermont Plaintiffs.  The Vermont Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Vermont Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Vermont Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

4033.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Vermont Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Vermont Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Vermont Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

4034.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Vermont Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature

of the Fraudulent Vehicles and their true characteristics. The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

4035. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Vermont Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

4036. GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Vermont Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

4037. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Vermont Plaintiffs.

4038. When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect. GM has still not made full and adequate disclosures, and continues to defraud the Vermont Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

4039. The Vermont Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

4040. The Vermont Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Vermont Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Vermont Plaintiffs.

4041. Because of the concealment and/or suppression of the facts, the Vermont Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Vermont Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Vermont Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

4042. The value of the Vermont Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Vermont Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

4043.   Accordingly, GM is liable to the Vermont Plaintiffs for damages in an amount to be proven at trial.

4044.   Defendant is liable to the Vermont Plaintiffs for damages in an amount to be proven at trial, for which the Vermont Plaintiffs sue Defendant.  Defendant has acted with malice and engaged in conduct manifesting personal ill will or carried out under circumstances evidencing insult or oppression, as well as conduct showing a reckless or wanton disregard of one's rights. Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the Vermont Plaintiffs sue Defendant.

### VERMONT COUNT 2
### VIOLATION OF THE VERMONT CONSUMER FRAUD ACT
### (VT. STAT. ANN. TIT. 9, § 2451 ET SEQ.)

4045.   The Vermont Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

4046.   The Vermont Consumer Fraud Act (Vermont CFA) makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." VT. STAT. ANN. TIT. 9, § 2453(a). Defendants' aforementioned conduct violated this statute.

4047.   Defendants were sellers within the meaning of VT. STAT. ANN. TIT. 9, § 2451(a)(c).

4048.   The Vermont Plaintiffs are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by [them]," pursuant to VT. STAT. ANN. TIT. 9, § 2461(b).  The Vermont Plaintiffs further sue for any other just and proper relief available under the Vermont UTPA.

## VIRGINIA

4049.   The Virginia Plaintiffs acquired their Fraudulent Vehicles while in the State of Virginia.   As such, they bring the following causes of action against all defendants.

### VIRGINIA COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Virginia Plaintiffs)

4050.   The Virginia Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

4051.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

4052.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

4053.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Virginia Plaintiffs information that was highly relevant to their purchasing decision.

4054.   GM further affirmatively misrepresented to the Virginia Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Virginia Plaintiffs reasonably relied on GM's material representations that

the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

4055.   GM knew these representations were false when made.

4056.   The Fraudulent Vehicles purchased or leased by the Virginia Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.   A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

4057.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

4058.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

4059.  GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Virginia Plaintiffs did not know of these facts and GM actively concealed these facts from the Virginia Plaintiffs.  The Virginia Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Virginia Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Virginia Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

4060.  GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Virginia Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Virginia Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented

to the Virginia Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

4061.  GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Virginia Plaintiffs.  GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

4062.  GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Virginia Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

4063.  GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Virginia Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

4064.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Virginia Plaintiffs.

4065.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.   GM has still not made full and adequate disclosures, and continues to defraud the Virginia Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

4066.   The Virginia Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

4067.   The Virginia Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Virginia Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Virginia Plaintiffs.

4068.   Because of the concealment and/or suppression of the facts, the Virginia Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Virginia Plaintiffs been aware of the true emissions facts with

regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Virginia Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

4069.   The value of the Virginia Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Virginia Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

4070.   Accordingly, GM is liable to the Virginia Plaintiffs for damages in an amount to be proven at trial.

4071.   Defendant is liable to Plaintiffs for compensatory damages in an amount to be proven at trial, for which Plaintiffs hereby sue Defendant.  Plaintiffs further sue Defendant for expert witness fees and other litigation expenses pursuant to the ruling in Holmes v. LG Marion Corp., 521 S.E.2d 528, 258 Va. 473 (Va. 1999) and the authorities referred to therein.  Plaintiffs further sue Defendant for attorneys' fees pursuant to the rule set forth in Prospect Dev. Co. v. Bershader, 258 Va. 75 (1999).

4072.   Defendant engaged in fraud, malice, oppression or such recklessness or negligence as evinces a conscious disregard of the rights of others.   Defendant's conduct thus warrants an award of substantial punitive damages in an amount to be determined at trial, for which Plaintiffs sue Defendant.

**VIRGINIA COUNT 2**
**VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT**
**(VA. CODE ANN. § 59.1-196 ET SEQ.)**

4073.   The Virginia Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

4074.   The Virginia Consumer Protection Act (Virginia CPA) lists prohibited "practices," which include "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." VA. CODE ANN. § 59.1-200. Defendants' aforementioned conduct violated this statute.

