**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Kelly L. Stephens | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: November 20, 2024

Mr. Steve W. Berman
Hagens Berman Sobol Shapiro
1301 Second Avenue
Suite 2000
Seattle, WA 98101

Mr. Carmine D. Boccuzzi Jr.
Cleary, Gottlieb, Steen & Hamilton
One Liberty Plaza
New York, NY 10006

Mr. Brandon L Boxler
Klein Thomas Lee & Fresard
919 E. Main Street
Suite 1000
Richmond, VA 23219

Mr. Jeffrey Bramson
Kirkland & Ellis
333 W. Wolf Point Plaza
Chicago, IL 60654

Cole Carter
Kirkland & Ellis
333 W. Wolf Point Plaza
Chicago, IL 60654

Mr. James E. Cecchi
Carella, Byrne, Cecchi, Olstein, Brody & Agnello
5 Becker Farm Road, 2nd Floor
Roseland, NJ 60015-1211

Mr. Stephen D'Aunoy
Klein Thomas Lee & Fresard
100 N. Broadway, Suite 1600
St. Louis, MO 63102

Ms. Shauna Itri
Seeger Weiss
325 Chestnut Street, Suite 917
Philadelphia, PA 19106

Mr. William R. Jansen
Warner, Norcross & Judd
2715 Woodward Avenue, Suite 300
Detroit, MI 48201

Mr. Jonathan E. Lauderbach
Warner Norcross & Judd
715 E. Main Street, Suite 110
Midland, MI 48640

Mr. Jay P. Lefkowitz
Kirkland & Ellis
601 Lexington Avenue
New York, NY 10022

Mr. Dennis A. Lienhardt Jr.
Mr. E. Powell Miller
Miller Law Firm
950 W. University Drive, Suite 300
Rochester, MI 48307

Ms. Abena Ayowa Mainoo
Cleary, Gottlieb, Steen & Hamilton
One Liberty Plaza
New York, NY 10006

Mr. Jonathan S. Martel
Arnold & Porter Kaye Scholer
601 Massachusetts Avenue, N.W.
Washington, DC 20001

Mr. Charles Wade Miller
Heygood, Orr & Pearson
6363 N. State Highway 161, Suite 450
Irving, TX 75038

Mr. James Albert O'Brien
Carella, Byrne, Cecchi, Olstein, Brody & Agnello
5 Becker Farm Road, 2nd Floor
Roseland, NJ 60015-1211

Mr. Eric D. Pearson
Heygood, Orr & Pearson
6363 N. State Highway 161, Suite 450
Irving, TX 75038

Ms. Jennifer Rebecca Scullion
Mr. Christopher A. Seeger
Seeger Weiss
55 Challenger Road, Sixth Floor
Ridgefield Park, NJ 07660

Mr. Matthew D. Slater
Cleary, Gottlieb, Steen & Hamilton
2112 Pennsylvania Avenue, N.W., Suite 1000
Washington, DC 20037

Ms. Renee D. Smith
Kirkland & Ellis
333 W. Wolf Point Plaza
Chicago, IL 60654

Mr. Garth D. Wojtanowicz
Hagens Berman Sobol Shapiro
1301 Second Avenue, Suite 2000
Seattle, WA 98101

      Re: Case Nos. 23-1648/1696/1697/1698, *Fenner, et al v. General Motors, LLC, et al*
        Originating Case No. : 1:17-cv-11661

Dear Counsel,

  The attached order designated for full-text publication was filed today in these cases.

             Yours very truly,

             Kelly L. Stephens, Clerk


             Cathryn Lovely, Opinions Deputy

cc: Ms. Kinikia D. Essix

Enclosure

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0257p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

ANDREI FENNER et al.,

       *Plaintiffs*,

PHILLIP BURNS, et al. (23-1648); NANCY ANDERTON, et al. (23-1696); MIKE BULAON, et al. (23-1697); TAYLOR PANTEL, et al. (23-1698),

       *Plaintiffs-Appellants*,

  *v.*

GENERAL MOTORS, LLC; ROBERT BOSCH GMBH; ROBERT BOSCH LLC,

       *Defendants-Appellees*.

