UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

IN RE: DURAMAX DIESEL LITIGATION

---

Anderton, et al.,
*Plaintiffs*
v.

GENERAL MOTORS LLC, et al.,
*Defendants*

---

Bulaon, et al.,
*Plaintiffs*
v.

GENERAL MOTORS LLC, et al.,
*Defendants*

---

Pantel, et al.,
*Plaintiffs*
v.

GENERAL MOTORS LLC, et al.,
*Defendants*

No. 1:17-CV-11661-TLL-PTM

Judge Thomas L. Ludington

Magistrate Judge Patricia T. Morris

**THE PARTIES' JOINT SUBMISSION REGARDING PROPOSED NEXT STEPS AFTER THE SIXTH CIRCUIT REMAND**

Dated: August 11, 2025

Respectfully submitted,

*/s/ Renee D. Smith*
Renee D. Smith
Jeffrey S. Bramson
Haley L. Darling
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
rdsmith@kirkland.com
jeffrey.bramson@kirkland.com
haley.darling@kirkland.com

Michael P. Cooney (P39405)
DYKEMA GOSSETT PLLC
400 Renaissance Center
Detroit, MI 48243
Telephone: 313-568-6955
mcooney@dykema.com

*Attorneys for Defendant General Motors LLC*

*/s/ Lina Bensman*
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
Abena A. Mainoo (NY 4768404)
Carmine D. Boccuzzi, Jr. (NY 2677094)
Lina Bensman (NY 5028667)
Patrick Swiber (NY 5521463)
One Liberty Plaza
New York, NY 10006
(212) 225-2000 (Phone)
(212) 225-3999 (Facsimile)
amainoo@cgsh.com
cboccuzzi@cgsh.com
lbensman@cgsh.com
pswiber@cgsh.com

Matthew D. Slater (DC 386986)
2112 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 974-1500 (Phone)
(202) 974-1999 (Facsimile)
mslater@cgsh.com

*Counsel to Defendant Robert Bosch LLC*

*/s/ Steve W. Berman*
Steve W. Berman
Garth D. Wojtanowicz
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
garthw@hbsslaw.com

James E. Cecchi
Donald A. Ecklund
Zachary A. Bower
Carella, Byrne, Cecchi, Brody & Agnello, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 944-1700
jcecchi@carellabyrne.com
decklund@carellabyrne.com
zbower@carellabyrne.com

E. Powell Miller
Sharon S. Almonrode
THE MILLER LAW FIRM
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com

Christopher A. Seeger
Jennifer R. Scullion
SEEGER WEISS LLP
55 Challenger Road
Ridgefield Park, NJ 07660
Telephone: (212) 584-0700
cseeger@seegerweiss.com
jscullion@seegerweiss.com

Shauna Itri
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300
sitri@seegerweiss.com

*Attorneys for Plaintiffs and the Proposed Class*

/s/ Charles Miller
Charles Miller
charles@hop-law.com
Eric D. Pearson
eric@hop-law.com
HEYGOOD, ORR & PEARSON
6363 North State Highway 161, Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

*Attorneys for the Anderton Plaintiffs*

## INTRODUCTION

In advance of the August 12, 2025 status conference in the above-captioned matter ("*Counts*")[1], the parties respectfully submit this joint filing setting forth their respective joint or competing positions on proposed next steps in *Counts* and *In re Duramax Litig.*, Case No. 1:16-cv-12541 ("*Duramax*").[2] The parties also provide a brief reprise of the procedural posture of both cases. The parties submit for the Court's consideration an agreed-upon proposed schedule for additional or supplemental briefing in *Counts* and *Duramax*. However, the parties have been unable to reach agreement regarding the proposed next steps for *Duramax*.

## BACKGROUND

This litigation involves two putative class action lawsuits that were filed on July 7, 2016 (*Counts*) and May 25, 2017 (*Fenner*), as well as about 3000 individual claims (the *Anderton* plaintiffs) that were included in multi-plaintiff complaints filed

---

[1] *See Counts v. Gen. Motors, LLC, et al.*, Case No. 1:16-cv-12541, ECF No. 511. The August 12, 2025 conference was noticed only in *Counts*. However, following later communications among the parties and the Court, the parties respectfully address both *Counts* and *Duramax* here, and are filing this submission in both cases.

[2] *Duramax* was originally filed as a proposed class action captioned after lead plaintiff Andrei Fenner. Generally, the filings in this Court now use the *In re Duramax* caption. *In re Duramax Diesel Litig.*, Case No. 1:17-cv-11661 (E.D. Mich.). The filings and opinions in the 6th Circuit appeal use the *Fenner* caption. *Fenner v. Gen. Motors LLC*, Case No. 23-cv-01648 (6th Cir.).

in 2019. On January 15, 2020, the Court consolidated the *Fenner* and *Anderton* cases for pretrial purposes. *In re Duramax Litig.*, Case No. 1:17-cv-11661.[3]

**A. *Counts* (MY 2014-2015 Chevrolet Cruze diesel vehicles)**

On July 7, 2016, Plaintiffs filed *Counts*. On June 6, 2018, the Court granted Plaintiffs' leave to amend the complaint to add Robert Bosch LLC and Robert Bosch GmbH as defendants and to bring federal RICO claims. ECF No. 93.[4]

On June 9, 2022, the Court granted in part and denied in part Defendants' motions for summary judgment, dismissing Plaintiffs' RICO claim, five of Plaintiffs' 60 state-law claims, and two state claims as to Defendant Bosch only. *Counts v. Gen. Motors, LLC*, 606 F. Supp. 3d 678, 719 (E.D. Mich. 2022). The same day, the Court also denied Defendants' Rule 702 Motion, and granted and denied in part Plaintiffs' Rule 702 Motion, excluding portions of one of Defendants' experts. *Counts v. Gen. Motors LLC*, 606 F. Supp. 3d 547, 592 (E.D. Mich. 2022).