4075.   Each Defendant is a "supplier" under VA. CODE ANN. § 59.1-198. 643.  Each sale and lease of a Polluting Vehicle was a "consumer transaction" within the meaning of VA. CODE ANN. § 59.1-198.

4076.   Pursuant to VA. CODE ANN. § 59.1-204, the Virginia Plaintiffs seek monetary relief against each Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Virginia Plaintiff. Because Defendants' conduct was committed willfully and knowingly, the Virginia Plaintiffs are entitled to recover, for each plaintiff, the greater of (a) three times actual damages or (b) $1,000.

4077.   The Virginia Plaintiffs also seek punitive damages, attorneys' fees and costs, and any other just and proper relief available under VA. CODE ANN. § 59.1-204 et seq.

## **WASHINGTON**

4078.   The Washington Plaintiffs acquired their Fraudulent Vehicles while in the State of Washington.   As such, they bring the following causes of action against all defendants.

## WASHINGTON COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Washington Plaintiffs)

4079.   The Washington Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

4080.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

4081.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

4082.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Washington Plaintiffs information that was highly relevant to their purchasing decision.

4083.   GM further affirmatively misrepresented to the Washington Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Washington Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

4084.   GM knew these representations were false when made.

4085.   The Fraudulent Vehicles purchased or leased by the Washington Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.   A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

4086.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

4087.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

4088.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Washington Plaintiffs did not know of these facts

3712

and GM actively concealed these facts from the Washington Plaintiffs.  The Washington Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Washington Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Washington Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

4089.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Washington Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Washington Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Washington Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

4090.  GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Washington Plaintiffs.    GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

4091.  GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Washington Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

4092.  GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Washington Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

4093.  GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Washington Plaintiffs.

4094.  When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Washington Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

4095.  The Washington Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

4096.  The Washington Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Washington Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Washington Plaintiffs.

4097.  Because of the concealment and/or suppression of the facts, the Washington Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Washington Plaintiffs been aware of the true

emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Washington Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

4098.   The value of the Washington Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Washington Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

4099.   Accordingly, GM is liable to the Washington Plaintiffs for damages in an amount to be proven at trial.

4100.   Defendant is liable to the Washington Plaintiffs for damages in an amount to be proven at trial, for which the Washington Plaintiffs sue Defendant.   Defendant has acted intentionally, recklessly, maliciously, and fraudulently.   Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the Washington Plaintiffs sue Defendant.

### WASHINGTON COUNT 2
### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
### (WASH. REV. CODE ANN. § 19.86.010 ET SEQ.)

4101.   The Washington Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

4102.   The Washington Consumer Protection Act (Washington CPA) broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any

trade or commerce." WASH. REV. CODE. ANN. § 19.96.010. Defendants' aforementioned conduct violated this statute.

4103. Defendants committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of WASH. REV. CODE. ANN. § 19.96.010.

4104. Defendants are liable to the Washington Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under WASH. REV. CODE. ANN. § 19.86.090.

## **WEST VIRGINIA**

4105. The West Virginia Plaintiffs acquired their Fraudulent Vehicles while in the State of West Virginia. As such, they bring the following causes of action against all defendants.

### **WEST VIRGINIA COUNT 1- FRAUD BY CONCEALMENT**
### **(On behalf of the West Virginia Plaintiffs)**

4106. The West Virginia Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

4107. GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

4108. GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

4109. GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard

for the truth and denied the West Virginia Plaintiffs information that was highly relevant to their purchasing decision.

4110. GM further affirmatively misrepresented to the West Virginia Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage. The West Virginia Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

4111. GM knew these representations were false when made.

4112. The Fraudulent Vehicles purchased or leased by the West Virginia Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions. A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

4113. As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted

higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

4114.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

4115.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the West Virginia Plaintiffs did not know of these facts and GM actively concealed these facts from the West Virginia Plaintiffs.  The West Virginia Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the West Virginia Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the West Virginia Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

4116.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating

components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the West Virginia Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the West Virginia Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the West Virginia Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

4117.   GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the West Virginia Plaintiffs.   GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

4118.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the West Virginia

Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

4119.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the West Virginia Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

4120.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the West Virginia Plaintiffs.

4121.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the West Virginia Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

4122.   The West Virginia Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

4123.   The West Virginia Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The

West Virginia Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the West Virginia Plaintiffs.