Nos. 23-1648/1696/1697/1698

On Petition for Rehearing En Banc
United States District Court for the Eastern District of Michigan at Bay City.
No. 1:17-cv-11661—Thomas L. Ludington, District Judge.

Decided and Filed: November 20, 2024

Before: MOORE, KETHLEDGE, and BLOOMEKATZ, Circuit Judges.

_____

**COUNSEL**

**ON PETITION FOR REHEARING EN BANC:** Jay P. Lefkowitz, KIRKLAND & ELLIS LLP, New York, New York, Renee D. Smith, Jeffrey S. Bramson, Cole T. Carter, KIRKLAND & ELLIS LLP, Chicago, Illinois, for Appellee General Motors. **ON RESPONSE TO THE PETITION FOR REHEARING EN BANC AND TO THE MOTIONS TO FILE AMICI BRIEFS:** Steve W. Berman, Garth D. Wojtanowicz, HAGENS BERMAN SOBOL SHAPIRO, LLP, Seattle, Washington, E. Powell Miller, Dennis A. Lienhardt, THE MILLER LAW FIRM, P.C., Rochester, Michigan, James E. Cecchi, Donald A. Ecklund, James A. O'Brien III, CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C., Roseland, New Jersey, Christopher A. Seeger, Jennifer R. Scullion, SEEGER WEISS LLP, Ridgefield Park, New Jersey, Shauna Itri, SEEGER WEISS

Nos. 23-1648/1696/1697/1698  *Fenner, et al. v. General Motors, LLC, et al.*  Page 2

LLP, Philadelphia, Pennsylvania, for Appellants Phillip Burns, et al. and joined by the Anderton, Bulaon, and Pantel Appellants. **ON AMICI BRIEFS:** Stephen A. D'Aunoy, KLEIN THOMAS LEE & FRESARD, St. Louis, Missouri, Brandon L. Boxler, KLEIN THOMAS LEE & FRESARD, Richmond, Virginia, Jonathan S. Martel, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., for Amici Curiae.

The court delivered an order denying the petition for rehearing en banc. MOORE, J. (pp. 3–5), delivered a separate opinion concurring in the denial of the petition for rehearing en banc, in which CLAY, STRANCH, and BLOOMEKATZ, JJ., concurred. GRIFFIN, J. (pp. 6–7), delivered a separate opinion dissenting from the denial of rehearing en banc, in which KETHLEDGE and BUSH, JJ., concurred. KETHLEDGE, J. (pp. 8–9), also delivered a separate opinion dissenting from the denial of rehearing en banc, in which GRIFFIN and BUSH, JJ., concurred.

---

# ORDER

---

The court received a petition for rehearing en banc. The original panel has reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision. The petition was then circulated to the full court.[*] Less than a majority of the judges voted in favor of rehearing en banc.

Judge Kethledge would grant the petition for rehearing en banc for the reasons stated in his dissent to the court's opinion of August 21, 2024, and in his dissent (pp. 8–9) to this order.

Therefore, the petition is denied.

---

[*]Judge Davis is recused from participation in this decision.

## CONCURRENCE

KAREN NELSON MOORE, Circuit Judge, concurring in the denial of rehearing en banc. The law is clear that preemption of state-law claims is appropriate where those claims "exist solely by virtue of" fraud on a federal agency. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001). But the law affords no argument for preempting claims "not based on any sort of fraud-on-the-agency theory, but on traditional state tort law principles." *Id.* at 352 (distinguishing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 481 (1996), and *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 241 (1984), on these grounds). *Fenner v. General Motors* is emphatically consistent with this holding because we correctly held that certain of plaintiffs' claims were not preempted to the extent they "relie[d] solely on traditional state tort law predating the [Clean Air Act], and would exist in the absence of the [federal] Act." 113 F.4th 585, 602 (6th Cir. 2024) (quoting *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 580 (6th Cir. 2013)). And we appropriately held preempted those of plaintiffs' claims which *did* arise exclusively from alleged violations of federal regulations. *Id.* at 596.