On August 1, 2022, Plaintiffs moved to certify the following classes:

> (1) a multi-state consumer protection class for "all persons or entities who purchased or leased one or more diesel Cruzes from a GM-authorized dealer or distributor in Arizona, California, Connecticut, Florida, Illinois, Maryland, Massachusetts, Minnesota, Missouri,

[3] Counsel for GM, Bosch, the *Counts* and *Duramax* named plaintiffs, and the individual plaintiffs in the *Anderton* cases have reviewed and approved the content of this submission.

[4] The Court terminated Robert Bosch GmbH as a defendant on February 25, 2020.

> Nevada, New Jersey, New York, Ohio, Pennsylvania, Texas, Washington, and West Virginia;"
>
> (2) a multi-state fraudulent concealment class for "all persons or entities who purchased or leased one or more diesel Cruzes from a GM-authorized dealer or distributor in Alabama, California, Connecticut, Delaware, Georgia, Kentucky, Maryland, Minnesota, New Jersey, New York, Ohio, Pennsylvania, and Tennessee;" and/or
>
> (3) single state-specific classes for Alabama, Arizona, California, Connecticut, Delaware, Florida, Georgia, Illinois, Kentucky, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, New York, Ohio, Pennsylvania, Tennessee, Texas, Washington, and West Virginia.

ECF No. 446. Class certification briefing concluded in February 2023. ECF No. 462 (Defs.' Class Opp.); ECF No. 466 (Pls.' Class Reply).

On July 12, 2023, the Court issued an order dismissing with prejudice all claims and denying Plaintiffs' class certification motion as moot. *Counts v. Gen. Motors LLC*, 681 F. Supp. 3d 778 (E.D. Mich. 2023). Plaintiffs appealed,[5] and on March 18, 2025, a three-judge panel—Judges Raymond M. Kethledge, Richard Allen Griffin, and John K. Bush—heard oral argument.

On June 6, 2025, the Sixth Circuit affirmed judgment as to RICO, but vacated and remanded the preemption holding. *Counts v. Gen. Motors LLC*, 139 F.4th 576 (6th Cir. 2025). Judge Kethledge wrote the unanimous *Counts* opinion.

[5] The *Counts* appeal lagged behind the *Duramax/Fenner* appeal because the former decision was subject to a motion for partial reconsideration or relief from judgment relating to a putative settlement between Plaintiffs and Bosch, which this Court denied. *See* ECF No. 496 (Pls. Mot. for Part. Reconsid. or Relief from Judgment); *Counts v. Gen. Motors LLC*, 2024 WL 472331 (E.D. Mich. Feb. 7, 2024).

### B. *In re Duramax* (MY 2011-2016 Duramax diesel trucks)

Plaintiffs filed the *Duramax* case on May 25, 2017 against both GM and Bosch. They brought claims under both state and federal RICO laws. The *Duramax* litigation involves both a proposed class action lawsuit (*Duramax*, Case No. 1:17-cv-11661), and several complaints alleging individual claims on behalf of as many as 3000 individual claimants (*Anderton*, *Bulaon*, and *Pantel*, Case Nos. 1:19-cv-11306, 1:19-cv-13220, 1:19-cv-13219).

Beginning on August 19, 2022, the parties submitted briefing related to Defendants' motions for summary judgment, the parties' Rule 702 motions, and Plaintiffs' motion for class certification in parallel. The *Duramax* class Plaintiffs moved to certify:

> (1) a multi-state consumer protection class for "all persons or entities who purchased or leased one or more Duramax trucks from a GM-authorized dealer or distributor in Arizona, Arkansas, California, Illinois, Pennsylvania, or Texas;"
>
> (2) a multi-state fraudulent concealment class for "all persons or entities who purchased or leased one or more Duramax trucks from a GM-authorized dealer or distributor in California or Pennsylvania;" and/or
>
> (3) single state-specific classes for Arizona, Arkansas, California, Illinois, Pennsylvania, or Texas. ECF No. 364.

The class certification, summary judgment, and Rule 702 motions were fully briefed by December 2022. *See* ECF No. 363 (GM's MSJ Mot.); ECF No. 364 (Pls.' Class Mot.); ECF No. 367 (Pls.' 702 Mot.); ECF No. 370 (Defs.' 702 Mot.); ECF No. 373 (Bosch's MSJ Mot.); ECF Nos. 386, 388 (Pls.' MSJ Opps.); ECF No. 390

(Pls.' 702 Opp.); ECF No. 392 (GM's 702 Opp.); ECF No. 397 (Bosch's Class Opp.); ECF No. 402 (GM's Class Opp.); ECF Nos. 407, 408 (Pls.' Class Replies); ECF No. 410 (Pls.' 702 Reply); ECF No. 413 (Defs.' 702 Reply); ECF No. 415 (Bosch's MSJ Reply); ECF No. 416 (GM's MSJ Reply).