4124. Because of the concealment and/or suppression of the facts, the West Virginia Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the West Virginia Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the West Virginia Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

4125. The value of the West Virginia Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the West Virginia Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

4126. Accordingly, GM is liable to the West Virginia Plaintiffs for damages in an amount to be proven at trial.

4127. Defendant is liable to the West Virginia Plaintiffs for damages in an amount to be proven at trial, for which the West Virginia Plaintiffs sue Defendant. Defendant's conduct constitutes gross fraud, malice, oppression, and wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others. Defendant's conduct thus warrants

the award of substantial punitive damages in an amount to be determined at trial, for which the West Virginia Plaintiffs sue Defendant.

## WEST VIRGINIA COUNT 2
## VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT
## AND PROTECTION ACT
## (W. VA. CODE § 46A-1-101 ET SEQ.)

4128.   The West Virginia Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

4129.   Each Defendant is a "person" under W. VA. CODE § 46A-1-102(31).

4130.   The West Virginia Plaintiffs are "consumers" as defined by W. VA. CODE §§ 46A-1-102(12) and 46A-6-102(2), who purchased or leased one or more Fraudulent Vehicles.

4131.   Defendants engaged in trade or commerce as defined by W. VA. CODE § 46A-6-102(6).

4132.   The West Virginia Consumer Credit and Protection Act (West Virginia CCPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." W. VA. CODE § 46A-6-104. Without limitation, "unfair or deceptive" acts or practices include:

(A)     Advertising goods or services with intent not to sell them as advertised; . . .

(B)     Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;

(C)     The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby; [and]

(D)     Advertising, printing, displaying, publishing, distributing or broadcasting, or causing to be advertised, printed, displayed, published, distributed or broadcast in any manner, any statement or representation with regard to the sale of goods or the extension of consumer credit including the rates, terms or conditions for the sale of such goods or the extension of such credit, which is false, misleading or deceptive or which omits to state material information which is necessary to make the statements therein not false, misleading or deceptive.

W. VA. CODE § 46A-6-102(7). Defendants' aforementioned conduct violated this statute.

4133.   The West Virginia Plaintiffs have sent to Defendants the appropriate statutory notice pursuant to W. VA. CODE § 46A-6-106.

4134.   The West Virginia Plaintiffs seek monetary relief against the Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $200 per violation of the West Virginia CCPA for each West Virginia Plaintiff. Plaintiffs also seek punitive damages against the Defendants because they carried out despicable conduct with willful and conscious disregard of the rights of others, subjecting Plaintiffs to cruel and unjust hardship as a result.

4135.   The West Virginia Plaintiffs further seek restitution, costs of Court, attorney's fees under W. VA. CODE § 46A-5-101 et seq., and any other just and proper relief available under the West Virginia CCPA.

## WISCONSIN

4136.   The Wisconsin Plaintiffs acquired their Fraudulent Vehicles while in the State of Wisconsin.   As such, they bring the following causes of action against all defendants.

## WISCONSIN COUNT 1- FRAUD BY CONCEALMENT
### (On behalf of the Wisconsin Plaintiffs)

4137.   The Wisconsin Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

4138.   GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

4139.   GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

4140.   GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Wisconsin Plaintiffs information that was highly relevant to their purchasing decision.

4141.   GM further affirmatively misrepresented to the Wisconsin Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage.  The Wisconsin Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

4142.   GM knew these representations were false when made.

4143.   The Fraudulent Vehicles purchased or leased by the Wisconsin Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions.   A reasonable consumer would not have expected that the emission treatment  technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the  Fraudulent Vehicles would spew unmitigated pollution during normal operation.

4144.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

4145.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

4146.  GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Wisconsin Plaintiffs did not know of these facts and

GM actively concealed these facts from the Wisconsin Plaintiffs.  The Wisconsin Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Wisconsin Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Wisconsin Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

4147.    GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that  caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Wisconsin Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Wisconsin Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Wisconsin Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

4148.  GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the

true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Wisconsin Plaintiffs.  GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles.  GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics.  The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

4149.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Wisconsin Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

4150.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Wisconsin Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

4151.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Wisconsin Plaintiffs.

4152.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Wisconsin Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

4153.   The Wisconsin Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

4154.   The Wisconsin Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Wisconsin Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Wisconsin Plaintiffs.

4155.   Because of the concealment and/or suppression of the facts, the Wisconsin Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Wisconsin Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Wisconsin Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

4156. The value of the Wisconsin Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Wisconsin Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

4157. Accordingly, GM is liable to the Wisconsin Plaintiffs for damages in an amount to be proven at trial.

4158. Defendant is liable to the Wisconsin Plaintiffs for damages in an amount to be proven at trial, for which the Wisconsin Plaintiffs sue Defendant. Defendant has engaged in malicious conduct or willful or wanton conduct in reckless disregard of rights or interests. Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial.