There is thus no conflict between *Fenner* and our recent decision in *In re Ford Motor Company*, 65 F.4th 851, 866 (6th Cir. 2023). In *Fenner* we devoted more than five pages to an application of *Ford*, ultimately determining that two of plaintiffs' five theories were indeed preempted under *Ford*. 113 F.4th at 595–600. The *Fenner* plaintiffs initially alleged that GM violated state consumer fraud and deception laws when the Duramax trucks "emit[ted] levels of NOx many times higher than (i) their gasoline counterparts, (ii) what a reasonable consumer would expect, (iii) what GM had advertised, (iv) the Environmental Protection Agency's maximum standards, and (v) the levels set for the vehicles to obtain a certificate of compliance that allows them to be sold in the United States." *Id.* at 596 (quoting R. 18 (First Am. Compl. ¶ 2) (Page ID #892)) (alteration in *Fenner*). We held that "[t]he fourth and fifth theories of liability would require a showing that, contrary to the EPA's decision, the Duramax [t]rucks failed to meet EPA standards. These two theories of liability depend entirely upon a [Clean Air Act] violation. Like the *Ford* plaintiffs' claims, these two theories are thus 'impermissible legal challenges to the

Nos. 23-1648/1696/1697/1698   *Fenner, et al. v. General Motors, LLC, et al.*   Page 4

EPA's decision' and, under *Ford*, are preempted." *Id*. (quoting D. 38 (Appellee Br. at 29)). We clearly recognized *Ford* as binding precedent, but we simply (and correctly) determined that plaintiffs' three remaining claims did not rely on a showing of any regulatory violation and thus did not invite a lay jury to question the EPA's judgment, making them distinguishable.

A jury, in hearing plaintiffs' arguments—that GM violated state consumer-protection laws when it advertised and sold Duramax trucks with emissions higher than gasoline counterparts, reasonable consumer expectations, and those promised by GM's advertisements, *see id.*—will be asked to determine whether GM's marketing was misleading in light of the trucks' heightened emissions. *See, e.g.*, Mich. Comp. Laws § 445.903(1)(s) (prohibiting "[u]nfair, unconscionable, or deceptive" acts which, inter alia, "[f]ail[] to reveal a material fact, the omission of which tends to mislead or deceive the consumer"). A verdict in favor of plaintiffs would require no finding as to *why* the Duramax emissions were heightened, but only as to *whether* the emissions were higher than a reasonable consumer would expect based on GM's marketing and thereby rendered that marketing misleading. And when the jury determines whether the trucks emitted "too much" NOx, it will do so based on a reasonable consumer's definition of "too much," *not* the EPA's. This is a perfectly appropriate role for a lay jury and does not displace the EPA's determination about whether the Duramax trucks contained defeat devices. Indeed, depriving the jury of that role would displace state consumer protection law that poses no direct conflict with federal regulations based on a court's "freewheeling inquiry" into the amorphous purposes and objectives of the federal statute, which is exactly what we are not supposed to do. *Chamber of Com. v. Whiting*, 563 U.S. 582, 607 (2011); *Merrick v. Diageo Ams. Supply, Inc.*, 805 F.3d 685, 694–95 (6th Cir. 2015).

In calling for en banc review, my colleagues overread *Fenner*. They fear *Fenner* means "any regulatory judgment affecting consumers is now open to second-guessing by a lay jury." Griffin Dissenting Op. at 7. That is not true, and we need look no further than our decision to see why. We held that the plaintiffs' claims "second-guess[ing]" the EPA's decision were indeed preempted. *See Fenner*, 113 F.4th at 595 (quoting *Ford*, 65 F.4th at 863). My colleagues also attack the surviving claims in *Fenner* for lacking independent support in the record, saying the only evidence for them ties back to EPA standards. Kethledge Dissenting Op. at 8–9. But the

evidence we cited suggests otherwise. *See Fenner*, 113 F.4th at 591–92. Even so, at most, this concern represents a record dispute about the remaining claims.