On July 12, 2023, the Court issued an order (1) dismissing with prejudice all state-law claims as preempted and the federal RICO claim as barred by the indirect purchaser rule, and (2) denying the pending Rule 702 and class certification motions as moot. *In re Duramax Litig.*, 681 F. Supp. 3d 767 (E.D. Mich. 2023).

Plaintiffs appealed, and on May 9, 2024, a three-judge panel—Judges Karen Nelson Moore, Raymond M. Kethledge, and Rachel Bloomekatz—heard oral argument. On August 21, 2024, the Sixth Circuit affirmed summary judgment as to RICO but reversed the preemption holding. *Fenner v. Gen. Motors LLC*, 113 F.4th 585 (6th Cir. 2024). Judge Moore authored the majority opinion (in which Judge Bloomekatz joined), and Judge Kethledge wrote a dissent.

Defendants filed a petition for a rehearing *en banc*, which was denied on November 20, 2024. *Fenner v. Gen. Motors LLC*, 121 F.4th 1117 (6th Cir. 2024). Judge Moore wrote a concurring opinion. *Id.* at 1118-19. Judge Kethledge, as well as Judges Richard Allen Griffin and John K. Bush, dissented. *Id.* at 1119-22.

The Sixth Circuit later issued mandates remanding both the *Counts* and *In re Duramax* cases back to this Court.

## THE PARTIES' PROPOSALS

### I. *Counts v. General Motors LLC, et al.* (Case No. 1:16-cv-12541)

The parties agree that additional briefing is warranted in *Counts* to address the questions posed by the Sixth Circuit on remand: (1) "whether the plaintiffs' remaining claims (as we have defined that term here) are preempted under the analysis described above;" and (2) "[t]o the extent any such claims are not preempted," to "decide (upon an appropriate motion) the separate question whether the record in this case—as it now stands after the close of discovery—shows the existence of genuine issues of material fact as to any such unpreempted claim." *Counts*, 139 F.4th at 582.

The parties jointly propose that Defendants submit their opening briefs by **September 25, 2025**; Plaintiffs submit their response briefs by **November 6, 2025**; and Defendants submit their reply briefs by **November 25, 2025**. The parties further propose that the standard page limits for dispositive motion briefing shall apply (25 pages for the opening and opposition briefs, and 7 pages for any reply briefs).

### II. *In re Duramax Diesel Litigation* (Case No. 1:17-cv-11661)

#### A. Position of Plaintiffs

Plaintiffs do not believe that significant additional briefing is necessary following the Sixth Circuit's *Fenner* decision. The *Fenner* panel conclusively ruled – based on the fully-developed factual record before it – that Plaintiffs' remaining state-law claims are not preempted. Specifically, *Fenner* unequivocally held that,

based on that record, Plaintiffs' "state-law claims are, accordingly, not preempted by the CAA." *Fenner*, 113 F.4th at 602. *See id.* at 596-97 (noting that "[t]he evidence in support of those remaining theories of liability exists independently of EPA standards"); 598 (citing deposition testimony supporting viable theories of liability); 601-02 (citing deposition testimony supporting viable theories of liability). No further findings regarding preemption are required or appropriate in light of the *Fenner* panel's decision. Defendants should not be permitted to re-litigate an issue that has been extensively examined on a fulsome factual record by this Court, a panel of the Sixth Circuit, and by the Sixth Circuit en banc, which declined to reconsider the panel's decision.

Plaintiffs recognize that because this Court's summary judgment ruling relied exclusively on preemption, it did not have occasion to examine the merits of Defendants' other summary judgment arguments, or the parties' *Daubert* motions. But the parties have already exhaustively briefed those issues, and the Sixth Circuit's *Fenner* decision should have little or no impact on non-preemption arguments. There is no good reason for the parties to re-brief the issues, and there is certainly no cause for Defendants to submit new summary judgment arguments years after the summary judgment deadline has passed.

Few if any of Defendants' summary judgment arguments require (or even permit, in light of *Fenner*'s mandate) supplemental briefing. GM's summary

judgment motion asserted six arguments. *See* ECF No. 365 (GM SJ Mot.). First, GM argued that Plaintiffs' claims "fail because there is no genuine issue of fact that their trucks do NOT have a defeat device that causes 'excess' NOx emissions" on the grounds that (1) the alleged defeat device was disclosed to regulators; (2) the regulators approved online dosing; and (3) the evidence was insufficient to establish a causal connection between the defeat device and excess emissions. *Id*. at 12-29. These arguments – all of which are rooted in GM's assertion that Plaintiffs' claims were based solely on regulatory violations – were mooted by *Fenner*, which disapproved regulatory-based theories, but approved theories based on evidence that the trucks' emissions "far exceeded (i) gasoline counterparts, (ii) reasonable consumer expectations, and (iii) GM's own advertisements . . . ." *Fenner*, 113 F.4th at 601-02.