## **WYOMING**

4159. The Wyoming Plaintiffs acquired their Fraudulent Vehicles while in the State of Wyoming. As such, they bring the following causes of action against all defendants.

### **WYOMING COUNT 1- FRAUD BY CONCEALMENT**
**(On behalf of the Wyoming Plaintiffs)**

4160. The Wyoming Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

4161. GM committed fraud by installing and calibrating emission control devices in the Fraudulent Vehicles, which were unlawfully concealed from consumers.

4162. GM concealed and suppressed material facts concerning the quality and characteristics of its vehicles and the emissions system in the Fraudulent Vehicles.

4163. GM intentionally concealed that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions, that the Fraudulent Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, and emitted high levels of pollutants such as NOx, or GM acted with reckless disregard for the truth and denied the Wyoming Plaintiffs information that was highly relevant to their purchasing decision.

4164. GM further affirmatively misrepresented to the Wyoming Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Fraudulent Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, and would perform and operate properly when driven in normal usage. The Wyoming Plaintiffs reasonably relied on GM's material representations that the Fraudulent Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

4165. GM knew these representations were false when made.

4166. The Fraudulent Vehicles purchased or leased by the Wyoming Plaintiffs were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, and unreliable because the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions. A reasonable consumer would not have expected that the emission treatment technology in the Fraudulent Vehicles de-activated under real-world driving conditions or that the Fraudulent Vehicles would spew unmitigated pollution during normal operation.

4167.   As alleged in this Complaint, at all relevant times, GM has held out the Fraudulent Vehicles to be reduced emissions. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that the Fraudulent Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, and emitted high levels of pollutants, making other disclosures about the emission system deceptive.

4168.   GM had a duty to disclose that the NOx reduction system in the Fraudulent Vehicles turns off or is limited during normal driving conditions and that these Fraudulent Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, and were unreliable.

4169.   GM had a duty to disclose the aforementioned facts because the truth about the defective emissions controls and GM's manipulations of those controls, high emissions, and the "Defeat Device" was known only to GM; the Wyoming Plaintiffs did not know of these facts and GM actively concealed these facts from the Wyoming Plaintiffs.  The Wyoming Plaintiffs had no way of knowing that GM's representations were false, misleading, or incomplete. As consumers, the Wyoming Plaintiffs did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive the Wyoming Plaintiffs by concealing the true facts about the Fraudulent Vehicles.

4170.   GM also had a duty to disclose the aforementioned facts because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as reduced emissions diesel cars which were misleading, deceptive, and

incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to emissions, and its actual practices with respect to the vehicles at issue. GM made partial representations about the environmental friendliness, fuel economy, and performance of the Fraudulent Vehicles that were misleading without disclosure of the fact that the Fraudulent Vehicles contained hidden emission cheating components that caused the Fraudulent Vehicles to pollute excessively in real-world driving conditions. Having volunteered to provide information to the Wyoming Plaintiffs, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Fraudulent Vehicles purchased or leased by the Wyoming Plaintiffs. Whether a manufacturer's products pollute and whether that manufacturer tells the truth with respect to such pollution are material concerns to a consumer. GM represented to the Wyoming Plaintiffs that they were purchasing or leasing reduced emission diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

4171. GM further had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Fraudulent Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by the Wyoming Plaintiffs. GM employed an artifice or trick to conceal the true nature of the Fraudulent Vehicles because it used the Defeat Device to deceive consumers into believing that the Fraudulent Vehicles were low emissions vehicles. GM used the Defeat Device to conceal the defective nature of the Fraudulent Vehicles and their true characteristics. The Defeat Device prevented consumers from making further independent inquiry into the true nature of the vehicles because it made the Fraudulent Vehicles appear to be performing as represented when in fact they were not.

4172.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above the environment and reduced emissions. It also emphasized profits and sales above the trust that the Wyoming Plaintiffs placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Fraudulent Vehicles are doing.

4173.   GM's false representations were material to consumers, because they concerned the quality of the Fraudulent Vehicles and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including the Wyoming Plaintiffs highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

4174.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles, which perception would hurt the brand's image and cost GM money, and it did so at the expense of the Wyoming Plaintiffs.