Where does that leave us? *Ford* and *Fenner* stand for a simple proposition: When claims depend on standards set by the EPA under the Clean Air Act, or a "fraud-on-the-agency" theory, they are impliedly preempted. But when the claims do not depend on representations to the EPA, standards the EPA establishes, certificates the EPA issues, or other EPA regulations, they are not impliedly preempted. My colleagues dissenting from the denial of rehearing en banc do not seriously dispute these points. Rather, they disagree on which side of the line the facts of this case fall. That fact-bound dispute does not warrant rehearing en banc. *See* Fed. R. App. P. 35(a).

For the foregoing reasons and because *Fenner* was correctly decided, I concur in the denial of rehearing en banc.

Nos. 23-1648/1696/1697/1698     *Fenner, et al. v. General Motors, LLC, et al.*     Page 6

---

# DISSENT

---

GRIFFIN, Circuit Judge, dissenting from the denial of the petition for rehearing en banc. This case warrants rehearing en banc. Such review "is necessary to secure or maintain uniformity of [our] decisions." Fed. R. App. P. 35(a)(1). This case conflicts with *In re Ford Motor Co. F-150 and Ranger Truck Fuel Economy Marketing and Sales Practices Litigation (Ford F-150)*, 65 F.4th 851 (6th Cir. 2023), because the two cases reach opposite conclusions on the same issue: whether a jury can revisit the EPA's regulatory judgment with respect to vehicle standards set by federal law.

Moreover, this case "involves a question of exceptional importance." Fed. R. App. P. 35(a)(2). In our October sitting alone, we heard two more putative class actions—*Bledsoe v. FCA US, LLC*, No. 24-1094, and *Counts v. General Motors, LLC*, No. 24-1139—that apparently assert similar claims that the majority approved here. Class actions involving automakers are largely unique to our Circuit (because the automakers are headquartered in Michigan), so it is both likely that we will continue to see these types of cases in the future and unlikely that the Supreme Court will resolve our conflicting precedent for us.

The majority opinion in this case would allow lay juries to second-guess the EPA's approval of the emissions systems of any vehicle sold in the United States. Federal law (namely the Clean Air Act) vests the EPA with authority to regulate emissions for new vehicles sold here. *See* 42 U.S.C. §§ 7521(a)–(b), 7525; 40 C.F.R. §§ 86.127-12, 86.135-12. And in this case, as the majority opinion itself observed, the subject GM "Duramax Trucks all received EPA-issued certificates of conformity, indicating that the vehicles met EPA emissions standards." Moreover, the EPA issued those certificates after GM fully disclosed all the relevant components of the trucks' emissions systems. Yet the majority opinion would now allow a lay jury—applying state law—to determine anew whether these trucks emitted too much nitrogen oxide "in real-world driving conditions." The EPA has already found otherwise; these claims should be preempted by federal law rather than encouraged by our court.

Our caselaw compels that conclusion. Just last year, we held that "allowing juries to second-guess the EPA's fuel economy figures would permit them to rebalance the EPA's objectives." *Ford*, 65 F.4th at 863. Here, the majority opinion attempts to distinguish *Ford* on the ground that *Ford* involved mileage estimates, whereas this case involved emissions systems. But the underlying problem in both cases is the same: the claims would "inescapably and impermissibly put[] a jury into the EPA's regulatory shoes." *Id*. That the EPA had adopted the mileage estimates as its own was an additional reason for preemption in *Ford*, not the only reason. *Id*.

Nor should it matter that the plaintiffs have since relabeled some of their claims to avoid (on the surface, at least) any mention of the EPA. As Judge Kethledge explains in his panel dissent, "the through-thread of all [the plaintiffs'] claims and 'theories'" is that the trucks' emissions system "unjustifiably increases the trucks' emissions during 'real-world' driving conditions." But the EPA itself found the opposite when it issued a certificate of conformity for these trucks. That the plaintiffs have now made their disagreement with the EPA the premise of their claims—rather than (as in *Ford*) the claims' ultimate conclusion—should make no difference to whether those claims are preempted. As stated by amicus FCA US, LLC—one of several amici who wrote in support of our rehearing this case en banc—"[w]ordsmithing and labels now control the preemption analysis" for these kinds of claims.