GM's second argument was that the evidence was not sufficient to establish a reasonable consumer standard. GM SJ Mot. at 29-47.[6] The *Fenner* decision expressly rejected these arguments when it found that "consumers reasonably expected their Duramax Trucks to have lower emissions than previous diesel models, other vehicles on the market, and their own older trucks." *Fenner*, 113 F.4th at 602.

---

[6] One of GM's subordinate arguments in this section was that the claims were preempted. The parties all agree this argument is foreclosed by *Fenner*.

*Fenner* had no impact on GM's third argument, lack of evidence of economic injury or damages, so that section requires no supplemental briefing. GM SJ Mot. at 48-49. Similarly, GM's fourth argument – that the RICO claims were barred – requires no additional briefing because *Fenner* resolved that issue. GM SJ Mot. at 49-51. GM's fifth argument, that Plaintiffs with tuner devices or model 3500HD trucks should be dismissed needs no additional briefing because *Fenner* had no impact on those claims. GM SJ Mot. at 51-59. And finally, GM's state-specific arguments, most of which claim a lack of duty to disclose under state law or other state-specific grounds, do not require additional briefing because *Fenner* did not impact those arguments. GM SJ Mot. at 60-80.[7] In short, few if any of GM's original summary judgment arguments require additional briefing either because they are foreclosed by the *Fenner* decision, or because *Fenner* did nothing to change the factual or legal background relevant to the arguments.

GM's proposal really seeks to re-argue points rejected by the Sixth Circuit, or assert new arguments it failed to assert in its original motion. The Court should reject

[7] GM also argued that under Florida and New Jersey law, the evidence was not sufficient to show reliance. To the extent these arguments are not foreclosed by *Fenner*, only minimal supplemental briefing should be required. *See* GM SJ Mot. at 65-66 (Florida), 73-75 (New Jersey).

that attempt, and permit only limited supplemental briefing confined to explaining what impact, if any, *Fenner* had on Defendants previously-briefed arguments.[8]

Defendants' near-exclusive reliance on the *Counts* decision, which while recognizing that *Fenner* is binding authority expressed dissatisfaction with the outcome, is telling. Defendants offer no explanation why this Court should rely on *Counts*, which though bound to follow *Fenner*, decided a narrower set of issues on a distinct (though similar) factual record, to the exclusion of *Fenner*. The *Counts* panel's reluctance to follow *Fenner* cannot change the clear decision in *Fenner*, nor can it justify re-opening an issue the *Fenner* majority conclusively addressed. Defendants' reliance on *Counts* (which reflects the views expressed in dissents by Judges Kethledge, Griffin and Bush) is a tacit admission that *Fenner* conflicts with their position here. *Fenner* governs this case, not *Counts* – indeed, as *Counts* recognized, *Fenner* is controlling authority even in that case. *See Daunt v. Benson*, 999 F.3d 299, 308-09 (6th Circuit 2021) (law-of-the-case doctrine applies to "fully

[8] Bosch joined in GM's summary judgment motion, and made only two separate arguments in its own motion, neither of which require supplemental briefing. *See* ECF 373 (Bosch SJ Mot.). Bosch argued that Plaintiffs' claims should be dismissed on standing grounds (i.e., their injuries were not fairly traceable to Bosch's conduct), and because of an alleged lack of relationship or communication between Bosch and Plaintiffs. *Id*. *Fenner* had no impact on either of these arguments, so supplemental briefing is unnecessary.

considered legal decision" after "full briefing and argument" based on a "fully developed record.").

Moreover, while focusing on *Counts*, Defendants' arguments to the contrary ignore *Fenner*. For example, Defendants state that their proposed additional briefing "would address whether Plaintiffs have sufficient under *Fenner* and *Counts* (*i.e.,* evidence independent of EPA regulations) to survive summary judgment."[9] Defendants' position cannot be squared with *Fenner*, which found that both the approved theories and the evidence supporting those theories exists independently of EPA decisions and standards:

> These theories of liability rest on traditional state tort law and exist independently of EPA decisions.
>
> The *evidence* in support of these remaining theories of liability exists independently of EPA standards. When Duramax Truck consumers heard "clean diesel," they expected their Duramax Truck to have lower emissions than previous diesel models. *See* R. 393-16 (Roberts Dep. at 102:1-11, 174:2-8) (Page ID # 38751, 38757). Based on GM advertisements and communications to consumers, customers likewise expected that the Duramax Trucks would have lower emissions than other vehicles on the market. *See id.* at 195:19-24 (Page ID # 38809). Some consumers measured "clean diesel" visually, expecting their vehicles not to "blow the black smoke," that diesel engines can be known for, R. 393-12 (Mizell Dep. at 43:4-6 (Page ID # 38675), whereas others understood GM's communications to mean that the

[9] Similarly, Defendants claim that "there is no evidence that 'exist[s] independently of EPA standards' sufficient to create a genuine issue of material fact on any theories that do not 'implicate or challenge' a determination of the EPA." Yes the *Fenner* court found the evidence above to be sufficient to sustain Plaintiffs' claim based "on the expectations of a reasonable consumer alone." *Fenner*, 113 F.4th at 599.

> Duramax Trucks would have lower emissions, "be cleaner[,] and run a lot better" than the older pickup trucks that they previously owned, R. 393-19 (Henderson Dep. at 72-73 (Page ID # 38806-07).