4175.   When confronted about the defective nature of the Fraudulent Vehicles by consumers, GM denied the existence of the defect.  GM has still not made full and adequate disclosures, and continues to defraud the Wyoming Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles

4176.   The Wyoming Plaintiffs reasonably relied upon GM's representations, omissions, and deception.

4177.   The Wyoming Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or

suppressed facts, in that they would not have acquired purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily Fraudulent Vehicles, or would have taken other affirmative steps in light of the information concealed from them. The Wyoming Plaintiffs' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public or the Wyoming Plaintiffs.

4178.  Because of the concealment and/or suppression of the facts, the Wyoming Plaintiffs have sustained damage because they acquired vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had the Wyoming Plaintiffs been aware of the true emissions facts with regard to the Fraudulent Vehicles, and the Company's disregard for the truth, the Wyoming Plaintiffs would have paid less for their vehicles or would not have acquired them at all.

4179.  The value of the Wyoming Plaintiffs' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Fraudulent Vehicles and of the high emissions of the Fraudulent Vehicles, all of which has greatly tarnished the GM brand name attached to the Wyoming Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Fraudulent Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

4180.  Accordingly, GM is liable to the Wyoming Plaintiffs for damages in an amount to be proven at trial.

4181.  Defendant is liable to the Wyoming Plaintiffs for damages in an amount to be proven at trial, for which the Wyoming Plaintiffs sue Defendant.   Defendant has engaged in

outrageous conduct, malice and willful and wanton misconduct. Defendant's conduct thus warrants the award of substantial punitive damages in an amount to be determined at trial, for which the Wyoming Plaintiffs sue Defendant.

<div align="center">

**WYOMING COUNT 2**
**VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT**
**(WYO. STAT. § 40-12-105 ET SEQ.)**

</div>

4182.   The Wyoming Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

4183.   The Wyoming Plaintiffs have complied with all applicable, pre-suit notice letter provisions, if any, including those of the Wyoming Consumer Protection Act.

4184.   The Wyoming Plaintiffs and Defendants are "persons" within the meaning of Wyo. Stat. § 40-12-102(a)(i).

4185.   The Fraudulent Vehicles are "merchandise" pursuant to Wyo. Stat. § 40-12-102(a)(vi).

4186.   Each sale or lease of a Polluting Vehicle to a Wyoming Plaintiff was a "consumer transaction" as defined by Wyo. Stat. § 40-12-102(a)(ii).

4187.   These consumer transactions occurred "in the course of [Defendants'] business" under Wyo. Stat. § 40-12-105(a).   The Wyoming Plaintiffs purchased or leased one or more Fraudulent Vehicles.

4188.   The Wyoming Consumer Protection Act ("Wyoming CPA") prohibits unlawful deceptive trade practices, including when a seller: "(i) Represents that merchandise has a source, origin, sponsorship, approval, accessories, or uses it does not have;" "(iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not;" "(x) Advertises merchandise with intent not to sell it as advertised;" "(xv) Engages in unfair or deceptive acts or

<div align="center">

**3736**

</div>

practices." Wyo. Stat. §§ 40-12-105(a). Defendants intentionally violated the aforementioned provisions of the Wyoming CPA.

4189.   Pursuant to Wyo. Stat. § 40-12-108(a), the Wyoming Plaintiffs hereby sue Defendants for actual damages as determined at trial plus punitive damages plus any other just and proper relief available under the Wyoming CPA, including but not limited to court costs and reasonable attorneys' fees as provided in Wyo. Stat. § 40-12-108(b).

## **REQUEST FOR RELIEF**

A.   Restitution, including at the election of Plaintiffs, recovery of the purchase price of their Fraudulent Vehicles, or the overpayment or diminution in value of their Fraudulent Vehicles;

B.   Damages, including punitive and/or statutory damages, costs, and disgorgement in an amount to be determined at trial;

C.   An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

D.   An award of costs and attorneys' fees; and

E.   Such other or further relief as may be appropriate.

DATED:  March 4, 2020.

Respectfully submitted,

/s/ *Eric Pearson*
Eric D. Pearson
eric@hop-law.com
Charles Miller
charles@hop-law.com
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161, Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

Richard C. Sheppard
rcs@smithbrooker.com
Charles T. Hewitt
cth@smithbrooker.com
Smith and Brooker, P.C.
703 Washington Ave.
Bay City, Michigan 48708-5732
(989) 892-2595

## **CERTIFICATE OF SERVICE**

I hereby certify that on this March 4, 2020, I electronically filed the foregoing notice with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

/s/ *Eric Pearson*
Eric D. Pearson
eric@hop-law.com
Charles Miller
charles@hop-law.com
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161, Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

**3738**