"Making complex technical judgments about vehicle emissions," Judge Kethledge appropriately observed, "is precisely the kind of thing that expert agencies are good at—and lay jurors are not." Yet the implications of the majority opinion are that any regulatory judgment affecting consumers is now open to second-guessing by a lay jury.

For these reasons and those more fully set forth in Judge Kethledge's panel concurrence/dissent and his separate dissent from the denial of rehearing en banc, I respectfully dissent from the denial of the petition for rehearing en banc.

Nos. 23-1648/1696/1697/1698   *Fenner, et al. v. General Motors, LLC, et al.*   Page 8

---

### DISSENT

---

KETHLEDGE, Circuit Judge, dissenting from the denial of rehearing en banc. I write to make an additional point as to why the plaintiffs' claims here are preempted. Courts should be careful not to hold state laws preempted based merely on a judge's own sense of what a federal statute's purposes should be. But most jurists would agree that preemption is proper when a state law or claim expressly or impliedly conflicts with a federal statute's text. *See Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 778 (2019) (Gorsuch, J., opinion).

We have such a textual conflict here. From the beginning, the plaintiffs have alleged that the online-dosing system for the subject Duramax trucks was a "defeat device"—which the complaint itself describes as "an auxiliary emissions control device that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use." Compl. ¶4. That is verbatim the federal definition of a defeat device. *See* 42 C.F.R. § 86.004-2. Accordingly, the plaintiffs' expert, Juston Smithers, opined in his report and in his deposition that "the defeat device here is a technically unjustified use of a strategy called 'online dosing.'" Rep. at 2. In opposing summary judgment, the plaintiffs likewise argued—as to *all* their claims—that "the Duramax trucks use 'online dosing' as a defeat device that reduces the effectiveness of the emission control system under normal driving conditions and thereby causes excessive emissions." Omnibus Resp., p. 1, Pls' Resp., p. 1; *see also* Omnibus Resp., p. 42 n.29 ("that Defendants made statements touting the low emissions qualities of their products gives rise to the obligation to disclose the defeat device rendering defective the emissions control technology and causing higher-than-expected emissions"). And even in arguing that their claims were not preempted, the plaintiffs asserted that "Defendants carefully concealed what Plaintiffs' expert analysis has shown: that the vehicles contained defeat devices which caused excessive NOx emissions in common real-world conditions." Resp. to Show Cause, p. 18; *see also, e.g., id.* at 14 n.2 ("the allegations of defeat devices are a means by which Plaintiffs can demonstrate that Defendants actively concealed the true nature of the vehicles' emissions systems, and how they did so").

The district court, for its part, summarized the record before it on summary judgment as follows:

> Plaintiffs have not identified an emissions benchmark, standard, or metric—except the EPA's standards—that a reasonable consumer would be aware of, care about, or expect. That is, Plaintiffs' allegations about "defeat devices" concealing excess emissions from the EPA hinge solely on the violation of EPA regulations, as confirmed by Plaintiffs' emissions expert, Juston Smithers.

681 F. Supp. 3d 767, 774-75 (E.D. Mich. 2023) (citation omitted).

Thus, whatever their label, all the claims at issue here—as actually litigated for six years in the district court—would have a lay jury revisit the EPA's determination that the Duramax trucks' online-dosing system was *not* a defeat device. Therein lies the conflict with the statutory text: the Clean Air Act directs the EPA's "Administrator" to determine (among many other things) whether "any emissions control device" is a defeat device as defined by the EPA, 42 U.S.C. § 7525(a)(3)(A), *id.* § 7521(a)(4), 42 C.F.R. § 86.004-2; yet the plaintiffs want a lay jury to reject that same determination. That should be conflict enough to hold these claims preempted.

ENTERED BY ORDER OF THE COURT

*Kelly L. Stephens*

Kelly L. Stephens, Clerk