*Fenner*, 113 F.4th at 596-97 (emphasis added). *See also id.*, at 591-92 (reciting evidence of consumer expectations not based on EPA standards).[10]

Nor is it true, as Defendants suggest, that the record must be entirely devoid of any reference to EPA standards in order for the theories and evidence of liability to exist independently of those standards. Again, *Fenner* squarely addressed and decided this issue to the contrary: "Though Plaintiffs discuss defeat devices, their remaining theories of liability do not depend on the use (or misuse) of a 'defeat device,' nor any fraud 'in the emissions-testing process.' [] Discussion of defeat devices does not necessitate that the Plaintiffs' theories of liability depend on the CAA." *Fenner*, 113 F.4th at 599 (citing *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 580 (6th Cir. 2013)).

---

[10] Defendants further ignore the *Fenner* appellate decision when they assert that "this Court already held in *Counts* that any consumer expectation that diesel vehicles had lower NOx emissions than gasoline vehicles would *not* be reasonable, 606 F.Supp.3d at 693, and nothing in the *Fenner* opinion prevents the Court from entering the same ruling here." *Fenner* found evidence that "consumers likewise expected that the Duramax truck would have lower emissions than other vehicles on the market" sufficient to sustain the claims; that finding is binding upon this Court in both *Fenner* (where it is directly applicable) and in *Counts* (consistent with the Sixth Circuit's instructions to apply *Fenner* on remand). *See Fenner*, 113 F.4th at 597.

As a result, Plaintiffs propose to allow the parties to *renew* their prior summary judgment and *Daubert* motions (except as to Defendants' arguments that Plaintiffs' claims are preempted or the sufficiency of the evidence supporting those claims), along with a short brief no longer than fifteen (15) pages limited to the following issues: 1) specifying the portions of the prior motions being renewed; and 2) detailing the impact, if any, the *Fenner* decision has on the earlier arguments. Plaintiffs further propose that the opposing party be permitted a response of no more than fifteen (15) pages, with a reply brief limited to five (5) pages. Plaintiffs propose that these briefs be submitted on the same schedule as proposed for the additional *Counts* briefing, with opening briefs due September 25, 2025, responsive briefs due November 6, 2025, and reply briefs due November 25, 2025.

**B. Position of Defendants**

Defendants respectfully propose streamlined post-remand briefing that will review and reprise their original summary judgment motions, with additional argument or clarifications reflecting and addressing any impact from the Sixth Circuit opinions. Subject to the Court's preference, Defendants propose citing and

incorporating by reference their previously submitted summary judgment and Rule 702 briefing[11] (rather than repeating the entire original briefs) as appropriate.[12]

Among other things, the briefing would address whether Plaintiffs have sufficient evidence under *Fenner* (*i.e.*, evidence independent of EPA regulations) to survive summary judgment on their state-law claims. Neither this Court nor the *Fenner* majority has addressed whether Plaintiffs have sufficient evidence on the required elements of their state claims. To the extent that Plaintiffs suggest these evidentiary considerations should be excluded from the briefing, they are mistaken.

As in *Counts*, this Court "has presided over this [*Duramax*] case for some seven years now, and thus knows the record better than" the appellate courts, and must "decide whether, on this record, the plaintiffs' remaining claims can proceed without relying in any way on a disagreement with the EPA's determinations." *Counts*, 139 F.4th at 582. In both cases, the answer will be no, because there is no evidence that "exist[s] independently of EPA standards" sufficient to create a

[11] *See* ECF Nos. 363, 370, 373, 392, 413, 415, 416.

[12] If, given the passage of time, the Court prefers one new replacement brief from each Defendant that presents in one place all summary-judgment arguments and record citations (both from the prior briefing and any post-remand adjustments), Defendants propose the Court grant leave to extend the page limits for such briefing consistent with the original briefing. ECF No. 362.

genuine issue of material fact on any theories that do not "'implicate or challenge' a determination of the EPA." *Id.* (quoting *Fenner*, 113 F.4th at 596-97).

Although the split *Fenner* panel did not give precise instructions on remand, this Court can and should address the same question of whether "the record in this case—as it now stands after the close of discovery—shows the existence of genuine issues of material fact as to the unpreempted theories" now and in substantially the same manner in both *Counts* and *Duramax*. This proposal will allow the Court to consider in one place the parties' remaining arguments and evidentiary support, almost all of which are impacted in some way by the Sixth Circuit's rulings. This approach is consistent with both *Fenner* and the *Counts* opinion that applied it, this Court's inherent authority to manage its own docket, and Rule 1's directive to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

***First***, the Court should reject Plaintiffs' request to limit briefing on "the sufficiency of the evidence supporting" non-preempted claims." *See* Section II.A, above. To be clear, Defendants are not (as Plaintiffs argue above) suggesting that *Fenner* does not apply. Indeed, the *Counts* opinion is in harmony with *Fenner*. Judge Kethledge explicitly stated "[t]he holding of *Fenner* applies here." *Counts*, 139 F.4th at 582. And Plaintiffs told the Sixth Circuit that "*Fenner* involved the same

defendants, the same claims" and "is factually indistinguishable from this case."[13] In *Fenner*, the Sixth Circuit resolved the first issue that the *Counts* panel asked this Court to address on remand—*i.e.*, whether any of plaintiffs' *theories* of liability escape preemption. The Court found that three theories—"that GM violated state law through its misleading omissions regarding its emissions as compared to: (i) gasoline counterparts, (ii) a reasonable consumer's expectations, and (iii) what GM advertised"—escaped preemption because they "do not implicate or challenge the EPA's determinations." *Counts*, 113 F.4th at 596.

As the *Counts* panel explained: "In *Fenner*, the court reasoned that, on the record there, the plaintiffs' first three theories of liability did 'not implicate or challenge the EPA's determinations' that the AECD at issue was not a defeat device." 139 F.4th at 582. While the *Fenner* court also found that "at least some of the plaintiffs' evidence in support of those theories 'exists independently of EPA standards,'" *id.* (quoting *Fenner*, 113 F.4th at 596-97),[14] it did not address or resolve

---

[13] Pls-Appellants' Suppl. Br., ECF No. 51 at 1, *Counts*, No. 24-1139 (6th Cir. Dec. 4, 2024).

[14] Plaintiffs are wrong to argue that the *en banc* denial shows that a "majority of Sixth Circuit judges" rejected Defendants' position. Aside from Judge Moore (who wrote a concurrence) and Judges Kethledge, Griffin, and Bush (who wrote and/or joined in dissents), the denial of the *en banc* petition does not amount to a merits determination or show the opinions of the judges on "Defendants' positions" here. *See U.S. v. Meeks*, 2011 WL 4407448, at *2 (E.D. Mich. Sept. 22, 2011) (denial of petition for rehearing "is the functional equivalent of a grant or denial of certiorari

the second, "separate question" identified by *Counts*: whether the three non-preempted theories identified by the *Fenner* majority have a sufficient evidentiary basis to survive summary judgment under the applicable state law for each claim. 139 F.4th at 583. For example, the *Fenner* majority did not address:

- Whether any of the non-preempted alleged omissions it identified both (1) would have been material to reasonable consumers and (2) were in fact relied upon by individual Plaintiffs. As Judge Kethledge commented during oral argument in *Counts*, the idea that "consumers have any walking around expectations about the nitrous oxide emissions of their vehicle, under different load conditions and temperature, and so on . . . seems just utterly fictive." 6th Cir. Oral Arg. Tr. 17:11-16, Mar. 18, 2025.

- Whether Plaintiffs have expert support for any excess emissions or defeat device claim that "exist[s] independently of EPA standards." *See Counts*, 139 F.4th at 582. They plainly do not. The *Duramax* Plaintiffs' emissions expert admitted that he *applied only the EPA's definition* of "defeat devices." *See* ECF No. 371-5 (Smithers Dep. (Vol. I) 38:21-39:8). The only expert evidence on the foundational issue in *Duramax* is dependent on (not independent of) EPA standards, and plainly "'implicate[s] or challenge[s]'" EPA's reasoned determination that there are no defeat devices in these trucks. *Counts*, 139 F.4th at 582.

- Whether individual Plaintiffs' claims are also barred by testimony regarding their own emissions expectations—an issue that the *Fenner* panel also did not address on appeal. For example, several *Duramax* Plaintiffs testified that, to the extent they cared about emissions at all, they only cared about regulatory compliance. *E.g.*, ECF No. 363 at 31-33. Under *Counts* and *Fenner*, these individual claims fail because, rather than "exist[ing] independently of EPA standards," their claims are dependent on them and necessarily "'implicate or challenge' a determination of the EPA." *Counts*, 139 F.4th at 582 (quoting *Fenner*, 113 F.4th at 596-97).

---

by the Supreme Court. Such actions make no statement about the full court's view on the merits of a claim it declines to hear.").

Addressing these and other evidentiary sufficiency issues, tailored to the Sixth Circuit's guidance, will conserve judicial resources. The Court should not defer resolution of those dispositive evidentiary-sufficiency (or other dispositive) issues.[15]

The Court should reject Plaintiffs' attempt to prospectively cabin the briefing based on their arguments about what issues are or not impacted by *Fenner* and *Counts*. That is precisely what the new briefing will address. Nonetheless, Defendants briefly respond to some of Plaintiffs' points raised above.[16]

1. Plaintiffs argue that the questions about whether there is a defeat device in the first place "were mooted by *Fenner*" because *Fenner* approved theories based on evidence that the trucks' emissions "far exceeded (i) gasoline counterparts, (ii) reasonable consumer expectations, and (iii) GM's own advertisements . . . ." *Fenner*, 113 F.4th at 601-2.

---

[15] In addition to cross-referencing and incorporating by reference the parties' Rule 702 motions, Defendants may briefly address the impact of both the Sixth Circuit rulings and the December 2023 amendments to Rule 702. Unless the Court prefers otherwise, Defendants do not now intend to request separate, new Rule 702 motions, but believe it is important to preserve the point that most of Plaintiffs' experts' opinions now are inadmissible for the additional reason that they are intertwined with and dependent on EPA standards. Thus, Plaintiffs cannot meet their burden to show it is more likely than not that the opinions "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The lack of admissible expert support on the complex technical issues in this case is an additional reason to grant summary judgment in both the *Counts* and *Duramax* cases.

[16] Defendants reserve all rights and expect to address these points further in their proposed briefing.

This is incorrect. Whatever theory of liability Plaintiffs now choose to invoke, Plaintiffs' briefing before this Court has always relied on evidence of an alleged defeat device that they claim causes "excess emissions" "outside" or "outside of the boundaries" of the "***regulatory cycle***." ECF No. 389 at 10-11, 13. They rely on their expert, Mr. Smithers, whose emissions testing they claim "showed NOx emissions that ***exceed the relevant standards***." *Id.* at 14 (emphasis added); *see also id.* at 19 ("Mr. Smithers' analysis revealed that the Duramax trucks 'emit NOx ***in excess of the regulatory standards*** . . .'") (emphasis added); *see also id.* at 19-35 (detailing similar points). So, Plaintiffs are correct that their regulatory-based theories are mooted by *Fenner*. But it is because their only evidence of an alleged vehicle defect is rooted solely in regulatory-based evidence that the *Fenner* opinion both is important and dispositive.[17]

2. Plaintiffs argue that reasonable-consumer expectation arguments are not impacted by *Fenner*, because *Fenner* "found that 'consumers reasonably expected

---

[17] In addition, the reliance on expectations about gas vehicles does not help Plaintiffs; this Court already held in *Counts* that any consumer expectation that diesel vehicles had lower NOx emissions than gasoline vehicles would *not* be reasonable, 606 F. Supp. 3d at 693, and nothing in the *Fenner* opinion prevents the Court from entering the same ruling here. And any arguments based on advertisements must be considered in the context Plaintiffs' disavowal of any claims "for affirmative misrepresentations" early in the litigation. ECF No. 54, PageID.2302-03.

their Duramax Trucks to have lower emissions than previous diesel models, other vehicles on the market, and their own older trucks.'" *Fenner*, 113 F.4th at 602.

This is incorrect. Regardless of whether consumers could have reasonably expected their trucks to have "lower emissions than previous diesel models, other vehicles on the market, and their own older trucks,'" there is no evidence that the trucks actually had higher emissions than any of these alternative comparators. *See* ECF No. 365 at 42 n.37. No one (even Plaintiffs' expert) did any such comparison.

Contrary to Plaintiffs' contention above, *Fenner* did not hold that three plaintiffs' testimony about non-preempted expectations was "sufficient to survive summary judgment." *Fenner* found that there was "evidence" that "exists independently of EPA standards," *Fenner*, 113 F.4th at 596-97, but it did not address whether that evidence was sufficient to create a triable issue of fact on reasonable consumer expectations or other elements of the state laws applicable to the claims of those three cited plaintiffs—let alone all the individual plaintiffs' remaining claims. In sum, Defendants' position ***is*** consistent with both *Fenner* and the later *Counts* opinion, which also applied *Fenner*.

In any event, Plaintiffs' position is disconnected from their own summary judgment responses and the record evidence, which is inextricably tethered to whether reasonable consumers would care about the failure to disclose an alleged

"defeat device" (which, as shown above, is defined solely in the context of and in comparison, to federal emissions standards). *See* ECF No. 389 at 37-55.

3. Plaintiffs argue that "*Fenner* had no impact on GM's third argument, lack of evidence of economic injury or damages."

This is incorrect. The *Fenner* majority did not address whether Plaintiffs had sufficient expert support for their theories, and it did not address damages at all. But *Fenner* **does** affect whether the Court can consider the opinions of Plaintiffs' sole damages expert, Edward Stockton. Mr. Stockton based his analysis on assumed violations of the federal emissions standards.[18] Thus, even if his opinions could satisfy Rule 702 (they do not), they cannot create a material issue of fact on damages based on any non-preempted theory.

In short, contrary to Plaintiffs' arguments, many if not most of Defendants' core original summary judgment arguments are impacted by *Fenner* and *Counts*. Defendants will not revisit *Fenner*'s rulings on whether certain theories are or are

[18] *See* Stockton Rpt., ECF No. 371-12 ¶ 13; Stockton Dep., ECF No. 363-20, PageID.18840, at 92:6-15,93:5-10.

not barred by implied preemption;[19] instead, Defendants will apply *Fenner* and brief the issues consistent with the Sixth Circuit opinions and the record in this case.[20]

***Second***, renewed and re-focused post-remand briefing in both *Counts* and *Duramax* is particularly important now. Granting summary judgment on individual plaintiffs' claims will moot any further class certification briefing. Defendants believe any class claims will fail because Plaintiffs will be unable to meet their burden on Rule 23 for many reasons, including the Sixth Circuit's recent clarifications of class action jurisprudence. *See*, *e.g.*, *Speerly v. Gen. Motors LLC,* 143 F.4th 306, (6th Cir. 2025) (*en banc*, Sutton, C.J.); *In re Nissan N. Am., Inc. Litig.*, 122 F.4th 238 (6th Cir. 2024) (Sutton, C.J.). Should the Court need to reach

---

[19] Defendants may argue that state-law claims are barred by express preemption, as opposed to the implied preemption issues address in the *Fenner* appeal. *See* ECF No. 365 at 47-48.

[20] On the same day of this filing, a different Sixth Circuit panel (Judges Readler, Stranch, and Batchelder) addressed similar issues in an unpublished opinion. *Bledsoe v. FCA, US LLC*, Case No. 24-1094, ECF No. 62-2 (6th Circuit Aug. 8, 2025). While recognizing that "[m]any have asked whether *Fenner* properly applied *Ford*," the *Bledsoe* panel nonetheless applied *Fenner*. *Bledsoe* at 9. The *Bledsoe* panel noted "it bears repeating that there remains work to do in the district court" who "deserves an opportunity to address these outstanding issues with the benefit of recent case law." *Id.* at 15. It reiterated that "the district court should ensure that plaintiffs' emissions-based claims 'do not depend on the use (or misuse) of a defeat device, nor on any fraud in the emissions-testing process'" and that "'for a claim based on a particular theory to avoid preemption, no part of its syllogism [in support of a particular claim] can 'implicate or challenge" a determination of the EPA.'" *Id.* at 15-16 (quoting *Counts*, 139 F.4th at 582).

class certification, Defendants expect the certification briefing will likewise require refinement in *Counts* and *Duramax* to address recent Sixth Circuit opinions.

***Third***, Defendants believe modest page-limit extensions for the *Duramax* briefing are appropriate in light of the multiple dispositive issues this Court has not yet had an opportunity to resolve, as well as the multiple individual plaintiffs (both proposed class representatives and individual *Anderton* plaintiffs) at issue. Defendants propose allowing 30 pages for the opening and opposition briefs, and 10 pages for any reply briefs.

**C. Additional Positions Of Bosch Defendants.**

Moreover, there are unique bases for granting summary judgment to Robert Bosch GmbH and Robert Bosch LLC ("Bosch Defendants"). Previously, the Bosch Defendants argued that they (1) indisputably did not calibrate the alleged "defeat device" on which Plaintiffs' emissions claims are based, *see* ECF No. 415 at 3-5; and (2) neither made any relevant representations to the named Plaintiffs nor had a relationship with them that would obligate the Bosch Defendants to disclose the existence of the vehicle features Plaintiffs characterized as a defeat device, *see* id. at 7-20. These arguments must be revised to squarely address the new theories Plaintiffs are required to advance under *Fenner*.

* * *

In sum, Defendants respectfully request the Court provide an opportunity to submit focused, renewed motions in both *Counts* and *Duramax*. There is no reason to defer addressing the evidentiary deficiencies in any non-preempted theories until the context of class certification (which would also be shaped by recent Sixth Circuit preemption and class-certification opinions); or, in the unlikely event of a trial on individual claims, in directed-verdict or post-trial motions. The far more efficient course, for both the Court and parties, is to entertain additional briefing in both cases now and to clarify the contours of both cases going forward.

## CONCLUSION

The parties look forward to discussing these issues with Court at the August 12, 2025 status conference.

Dated: August 11, 2025

Respectfully submitted,

*/s/ Renee D. Smith*

Renee D. Smith
Jeffrey S. Bramson
Haley L. Darling
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
rdsmith@kirkland.com
jeffrey.bramson@kirkland.com
haley.darling@kirkland.com

Michael P. Cooney (P39405)
DYKEMA GOSSETT PLLC
400 Renaissance Center
Detroit, MI 48243

Telephone: 313-568-6955
mcooney@dykema.com

*Attorneys for Defendant General Motors LLC*

*/s/ Lina Bensman*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
Abena A. Mainoo (NY 4768404)
Carmine D. Boccuzzi, Jr. (NY 2677094)
Lina Bensman (NY 5028667)
Patrick Swiber (NY 5521463)
One Liberty Plaza
New York, NY 10006
(212) 225-2000 (Phone)
(212) 225-3999 (Facsimile)
amainoo@cgsh.com
cboccuzzi@cgsh.com
lbensman@cgsh.com
pswiber@cgsh.com

Matthew D. Slater (DC 386986)
2112 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 974-1500 (Phone)
(202) 974-1999 (Facsimile)
mslater@cgsh.com

*Counsel to Defendant Robert Bosch LLC*

*/s/ Steve W. Berman*
Steve W. Berman
Garth D. Wojtanowicz
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
garthw@hbsslaw.com

James E. Cecchi
Donald A. Ecklund
Zachary A. Bower
Carella, Byrne, Cecchi, Brody & Agnello, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 944-1700
jcecchi@carellabyrne.com
decklund@carellabyrne.com
zbower@carellabyrne.com

E. Powell Miller
Sharon S. Almonrode
THE MILLER LAW FIRM
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com

Christopher A. Seeger
Jennifer R. Scullion
SEEGER WEISS LLP
55 Challenger Road
Ridgefield Park, NJ 07660
Telephone: (212) 584-0700
cseeger@seegerweiss.com
jscullion@seegerweiss.com

Shauna Itri
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300
sitri@seegerweiss.com

*Attorneys for Plaintiffs and the Proposed Class*

/s/ *Charles Miller*
Charles Miller
charles@hop-law.com
Eric D. Pearson
eric@hop-law.com
HEYGOOD, ORR & PEARSON
6363 North State Highway 161, Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

*Attorneys for the Anderton Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 11, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

By: */s/ Renee D. Smith*
Renee D. Smith
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
rdsmith@kirkland.com